UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



CHARLES SPIRO, ANN MARIE SPIRO, ISMAEL
TORRES, as Administrator of the Estate of KERRY-
ANN TORRES, Deceased, and TATYANA
RUZHINSKAYA, as Administratrix of the Estate of
MARINA ROCHNIAK, Deceased, on behalf of
themselves and all others similarly situated,

                    Plaintiffs,

-against-

HEALTHPORT TECHNOLOGIES, LLC, MOUNT
SINAI HOSPITAL, MONTEFIORE MEDICAL
GROUP CO-OP CITY and BETH ISRAEL
MEDICAL CENTER,

                    Defendants.

Case No.



## NOTICE OF REMOVAL

TO THE CLERK OF THE COURT:

PLEASE TAKE NOTICE that Defendant HealthPort Technologies, LLC ("HealthPort") by and

through its attorneys, Thompson Hine LLP, hereby removes the above-entitled action from the

Supreme Court of the State of New York, New York County (the "State Court") to this United

States District Court for the Southern District of New York, on the grounds that this Court has

original jurisdiction over this civil action pursuant to 28 U.S.C. §§ 1332 and 1441, the Class

Action Fairness Act of 2005 ("CAFA"), and all other applicable bases for removal.  In support of

its Notice of Removal, HealthPort states as follows:

### BACKGROUND FACTS AND PROCEDURAL TRAVEL

      1.      On or about March 12, 2014, Plaintiffs Charles Spiro, Ann Marie Spiro, Ismael

Torres, as the Administrator of the Estate of Kerry-Ann Torres, Deceased, and Tatyana

Ruzhinskaya, as Administratix of the Estate of Marina Rochniak, Deceased, on behalf of themselves and all others similarly situated ("Plaintiffs") filed a Complaint in the State Court, Index No. 650784/2014, entitled *Charles Spiro, Ann Marie Spiro, Ismael Torres, as the Administrator of the Estate of Kerry-Ann Torres, Deceased, and Tatyana Ruzhinskaya, as Administratix of the Estate of Marina Rochniak, Deceased, on behalf of themselves and all others similarly situated v. HealthPort Technologies LLC, Mt. Sinai Hospital, Montefiore Medical Group Co-op City, and Beth Israel Medical Center* ("State Court Action"). Attached hereto as Exhibit A is an index identifying each document filed and/or served in the State Court Action. A true and correct copy of each document filed and/or served in the State Court Action is attached hereto in chronological order as Exhibits B-1 through B-6. HealthPort is informed and believes that the aforementioned documents and exhibits constitute all of the process, pleadings, and orders on file in the State Court Action.

2.      On March 26, 2014, Plaintiffs served the Summons and Complaint in the State Court Action on the New York Secretary of State.

3.      In accordance with 28 U.S.C. § 1446(d), HealthPort has given contemporaneous written notice of this Notice of Removal to all adverse parties and to the Clerk of the State Court.

4.      The instant action may be removed to this Court by HealthPort pursuant to the provisions of 28 U.S.C. §1441(b), CAFA, and other applicable bases for removal.

5.      HealthPort's Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b), which provides that such Notices "shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim upon which such action or proceeding is based." HealthPort has filed this Notice of Removal within 30 days of March 26, 2014, the date Plaintiffs served the Summons and Complaint on the New York

Secretary of State, and, hence, the first date upon which any defendant in this action received any paper giving it knowledge that the action was indeed removable. *See* 28 U.S.C. § 1446(b).

6.     HealthPort will cause notice of this removal to be filed with the Supreme Court of the State of New York, New York County.

7.     Plaintiffs purport to bring this action as a class action pursuant to Article 9 of the CPLR, and seek class certification on behalf of a class defined as:

> All persons including patients, their legal representatives and qualified persons within the scope and meaning of Public Health Law §§ 17 and 18, who requested copies of medical records from the defendants herein and/or any other physician, hospital, or health care provider as defined in said statute (hereinafter, collectively referred to as "defendants") in the State of New York, and were billed for said copies a charge in excess of the actual cost incurred by defendants for copying said records including, but not limited to, fees at, about or in excess of the statutory maximum or "ceiling" rate of seventy-five cents ($0.75) per page, and who sustained damages as a result of said overcharging for medical records by defendants, its agents or representatives.

(Exhibit B-1, Complaint ¶ 65).

8.     Plaintiffs assert that their claims are typical of those of the putative class members they seek to represent. (*Id.* at ¶ 69).

9.     Plaintiffs allege claims for overcharging for services related to copying medical records, in violation of Public Health Law §§ 17 and 18.   (*Id., generally*).

## CLASS ACTION FAIRNESS ACT

10.     CAFA, passed in 2005, enlarged federal jurisdiction to include certain class actions that meet certain statutory thresholds, including those actions first filed in state courts. *See Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013).

11.     In general, CAFA amended the diversity statute to confer federal jurisdiction over certain class actions where: (i) minimal diversity exists between the parties, (i.e., where "any member of a class of plaintiffs is a citizen of a state different from any defendant"); (ii) the

proposed class contains at least 100 members (the "numerosity" requirement); and (iii) the aggregate amount in controversy exceeds $5,000,000. *Id.* (citing 28 U.S.C. § 1332(d)(2)-(6)).

12.     Moreover, CAFA authorizes removal of such actions under 28 U.S.C. § 1446.

## CITIZENSHIP OF THE PARTIES

13.     CAFA's minimum diversity requirement is met in this case, as at least one Plaintiff is a citizen of a state different from any defendant.

14.     Plaintiffs claim to be residents and citizens of the States of New York and New Jersey. (Exhibit B-1, Complaint ¶¶ 35-38).

15.     HealthPort is a Georgia limited liability company with its principal place of business located at its headquarters in Alpharetta, Georgia (Ex. C, Declaration of Janet P. McDavid ¶ 4). HealthPort's sole member is Smart Holdings Corp., a company organized under the laws of Delaware. (*Id.*) Smart Holdings Corp.'s principal place of business is Chicago, Illinois. (*Id.*) Accordingly, HealthPort is a citizen of Delaware and Illinois for purposes of diversity jurisdiction. *See Bayerische Landesbank v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012) ("[A] limited liability company that takes the citizenship of each of its members."); 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business . . . .").

16.     For purposes of establishing the minimal diversity necessary to invoke the jurisdiction of this Court under CAFA, HealthPort need only establish that members of the class of plaintiffs are citizens of different states than one defendant. 28 U.S.C. §§ 1332(d) and 1453(b). HealthPort has met its burden, as Plaintiffs (citizens and residents of New York and

New Jersey) and HealthPort (a citizen of Delaware and Illinois) are sufficiently diverse for purposes of the removal of this action under CAFA.

## NUMEROSITY

17.     Likewise, the proposed class – if certified – would contain more than 100 members.  Plaintiffs themselves allege that HealthPort processed thousands of requests for medical records during the relevant time period (2008-2014) alleging that, during the relevant time period, HealthPort processed more than 1000, 2000, 5000, and 10,000 records per year, respectively).  (Exhibit B-1, Complaint ¶¶ 31-34.).

18.     Moreover, HealthPort, while denying any liability on account of Plaintiffs' allegations, confirms that it processed, copied, and delivered medical records and related services to more than 100 people (individually or through their authorized representative) in New York during the stated time period.[1]  (Ex. C, Declaration of Janet P. McDavid ¶ 7.)

## AMOUNT IN CONTROVERSY

19.     The final requirement for CAFA jurisdiction – that the amount in controversy exceed $5,000,000 – is also met in this case.  Courts consider two factors, generally: (1) the number of putative class members that are within the class, and (2) the potential value of the alleged aggregate damages suffered by plaintiffs.  *Lebowitz v. Dow Jones & Co.*, No. 06-cv-2198 (MGC), 2008 U.S. Dist. LEXIS 68212, at *3-4 (S.D.N.Y. Sept. 10, 2008).  Where the amount in controversy is not apparent from the face of the Complaint, the Court is permitted to consider facts submitted with the removal petition, including facts submitted by affidavit or declaration.

---

[1]     HealthPort notes that it fully complied with New York's laws and regulations concerning the processing, copying, and delivery of medical records; accordingly, HealthPort believes that there are no members of the proposed class alleged in the Complaint, as it is limited to persons charged amounts in excess of the amount authorized by law for medical records processing and copying.  However, for purposes of removal and using Plaintiffs' allegations, the number of persons seeking medical records during the time period alleged greatly exceeds 100.

*See LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999) ("[W]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits."); *United Food & Commercial Workers Union, Local 919 v. Centermark Props. Meriden Square*, 30 F.3d 298, 305 (2d Cir. 1994) ("Where the pleadings themselves are inconclusive as to the amount in controversy, however, federal courts may look outside those pleadings to other evidence in the record.").

20.     Under CAFA, a defendant "has the burden of proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount." *Maxons Restorations, Inc. v. Newman*, 292 F. Supp. 2d 477, 481 (S.D.N.Y. 2003) (quotation marks and citation omitted).  In addition, the Court must construe all ambiguities and draw all reasonable inferences in favor of the party asserting federal jurisdiction. *Mattera v. Clear Channel Commc'ns, Inc.*, 239 F.R.D. 70, 78 (S.D.N.Y. 2006).

21.     Plaintiffs' Complaint is ambiguous as to the amount in controversy.  The Complaint does allege, however, certain facts bearing on this issue.  First, Plaintiffs allege that the "actual" cost of processing and copying is less than $0.25 per page copied or processed. (Exhibit B-1, Complaint ¶ 13.)  Second, Plaintiffs allege that HealthPort generally charged at, about, or near $0.75 per page of medical records processed and copied.  (*Id.* at ¶ 7). Accordingly, Plaintiffs allege that HealthPort over-charged the proposed class members by approximately $0.50 per page of medical records processed and copied.

22.     HealthPort's business records indicate that, in 2013, it processed and copied more than 14,000,000 pages of medical records for attorneys requesting records from healthcare providers in New York.  Thus, for purposes of calculating the amount in controversy for the sole and limited purpose of determining CAFA jurisdiction, based on the allegations in Plaintiffs'

Complaint that HealthPort's costs were $0.50 below what it charged, as it relates only to copies requested by attorneys in one year, the amount in controversy alleged by Plaintiffs exceeds $7,000,000, which is in excess of the jurisdictional amount in controversy required by CAFA. This does not even take into consideration copies of the additional years contained in the Complaint, requests by non-attorneys, the allegation of treble damages, or the other damages sought by Plaintiffs in the Complaint.

23.     Thus, the amount in controversy element is satisfied in this case for purpose of jurisdiction under CAFA (and solely for that purpose, as HealthPort denies any and all liability to Plaintiffs or the proposed class members).

## RESERVATION OF RIGHTS / DENIAL OF LIABILITY

24.     Nothing in this Notice is intended or should be construed as any type of express or implied admission by HealthPort of any fact alleged by Plaintiffs, of the validity or merits of any of Plaintiffs' claims and allegations, or of any liability for the same, each and all of which are hereby expressly denied, or as any type of express or implied waiver or limitation of any of HealthPort's rights, claims, remedies, and defenses in connection with this action, all of which are hereby expressly reserved.

## VENUE

25.     This is a civil action brought in a New York state court.  HealthPort is informed and believes that the events allegedly giving rise to this action occurred within this judicial district.  This court has original jurisdiction in this action under 28 U.S.C. § 1332 because (1) CAFA permits removal of a class action, even without complete diversity of citizenship between the parties; (2) the amount in controversy exceeds $5,000,000.00; and (3) the total membership of the putative class(es) is 100 or more class members.  Accordingly, as the State Court Action is

7

now pending in New York County, New York, Defendants are entitled, pursuant to 28 U.S.C. § 1441(a), to remove this action to the United States District Court for the Southern District of New York.

26.     By filing this Notice of Removal, HealthPort does not waive any defenses, either procedural or substantive, which may be available to it.

WHEREFORE, HealthPort respectfully requests that the above-captioned action now pending in the State Court be removed to this United States District Court.

Dated: New York, New York
     April 2, 2013

THOMPSON HINE LLP

By: _____
Rebecca Brazzano
335 Madison Avenue, 12th Floor
New York, New York 10017
(212) 344-5680
Rebecca.Brazzano@ThompsonHine.com

*Attorneys for Defendant*
*HealthPort Technologies, LLC*

TO:

SIMONSON HESS LEIBOWTIZ &
GOODMAN, P.C.
Edward S. Goodman, Esq.
15 Maiden Lane
New York, New York 10038
(212) 233-5000
esg@shlpc.com

*Attorneys for Plaintiffs*

DENTONS US LLP
Sandra Hauser, Esq.
1221 Avenue of the Americas
New York, New York 10020
(212) 768-6700
sandra.hauser@dentons.com

*Attorneys for Defendants Mount Sinai
Hospital and Beth Israel Medical Center*

WIDOWSKI LAW GROUP LLP
Esther S. Widowski, Esq.
515 Madison Avenue, Suite 500
New York, New York 10022
(212) 308-0888
ewidowski@widowskilawgroup.com

*Attorneys for Defendant
Montefiore Medical Group Co-op City*

## CERTIFICATE OF SERVICE

I certify that on this date I caused a true and correct copy of the foregoing to be served by

depositing a true copy of the same in a properly addressed postage-prepaid wrapper by First-

Class Mail, in the exclusive care and custody of the United States Postal Service to:

SIMONSON HESS LEIBOWTIZ &
GOODMAN, P.C.
Edward S. Goodman, Esq.
15 Maiden Lane
New York, New York 10038
(212) 233-5000
esg@shlpc.com

*Attorneys for Plaintiffs*

DENTONS US LLP
Sandra Hauser, Esq.
1221 Avenue of the Americas
New York, New York 10020
(212) 768-6700
sandra.hauser@dentons.com

*Attorneys for Defendants Mount Sinai
Hospital and Beth Israel Medical Center*

WIDOWSKI LAW GROUP LLP
Esther S. Widowski, Esq.
515 Madison Avenue, Suite 500
New York, New York 10022
(212) 308-0888
ewidowski@widowskilawgroup.com

*Attorneys for Defendant
Montefiore Medical Group Co-op City*

I certify that the foregoing statements made by me are true.  I am aware that if any of the

foregoing statements made by me are willfully false, I am subject to punishment.

_____
Dwayne Lunde

Dated: April 25, 2014

# Exhibit A

NYSCEF
New York County Supreme Court

Document List

Index #  650784/2014

Created on:04/24/2014 12:53 PM

Case Caption:   Charles Spiro et al - v. - Healthport Technologies LLC et al

Judge Name:

| Doc# | Document Type/Information | Status | Date Received | Filed By |
|------|---------------------------|--------|---------------|----------|
| 1 | SUMMONS + COMPLAINT | Processed | 03/12/2014 | Goodman, E. |
| 2 | AFFIRMATION/AFFIDAVIT OF SERVICE<br>Healthport Technologies LLC | Processed | 04/03/2014 | Goodman, E. |
| 3 | AFFIRMATION/AFFIDAVIT OF SERVICE<br>Mount Sinai Hospital | Processed | 04/03/2014 | Goodman, E. |
| 4 | AFFIRMATION/AFFIDAVIT OF SERVICE<br>Montefiore Medical Group Co-op City | Processed | 04/03/2014 | Goodman, E. |
| 5 | AFFIRMATION/AFFIDAVIT OF SERVICE<br>Beth Israel Medical Center | Processed | 04/03/2014 | Goodman, E. |
| 6 | STIPULATION<br>Stipulation Extending Mount Sinai Hospital's and Beth<br>Israel Medical Center's Time to Respond to the(..) | Processed | 04/11/2014 | Hauser, S. |

# Exhibit B-1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
---------------------------------------------------------------x
CHARLES SPIRO, ANN MARIE SPIRO, ISMAEL
TORRES, as the Administrator of the Estate of
KERRY-ANN TORRES, Deceased and Tatyana
Ruzhinskaya, as Admininstratrix of the Estate of
MARINA ROCHNIAK, Deceased, on behalf of
themselves and all others similarly situated

                                          Plaintiff(s)


                - against -


HEALTHPORT TECHNOLOGIES LLC,
MOUNT SINAI HOSPITAL, MONTEFIORE
MEDICAL GROUP CO-OP CITY and BETH ISRAEL
MEDICAL CENTER

                                          Defendant(s)
---------------------------------------------------------------x

INDEX NO.
Purchased:
Plaintiff Designates
NEW YORK COUNTY
As Place of Trial

The Basis of Venue is
place of business of defendants
Mount Sinai Hospital and Beth Israel
Medical Center

**SUMMONS**

Defendants Place of Business:
Mount Sinai Hospital, 1 Gustave L.
Levy Place, NY, NY 10029
Beth Israel Medical Center, 10
Nathan D. Perlman Place, NY, NY
10003
County of New York

TO THE ABOVE NAMED DEFENDANT(S):

**YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve
a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of
appearance on the Plaintiff's Attorneys within twenty (20) days after the service of this summons,
exclusive of the day of service (or within thirty (30) days after the service is complete if this summons is
not personally delivered to you within the State of New York); and in case of your failure to appear or
answer, judgment will be taken against you by default for the relief demanded in the complaint

Dated:  New York, New York
        March 11, 2014


                                          _____
                                          EDWARD S. GOODMAN, ESQ.
                                          SIMONSON HESS LEIBOWITZ & GOODMAN, P.C.
                                          Attorneys for Plaintiff(s)
                                          Office and Post Office Address:
                                          15 Maiden Lane
                                          New York, New York 10038
                                          (212) 233-5000


DEFENDANT(S) ADDRESS(ES):

HEALTHPORT TECHNOLOGIES LLC
925 North Point Parkway - Suite 350
Alpharetta, GA 30005

MOUNT SINAI HOSPITAL
1 Gustave L. Levy Place
New York, NY 10029

MONTEFIORE MEDICAL GROUP CO-OP CITY
2100 Bartow Avenue
Bronx, NY 10475

BETH ISRAEL MEDICAL CENTER
10 Nathan D. Perlman Place
New York, NY 10003

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------------------x
CHARLES SPIRO, ANN MARIE SPIRO, ISMAEL
TORRES, as the Administrator of the Estate of
KERRY-ANN TORRES, Deceased and Tatyana
Ruzhinskaya, as Admininstratrix of the Estate of
MARINA ROCHNIAK, Deceased, on behalf of
themselves and all others similarly situated

                                                         CLASS ACTION COMPLAINT

                            Plaintiff(s)

                     - against -

HEALTHPORT TECHNOLOGIES LLC,
MOUNT SINAI HOSPITAL, MONTEFIORE
MEDICAL GROUP CO-OP CITY and BETH ISRAEL
MEDICAL CENTER

                            Defendant(s)
--------------------------------------------------------------------x

Plaintiffs, by their attorneys, SIMONSON HESS LEIBOWITZ & GOODMAN,

P.C., bring this action on behalf of themselves and all others similarly situated against defendants

HEALTHPORT TECHNOLOGIES LLC (hereinafter referred to as Healthport), MOUNT SINAI

HOSPITAL, MONTEFIORE MEDICAL GROUP CO-OP CITY and BETH ISRAEL MEDICAL

CENTER, and all others similarly situated, and alleges the following upon information and

belief:

## NATURE OF THE ACTION

      1.     This action is brought by the plaintiffs as a class action, on behalf of

themselves and all others similarly situated, whose joinder in this action is impracticable. The

plaintiffs and "qualified persons" acting on their behalf were overcharged by defendant for copies

of their hospital and/or medical records (hereinafter referred to as "medical records") in violation

of the statutory maximum charges permissible under New York Public Health Law §§17 and 18,

which are not to exceed the actual costs incurred by defendant, and under no circumstances to

1

exceed a maximum charge of seventy-five cents ($0.75) per page. The defendants and other physicians, hospitals and health care providers as such term is defined in Public Health Law §18, have engaged and continue to engage in an ongoing practice overcharging persons such as plaintiffs, for copies of their medical records in excess of the statutorily permissible amounts.

2.      The Class so represented by the plaintiffs in this action, and of which the plaintiffs are members, consists of any and all persons or entities who requested copies of medical records in the State of New York either personally or through a qualified person, including their legal representatives (as such terms are defined in Public Health Law §§17 and 18), from defendants and/or any and all other physicians, hospitals and health care providers (hereinafter collectively referred to as "defendants"), and who were charged for those copies fees in excess of the statutory maximum allowable fee of defendants' actual cost as set forth in Public Health Law §§17 and 18, including but not limited to, fees at, about or in excess of seventy-five cents ($0.75) per page for said records, and who sustained damages as a result of said overcharging by defendants, their agents or representatives.

3.      This class action is brought for, among other things, violation by defendants of Public Health Law §§17 and 18 which sets forth the maximum amount that is permitted to be charged to persons such as plaintiffs and their qualified representatives for copies of their medical records, for violation of the consumer protection laws, for unfair and deceptive trade acts and practices in violation of New York General Business Law §349 et seq., for violation of the common law, for common law fraud and concealment, for fraudulent and negligent misrepresentation, and for unjust enrichment, to recover for the damages caused to plaintiffs and all those similarly situated by the defendants' conduct as alleged herein, including treble damages and restitution for all excess monies paid by plaintiffs and the member of the Class, with interest, attorneys' fees, cost and disbursements. Punitive damages are sought in addition to compensatory damages, as a result of defendants' deliberate, willful, wanton,

knowing, unlawful, reckless and egregious conduct including, but not limited to fraud on the plaintiffs, the members of the class, and the public at large.  In addition, because the wrongful conduct herein is continuing, and plaintiffs and the public are being harmed, injunctive and/or other equitable relief to stop such conduct is also respectfully sought.

4.    Pursuant to New York Public Health Law §§17 and 18, if a patient or qualified person requests a copy of that patient's medical records in writing from a health care provider, the records must be furnished at a reasonable charge not to exceed the actual cost incurred by such provider, and in no event to exceed a maximum of seventy-five cents ($0.75) per page.

5.    At all times relevant herein, plaintiffs' were "qualified persons" pursuant to New York Public Health Law §§17 and 18.

6. At all times relevant herein every defendant, except Healthport, is a hospital or "healthcare provider" or "provider" as those terms are defined in Public Health Law §§17 and 18.

7. Defendants have charged more than their actual costs for copies of the medical records requested of them by plaintiffs and the members of the Class.  Defendants have, individually, collectively and/or through the use of agents and associations, deliberately engaged in a practice of fixing and charging "standard" or "uniform" fees for such medical records at or about seventy-five cents ($0.75) per page (the absolute maximum or "cap" or "ceiling" rate under the statutes), without regard for their actual costs incurred, in violation of said statutes and the public policy of the State of New York.

8. As a result of their wrongful and unlawful conduct, which is continuing, defendants have obtained substantial profits and windfalls and have unjustly enriched at the expense of plaintiffs and the members of the Class, who have been and continue to be charged for copies of their medical records in excess of the legally permissible rate and have suffered substantial damages as a result.

3

9. Defendants have concealed and/or failed to properly disclose to plaintiffs, and the members of the Class, numerous material facts including the maximum rate at which the statutes permit them to bill, the factors upon which that maximum statutory rate is based; the actual costs incurred to them of copying the medical records; the fact that the law required and continues to require them to charge fees not exceeding their actual costs incurred and under no circumstances to exceed 75 cent per page; the fact that the charges they actually billed and are billing plaintiffs and the members of the Class were, are and continue to be in excess of their actual costs; the fact that said charges violate applicable laws and are illegal; the fact that they have engaged and are engaging in a deliberate, fraudulent and concerted effort to overcharge plaintiffs and the class member and obtain fees furnishing copies of medical records which exceed what is legally permissible in the State of New York; the fact that defendants have, are and continue to be unjustly enriched and obtain a substantial and/or enormous windfall as a result thereof, and other material facts as set forth herein.

10. During all times relevant herein defendants have not calculated the actual cost incurred of fulfilling release of information requests for medical records pursuant to Public Health Law §§17 and 18.

11. During all times relevant herein defendants actual cost incurred of fulfilling release of information requests for medical records pursuant to Public Health Law §§17 and 18 was less than .75¢ per page.

12. During all times relevant herein defendants actual cost incurred of fulfilling release of information requests for medical records pursuant to Public Health Law §§17 and 18 was less than .50¢ per page.

13. During all times relevant herein defendants actual cost incurred of fulfilling release of information requests for medical records pursuant to Public Health Law §§17 and 18 was less than .25¢ per page.

14. During all times relevant herein defendants are unable to calculate the actual cost incurred for fulfilling the release of information requests for medical records pursuant to Public Health Law §§17 and 18 on a per request basis.

15. During the period between 2008 and 2014, inclusive, each defendant received and fulfilled more than 500 release of information requests for medical records pursuant to Public Health Law §§17 and 18 per year.

16. During the period between 2008 and 2014, inclusive, each defendant received and fulfilled more than 1,000 release of information requests for medical records pursuant to Public Health Law §§17 and 18 per year.

17. During the period between 2008 and 2014, inclusive, each defendant received and fulfilled more than 2,000 release of information requests for medical records pursuant to Public Health Law §§17 and 18 per year.

18. During the period between 2008 and 2014, inclusive, each defendant received and fulfilled more than 5,000 release of information requests for medical records pursuant to Public Health Law §§17 and 18 per year.

19. During the period between 2008 and 2014, inclusive, each defendant received and fulfilled more than 10,000 release of information requests for medical records pursuant to Public Health Law §§17 and 18 per year.

20. During the period between 2008 and 2014, inclusive, defendant, Healthport, received and fulfilled more than 500 release of information requests for medical records pursuant to Public Health Law §§17 and 18 per year.

21. During the period between 2008 and 2014, inclusive, defendant, Healthport, received and fulfilled more than 1,000 release of information requests for medical records pursuant to Public Health Law §§17 and 18 per year.

22. During the period between 2008 and 2014, inclusive, defendant, Healthport,

received and fulfilled more than 2,000 release of information requests for medical records pursuant to Public Health Law §§17 and 18 per year.

   23. During the period between 2008 and 2014, inclusive, defendant, Healthport, received and fulfilled more than 5,000 release of information requests for medical records pursuant to Public Health Law §§17 and 18 per year.

   24. During the period between 2008 and 2014, inclusive, defendant, Healthport, received and fulfilled more than 10,000 release of information requests for medical records pursuant to Public Health Law §§17 and 18 per year.

   25. During the period between 2008 and 2014, inclusive, each defendant processed more than 500 release of information requests for medical records pursuant to Public Health Law §§17 and 18 per year.

   26. During the period between 2008 and 2014, inclusive, each defendant processed more than 1,000 release of information requests for medical records pursuant to Public Health Law §§17 and 18 per year.

   27. During the period between 2008 and 2014, inclusive, each defendant processed more than 2,000 release of information requests for medical records pursuant to Public Health Law §§17 and 18 per year.

   28. During the period between 2008 and 2014, inclusive, each defendant processed more than 5,000 release of information requests for medical records pursuant to Public Health Law §§17 and 18 per year.

   29. During the period between 2008 and 2014, inclusive, each defendant processed more than 10,000 release of information requests for medical records pursuant to Public Health Law §§17 and 18 per year.

   30. During the period between 2008 and 2014, inclusive, defendant, Healport, processed more than 500 release of information requests for medical records pursuant to Public

Health Law §§17 and 18 per year.

31.  During the period between 2008 and 2014, inclusive, defendant, Healthport, processed more than 1,000 release of information requests for medical records pursuant to Public Health Law §§17 and 18 per year.

32.  During the period between 2008 and 2014, inclusive, defendant, Healthport, processed more than 2,000 release of information requests for medical records pursuant to Public Health Law §§17 and 18 per year.

33.  During the period between 2008 and 2014, inclusive, defendant, Healthport, processed more than 5,000 release of information requests for medical records pursuant to Public Health Law §§17 and 18 per year.

34.  During the period between 2008 and 2014, inclusive, defendant, Healthport, processed more than 10,000 release of information requests for medical records pursuant to Public Health Law §§17 and 18 per year.

THE PARTIES

35.  At all relevant times herein, plaintiff, CHARLES SPIRO, resides at 1 Renee Court, Forked River, New Jersey 08731.

36.  At all relevant times herein, plaintiff, ANNMARIE SPIRO, resides at 1 Renee Court, Forked River, New Jersey 08731.

37.  At all relevant times herein, plaintiff, ISMAEL TORRES, as the Administrator of the Estate of KERRY-ANN TORRES, resides at 2921 Wilson Avenue, Bronx, New York 10469.

38.  At all relevant times herein, plaintiff, Tatyana Ruzhinskaya, as Admininstratrix of the Estate of MARINA ROCHNIAK, Deceased, resides at 2940 Ocean Parkway, Apt. 14S, Brooklyn, New York 11235.

7

39.  At all relevant times herein, defendant, MOUNT SINAI HOSPITAL, was and is a hospital located in the County, City and State of New York.

40.  At all relevant times herein, defendant, MOUNT SINAI HOSPITAL, rendered and still renders medical and/or health care treatment to persons in the State of New York.

41. At all relevant times herein, defendant, MOUNT SINAI HOSPITAL, was and is a hospital or health care provider within the scope and meaning of Public Health Law §§ 17 and 18.

42.  At all relevant times herein, defendant, MOUNT SINAI HOSPITAL, rendered medical and/or health care treatment to CHARLES SPIRO in the State of New York.

43.  At all relevant times herein, defendant, MOUNT SINAI HOSPITAL, maintained medical records regarding its treatment of CHARLES SPIRO .

44.  At all relevant times herein, defendant, MONTEFIORE MEDICAL GROUP CO-OP CITY, was and is a hospital located in the County of the Bronx, City and State of New York.

45.  At all relevant times herein, defendant, MONTEFIORE MEDICAL GROUP CO-OP CITY, rendered and still renders medical and/or health care treatment to persons in the State of New York.

46. At all relevant times herein, defendant, MONTEFIORE MEDICAL GROUP CO-OP CITY, was and is a hospital or health care provider within the scope and meaning of Public Health Law §§ 17 and 18.

47. At all relevant times herein, defendant, MONTEFIORE MEDICAL GROUP CO-OP CITY, rendered medical and/or health care treatment to KERRY ANN TORRES in the State of New York.

48.  At all relevant times herein, defendant, MONTEFIORE MEDICAL GROUP

8

CO-OP CITY, maintained medical records regarding its treatment of KERRY ANN TORRES.

49. At all relevant times herein, defendant, BETH ISRAEL MEDICAL CENTER, was and is a hospital located in the County, City and State of New York.

50. At all relevant times herein, defendant, BETH ISRAEL MEDICAL CENTER, rendered and still renders medical and/or health care treatment to persons in the State of New York.

51. At all relevant times herein, defendant, BETH ISRAEL MEDICAL CENTER, was and is a hospital or health care provider within the scope and meaning of Public Health Law §§ 17 and 18.

52. At all relevant times herein, defendant, BETH ISRAEL MEDICAL CENTER, rendered medical and/or health care treatment to MARINA ROCHNIAK in the State of New York.

53. At all relevant times herein, defendant, BETH ISRAEL MEDICAL CENTER, maintained medical records regarding its treatment of MARINA ROCHNIAK.

54. At all relevant times herein, defendant, HEALTHPORT, was and is a domestic corporation duly organized and existing under and by virtue of the laws of the State of New York.

55. At all relevant times herein, defendant, HEALTHPORT, was and is a foreign limited liability company duly organized and existing under the by virtue of the laws of a State other than the State of New York.

56. At all relevant times herein, defendant, HEALTHPORT, was and is duly licensed to conduct business in the State of New York.

57. At all relevant times herein, defendant, HEALTHPORT, was and is engaged in the business of duplicating or copying documents, including medical records, for a fee.

58. At all relevant times herein, defendant, HEALTHPORT, was and is engaged

9

in the business of duplicating or copying documents, including medical records, for persons and entities in the State of New York.

59. At all relevant times herein, defendant, HEALTHPORT, was and is engaged in the business of duplicating or copying medical records for physicians, hospitals or other health care providers in the State of New York.

60. At all relevant times herein, defendant HEALTHPORT, was not, and is not, a hospital or medical doctor.

61. At all relevant times herein, defendant, HEALTHPORT, was not, and is not, a "health care provider" or "provider" as those terms are defined in the Public Health Law §§17 and 18.

62. Upon information and belief, the defendants were aware of and participated in the wrongful acts alleged herein.

VENUE AND JURISDICTION

63. Venue in this action lies in New York County based upon the residence/place of business of the two defendants MOUNT SINAI HOSPITAL and BETH ISRAEL MEDICAL CENTER.

64. This Court has jurisdiction over defendants pursuant to New York Civil Practice Law and Rules ("CPLR") 301 and 302 because defendants reside and/or are licensed to conduct business in the State of New York; conduct regular, continuous, systematic and substantial business in New York; regularly do or solicit business, or engage in other persistent courses of conduct, and/or derive substantial revenue from goods used or consumed or services rendered, in New York; the causes of action herein arose from defendants' transaction of business or contracts to supply goods or services within New York and/or from defendants' tortious acts committed within New York, and/or from defendants' tortious acts committed outside the State

of new York causing injury to person or property in New York; and defendants' expect or reasonably expect their acts to have consequences in New York and derive substantial revenue from interstate or international commerce.

## CLASS ACTION ALLEGATIONS

65. Plaintiffs bring this action on their own behalf and as a class action pursuant to Article 9 of the CPLR on behalf of themselves and all others similarly situated who comprise the following class (the "Class"):

> All persons including patients, their legal representatives and qualified persons within the scope and meaning of Public Health Law §§17 and 18, who requested copies of medical records from the defendants herein and/or any other physician, hospital, or health care provider as defined in said statute (hereinafter, collectively referred to as "defendants") in the State of New York, and were billed for said copies a charge in excess of the actual cost incurred by defendants for copying said records including, but not limited to, fees at, about or in excess of the statutory maximum or "ceiling" rate of seventy-five cents ($0.75) per page, and who sustained damages as a result of said overcharging for medical records by defendants, its agents or representatives.

66. Plaintiffs believe that there are thousands of members of the Class as described above, though the exact number and the identities of the Class member are currently unknown.

67. The members of the Class are so numerous that joinder of all Class members is impracticable.

68. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are, but not necessarily limited to:

(a) Whether the defendants violated Public Health Law §§17 and 18;

11

(b) Whether the defendants engaged in unfair and/or deceptive trade acts and practices;

(c) Whether the defendants violated General Business Law §349 et seq. and/or other consumer protection or deceptive trade practices laws;

(d) Whether the defendants violated the common law by committing the acts alleged herein;

(e) Whether the defendants pursued the course of fraudulent conduct complained of;

(f) Whether the defendants acted deliberately, knowingly, willfully, wantonly, recklessly and/or negligently in misrepresenting, omitting or concealing material facts;

(g) Whether the defendants engaged in a course of conduct constituting fraudulent and/or negligent misrepresentation and/or concealment;

(h) Whether the defendants were unjustly enriched to the detriment of plaintiffs and the members of the Class;

(i) Whether plaintiffs and the members of the Class have been damaged and, if so, what is the appropriate measure of such damage;

(j) Whether treble damages should be imposed against the defendants;

(k) Whether punitive damages should be awarded to plaintiffs and the members of the Class and, if so, the extent of such damages;

(l) Whether the defendants should be permanently enjoined from charging fees in excess of their actual cost and/or the limit authorized by Public Health Law §§17 and 18;

(m) Whether a defendant Class should be established regarding issues common to a multitude of defendants herein.

69. Plaintiff's claims are typical of the claims of the other members of the Class as the plaintiffs and all members of the Class either sustained damages or can reasonably be

12

expected to sustain damages arising out of defendants' conduct as complained of herein.

70.  Plaintiffs will fairly and adequately represent and protect the interests of the Class.  Plaintiffs have retained able counsel.  The interests of plaintiffs are coincident with and not antagonistic to the interests of the other Class members.

71.  The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

72.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all Class members is impracticable. Moreover, since the damage suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation make it impossible for the members of the Class individually to redress the wrongs done to them.  Injunctive relief is also sought which will impact the entire Class.  The Class is readily defined and prosecution of this action as a class action will eliminate the possibility of repetitious litigation.  There will be no difficulty in the management of this action as a class action.

REPRESENTATIVE ALLEGATIONS OF NAMED PLAINTIFFS

73.  At all relevant times herein, the defendants were and still are doing business in the State of New York, including, but not limited to, copying and furnishing copies of medical records to persons and/or entities in the State of New York.

74.  As an example of the violations complained of, plaintiff asserts: In or about January 2011, plaintiff, CHARLES SPIRO , by and through his legally authorized representative made a written request of defendant, MOUNT SINAI MEDICAL CENTER, to provide copies of medical records reflecting its treatment of CHARLES SPIRO.

75.  During the period inclusive of January 8, 2011, and for some time prior and

13

subsequent thereto, defendant, MOUNT SINAI MEDICAL CENTER, had a contract, agreement or arrangement with Healthport, whereby, among other things, defendants would copy and furnish medical records on behalf of MOUNT SINAI MEDICAL CENTER, in response to written requests made to said hospital by patients and qualified persons acting on their behalf, and would bill said persons for copying and forwarding the medical records.

76. Defendant, HEALTHPORT, was and is the agent of MOUNT SINAI MEDICAL CENTER for the purpose of copying, furnishing and billing for medical records in response to requests made to said hospital by its patients and qualified persons acting on their behalf, including the request of plaintiff.

77. Defendant, MOUNT SINAI MEDICAL CENTER, gave defendant, HEALTHPORT, express, implied and/or apparent authority to act on its behalf with respect to the copying, furnishing and billing for medical records in response to requests made to said hospital by its patients and qualified persons acting on the behalf, including the request of plaintiff.

78. In responding to requests by patients and qualified persons for copies of their medical records, including the request of plaintiff, defendant, MOUNT SINAI MEDICAL CENTER, gave defendant, HEALTHPORT, access to, custody, possession and/or control of said persons' medical records.

79. Upon information and belief, the patients and qualified persons acting on their behalf, including plaintiff, CHARLES SPIRO, did not duly authorize defendant, MOUNT SINAI MEDICAL CENTER, to afford outside entities such as defendant, HEALTHPORT, and/or its employees and representatives, access to, custody, possession and/or control of their medical records.

80. In response to the aforesaid request of plaintiff, CHARLES SPIRO, defendant, MOUNT SINAI MEDICAL CENTER, engaged its agent, HEALTHPORT, to copy

14

plaintiff, CHARLES SPIRO's, medical records, bill plaintiff for said copies and gave

HEALTHPORT access to, possession, custody and/or control of said medical records in

connection therewith.

81.   On or about January 8, 2011, defendant, MOUNT SINAI MEDICAL

CENTER, by and through its agent HEALTHPORT, responded to plaintiff's request for copies of

the medical records and forwarded a bill in the amount of $74.00 for copying 96 pages of

medical records.  The bill stated that said fee represented $72.00 for the actual copying costs

($.75 per page), $2.00 for "QuickView Delivery".

82.   Plaintiff paid said $74.00 bill on or about January 28, 2011.

83.   The fee charged to, and received from, SIMONSON HESS LEIBOWITZ &

GOODMAN, P.C., for furnishing copies of the medical records, was in excess of the actual cost

incurred in copying said records, set forth in Public Health Law §§17 and 18.

84.   As an example of the violations complained of, plaintiff asserts: In or about

February 2010, plaintiff, ISMAEL TORRES, by and through his legally authorized representative

made a written request of defendant, MONTEFIORE MEDICAL GROUP CO-OP CITY, to

provide copies of medical records reflecting its treatment of KERRY ANN TORRES.

85.   During the period inclusive of February 3, 2010, and for some time prior and

subsequent thereto, defendant, MONTEFIORE MEDICAL GROUP CO-OP CITY, had a

contract, agreement or arrangement with Healthport, whereby, among other things, defendants

would copy and furnish medical records on behalf of MONTEFIORE MEDICAL GROUP CO-

OP CITY, in response to written requests made to said hospital by patients and qualified persons

acting on their behalf, and would bill said persons for copying and forwarding the medical

records.

86.   Defendant, HEALTHPORT, was and is the agent of MONTEFIORE

MEDICAL GROUP CO-OP CITY for the purpose of copying, furnishing and billing for medical

records in response to requests made to said hospital by its patients and qualified persons acting on their behalf, including the request of plaintiff.

87. Defendant, MONTEFIORE MEDICAL GROUP CO-OP CITY, gave defendant, HEALTHPORT, express, implied and/or apparent authority to act on its behalf with respect to the copying, furnishing and billing for medical records in response to requests made to said hospital by its patients and qualified persons acting on the behalf, including the request of plaintiff.

88. In responding to requests by patients and qualified persons for copies of their medical records, including the request of plaintiff, defendant, MONTEFIORE MEDICAL GROUP CO-OP CITY, gave defendant, HEALTHPORT, access to, custody, possession and/or control of said persons' medical records.

89. Upon information and belief, the patients and qualified persons acting on their behalf, including plaintiff, ISMAEL TORRES, did not duly authorize defendant, MONTEFIORE MEDICAL GROUP CO-OP CITY, to afford outside entities such as defendant, HEALTHPORT, and/or its employees and representatives, access to, custody, possession and/or control of their medical records.

90. In response to the aforesaid request of plaintiff, ISMAEL TORRES, defendant, MONTEFIORE MEDICAL GROUP CO-OP CITY, engaged its agent, HEALTHPORT, to copy plaintiff, KERRY ANN TORRES', medical records, bill plaintiff for said copies and gave HEALTHPORT access to, possession, custody and/or control of said medical records in connection therewith.

91. On or about February 3, 2010, defendant, MONTEFIORE MEDICAL GROUP CO-OP CITY, by and through its agent HEALTHPORT, responded to plaintiff's request for copies of the medical records and forwarded a bill in the amount of $28.25 for copying 35 pages of medical records. The bill stated that said fee represented $26.25 for the actual copying

16

costs ($.75 per page), $2.00 for "QuickView Delivery".

92. Plaintiff paid said $28.25 bill on or about February 25, 2010.

93. The fee charged to, and received from, SIMONSON HESS LEIBOWITZ & GOODMAN, P.C., for furnishing copies of the medical records, was in excess of the actual cost incurred in copying said records, set forth in Public Health Law §§17 and 18.

94. The fee charged to, and received from, plaintiff for furnishing copies of the medical records, violated Public Health Law §§17 and 18.

95. As an example of the violations complained of, plaintiff asserts: In or about June 2013, plaintiff, Tatyana Ruzhinskaya, by and through her legally authorized representative made a written request of defendant, BETH ISRAEL MEDICAL CENTER, to provide copies of medical records reflecting its treatment of MARINA ROCHNIAK.

96. During the period inclusive of July 6, 2013, and for some time prior and subsequent thereto, defendant, BETH ISRAEL MEDICAL CENTER, had a contract, agreement or arrangement with Healthport, whereby, among other things, defendants would copy and furnish medical records on behalf of BETH ISRAEL MEDICAL CENTER, in response to written requests made to said hospital by patients and qualified persons acting on their behalf, and would bill said persons for copying and forwarding the medical records.

97. Defendant, HEALTHPORT, was and is the agent of BETH ISRAEL MEDICAL CENTER for the purpose of copying, furnishing and billing for medical records in response to requests made to said hospital by its patients and qualified persons acting on their behalf, including the request of plaintiff.

98. Defendant, BETH ISRAEL MEDICAL CENTER, gave defendant, HEALTHPORT, express, implied and/or apparent authority to act on its behalf with respect to the copying, furnishing and billing for medical records in response to requests made to said hospital by its patients and qualified persons acting on the behalf, including the request of

17

plaintiff.

99. In responding to requests by patients and qualified persons for copies of their medical records, including the request of plaintiff, defendant, BETH ISRAEL MEDICAL CENTER, gave defendant, HEALTHPORT, access to, custody, possession and/or control of said persons' medical records.

100. Upon information and belief, the patients and qualified persons acting on their behalf, including plaintiff, Tatyana Ruzhinskaya, did not duly authorize defendant, BETH ISRAEL MEDICAL CENTER, to afford outside entities such as defendant, HEALTHPORT, and/or its employees and representatives, access to, custody, possession and/or control of their medical records.

101. In response to the aforesaid request of plaintiff, Tatyana Ruzhinskaya defendant, BETH ISRAEL MEDICAL CENTER, engaged its agent, HEALTHPORT, to copy plaintiff, MARINA ROCHNIAK's, medical records, bill plaintiff for said copies and gave HEALTHPORT access to, possession, custody and/or control of said medical records in connection therewith.

102. On or about July 6, 2013, defendant, BETH ISRAEL MEDICAL CENTER, by and through its agent HEALTHPORT, responded to plaintiff's request for copies of the medical records and forwarded a bill in the amount of $140.75 for copying 185 pages of medical records. The bill stated that said fee represented $138.75 for the actual copying costs ($.75 per page), $2.00 for "Electronic Delivery Fee".

103. Plaintiff paid said $140.75 bill on or about July 8, 2013.

104. The fee charged to, and received from, SIMONSON HESS LEIBOWITZ & GOODMAN, P.C., for furnishing copies of the medical records, was in excess of the actual cost incurred in copying said records, set forth in Public Health Law §§17 and 18.

105. The fee charged to, and received from, plaintiff for furnishing copies of the

medical records, violated Public Health Law §§17 and 18.

106. As a direct and proximate result of the foregoing, plaintiffs suffered damages by, among other things, being caused to pay fees for the medical records in excess of the legally permissible rate.

## ALLEGATIONS APPLICABLE TO DEFENDANTS

107. The above are representative factual allegations. Upon information and belief, there are a multitude of similar transactions regarding the obtainment of medical records from defendants continuously occurring within the State of New York. Defendants have constantly, repeatedly and for a substantial period of time charged "standard fees" and other charges in excess of those mandated by Public Health Law §§17 and 18 to other patients and qualified persons. Plaintiffs and the members of the Class have been, are and will in the future continue to be, damaged by the unlawful acts unless the putative Class is awarded the relief sought herein.

108. Defendants, acting individually and collectively, have concocted and carried out a scheme to deliberately circumvent the law and public policy of the State of new York by (a) charging fees for copying medical records in response to requests by plaintiffs and the members of the Class, which exceed their actual costs; (b) charging "standard" or "uniform" fees at, about or exceeding the statutory maximum or "ceiling" rate of 75 cents per page for copying said medical records, and/or (c) engaging the services of medical records providers and/or copy centers who have continuously and repeatedly overcharged for such records in excess of the actual costs incurred for copying the records, in excess of the fee permitted by the Public Health Law, and even in excess of the fees charged to others for duplication of documents and records.

109. The medical record providers and/or copy centers engaged by health care providers to copy and furnish medical records in response to requests by plaintiff and the

members of the Class, have been, are and continue to be the agents of said defendants with respect to copying and furnishing medical records and billing patients and qualified persons for such copies.

110.  The fees and charges billed by such medical record providers and/or copy centers for copying medical records on behalf of health care providers, have been, are, and continue to be in excess of their actual cost and violative of the Public Health Law §§17 and 18.

111.  Defendants, individually and through their employees, agents, servants and representatives, owed a duty of due care to plaintiffs and the members of the Class to charge and receive fees for copying and furnishing medical records which comply with the requirements and limitations of Public Health Law §§17 and 18 and other applicable laws; to conform their conduct to the legal requirements; to properly disclose material facts relating to their billing practices with respect to the copying and furnishing of medical records and their actual costs incurred in doing so; and to conduct themselves in a legal, honest and forthright manner.

112.  Defendants, individually and through their employees, agents, servants and representatives, were and are aware of the requirements and limitations set forth in Public Health Law §§17 and 18 with respect to allowable fees and charges for copying and furnishing medical records in response to written requests by patients and qualified persons.

113.  Despite such awareness, defendants, individually, collectively and through their employees, agents, servants and representatives, with an intent to defraud, deceive, conceal and reap substantial profits and windfalls, billed, charged and received monies from patients and qualified persons, including the plaintiffs and members of the Class, for copying and furnishing medical records which were and are in excess of those permitted by law.

114.  Defendants, individually and collectively, conspired and/or otherwise made agreements, arrangements or understandings amongst themselves and/or through others, to set and fix prices, and/or otherwise charge and receive purported "standard" or "uniform" fees at or

20

about the seventy-five cents ($0.75) per page statutory maximum or "ceiling", rather than a fee

based upon defendants' actual cost incurred as required by law, for copying medical records for

plaintiffs and the members of the Class.

115.  Defendants, individually and collectively, made agreements, arrangements

or understandings with medical record providers and/or copy centers, including HEALTHPORT,

relative to the copying and furnishing of medical records for plaintiffs and members of the Class,

which induced, caused or facilitated such entities to charge fees for said medical record copies in

excess of their actual copying cost, in excess of the legally permissible fees, and/or in excess of

fees that such entities charge to others for duplication of documents and records.

116.  Defendants deliberately, knowingly and with an intent to defraud, deceive

and conceal, failed to disclose to plaintiff and the members of the Class, material facts such as:

the maximum fees they are permitted to charge by law; their actual costs incurred in copying the

medical records; the fact that they were charging and receiving fees in excess of their actual

costs; the fact that their charges and the monies received exceeded those permissible by law and

were incorrect and fraudulent; the fact that they were reaping substantial profits and windfalls as

a result of said wrongful and unlawful charges; the fact that they had conspired and/or otherwise

made agreements, arrangements or understandings amongst themselves and with and through

others, to fix prices and circumvent the letter and spirit of the law by charging purported

"standard" or "uniform" fees at or about seventy-five cents ($0.75) per page for medical records,

rather than the required fee based upon their costs incurred; the fact that they were and are

utilizing the copying and furnishing of medical records to patients and/or qualified persons as a

business for profit, contrary to the law and public policy of the State of New York; the fact that

they were and are utilizing agents such as medical record providers and/or copy centers to

effectuate, facilitate and/or conceal the aforesaid conduct and its results; the fact that they had or

may have had agreements, arrangements or understandings with such medical record providers,

21

copy centers and/or others, relative to the copying and furnishing of records, which induced, caused or facilitated such entities to charge fees in excess of actual cost, in excess of the legally permissible fees, and even in excess of the fees such entities charge to others for duplication of documents and records; and the fact that defendants' conduct otherwise violated the Public Health Law, consumer protection and deception trade acts and practices, laws, the common law, and duties and obligations owed to patients and qualified persons acting on their behalf.

117. The conduct of defendants as aforesaid, including the failure to disclose, was and continues to be committed deliberately, knowingly, willfully, wantonly, recklessly and/or negligently.

118. The conduct of defendants as aforesaid, including the failure to disclose, constituted and continues to constitute fraudulent misrepresentation and concealment of material facts to plaintiffs, the members of the Class and the public.

119. The conduct of defendants as aforesaid, including the failure to disclose, constituted and continues to constitute unfair and/or deceptive trade acts and practices and/or wrongful, dishonest, deceptive, fraudulent and unlawful acts and practices perpetrated upon plaintiffs and members of the Class.

120. The conduct of defendants as aforesaid, including the failure to disclose, constituted and continues to constitute reckless and/or negligent misrepresentation or concealment of material facts to plaintiffs, the members of the Class and the public.

121. Defendants, individually and collectively, instead of disclosing the fact that they were and are charging fees in excess of their actual costs, in violation of applicable laws, continue to deceive and conceal their wrongful practices from plaintiffs, the members of the Class and the public.

122. At all times relevant herein defendant, HEALTHPORT, was a party to an agreement and/or contract with each of the other defendants herein.

22

123. At all times relevant herein defendant, HEALTHPORT, was a party to an agreement and/or contract with each of the other defendants herein pursuant to which said other defendant paid Healthport a monthly fee.

124. Plaintiffs and the members of the Class had the right to expect that defendants was proceeding in a legal, honest and forthright manner with respect to their billing for copying medical records, and that their fees complied with both the letter and spirit of applicable laws.

125. Plaintiffs and the members of the class justifiably relied upon defendants' misrepresentations, concealment and omissions to their detriment, and were caused to pay fees for copies of medical records in excess of the maximum fees permitted by law.

126. Plaintiffs and the members of the Class are and remain at risk for being overcharged in connection with future requests for medical records.

127. As a result of the foregoing, defendants have obtained and continue to obtain substantial profits and windfalls and have been unjustly enriched, while plaintiffs and the members of the Class suffered and continue to suffer actual damages and remain at risk for being damaged in the future.

128. Plaintiffs, the Class and the public at large will continue to suffer irreparable damage unless defendants are enjoined from continuing its unconscionable, illegal, deceptive and wrongful practices as alleged herein.

129. Plaintiffs and the members of the Class have no adequate remedy at law to stop such practices.

130. Plaintiffs seek equitable relief, damages and punitive damages on behalf of themselves and all Class members, including reimbursement for any and all damages sustained as a result of the practices described above, with interest, treble damages, attorneys' fees, costs, disbursements and such other relief as the Court and/or trier of fact deems just and proper.

## ESTOPPEL FROM PLEADING AND TOLLING OF
## APPLICABLE STATUTES OF LIMITATIONS

131. Defendants are estopped from relying on any statutes of limitation by virtue of its acts of fraudulent concealment.  Until shortly before the filing of this litigation, plaintiffs and members of the class had no knowledge that defendant was engaged in the wrongdoing alleged herein.  Because of defendants' concealment of the relevant information as aforesaid, plaintiff and the members of the Class could not reasonably have discovered it.

## AS AND FOR A FIRST CAUSE OF ACTION

132. Plaintiffs repeat, reiterate and reallege each and every allegation set forth in paragraphs "1" through "131" of this Complaint as if more fully set forth at length herein.

133. The aforesaid conduct by defendants, individually, collectively and through their employees, agents, servants and representatives, violated and continues to violate Public Health Law §§17 and 18.

134. As a direct and proximate result of the foregoing, plaintiffs and the members of the Class have been and continue to be injured financially and damaged by, among other things, being caused to pay for medical records in excess of the fees permitted by law, and are entitled to a refund of all excess monies paid, together with interest accruing from the time of payment, attorneys' fees, costs, disbursements and such other damages permitted by law.

135. Plaintiffs and the members of the Class are also entitled to punitive damages in addition to compensatory damages as a result of the deliberate, knowing, willful, wanton, fraudulent, reckless, unlawful and egregious conduct of defendants as set forth above.

136. Based on the foregoing, plaintiffs and the members of the Class are entitled to compensatory and punitive damages in amounts to be determined by the trier of fact.

## AS AND FOR A SECOND CAUSE OF ACTION

137.  Plaintiffs repeat, reiterate and reallege each and every allegation set forth in paragraphs "1" through "136" of this Complaint as if more fully set forth in length herein.

138.  The aforesaid conduct by defendants constituted and continues to constitute unfair and deceptive trade acts and practices in violation of New York General Business Law §349 et seq. and other applicable consumer protection laws, rules and regulations.

139.  As a direct and proximate result of the foregoing, plaintiffs and the members of the Class have been and continue to be injured financially and damaged and are entitled to a refund of all excess monies paid with interest accruing from the time of payment, trebling of the damages, attorneys fees, costs, disbursements and such other damages permitted by law.

140.  Plaintiffs and the members of the Class are also entitled to punitive damages in addition to compensatory damages as a result of the deliberate, knowing, willful, wanton, fraudulent, reckless, grossly negligent, unlawful and egregious conduct of defendant as set forth above.

141.  Based on the foregoing, plaintiffs and the members of the Class are entitled to compensatory and punitive damages in amounts to be determined by the trier of the fact.

## AS AND FOR A THIRD CAUSE OF ACTION

142.  Plaintiffs repeat, reiterate and reallege each and every allegation set forth in paragraphs "1" through "141" of this Complaint as if more fully set forth in length herein.

143.  The aforesaid conduct by defendants constituted and continues to constitute knowing, willful and intentional fraud and misrepresentation upon plaintiffs, the members of the Class and the public.

144.  Plaintiffs and the member of the Class justifiably relied upon defendants'

25

false statements, misrepresentations and omissions to their detriment.

145.   As a direct and proximate cause of defendants' fraud and misrepresentation, plaintiffs and the members of the Class have been and continue to be injured financially and damaged, and are entitled to a refund of all excess monies paid, with interest accruing from the time of payment, trebling of the damages, attorneys fees, costs, disbursements and such other damages permitted by law.

146.   Plaintiffs and the members of the Class are also entitled to punitive damages in addition to compensatory damages as a result of defendant's knowing, willful, wanton, deliberate, fraudulent, deceptive, unlawful, reckless and egregious conduct as set forth above.

147.   Based on the foregoing, plaintiffs and the members of the Class are entitled to compensatory and punitive damages in amounts to be determined by the trier of fact.

## AS AND FOR A FOURTH CAUSE OF ACTION

148.   Plaintiffs repeat, reiterate and reallege each and every allegation set forth in paragraphs "1" through "147" of this Complaint as if more fully set forth in length herein.

149.   The aforesaid conduct by defendants constituted and continues to constitute reckless and/or negligent misrepresentation and/or concealment upon plaintiffs, the members of the Class and the public.

150.   Plaintiffs and the members of the Class justifiably relied upon defendants' negligent misrepresentations, concealment and omissions to their detriment.

151.   As a direct and proximate result of the foregoing, plaintiffs and the members of the Class have been and continue to be injured financially and damaged, and are entitled to a refund of all excess monies paid, with interest accruing from the time of payment, trebling of the damages, attorneys' fees, costs, disbursements and such other damages permitted by law.

152.   Plaintiffs and the members of the Class are entitled to punitive damages in

26

addition to compensatory damages as a result of defendants' knowing, willful, wanton, fraudulent, deceptive, unlawful, reckless, grossly negligent and egregious conduct as set forth above.

153. Based on the foregoing, plaintiffs and the members of the Class are entitled to compensatory and punitive damages in an amount to be determined by the trier of fact.

## AS AND FOR A FIFTH CAUSE OF ACTION

154. Plaintiffs repeat, reiterate and reallege each and every allegation set forth in paragraphs "1" through "153" of this Complaint as if more fully set forth in length herein.

155. As a result of their aforesaid conduct, defendants have wrongfully collected from plaintiffs and the members of the Class, amounts of money in excess of those to which they are entitled and limited as charges for providing medical records pursuant to New York Public Health Law §§17 and 18 and other applicable laws.

156. The receipt of payments of those excessive, improper and unlawful fees has unjustly enriched, benefitted and created a windfall for defendants, to the detriment and damage of plaintiffs and the members of the Class.

157. Based on the foregoing, plaintiffs and the members of the Class are entitled to recover from defendants all damages and costs permitted by law including all amounts to which defendant has been unjustly enriched, with interest accruing from the time of payment, trebling of the damages, costs, disbursements and attorneys fees.

## AS AND FOR A SIXTH CAUSE OF ACTION

158. Plaintiffs repeat, reiterate and reallege each and every allegation set forth in paragraphs "1" through "157" of this Complaint as if more fully set forth in length herein.

159. Defendants are and continue to engage in the conduct set forth in this

Complaint.  Unless restrained and enjoined, they will continue to charge fees for medical records in excess of the amount authorized by statute, and plaintiffs , the members of the Class and the public will continue to be defrauded, deceived and damaged.

160.  Plaintiffs and the members of the Class have no adequate remedy of law to stop defendants' conduct, rendering equitable relief appropriate in that damages cannot adequately compensate plaintiffs and the Class for the injuries suffered and threatened.

161.  Based on the foregoing, plaintiffs and the members of the Class are entitled to a judgment declaring that defendants have unlawfully charged amounts for providing medical records in excess of that authorized by law, and enjoining and restraining them from currently doing so and from doing so in the future.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiffs, on behalf of themselves and all other member of the Class, pray for judgment against defendants as follows:

(a) Declaring this action to be a proper class action and certifying plaintiffs as Class representatives and certifying the class and any appropriate subclasses thereof under Article 9 of New York's Civil Practice Law and Rules, and appointing plaintiffs and their counsel to represent the Class;

(b) Awarding compensatory and punitive damages in favor of plaintiffs and all other members of the Class and against defendants, in amounts to be determined by the trier of fact, upon each and every claim or cause of action alleged herein;

(c) For treble damages to the extent permitted by law;

(d) For a declaration that the acts of defendants were and continue to be unlawful;

(e) For an injunction enjoining and restraining defendants from charging standard fees and fees in excess of those permitted by law;

28

(f) For costs and disbursements incurred in connection with this action, including reasonable attorneys' fees; and

(g) For such other and further law and equitable relief as the Court deems just an proper.

_____
EDWARD S. GOODMAN, ESQ.
SIMONSON HESS LEIBOWITZ & GOODMAN, P.C.
Attorneys for Plaintiffs
15 Maiden Lane
New York, NY 10038
(212) 233-5000

<u>VERIFICATION</u>

EDWARD S. GOODMAN, an attorney duly admitted to practice law in the Courts of this State, affirms the following under the penalties of perjury:

I am a member of the law firm of SIMONSON HESS LEIBOWITZ & GOODMAN, P.C., attorneys for the plaintiff herein.

I have read the foregoing COMPLAINT and know the contents thereof, and upon information and belief, deponent believes the matters alleged therein to be true.

The reason this verification is made by deponent and not by plaintiff is that the plaintiff herein resides in a County other than the one in which plaintiff's attorneys maintain their office.

The source of deponent's information and the grounds of his belief are communications, papers, reports and investigations contained in the file.

Dated:  New York, New York
        March 11, 2014

 

 

EDWARD S. GOODMAN

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

_____

CHARLES SPIRO, ANN MARIE SPIRO, ISMAEL
TORRES, as the Administrator of the Estate of
KERRY-ANN TORRES, Deceased and Tatyana
Ruzhinskaya, as Admininstratrix of the Estate of
MARINA ROCHNIAK, Deceased, on behalf of
themselves and all others similarly situated

                                                    Plaintiff(s)


                   - against -


HEALTHPORT TECHNOLOGIES LLC,
MOUNT SINAI HOSPITAL, MONTEFIORE
MEDICAL GROUP CO-OP CITY and BETH ISRAEL
MEDICAL CENTER

                                                    Defendant(s)

_____


                SUMMONS & VERIFIED COMPLAINT

_____


           SIMONSON HESS LEIBOWITZ & GOODMAN, P.C.
                   Attorney for Plaintiff(s)
                       15 Maiden Lane
                    New York, NY 10038
                      (212) 233-5000


Pursuant to 22 NYCRR 130-1.1, the undersigned attorney admitted to
practice in the courts of New York State, certified that, upon
information and belief and reasonable inquiry, the contentions
contained in the annexed document are not frivolous.

Dated: 3/11/14            Signature_____

              Print Signer's Name_____ EDWARD S. GOODMAN

# Exhibit B-2

## AFFIDAVIT OF SERVICE THROUGH THE SECRETARY OF STATE

Index # 650784/2014                                    Purchased/Filed: March 12, 2014

STATE OF NEW YORK            SUPREME COURT            NEW YORK COUNTY

_____

Charles Spiro, Ann Marie Spiro, et al.                                Plaintiff

against

Healthport Technologies, LLC, et al.                                Defendant

_____

STATE OF NEW YORK
COUNTY OF ALBANY            SS.:

_____Heather Morigerato_____ , being duly sworn, deposes and says: deponent is over

the age of eighteen (18) years; that on _____March 26, 2014_____ , at _11:45 am_ , at the office of the

Secretary of State of the State of New York in the City of Albany, New York deponent served the annexed

Summons and Class Action Complaint with Notice of Commencement of Action Subject to Mandatory
Electronic Filing                                                                on

_____Healthport Technologies, LLC_____ , the

Defendant in this action, by delivering to and leaving with _____Chad Matice_____ ,

AUTHORIZED AGENT in the Office of the Secretary of State, of the State of New York, personally at the

Office of the Secretary of State of the State of New York, ___2___ true copies thereof and that at the time

of making such service, deponent paid said Secretary of State a fee of ___40___ dollars; That said service

was made pursuant to Section _303 Limited Liability Company Law_ .

Deponent further says that deponent knew the person so served as aforesaid to be the agent in the Office

of the Secretary of State of the State of New York, duly authorized to accept such service on behalf of said

defendant.

Description of the person served:  Approx. Age: ___28___   Approx. Wt: ___200___   Approx. Ht: ___6'0"___

Color of skin: __White__   Hair color: __Brown__   Sex: __Male__   Other: _____

Sworn to before me on this

_26th_  day of _____March, 2014_____

_____                          _____HMorigerato_____
DIANE KOEHLER                                              Heather Morigerato
NOTARY PUBLIC, State of New York                         **Attny's File No.**
No. 61KO6202736, Albany County
Commission Expires March 23, 2017                        Invoice•Work Order # SP1403644

*SERVICO. INC. - PO BOX 871 - ALBANY. NEW YORK 12201 - PH 518-463-4179*

# Exhibit B-3

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

INDEX NUMBER: 650784/2014

CHARLES SPIRO, et al.,

Plaintiff

- against -

HEALTHPORT TECHNOLOGIES LLC, et al.,

Defendant

## AFFIDAVIT OF SERVICE

State of New York  }
County of New York }  ss.:

The undersigned, being duly sworn, deposes and says;

Deponent is not a party herein, is over 18 years of age and resides in Wayne, New Jersey

That on **3/27/2014** at **1:58 PM** at **One Gustave Levy Place, New York, NY 10029**

deponent served a(n) **Summons, Class Action Complaint**

on **Mount Sinai Hospital**, a domestic corporation,

by delivering thereat a true copy of each to **Jean Marie** personally,

deponent knew said corporation so served to be the corporation described in said documents as said defendant and knew
said individual to be **Authorized Agent** thereof.

Description of Person Served:
Gender : Female
Skin :  Black
Hair : Black
Age : 51 - 65 Yrs.
Height : 5' 4" - 5' 8"
Weight :161-200 Lbs.
Other :

Sworn to before me this
28th day of March, 2014

NOTARY PUBLIC
JOHN DICANIO
NOTARY PUBLIC STATE OF NEW YORK
WESTCHESTER COUNTY
LIC. # 01DI4977768
COMM EXP. 2/11/2015

Peter Feldman
License No.797824

# Exhibit B-4

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

INDEX NO.: 650784/2014

CHARLES SPIRO, et al.,

- against -

Plaintiff

HEALTHPORT TECHNOLOGIES LLC, et al.,

Defendant

## AFFIDAVIT OF SERVICE

State of New York }
County of New York }  ss.:

The undersigned, being duly sworn, deposes and says;

Deponent is not a party herein, is over 18 years of age and resides in Wayne, New Jersey

That on **3/28/2014** at **12:06 PM** at **111 East 210th Street, Bronx, New York 10467**

deponent served a(n) **Summons, Class Action Complaint,**

on **Montefiore Medical Group Co-op City** , a domestic corporation,

by delivering thereat a true copy of each to **Carmen Osorio** personally,

deponent knew said corporation so served to be the corporation described in said documents as said defendant and knew said individual to be **Authorized Agent** thereof.

Description of Person Served:
Gender : Female
Skin : Brown
Hair : Brown
Age : 36 - 50 Yrs.
Height : 5' 4" - 5' 8"
Weight :161-200 Lbs.
Other : Glasses

Sworn to before me this
31st day of March, 2014

NOTARY PUBLIC
JOHN DICANIO
NOTARY PUBLIC STATE OF NEW YORK
WESTCHESTER COUNTY
LIC. # 01DI4977768
COMM EXP. 2/11/2015

Peter Feldman
License No.797824

Serving By Irving, inc. | 233 Broadway, Suite 2201 | New York, NY 10279

# Exhibit B-5

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

INDEX NUMBER: 650784/2014

CHARLES SPIRO, et al.,

Plaintiff

- against -

HEALTHPORT TECHNOLOGIES LLC, et al.,

Defendant

## AFFIDAVIT OF SERVICE

State of New York  }
County of New York }  ss.:

The undersigned, being duly sworn, deposes and says;

Deponent is not a party herein, is over 18 years of age and resides in Wayne, New Jersey

That on **3/27/2014** at **11:06 AM** at **1st Ave & E 16th St., New York, NY 10003**

deponent served a(n) **Summons, Class Action Complaint**

on **Beth Israel Medical Center**, a domestic corporation,

by delivering thereat a true copy of each to **Louise Easley** personally,

deponent knew said corporation so served to be the corporation described in said documents as said defendant and knew said individual to be **Authorized Agent** thereof.

Description of Person Served:
Gender : Female
Skin :  Black
Hair : Black/Gray
Age : 51 - 65 Yrs.
Height : 5' 9" - 6' 0"
Weight :161-200 Lbs.
Other :

Sworn to before me this
28th day of March, 2014

NOTARY PUBLIC
JOHN DICANIO
NOTARY PUBLIC STATE OF NEW YORK
WESTCHESTER COUNTY
LIC. # 01DI4977768
COMM EXP. 2/11/2015

_____
Peter Feldman
License No.797824

# Exhibit B-6

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

CHARLES SPIRO, ANN MARIE SPIRO, ISMAEL
TORRES, as the Administrator of the Estate of KERRY-
ANN TORRES, Deceased and Tatyana Ruzhinskaya, as
Administratrix of the Estate of MARINA ROCHNIAK,
Deceased, on behalf of themselves and all others
similarly situated

Index No. 650784/2014

                         Plaintiffs,

**STIPULATION**

-against-

HEALTHPORT TECHNOLOGIES LLC, MOUNT
SINAI HOSPITAL, MONTEFIORE MEDICAL GROUP
CO-OP CITY and BETH ISRAEL MEDICAL CENTER

                         Defendants.

---

**IT IS HEREBY STIPULATED AND AGREED**, by and between the undersigned attorneys of record in the above-captioned proceeding, that:

(1) The time for Defendants Mount Sinai Hospital and Beth Israel Medical to answer, move or otherwise respond to Plaintiffs' Complaint shall be extended to and through May 16, 2014;

(2) All papers relating to this action may and shall be served on counsel by electronic mail.

Dated: New York, New York
      April 11, 2014


SIMONSON HESS LEIBOWITZ
& GOODMAN P.C.

By: *Edward Goodman*                    *sgh by*
    Edward S. Goodman                *consent*
    15 Maiden Lane
    New York, NY 10038
    (212) 233-5000
    esg@shlpc.com

*Attorneys for Plaintiffs*


DENTONS US LLP

By: *Sandra Hauser*
    Sandra Hauser
    1221 Avenue of the Americas
    New York, NY 10020
    (212) 768-6700
    sandra.hauser@dentons.com

*Attorneys for Defendants Mount Sinai Hospital
and Beth Israel Medical Center*


82095215\V-1

# Exhibit C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHARLES SPIRO, ANN MARIE SPIRO, ISMAEL
TORRES, as Administrator of the Estate of KERRY-
ANN TORRES, Deceased, and TATYANA
RUZHINSKAYA, as Administratrix of the Estate of
MARINA ROCHNIAK, Deceased, on behalf of
themselves and all others similarly situated,

                             Plaintiffs,

-against-

HEALTHPORT TECHNOLOGIES LLC, MOUNT
SINAI HOSPITAL, MONTEFIORE MEDICAL
GROUP CO-OP CITY and BETH ISRAEL
MEDICAL CENTER,

                             Defendants.

Case No.

## DECLARATION OF JANET P. MCDAVID

I, Janet P. McDavid, pursuant to 28 U.S.C. §1746, declare as follows:

1.     I am the General Counsel of HealthPort Technologies, LLC ("HealthPort"), which is a defendant in the suit captioned *Charles Spiro, Ann Marie Spiro, Ismael Torres, as the Administrator of the Estate of Kerry-Ann Torres, Deceased, and Tatyana Ruzhinskaya, as Administratix of the Estate of Marina Rochniak, Deceased, on behalf of themselves and all others similarly situated v. HealthPort Technologies LLC, Mt. Sinai Hospital, Montefiore Medical Group Co-op City, and Beth Israel Medical Center*, now pending in the Supreme Court of the State of New York, New York County, Index No. 650784/2014 (the "State Action").

2.     I make this Declaration in support of HealthPort's Notice of Removal of the State Action to the United States District Court for the Southern District of New York.

1

3.     I am over the age of 18 and am competent to make this Declaration.  As General Counsel of HealthPort, I have access to its business and accounting records.  Based upon my review of HealthPort's records, I make this Declaration based on my personal knowledge.  I am authorized to make this Declaration on behalf of HealthPort.

4.     HealthPort is a limited liability company organized and existing under the laws of Georgia.  Its sole member is Smart Holdings Corp., a corporation organized under the laws of Delaware.  Smart Holdings Corp. has its principal place of business located in Chicago, Illinois.

5.     I have reviewed the Complaint filed in the State Action and the allegations made therein.

6.     HealthPort's business records reflect that, in 2014, HealthPort processed and copied more than 14,000,000 pages of medical records for attorneys requesting records in New York alone.  This figure does not include requests made by any other person or entity, and does not include requests made in prior years.

7.     During the time period alleged in the Complaint in the State Action, HealthPort processed, copied and released records to more than 100 patients or their authorized representatives.

8.     At all relevant times, HeathPort, pursuant to and in accordance with contractual agreements with certain medical providers in New York (the "Medical Providers"), processed, copied, and released records on behalf of the Medical Providers.  Specifically, upon a request to one of the Medical Providers by a patient, their authorized representative, or another having a legal right to make such a request, HealthPort, at the direction of and in coordination with the Medical Providers, processed, copied, and delivered such records to the requesting party, in addition to providing other services as may have been requested or necessary.

2

I declare under penalty of perjury under the laws of the State of Georgia and the United States of America that the foregoing is true and correct.

Dated: _4/23/14_
Alpharetta, Georgia
Fulton County, Georgia

Janet P. McDavid