UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TATYANA RUZHINSKAYA, as Administratrix of the Estate of MARINA ROCHNIAK, Deceased, on behalf of herself and all others similarly situated,<br><br>      Plaintiff,<br><br>  v.<br><br>HEALTHPORT TECHNOLOGIES, LLC,<br><br>      Defendant. | Case No.: 1:14-cv-02921 (PAE)<br><br>ECF Case<br><br><br><br>**REPLY MEMORANDUM OF LAW IN SUPPORT OF CLASS CERTIFICATION** |

### REDACTED PUBLIC VERSION

William H. Narwold
Mathew P. Jasinski
Michael J. Pendell
**MOTLEY RICE LLC**
20 Church St., 17th Floor
Hartford, CT  06103
(860) 882-1681
(860) 882-1682 (fax)

*New York Office*:
600 Third Ave., Ste. 2101
New York, NY  10016

bnarwold@motleyrice.com
mjasinski@motleyrice.com
mpendell@motleyrice.com

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... ii

I.     INTRODUCTION ........................................................................................................ 1

II.    ARGUMENT ................................................................................................................ 1

       A.   The Interpretation of Public Health Law § 18 Is an Issue Common to —
            Not Determinative of — the Class ..................................................................... 1

       B.   This Case Is Well-Suited for Class Certification ............................................... 4

       C.   The Class Is Ascertainable and Not Overbroad ................................................. 6

       D.   Each Class Member's Claim (Including Plaintiff's) Arises Out of the Same
            Course of Conduct by HealthPort and Is Based On the Same Legal Theories ....... 8

       E.   Plaintiff Is an Adequate Representative ............................................................ 10

       F.   A Class Action Is Superior to Individual Actions ............................................. 12

III.   CONCLUSION ............................................................................................................ 12

## TABLE OF AUTHORITIES

**Cases**

*Am. Ass'n of Bioanalysts v. Dep't of Health*,
  906 N.Y.S2d 356 (3d Dep't 2010) .................................................................................... 3

*Baffa v. Donaldson*,
  222 F.3d 52 (2d Cir. 2000) .............................................................................................. 10

*Butto v. Collecto Inc.*,
  290 F.R.D. 372 (E.D.N.Y. 2013) ...................................................................................... 7

*Carnegie v. Household Int'l, Inc.*,
  376 F.3d 656 (7th Cir. 2004) .......................................................................................... 12

*Casillo v. St. John's Episcopal Hosp.*,
  580 N.Y.S.2d 992 (Sup. Ct. Suffolk Cnty. 1992) ........................................................... 12

*ChartOne, Inc. v. Raglon*,
  283 S.W.3d 576 (Ark. 2008) .................................................................................... 3, 4, 7

*Cruz v. All Saints Healthcare Sys., Inc.*,
  625 N.W.2d 344 (Wis. Ct. App. 2001) ............................................................................. 7

*Ford v. ChartOne, Inc.*,
  908 A.2d 72 (D.C. 2006) .............................................................................................. 2, 7

*Gordon v. Johnson*,
  300 F.R.D. 31 (D. Mass. 2014) ........................................................................................ 2

*Gortat v. Capala Bros.*, No. 07-CV-3629 (ILG),
  2010 U.S. Dist. LEXIS 35451 (E.D.N.Y. Apr. 9, 2010) .................................................. 6

*Hart v. Rick's Cabaret Int'l, Inc.*, No. 09-CV-3043 (PAE),
  2014 U.S. Dist. LEXIS 174617 (S.D.N.Y. Dec. 17, 2014) .............................................. 4

*In re Amaranth Natural Gas Commodities Litig.*,
  269 F.R.D. 366 (S.D.N.Y. 2010) ..................................................................................... 6

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
  789 F. Supp. 2d 935 (N.D. Ill. 2011) ............................................................................... 8

*In Re Joint E. & S. Dist. Asbestos Litig.*,
  52 F.3d 1124 (2d Cir. 1995) ............................................................................................. 5

*Katt v. City of N.Y.*,
  151 F. Supp. 2d 313 (S.D.N.Y. 2001) .............................................................................. 6

*Lemire v. Wolpoff & Abramson, LLP*,
  256 F.R.D. 321 (D. Conn. 2009) ...................................................................................... 2

*Mahon v. Chicago Title Ins. Co.,*
   296 F.R.D. 63 (D. Conn. 2013)..................................................................................... 7

*Marisol A. v. Giuliani,*
   126 F.3d 372 (2d Cir. 1997)......................................................................................... 3

*Noble v. 93 Univ. Place Corp.,*
   224 F.R.D. 330 (S.D.N.Y. 2004) ................................................................................. 3

*Nw. Airlines, Inc. v. County of Kent,*
   738 F. Supp. 1112 (W.D. Mich. 1990) ........................................................................ 4

*Ramirez v. Smart Corp.,*
   863 N.E.2d 800 (Ill. Ct. App. 2007) ............................................................................ 7

*Robidoux v. Celani,*
   987 F.2d 931 (2d Cir. 1993)......................................................................................... 8

*Seijas v. Republic of Argentina,*
   606 F.3d 53 (2d Cir. 2010)........................................................................................... 5

*Sykes v. Mel S. Harris & Assocs. LLC,*
   780 F.3d 70 (2d Cir. 2015)........................................................................................... 4

*Teras Int'l Corp. v. Gimbel,* No. 13-CV-6788 (VEC),
   2014 U.S. Dist. LEXIS 174328 (S.D.N.Y. Dec. 17, 2014) ......................................... 8

*White v. Heckler,*
   108 F.R.D. 85 (S.D.N.Y. 1985) ................................................................................... 2

**Statutes**

N.Y. Pub. Health Law § 18................................................................................................ passim

N.Y. Pub. Health Law § 18(2)(e)............................................................................................. 1

**Rules**

Fed. R. Civ. P. 23(b)(3)......................................................................................................... 12

Fed. R. Civ. P. 23(c)(2)(B) ..................................................................................................... 6

**Regulations**

N.Y. Comp. Codes R. & Regs. tit. 22, § 603.7(e) .................................................................. 9

**Other Authorities**

William B. Rubenstein, Newberg on Class Actions § 4:54 (5th ed. 2015) ........................... 11

## I. INTRODUCTION[*]

The issue in this case is whether Defendant HealthPort Technologies ("HealthPort") overcharges patients and their lawyers for copies of medical records by imposing a per page fee that has nothing to do with the "costs incurred" for the copies.[1] HealthPort does not track the costs associated with making copies in New York. Indeed, HealthPort maintains that it would be impossible to do so on a request-by-request basis.[2] Accordingly, HealthPort commissioned a cost report to *estimate* the *average* per page costs for fulfilling release of information ("ROI") requests in New York.[3] Yet, HealthPort resists class certification principally on the ground that "the cost of fulfilling [each] request must be calculated *individually*." (Opp'n at 24 (emphasis added).) Ironically, by failing to comply with PHL § 18, HealthPort maintains that it has deprived Plaintiff of the means to prove her claim on a classwide basis (or otherwise).

HealthPort's position is specious. But what matters most is that it is common to the class. As set forth below, HealthPort's "heads I win, tails you lose" interpretation of PHL § 18 and its blunderbuss attack on even the most readily satisfied elements of Rule 23 are unavailing.

## II. ARGUMENT

### A. The Interpretation of Public Health Law § 18 Is an Issue Common to — Not Determinative of — the Class

On the ground that "the cost of fulfilling [each] request must be calculated individually" (Opp'n at 24), HealthPort challenges the existence of common questions of law or fact

---

[*] Unless otherwise stated, all exhibits referred to herein are attached to the Declarations of Mathew P. Jasinski, dated April 29, 2015 and July 22, 2015, which have been numbered consecutively for ease of reference.
[1] *See* N.Y. Pub. Health Law ("PHL") § 18(2)(e).
[2] *See, e.g.*, Ex. 20, Def.'s Resp. to Request No. 6 ("documentation of the reasonable costs associated with Plaintiff's individual request for medical records is virtually impossible to determine"); Ex. 37, Hr'g Tr., at 53:25-54:3 (Mar. 23, 2015) ("we don't have the information, we do not maintain it in the ordinary course of business . . . on a record-by-record snowflake-by-snowflake" basis); Ex. 38, Trerotola Expert Dep. at 67:11-17 (testifying that it is impossible to calculate costs on a request-by-request basis); *see also* Ex. 39, letter from S. Litman (Apr. 27, 2015) (refusing to provide site-specific direct cost data for New York on ground that Plaintiff's request for same is unduly burdensome because "it would take an employee weeks to compile this data").
[3] *See* Ex. 21, HealthPort Cost Study, at 6.

1

(*id.* at 24-25); contends that the class definition is overly broad (*id.* at 22); argues that conflicts among class members render Plaintiff an inadequate class representative (*id.* at 28-30); insists that individual liability and damages determinations will predominate (*id.* at 32-33); and maintains that the class mechanism is not superior (*id.* at 34-35). In this regard, although HealthPort ostensibly agrees that legal issues "should be reserved for litigation on the merits" (Opp'n at 14), the bulk of HealthPort's challenge to class certification improperly presupposes *HealthPort*'s preferred answer to the common and predominant question of interpreting PHL § 18. *See Gordon v. Johnson*, 300 F.R.D. 31, 37 (D. Mass. 2014) ("a single question of statutory interpretation . . . . alone creates a common question of law"); *White v. Heckler*, 108 F.R.D. 85, 90 (S.D.N.Y. 1985) (statutory interpretation is an issue "common to each member of the class").

Specifically, Plaintiff's position is that PHL § 18 does not require the impossible — calculating a reasonable charge on a request-by-request basis — but rather obligates HealthPort to assess a per page fee that does not exceed its *average* per page costs in New York. *See, e.g.*, *Ford v. ChartOne, Inc.*, 908 A.2d 72, 91 (D.C. 2006) ("in evaluating the reasonableness of the company's uniform clerical, copying, and shipping fees in relation to its costs, the relevant comparison is to the company's average costs").[4] In contrast, HealthPort's litigation position is that PHL § 18 "does not provide for averaging the costs incurred." (Opp'n at 4.) At the class certification stage, however, the question is whether, under *Plaintiff*'s theory of potential liability, her claims are susceptible to classwide proof.

By way of example, in *Lemire v. Wolpoff & Abramson, LLP*, 256 F.R.D. 321 (D. Conn. 2009), the plaintiff brought a putative class action against an out-of-state debt collector for violating the Fair Debt Collection Practices Act ("FDCPA") by sending letters to consumers

---

[4] The *Ford* court reversed the denial of class certification in a suit claiming that ChartOne — an ROI company later acquired by HealthPort (*see* Ex. 3, Rohs 30(b)(6) Dep., at 76:3-6) — charged unconscionably high fees. 908 A.2d at 77.

2

without a state license. *Id.* at 323. The defendant challenged commonality on the ground that "each letter needs to be analyzed individually to determine whether it contains actionable language . . . ." *Id.* at 324. But the plaintiff's theory of liability was different, namely, that the FDCPA prohibited the collection of consumer debts without a license, *irrespective of the content of the letters. Id.* at 325. Holding that this "element of potential liability" was common and predominant, the court certified the class. *Id.* at 330, 332; *see also ChartOne, Inc. v. Raglon*, 283 S.W.3d 576, 584-85 (Ark. 2008) (concluding, in affirming class certification, that interpreting statute went to merits of case and determining whether charges exceeded those allowed by statute was a common and predominant question).[5] Likewise, here, HealthPort cannot defeat class certification simply by disagreeing with Plaintiff's interpretation of PHL § 18.

Even if HealthPort were correct that PHL § 18 requires the calculation of actual costs for each discrete request, however, class treatment would still be appropriate. "The commonality requirement may be met when individual circumstances of class members differ, but 'their injuries derive from a unitary course of conduct.'" *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 338 (S.D.N.Y. 2004) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)). Under its own interpretation of PHL § 18, HealthPort would have borne the burden to calculate such request-by-request costs in the first instance, but it failed to do with respect to each and every putative class member. Under these circumstances, if the Court determines that PHL § 18 requires calculating the costs for each individual request, then HealthPort should be required to recalculate each class member's invoice and refund the difference. *See, e.g., Am. Ass'n of Bioanalysts v. Dep't of Health*, 906 N.Y.S2d 356, 358-59 (3d Dep't 2010) (shifting burden to defendant to present competent, legally sufficient evidence in support of its claimed actual costs,

---

[5] In *Raglon*, the plaintiff alleged that ChartOne "charged fees in excess of those allowed by statute for copying medical records . . . ." 283 S.W.3d at 579.

3

given that defendant was obligated to compute actual costs but failed to maintain records necessary to do so); *Nw. Airlines, Inc. v. County of Kent*, 738 F. Supp. 1112, 1119-20 (W.D. Mich. 1990) (requiring defendants to recalculate aircraft parking fee in accordance with break-even costs); *see also Hart v. Rick's Cabaret Int'l, Inc.*, No. 09-CV-3043 (PAE), 2014 U.S. Dist. LEXIS 174617, at *16-*18 (S.D.N.Y. Dec. 17, 2014) (requiring defendant to negate inference of damages because of failure to maintain records necessary to deterimine same). In sum, HealthPort should not be permitted to avoid liability by shifting the burden to Plaintiff to do that which HealthPort already should have done. *Cf. Raglon*, 283 S.W.3d at 583 ("to allow ChartOne to defeat the class definition because of its own failure to maintain accurate records . . . would encourage other businesses to maintain poor records in an attempt to avoid class actions").

### B.     This Case Is Well-Suited for Class Certification

As a result, HealthPort's position that "the class definition is overly broad because it includes people who requested records from institutions where the costs per page exceeds $0.75" is not well taken. (Opp'n at 22.) Under its own interpretation of PHL § 18, HealthPort still owes each and every class member an invoice that actually reflects the costs incurred for each discrete request. If Plaintiff's theory of liability under PHL § 18 is correct, then the allowable costs incurred per page *average* $0.75 or more or they *average* less. Either way, there are no fundamental conflicts between Plaintiff and the other members of the class. (*Id.* at 29-30.) And far from predominating over common questions, the only remaining individual determinations (*id.* at 33), which pertain to damages, are (1) whether HealthPort charged a given requestor $0.75 per page and (2) the number of pages that were copied.[6]

In any event, even HealthPort acknowledges that "average cost is a way to view costs in

---

[6] "Because the evidence necessary to make out such damages claims, while individual, is easily accessible, such individual damage considerations do not threaten to overwhelm the litigation." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 88 (2d Cir. 2015).

an aggregate manner."[7] (Opp'n at 4.) In this regard, HealthPort's argument that classwide issues do not predominate (Opp'n at 31-34) is belied, not only by the fact that HealthPort never has attempted to comply with PHL § 18 — under *either* its interpretation or Plaintiff's — but also by HealthPort's reliance upon its expert, Gregory Trerotola's opinion that "the amounts charged by [HealthPort] at the proscribed regulatory rate of $0.75 per page are reasonable" because the "*average* total and reasonable costs incurred involved in processing requests for information" are ▇▇▇ per page.[8] (Trerotola Decl., Ex. B (Suppl. Rpt.), at 9 (emphasis added).)

Although HealthPort castigates Plaintiff's expert, Richard Royston, for relying upon the same data (*see* Opp'n at 7 ("Royston did no independent research or data gathering")), Mr. Trerotola testified as one of HealthPort's Rule 30(b)(6) witnesses that the data represent "a reasonable presentation of the costs for ROI services" (Ex. 40, Trerotola 30(b)(6) Dep., at 29:1-3; *see also* Ex. 16, Trerotola 30(b)(6) Dep., at 46:6-8 ("this is the average cost incurred for the surveyed hospitals, which I believe is representative of hospitals in New York")). Given that "Mr. Trerotola considered that his five sites were representative," Mr. Royston had "no reason to suppose otherwise." (Ex. 5 to Litman Decl., Royston Dep., at 127:22-23; *see also* Ex. 38, Trerotola Expert Dep. at 111:21-112:6 (testifying that sites were representative of components relevant to "cost per page").) The experts' disagreement regarding what conclusions to draw from the data does not change the fact that Plaintiff's theory of liability is susceptible to classwide proof.[9] *Cf. In Re Joint E. & S. Dist. Asbestos Litig.*, 52 F.3d 1124, 1135 (2d Cir. 1995)

---

[7] *See Seijas v. Republic of Argentina*, 606 F.3d 53, 58-59 (2d Cir. 2010) (permitting estimated damages awards that "reflect the aggregate amount owed to class members").

[8] By way of example, Mr. Trerotola opines that HealthPort's $0.75 per page fee is reasonably based on costs incurred at ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ where he estimated costs to be ▇▇▇ per page (*see* Opp'n at 6), "in the same way that [he] would consider [HealthPort's] fees to be reasonable relative to the higher priced sites, sites that are higher than seventy-five cents" (Ex. 38, Trerotola Expert Dep. at 97:5-11).

[9] In particular, Mr. Trerotola contends that Mr. Royston improperly used a weighted average. (Trerotola Decl., Ex. B (Suppl. Rpt.) at 5-6.) Using Mr. Trerotola's unweighted average of ▇▇▇ per page, however, overstates the costs incurred. According to Mr. Trerotola's testimony, the aggregate estimated costs incurred by the five

5

("to the extent that none of the studies is flawless or dispositive, their relative merits seems to us to be a classic question for the jury"); *cf. also Katt v. City of N.Y.*, 151 F. Supp. 2d 313, 351 (S.D.N.Y. 2001) ("it is solely for the jury to weigh and assess the credibility of dueling experts").

### C. The Class Is Ascertainable and Not Overbroad

HealthPort also maintains that the proposed class is overbroad and not reasonably ascertainable (1) because most putative class members — including Plaintiff — requested documents through their attorneys (Opp'n at 17-19) and (2) on the ground that the class includes "thousands of persons without standing because they have suffered no injury at all" (*id.* at 20). Both arguments miss their mark.

Ascertainability requires that "the class description is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *In re Amaranth Natural Gas Commodities Litig.*, 269 F.R.D. 366, 376-77 (S.D.N.Y. 2010) (internal quotation marks omitted). This standard "is designed only to prevent the certification of a class whose membership is truly indeterminable."[10] *Gortat v. Capala Bros.*, No. 07-CV-3629 (ILG), 2010 U.S. Dist. LEXIS 35451, at *5 (E.D.N.Y. Apr. 9, 2010). In the present case, the proposed class is limited to persons who "paid for, or are obligated to pay for" copies of medical records produced by HealthPort. There is nothing subjective about this class definition. One either paid for (or is obligated to pay for) copies or she is not. Likewise, determining class membership is administratively feasible. HealthPort has a list of all invoices identifying each requestor and showing which invoices have been paid and the amount of any balance that is due.

---

surveyed sites totaled ▮. (*See* Ex. 38, Trerotola Expert Dep. at 62:10-19, 63:21-64:4.) But multiplying his figure of ▮ per page by the aggregate number of pages processed from these sites during the same period — ▮ (*see id.* at 41:13-16; Ex. 23 at HEALTHPORT024407) — equals ▮. In contrast, dividing the aggregate costs of ▮ by ▮ pages results in an average per page cost of ▮, which is consistent with Mr. Royston's weighted average. (*See* Royston Decl. at 5.)

[10] Rule 23 itself contemplates that it may not be possible to identify every class member. *See* Fed. R. Civ. P. 23(c)(2)(B) (requiring individual notice for class members "*who can be identified* through reasonable effort" (emphasis added)).

In this regard, there is no dispute that each requestor is identifiable. Instead, HealthPort's argument is that many requestors are attorneys who acted on behalf of their individual clients and may (or may not) have been reimbursed by their clients. (Opp'n at 18-19.) Given that attorneys act as agents for their clients, however, this issue poses no obstacle to class certification.[11] *See, e.g., Ramirez v. Smart Corp.*, 863 N.E.2d 800, 815 (Ill. Ct. App. 2007) (finding client adequate to represent class even though attorney paid invoice);[12] *Ford*, 908 A.2d at 82, 93 (finding fact that attorney consummated transaction to be immaterial and reversing denial of class certification); *Cruz v. All Saints Healthcare Sys., Inc.*, 625 N.W.2d 344, 350, 353 (Wis. Ct. App. 2001) (rejecting "illogical" position that attorneys, rather than their clients, are real parties in interest and affirming class certification).[13]

Although HealthPort complains that "[e]ach of the ▆▆▆ requests made by attorneys gives rise to two potential class members" — i.e., the attorney and the client — (Opp'n at 21), it already knows the identity of each attorney, and each attorney knows the identity of his or her client. HealthPort cites no authority for the proposition that an inquiry of each attorney would be administratively infeasible. *See, e.g., Butto v. Collecto Inc.*, 290 F.R.D. 372, 383 (E.D.N.Y. 2013) ("The Court does not find it particularly arduous to ask potential class members the simple question of whether the individual's debt at issue qualifies as a consumer debt."); *Mahon v. Chicago Title Ins. Co.*, 296 F.R.D. 63, 76 (D. Conn. 2013) ("Even if it takes a substantial amount of time to review files and determine who is eligible for the discount, that work can be done during discovery." (internal quotation marks omitted)); *Raglon*, 283 S.W.3d at 583

---

[11] Whether the law firm "was reimbursed for some or all of the cost by a third party or defense counsel" (Opp'n at 19) is beside the point because "the mere act of making a third-party whole for an expense incurred and already paid" does not confer standing upon the reimbursing party (*see* Dkt. #38, Op. & Order, at 10).

[12] In *Ramirez*, the plaintiff alleged that HealthPort — then called Smart Corp. (*see* Ex. 3, Rohs 30(b)(6) Dep., at 75:23-76:1) — overcharged patients for copies of their hospital medical records. 863 N.E.2d at 806.

[13] In *Cruz*, the plaintiffs alleged that the uniform fee a healthcare provider charged for copies of their medical records was "unreasonable" and in excess of the rate permitted by state law. 625 N.W.2d at 347.

7

("administratively feasible does not equate to convenient"). The question of whether and to what extent a requesting law firm was reimbursed by its client is a matter between the law firm and its client. *See, e.g., In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 967 (N.D. Ill. 2011) (rejecting objection that settlement would improperly benefit employees who were reimbursed by employers on ground that "whether such class members must in turn reimburse their employers is . . . between the employer and employee").

Finally, HealthPort's assertion that the class improperly includes ▇▇▇ potential class members who lack standing "because they were not charged and/or never paid" is a red herring. (Opp'n at 20-21.) Those who were not charged are not in the proposed class because they were never "obligated to pay" for copies in the first place. Those who were charged but have not paid owe a debt, and it is well settled that "[i]ncurring a debt — or even running the risk of incurring a debt — constitutes a sufficient injury to confer Article III standing." *Teras Int'l Corp. v. Gimbel*, No. 13-CV-6788 (VEC), 2014 U.S. Dist. LEXIS 174328, *18 (S.D.N.Y. Dec. 17, 2014).

### D. Each Class Member's Claim (Including Plaintiff's) Arises Out of the Same Course of Conduct by HealthPort and Is Based On the Same Legal Theories

"When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met . . . ." *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). HealthPort argues that Plaintiff cannot satisfy this standard because there are "defenses that are unique to her claims and facts that put her in a significantly different position than other class members." (Opp'n at 26.) None of these "defenses" is tenable as a matter of law or fact.

*First*, the fact that Plaintiff reimbursed her attorneys, Simonson Hess Leibowitz & Goodman, P.C. ("Simonson"), $140.00 rather than $140.75 is irrelevant.[14] For starters, it has no

---

[14] HealthPort billed Plaintiff's attorneys $140.75 — $138.75 for copying 185 pages of records plus a $2.00

8

impact on HealthPort's liability or the total amount of any refund that HealthPort owes with respect to Plaintiff's invoice.[15] In any event, the $0.75 that Simonson did not recover in disbursements could easily be attributed to HealthPort's $2.00 delivery fee (which charge is not at issue in this action). And, even assuming that it was attributable to copying costs, $0.75 equates to the fee for copying a single page. Therefore, Plaintiff indisputably bore any overcharge for 184 out of 185 pages of medical records.

*Second*, HealthPort's claim that Plaintiff cannot establish typicality because her request to Beth Israel stated that Simonson would be "*glad* to forward [its] check in the amount of $.75 per page" (Ex. 7 to Litman Decl. (emphasis added)) is equally misplaced. (*See* Opp'n at 8, 26.) Tellingly, HealthPort does not cite a single case that stands for the proposition that sending a request that anticipates a $0.75 per page charge waives the right to challenge the charge when it is discovered to be excessive. Indeed, this Court already has determined that the voluntary payment defense would not be applicable even if HealthPort "disclosed in advance [its] intention to charge $0.75 per page, or that [Plaintiff] 'voluntarily agreed' to pay this figure." (Dkt. #38, Op. & Order, at 20.) The fact that Plaintiff's attorneys separately questioned the reasonableness of HealthPort's $0.75 per page fee in defending an unrelated lawsuit is irrelevant.[16]

---

delivery charge. The list of disbursements submitted in the underlying medical malpractice action attributed only $140.00 to HealthPort — a $0.75 rounding error. (Ex. 41, Hess. Dep., at 24:5-26:10, 37:18-38:20.)

[15] Indeed, many law firms that were reimbursed in full nonetheless suffered an injury along with their clients because their attorney's fees were calculated on the net sum recovered after deducting expenses. *See, e.g.*, N.Y. Comp. Codes R. & Regs. tit. 22, § 603.7(e) (First Department rule permitting calculation of contingency fee on "net sum recovered after deducting from the amount recovered expenses and disbursements for expert testimony and investigative or other services properly chargeable to the enforcement of the claim or prosecution of the action").

[16] In May 2012, HeathPort sued Simonson because of an unpaid, $6,000 invoice in an unrelated case (for a subpoena directed to Long Island Jewish Medical Center). In a May 2013 petition seeking to vacate the entry of a judgment against it, Simonson raised the following as a meritorious defense: "Plaintiff, HealthPort, has failed to document its actual cost or how it was calculated. It is plaintiff's" — i.e., HealthPort's — "burden to prove its actual cost, and defendant is entitled to a hearing in that regard." (Ex. 42, *HealthPort v. Simonson*, Petition, at 4.) After the judgment was vacated, Simonson served judicial subpoenas seeking evidence and testimony regarding HealthPort's costs (Ex. 43), but Simonson never actually discovered HealthPort's costs

***Third***, Plaintiff's representation to the court in the underlying medical malpractice action that the expenses Simonson incurred in prosecuting that action on her behalf were fair and reasonable does not subject her to waiver or estoppel defenses. The issue in the malpractice action was whether it was reasonable for Plaintiff's attorneys to advance payment of $0.75 per page for copies of relevant medical records (*cf.* Ex. 44, Ruzhinskaya Dep. at 113:25-114:17 (testifying that paying for records was necessary expense)), not whether it was reasonable for HealthPort to charge $0.75 per page.[17]

### E. Plaintiff Is an Adequate Representative

"Generally, adequacy of representation entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson*, 222 F.3d 52, 60 (2d Cir. 2000). Although HealthPort does not challenge the adequacy of the law firm of Motley Rice LLC to serve as class counsel, it contends that Plaintiff's interests are antagonistic to the proposed class for two reasons. Both lack merit.

***First***, HealthPort posits that using an *average* per page cost will create a fundamental conflict regarding the allocation of refunds by under compensating class members whose discrete requests "actually" cost less than the average while overcompensating those whose requests "actually" cost more. (Opp'n at 28-30.) As a threshold matter, however, if Plaintiff is correct that PHL § 18 does not require HealthPort to calculate its per page fee on a request-by-request basis (which it claims is impossible in any event), then applying an *average* cost-based fee will provide each class member with precisely what she is owed. In any event, it is well settled that "individual damage calculations should not scuttle class certification under Rule 23(b)(3)."

---

[17] In any event, neither Plaintiff nor Simonson knew that HealthPort had overcharged Simonson for these records. (Ex. 9 to Litman Decl., Hess Dep., at 42:10-21; Ex. 6 to Litman Decl., Ruzhinskaya Dep., at 27:8-28:20; Ex. 44, Ruzhinskaya Dep., at 111:16-25, 119:22-120:8.)

10

William B. Rubenstein, Newberg on Class Actions § 4:54 (5th ed. 2015). Regardless of any variation in the measure of recovery, there is no fundamental conflict here because no class member possibly could have benefited from HealthPort's failure to charge a cost-based fee, given that HealthPort already charges the statutory cap.[18]

*Second*, HealthPort asserts that Plaintiff is an inadequate representative because Simonson destroyed certain documents relating to her underlying medical malpractice case, and thus "the defense of spoliation threatens to become the focus of the litigation." (*Id.* at 30-31.) Far from becoming the focus of the litigation, however, HealthPort's spoliation motion is fully briefed and ready for decision. Although HealthPort is seeking sanctions based upon the destruction of "letters to medical providers" and "paper copies of correspondence with opposing counsel regarding settlement or payment of costs," HealthPort has been entirely unable to explain how these documents are probative of any issue in this action.[19] Moreover, the suggestion that *Simonson*'s conduct will undermine *Plaintiff*'s credibility (Opp'n at 30-31) is belied by the absence of *any* dispute regarding the material facts of the underlying transaction in which Simonson acted on her behalf.[20] Nowhere does HealthPort contend that Plaintiff, *herself*, lacks sufficient interest, credibility, or knowledge to represent the class. (*See id.*)

---

[18] Accordingly, this case is distinguishable from the cases cited by Defendant, in which the proposed class included both losers and winners. (*See* Opp'n at 28.) Here, there are only losers.

[19] HealthPort maintains that these documents would provide evidence relevant to show that (1) Plaintiff's attorneys *volunteered* to pay $0.75 per page — but the records request itself is all HealthPort needed to make that argument (*see* Opp'n at 8, 26); (2) Plaintiff has not suffered an injury in fact because the defendants in the underlying malpractice action paid for her attorney's fees and disbursements — but there is no dispute regarding the terms of the settlement or monies exchanged (*id.* at 9; *see also* Ex. 44, Ruzhinskaya Dep. at 111:7-15); and (3) Plaintiff's attorneys shared records and discussed sharing costs for obtaining records with opposing counsel — but HealthPort already has raised this as an individualized question of standing that it contends would render the proposed class overbroad irrespective of whether Plaintiff is adequate (Opp'n at 21-22). Although Plaintiff disagrees with HealthPort's arguments, the point is that HealthPort has not been prejudiced in advancing them.

[20] Even assuming that it could impugn Plaintiff's adequacy, *Simonson*'s credibility is not at issue because HealthPort *admits* that (1) Beth Israel received a request for medical records from Simonson (Dkt. #41, Answer, ¶ 61); (2) HealthPort responded to the request (*id.*, ¶ 63); (3) HealthPort copied and delivered 185 pages to Simonson (*id.*, ¶ 68); (4) HealthPort billed Simonson $140.75 (*id.*); and (5) Simonson paid the invoice (*id.*, ¶ 69).

11

### F. A Class Action Is Superior to Individual Actions

Finally, with regard to superiority, HealthPort argues that the same "numerous individualized determinations" it contends doom ascertainability, commonality, typicality, and predominance mean that the class action is not superior "to all other methods for the fair and efficient adjudication of the controversy." (Opp'n at 34 (internal quotation marks omitted).) As discussed above, however, these individual inquiries either are not required or do not predominate over issues common to the class. Aside from this amorphous attack on manageability, HealthPort does not seriously contend that any of the four factors set forth in Rule 23(b)(3) weigh against class certification. *See* Fed. R. Civ. P. 23(b)(3)(A)-(D). In any event, HealthPort identifies no method of adjudication "to which the class action is not superior." (Opp'n at 34 (internal quotation marks omitted).) There is none.[21] *See Casillo v. St. John's Episcopal Hosp.*, 580 N.Y.S.2d 992, 998 (Sup. Ct. Suffolk Cnty. 1992) ("[w]hile a person can conceivably seek a judicial hearing to determine whether charges imposed are 'reasonable' . . . the costs of litigation are so high as to far outweigh the economic benefit to be gained"). Simply stated, "[t]he realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) (emphasis omitted).

### III. CONCLUSION

For the reasons set forth above and in Plaintiff's initial memorandum of law, Plaintiff's Motion for Class Certification should be granted.

---

[21] Although HealthPort criticizes Plaintiff for failing to present a trial plan (Opp'n at 34-35), the plan is self evident. Following class certification, the threshold common questions are ones of law, namely, what costs are allowable under PHL § 18 and whether a "reasonable" fee under the statute means an average per page cost rather than a determination of the discrete costs attributable to each request. If the former, then Plaintiff and HealthPort have advanced competing average costs for consideration by the trier of fact. If HealthPort must determine the discrete costs attributable to each request, then it should be required to do so and to issue refunds as appropriate.

12

Dated: July 22, 2015

THE PLAINTIFF,
TATYANA RUZHINSKAYA,
as Administratrix of the Estate of
MARINA ROCHNIAK,
BY HER ATTORNEYS

By: _____
William H. Narwold
Michael J. Pendell
Mathew P. Jasinski
MOTLEY RICE LLC
20 Church St., 17th Floor
Hartford, CT  06103
(860) 882-1681
(860) 882-1682 (fax)
bnarwold@motleyrice.com
mjasinski@motleyrice.com
mpendell@motleyrice.com

Steven L. Hess
SIMONSON HESS LEIBOWITZ
& GOODMAN, P.C.
299 Broadway, Ste. 1220
New York, NY 10007
(212) 233-3133
(347) 830-4959 (fax)
sh@shlpc.com

*Counsel for Plaintiff
Tatyana Ruzhinskaya, as Administratrix
of the Estate of Marina Rochniak*

## CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2015, a copy of the Redacted Public Version of Plaintiff's Reply Memorandum of Law in Support of Class Certification was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

/s/ *Mathew P. Jasinski*
Mathew P. Jasinski (MJ-2752)
MOTLEY RICE LLC
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT  06103
Tel.: (860) 218-2725
Fax: (860) 882-1682
mjasinski@motleyrice.com