```
                                                              USDC SDNY
                                                              DOCUMENT
UNITED STATES DISTRICT COURT                                  ELECTRONICALLY FILED
SOUTHERN DISTRICT OF NEW YORK                                 DOC #:
------------------------------------------------------------X DATE FILED: 11/19/15

TATYANA RUZHINSKAYA, as Administratrix of the    :
Estate of MARINA ROCHNIAK, Deceased,             :            14 Civ. 2921 (PAE)
individually and on behalf of others similarly situated,  :
                                                 :            OPINION & ORDER
                              Plaintiff,         :
                                                 :
               -v-                               :
                                                 :
HEALTHPORT TECHNOLOGIES, LLC,                    :
                                                 :
                              Defendant.         :
                                                 :
------------------------------------------------------------X
```

PAUL A. ENGELMAYER, District Judge:

This decision resolves a motion for sanctions against plaintiff Tatyana Ruzhinskaya ("Ruzhinskaya") and her counsel. The motion, by defendant HealthPort Technologies, LLC ("HealthPort"), seeks sanctions arising from the discarding of records relating to Ruzhinskaya's claims by the law firm Simonson Hess Leibowitz & Goodman, P.C. ("Simonson Hess" or "the firm"), which represented Ruzhinskaya in an earlier state-court malpractice action and which, along with co-counsel Motley Rice LLC, represents her in this action. For the following reasons, the Court denies HealthPort's request for an adverse inference instruction, but holds that a monetary sanction, in the form of payment of certain attorneys' fees and costs, is warranted, and will be so ordered upon production of proper documentation and argument.

I. **Background**

   A. **Facts**

The Court assumes familiarity with the parties and the history of this case, as reflected in the Court's prior decisions. *See* Dkt. 38, *reported at Spiro v. HealthPort Techs., LLC*, 73 F. Supp. 3d 259, 278 (S.D.N.Y. 2014); Dkt. 151, *reported at Ruzhinskaya v. HealthPort Techs.,*

*LLC*, No. 14 Civ. 2921 (PAE), 2015 WL 6873399 (S.D.N.Y. Nov. 9, 2015).  The following facts are most relevant to the instant motion.

Ruzhinskaya's central allegation is that HealthPort overcharged for her late mother's medical records.  Her mother, Marina Rochniak, brought a state-court malpractice action, which Ruzhinskaya continued in her capacity as administratix of Rochniak's estate.  In the course of that lawsuit, Simonson Hess, on behalf of Ruzhinskaya, placed a request for Rochniak's medical records from Beth Israel Medical Center ("Beth Israel"), which HealthPort fulfilled and Simonson Hess paid for.  Dkt. 41, ¶ 69; Dkt 88, at 4.  The malpractice action later settled in August 2013.  Simonson Hess was reimbursed for its out-of-pocket disbursements, including the HealthPort charge, out of the gross settlement.[1]  *See* Dkt. 103, Ex. C, at 3; *id.*, Ex. D, at 5.

In March 2014, Ruzhinskaya and several other plaintiffs, all represented by Simonson Hess, filed the initial Complaint in this putative class action, claiming that the fees charged by HealthPort for producing medical records to patients exceeded those permitted by New York Public Health Law § 18.  Dkt. 2.  The claims brought by Ruzhinskaya were based on HealthPort's charge for producing Rochniak's records in connection with the malpractice action.

In April 2014, Simonson Hess destroyed part of its case file regarding Ruzhinskaya's malpractice action.  Dkt. 89, Ex. 3.  In May 2014, Simonson Hess also deactivated, and deleted the contents of, an email account of a Simonson Hess attorney who worked on that case when the attorney left the firm.  *Id.*  In discarding parts of Ruzhinskaya's file, Simonson Hess acted pursuant to firm policy, Dkt. 103, Ex. E, at 69–70, blind, apparently, to the fact that the same

---

[1] The settlement agreement entered into in the malpractice case on October 22, 2013, provides that each party shall bear its own attorneys' fees and costs.  Dkt. 103, Ex. H, at 16.  However, Ruzhinskaya notes that, under her retainer agreement with Simonson, in the event of a recovery, she was obligated to reimburse the firm for its disbursements.  *See* Dkt. 89, Ex. 2 (providing that "disbursements will be deducted from the gross recovery").

documents might be relevant to the lawsuit Simonson Hess had just filed against HealthPort on behalf of Ruzhinskaya.

Simonson Hess has since been joined by Motley Rice LLC in this action as co-counsel for Ruzhinskaya. *See* Dkt. 42, 43, 45, 71.

### B. Procedural History

On May 11, 2015, HealthPort moved for sanctions, Dkt. 85, and on May 13, 2015, filed its brief in support of the motion, Dkt. 88 ("Def. Br."), along with the declaration of Seth A. Litman, Dkt. 89 ("Litman Decl."), and attached exhibits. On May 28, 2015, Ruzhinskaya filed a brief in opposition, Dkt. 102 ("Pl. Br."), along with, *inter alia*, the declaration of Mathew P. Jasinski, Dkt. 103 ("Jasinski Decl."), and attached exhibits. On June 3, 2015, HealthPort filed its reply, Dkt. 111 ("Def. Reply Br."), along with the declaration of James L. DeFeo, Dkt. 112 ("DeFeo Decl."), and attached exhibits. On June 5, 2015, the Court held argument on the motion. Dkt. 127 ("Tr."). On June 15, 2015, the Court ordered supplemental briefing. Dkt. 114. On June 26, 2015, HealthPort filed a supplemental brief in support, Dkt. 119 ("Def. Supp. Br."), along with the declaration of Seth Litman, Dkt. 120 ("Litman Supp. Decl."), and attached exhibits. On June 30, 2015, Ruzhinskaya filed a supplemental brief in opposition, Dkt. 123 ("Pl. Supp. Br."), along with the declaration of Mathew P. Jasinski, Dkt. 124 ("Jasinski Supp. Decl."), and attached exhibits.

## II. Discussion

HealthPort seeks two forms of sanctions. First, it seeks a trial instruction to the effect that the jury may draw an adverse inference against Ruzhinskaya to the effect that the discarded evidence was unfavorable to her in this case. Second, HealthPort seeks reimbursement for the costs incurred in bringing this sanctions motion. *See* Def. Br. 14.

A.     Adverse Inference Instruction

To warrant an adverse inference instruction, the movant "must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) (quoting *Byrnie v. Town of Cromwell*, 243 F.3d 93, 107–12 (2d Cir. 2001)).

The first requirement is clearly satisfied. Simonson Hess's act of discarding the records of a party on behalf of whom it had recently brought an ambitious putative class action fell far below acceptable professional standards. *See Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003) ("Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents."); *see also* Dkt. 69 (acknowledgment by Ruzhinskaya's new counsel that "these documents should not have been destroyed"). As to the second requirement—that Simonson Hess acted with a culpable state of mind—the Court assumes *arguendo* that it, too, is met.

The third requirement—that the destroyed materials would have been relevant to a claim or defense—presents a hurdle for HealthPort. A party seeking an adverse inference instruction need not, of course, do the impossible—divine the substance of the destroyed materials. But courts do require *some* basis on which to infer that the materials were relevant, such that their absence at trial could compromise an adversary's ability to prevail. *See Orbit One Commc'ns, Inc. v. Numerex Corp.*, 271 F.R.D. 429, 431 (JCF) (S.D.N.Y. 2010) ("No matter how inadequate

4

a party's efforts at preservation may be, however, sanctions are not warranted unless there is proof that some information of significance has actually been lost.").

The issue in this case is whether Ruzhinskaya's case file at Simonson Hess would have had significance in her lawsuit against HealthPort. HealthPort seeks to establish such relevance by invoking a presumption. It argues that Simonson Hess's "complete failure to institute any litigation hold constitutes, at a minimum, gross negligence, and upon a showing of grossly negligent conduct, the relevance of the destroyed evidence and prejudice may both be presumed." Def. Br. 10 (citing *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 467, 478 (S.D.N.Y. 2010)). But the word *may* is crucial. As the Second Circuit has emphasized, an adverse inference instruction is not obligatory under such circumstances; rather, "[t]he sanction of an adverse inference *may* be appropriate in some cases involving the negligent destruction of evidence because each party should bear the risk of its own negligence." *Residential Funding*, 306 F.3d at 108 (emphasis added); *see also Twitty v. Salius*, 455 F. App'x 97, 99 (2d Cir. 2012) (summary order) (holding that "a sanction is by no means mandatory" in cases of negligence). Indeed, even if Simonson Hess's lapse constituted *gross* negligence, an adverse inference instruction in favor of its adversary would not be automatic. "[A] finding of gross negligence merely permits, rather than requires, a district court to give an adverse inference instruction." *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 162 (2d Cir. 2012); *see also Residential Funding*, 306 F.3d at 109. Finally, the Second Circuit has explicitly "reject[ed] the notion that a failure to institute a 'litigation hold' constitutes gross negligence *per se*." *Chin*, 685 F.3d at 162.

Furthermore, even where a presumption arises that destroyed evidence was unfavorable to the spoliating party because it acted in bad faith, that presumption is still rebuttable. The

5

spoliating party may show "that the innocent party had access to the evidence alleged to have been destroyed or that the evidence would not support the innocent party's claims or defenses." *Hawley v. Mphasis Corp.*, 302 F.R.D. 37, 48 (S.D.N.Y. 2014) (quoting *Pension Comm.*, 685 F. Supp. 2d at 469)) (internal quotation mark omitted).

Thus, the overarching inquiry in determining relevance is whether "the party seeking the inference [has] adduced enough evidence of the contents of the missing materials such that a reasonable jury *could* find" that the destroyed materials "were in fact unfavorable to the culpable party." *Residential Funding*, 306 F.3d at 109 n.4.

The Court, accordingly, declines to simply presume that the contents of the Ruzhinskaya file discarded by Simonson Hess were relevant or that HealthPort has suffered incurable prejudice from its spoliation. The Court instead must closely analyze HealthPort's theories as to how these materials concretely might have affected the outcome of this lawsuit, in which Ruzhinskaya's claims turn not on the content of her late mother's medical records, but on the per-page charges that HealthPort imposed for producing them.

HealthPort articulates two theories. First, it argues, some of the missing materials might have demonstrated that Ruzhinskaya was unconcerned about the cost she was charged for her mother's medical records, or waived the right to claim an overcharge. The records might have shown, HealthPort speculates, that Simonson Hess and/or Ruzhinskaya agreed uncomplainingly to pay HealthPort's 75 cents per page fee, thereby supporting a waiver defense HealthPort might pursue at trial. As it happens, one document to this effect exists and has been produced: In the records request that Simonson Hess sent to HealthPort on behalf of Ruzhinskaya, Simonson Hess

stated that it would be "glad" to pay HealthPort's 75 cents per page fee. *See* Dkt. 83, Ex. 29.[2] HealthPort surmises that other documents in Simonson Hess's file might similarly have reflected that Ruzhinskaya paid its charge without reservation, and/or that Ruzhinskaya uncomplainingly paid similar charges to other health care providers used by her mother. Def. Br. 11.

The short answer is that the subjective reactions of Ruzhinskaya and Simonson Hess are irrelevant to this case, as the statute at issue, New York Public Health Law § 18, is not subject to a waiver defense. The statute sets a cap on per-page charges: the lower of 75 cents per page or the reasonable costs incurred by the provider. *See Spiro*, 73 F. Supp. 3d at 273; *Ruzhinskaya*, 2015 WL 6873399, at *4. These are objective standards; they do not turn on the state of mind of the payer at the time of payment. And the statutory text affords no charter to impute such a defense. The Court, in fact, has already rejected the argument that, by agreeing to pay HealthPort's per-page fee, Simonson Hess and/or Ruzhinskaya waived the right to challenge it in this lawsuit. *See Ruzhinskaya*, 2015 WL 6873399, at *10–11; *see also Spiro*, 73 F. Supp. 3d at 275 ("That defendants disclosed in advance their intention to charge $0.75 per page, or that plaintiffs 'voluntarily agreed' to pay this figure, does not preclude a claim under Section 349(a), where defendants allegedly failed to disclose that their actual costs were below that figure."); *id.* at 276 (same holding as to unjust enrichment claim).

Moreover, HealthPort's theory that the willing payment of an otherwise legally excessive charge inoculates that charge from subsequent challenge would gut the statute. Significantly, HealthPort was the entity that Rochniak's healthcare provider, Beth Israel, tasked with fulfilling patients' records requests. As such, paying HealthPort's per-page charge was the sole means by

---

[2] It is immaterial that this document was produced by HealthPort and/or Beth Israel, not Ruzhinskaya. *See GenOn Mid-Atlantic, LLC v. Stone & Webster, Inc.*, 282 F.R.D. 346, 358 (S.D.N.Y. 2012).

which persons who, like Ruzhinskaya, sought such records could obtain them. In these circumstances, a patient's willingness to pay HealthPort's charge reflects not a waiver of a right to bring a statutory claim, but instead the practical reality that no lower price was available. That a patient may have parted with 75 cents per page—or subjectively believed such a charge reasonable—has no bearing on whether a provider violated § 18's ceiling by charging that sum, where the patient credibly alleges she did not have "full knowledge of the facts," in particular the alleged fact that the HealthPort's charge exceeded its costs incurred. *Dillon v. U-A Columbia Cablevision of Westchester, Inc.*, 100 N.Y.2d 525, 526 (2003) (defining parameters of common-law "voluntary payment doctrine"); *see Spiro*, 73 F. Supp. 3d at 275–76.

HealthPort's alternative theory is that materials destroyed by Simonson Hess might have defeated Ruzhinskaya's standing. HealthPort argues that Ruzhinskaya's file may have contained records, including correspondence, documenting the allocation of responsibility (as between Ruzhinskaya and Simonson Hess; or perhaps as between Ruzhinskaya and the defendants in the malpractice lawsuit) to pay for HealthPort's charge in the event of a settlement of that case. HealthPort surmises that such documents would show that Ruzhinskaya was not actually injured by virtue of any excessive charges by HealthPort, because these charges fell on the malpractice defendants, or alternatively on Simonson Hess. The Court, however, has already rejected this argument. The Court explained:

> First, the absorption by an adversary of a plaintiff's costs as part of the resolution of a lawsuit cannot be viewed in isolation. The payment of such costs may have effectively been in exchange for remediation of comparable value. Second, the claims process is capable of assuring that a class member whose costs were later covered by a third party notifies that third party, so as to enable any claim among them to be resolved.

*Ruzhinskaya*, 2015 WL 6873399, at *23.

To these two reasons may be added a third, specific to Ruzhinskaya. Her engagement agreement with Simonson Hess conclusively established that costs fronted by Simonson Hess (including for medical records) would be paid off the top of any settlement, and would thereby reduce Ruzhinskaya's net recovery. *See* Litman Decl., Ex. 2. Therefore, even though the defendants in the malpractice action supplied the money ultimately used to reimburse Simonson Hess as part of the settlement of Ruzhinskaya's malpractice claim, those settlement proceeds belonged to Ruzhinskaya, and the contractually required use of that money to reimburse Simonson Hess reduced the amount of the settlement available to her. *See* Pl. Br. 6; *see also* Jasinski Decl., Ex. E, at 106 (testimony of Simonson Hess lawyer that, in the settlement process, the "expenses [incurred] should have absolutely no bearing on the valuation of the case" and "expenses are deducted from the gross settlement"); Dkt. 107, ¶ 3 (Ruzhinskaya's testimony that she "did not know, consider, or discuss the individual disbursements or the total disbursement amount and, as such, the disbursements had no impact on [her] approval of the settlement"); Decl. 106, ¶ 4 (defense counsel in the malpractice action attesting that he was unaware of Simonson Hess's costs during settlement discussions and that the costs had no impact on the settlement offer).

HealthPort surmises that Ruzhinskaya may have "told her lawyers that she would settle for an amount certain plus the costs of the action or an amount less than the ultimate settlement obtained," and that the spoliated records might have revealed such a communication. Def. Supp. Br. 3. But these communications are beside the point. Decisive to establishing Ruzhinskaya's standing is her legally operative engagement agreement, which meant that her net recovery was effectively and inevitably reduced by the amount paid to HealthPort. This monetary harm is a classic injury in fact.

9

Following argument, the Court identified a third potential manner in which the records destroyed by Simonson Hess theoretically might have been relevant: If the actual copies that HealthPort had made of Rochniak's medical records were among the spoliated materials, then perhaps, the Court surmised, the loss of this evidence might impede HealthPort from establishing at trial its costs incurred in producing these records, which all parties have recognized is the central issue in this case. *See* Dkt. 114. The Court's premises in posing this theory were that (1) unique features of Rochniak's records (*e.g.*, whether these records contained difficult-to-copy components, such as x-rays) might bear on the tabulation of HealthPort's costs specific to them; and (2) it might be impossible, after the fact, to reconstruct the content of Rochniak's records.

In fact, as demonstrated by the parties' subsequent briefing (including on the issue of class certification), both of these premises are faulty. The parties appear to agree that § 18's per-page cap applies only to requests for copies of standard paper records, not to specialized materials such as x-rays. *See* Tr. 12–13, 34. And, as noted, HealthPort has not maintained any records that would permit, after the fact, an individualized calculation of its costs in fulfilling any particular request for copies of patient records. Rather, it proposes to defend its costs solely based on allocating to individual requests, *pro rata* by page, its aggregate costs of fulfilling requests for records. *See Ruzhinskaya*, 2015 WL 6873399, at *15. And HealthPort further admits imposing across the board the same 75 cents per page charge for fulfilling such requests. Thus, the sole individualized data point relevant to Ruzhinskaya's § 18 claim is the number of paper pages for which she was charged—an issue that is relevant not to HealthPort's liability, but instead solely to Ruzhinskaya's damages assuming a finding of liability. Moreover, after the Court's inquiry, Ruzhinskaya's counsel subpoenaed the same medical records from Beth Israel, Dkt. 124, Ex. B, and the parties were able to reconstruct the 185 pages of Rochniak's medical

records for which HealthPort billed Simonson Hess.[3]  With the relevant records having been reproduced, Simonson Hess's disposal of its copy of these records, while unprofessional, cannot be held to have worked concrete prejudice to HealthPort in this case.

The Court accordingly rejects HealthPort's bid for an adverse inference instruction, because the records that Simonson Hess spoliated are, ultimately, immaterial to this litigation. Independently, the Court notes, any such instruction would run the risk of effectively ending this case.  *See Zubulake*, 220 F.R.D. at 219 ("In practice, an adverse inference instruction often ends litigation—it is too difficult a hurdle for the spoliator to overcome.").  The instruction HealthPort seeks would be that the destroyed documents "were damaging to [Ruzhinskaya's] claim and would have established as a matter of fact that [she] waived her claim to challenge the $.75 per page fee and was not harmed by the conduct alleged in the Second Amended Complaint."  Def. Br. 14.  This inference is simply untrue.  In pursuing it, HealthPort seeks to obtain an extreme litigation advantage unjustified by the facts.  This sort of "extreme sanction . . . should not be given lightly," *Zubulake*, 220 F.R.D. at 220, and the Court declines to give such a sanction here.

### B.   Fees and Costs as an Alternative Sanction

HealthPort also seeks reimbursement of its fees and costs in pursuing sanctions and attempting to reconstruct the destroyed material.  Even where the destroyed material would have been of "marginal relevance," awarding such fees and costs may help "to punish the offending party for its actions [and] to deter the litigant's conduct, sending the message that egregious conduct will not be tolerated."  *Matteo v. Kohl's Dep't Stores, Inc.*, No. 09 Civ. 7830 (RJS),

---

[3] HealthPort lamely protests that Beth Israel's production in response to this subpoena consisted of 191, rather than 185, pages of medical records.  Def. Supp. Br. 8–9.  Ruzhinskaya credibly points out that seven pages in the new production are almost entirely blank.  Pl. Supp. Br. 4. Therefore, the discrepancy appears to consist of a single page—Ruzhinskaya was billed for 185 pages of records, whereas the parties have been able to locate only 184 pages of Rochniak's medical records containing content.  This trifling discrepancy is immaterial.

2012 WL 760317, at *6 (S.D.N.Y. Mar. 6, 2012), *aff'd*, 533 F. App'x 1 (2d Cir. 2013) (quoting *Richard Green (Fine Paintings) v. McClendon*, 262 F.R.D. 284, 292 (S.D.N.Y. 2009)) (alteration in original).

     A monetary sanction is appropriate here for several reasons. It would properly punish Simonson Hess's blatant breach of its duty to preserve potentially relevant evidence. It may deter similar misconduct by the firm. It would also recognize that, although the Court has denied HealthPort's application for an adverse inference instruction, the application was colorable when made. While subsequent developments—in particular, the Court's determination in the course of resolving Ruzhinskaya's class certification motion that HealthPort's liability cannot be resolved on the basis of evidence specific to individual records requests, *see Ruzhinskaya*, 2015 WL 6873399, at *15—made the discarding of Ruzhinskaya's case file less consequential, that was not apparent at the time HealthPort moved for sanctions. Furthermore, by bringing this motion, HealthPort triggered productive discovery. *See Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 78 (S.D.N.Y. 1991) ("[C]ompensable costs may arise . . . from the discovery necessary to identify alternative sources of information."). It prompted Ruzhinskaya to reconstruct at least some of the emails of a Simonson Hess attorney whose email account had been deleted. Def. Reply Br. 3. And it caused the parties to take steps to reconstruct aspects of Ruzhinskaya's case file, including (via Beth Israel) the medical records that were the subject of the records request. *See* Def. Supp. Br. 8. Finally, the absence of Ruzhinskaya's file appears to have caused HealthPort to undertake additional work, including questioning Steven Hess, a principal at Simonson Hess, as to what the spoliated file may have contained. *See* Litman Decl., Ex. 1, at 73:2–75:23.

However, while HealthPort has provided the Court with a top-line total of $23,780, representing the attorneys' fees it claims to have incurred in pursuing sanctions and attempting to reconstruct the destroyed material, *see* Def. Supp. Br. 9, it has not provided the itemized documentation—of hours worked, tasks completed, and rates charged—necessary for the Court to determine whether the award of such a sum, or some lower sum, is reasonable. Nor has HealthPort concretely explained, as to particular line items, why this work was all occasioned by Simonson Hess's spoliation. To choose one example, Ruzhinskaya argues that HealthPort would have taken the deposition of Steven Hess regardless of the sanctions motion, *see* Pl. Br. 3 n.2, and, therefore, that the proper inquiry is whether, and the extent to which, that deposition was prolonged by questions prompted by the absence of the destroyed file.

The Court's judgment is that, rather than occasion a potentially costly new round of briefing as to particular fees and expenses, the parties should first meet and confer, and attempt in good faith to reach agreement as to the appropriate amount of a sanction. The Court directs that such an in-person meeting occur by Tuesday, December 1, 2015, and urges the parties to come prepared to compromise on this point. The parties are directed to meet in person for at least two hours, unless an agreement is reached more quickly, and at the end to certify to the Court in writing that such a conference occurred and who attended. Should this meeting not result in an agreement, HealthPort's itemized application for sanctions will be due December 4, 2015, and Ruzhinskaya's opposition by December 9, 2015. The parties' letter briefs on this issue should be limited to no more than five single-spaced pages. For avoidance of doubt, any fees and costs incurred from this point forward will not be cognizable as part of any sanction.

## CONCLUSION

For the foregoing reasons, the Court denies HealthPort's request for an adverse inference instruction based on Ruzhinskaya's counsel's having discarded records it was required to preserve, but holds that a reasonable monetary sanction against Ruzhinskaya is merited for this lapse. The Court directs the parties to meet and confer by Tuesday, December 1, 2015, and to attempt in good faith to agree on a reasonable figure, and failing agreement, to brief the issue of the appropriate amount of sanctions on the schedule set out above.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: November 19, 2015
      New York, New York