**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TATYANA RUZHINSKAYA, as Administratrix of the Estate of MARINA ROCHNIAK, Deceased, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> HEALTHPORT TECHNOLOGIES, LLC, <br><br> Defendant. | Case No.: 1:14-cv-02921 (PAE) <br><br> ECF Case <br><br> Electronically Filed <br><br><br> **PLAINTIFFS' PROPOSED** <br> **JURY INSTRUCTIONS** |

William H. Narwold
Mathew P. Jasinski
Michael J. Pendell
Laura W. Ray
**MOTLEY RICE LLC**
20 Church St., 17th Floor
Hartford, CT 06103
(860) 882-1681
(860) 882-1682 (fax)

*New York Office*:
600 Third Ave., Ste. 2101
New York, NY 10016

**TABLE OF CONTENTS**

Instruction No. 1:     Introduction ........................................................................... 1

Instruction No. 2:     Role of the Court .................................................................... 2

Instruction No. 3:     Role of Jurors ......................................................................... 3

Instruction No. 4:     Role of Counsel ...................................................................... 3

Instruction No. 5:     Burden of Proof ...................................................................... 4

Instruction No. 6:     Evidence ................................................................................. 6

Instruction No. 7:     Rule 30(b)(6) Deposition Testimony ...................................... 8

Instruction No. 8:     Expert Witnesses .................................................................... 8

Instruction No. 9:     Witness Credibility ................................................................. 9

Instruction No. 10:    Preparation of Witnesses ....................................................... 11

Instruction No. 11:    Limited Liability Company .................................................... 12

Instruction No. 12:    Attorneys as Agent for Plaintiffs ........................................... 12

Instruction No. 13:    Stipulations/ Undisputed Facts .............................................. 13

Instruction No. 14:    Class Action ........................................................................... 13

Instruction No. 15:    Summary of Law Underlying Claims ..................................... 14

Instruction No. 16:    New York Public Health Law § 18 ......................................... 14

              A.     Plaintiffs' Preferred Request to Charge ......................... 14

              B.     Plaintiffs' Alternative Request to Charge ...................... 20

Instruction No. 17:    New York General Business Law § 349 ................................. 24

Instruction No. 18:    Unjust Enrichment .................................................................. 27

Instruction No. 19:    No Duplicative Damages ......................................................... 29

Instruction No. 20:    Conclusion .............................................................................. 29

Plaintiff Tatyana Ruzhinskaya, as Administratrix of the Estate of Marina Rochniak (individually, "Plaintiff") and on behalf of the members of the Class (collectively, "Plaintiffs"), respectfully submits the following proposed jury instructions to be given to the jury at the close of the trial in this action.[1] Plaintiffs respectfully request leave to submit revised or additional requests based upon the evidence actually adduced at trial. In addition, Plaintiffs request leave to submit revised or additional requests that conform with any rulings of law that the Court may render during the course of these proceedings.

**Instruction No. 1:   Introduction**

Members of the jury, you have now heard all of the evidence in this case. You have paid careful attention to the evidence, and I am confident that you'll act together with fairness and impartiality to reach a just verdict in this case.

We are near the point where you will undertake your vital function as jurors of deliberating. Before the lawyers make their closing arguments, I'm going to instruct you about the law that governs this case. And there are two parts to these instructions. First, I'm going to provide you with some general instructions about your role and about how you're to decide the facts of this case. Those instructions would apply to just about any trial. Second, I'm going to give you some specific instructions about the legal rules that apply to this particular case. I'm going to describe the elements of each of the plaintiffs' causes of action.

After these instructions, you'll hear closing arguments from the lawyers, and then I'll give you some final very brief instructions before you begin your deliberations. Listening to these instructions may not be easy. It's important, however, that you listen carefully and that you

---

[1] Unless otherwise noted, the general instructions set forth herein are based upon those given in *Beastie Boys v. Monster Energy Co.*, No. 12-cv-6065 (PAE) (June 4, 2014).

concentrate. I ask for your patient cooperation and attention. You will no doubt notice that I am reading these instructions from a prepared text. It would assuredly be more lively if I just improvised, but it's important that I not do that. The law is made up of words, and those words are very carefully chosen, and so when I tell you the law, it's critical that I use exactly the right words.

You're going to have copies of what I'm reading in the jury room to consult, and it will be very important for you to read these instructions, so don't worry if you miss a word or two. But for now, listen carefully and try to concentrate on what I'm saying. I'm also going to be distributing to you a verdict form in which to record your verdict. It's going to list the questions that you should consider and in the order that you should consider them. So with that material being sent to you, there should be somewhat less need for extensive notetaking, for example, than there might be if I weren't going to be giving you a copy of these charges for the jury room.

**Instruction No. 2:    Role of the Court**

To begin with, what is the role of the court? I'll instruct you on the law, and the first topic that I'm addressing is the role of the court. It is my duty to instruct you on the law. Just as it's been my duty to preside over the trial and decide what testimony and evidence is relevant under the law for your consideration, it's your duty to accept my instructions on the law and to apply them to the facts as you determine them. On these legal matters you must take the law as I give it to you. You must not substitute your own notions or opinions of what the law is or ought to be. You should not, any of you, be concerned about the wisdom of any rule that I state. Regardless of any opinion that you may have as to what the law may be or should be, it would violate your sworn duty to base a verdict upon any other view of the law other than that which I give you.

If any attorney states or has stated a legal principle different from any that I state to you in my instructions, it's my instructions that you should follow. You should not single out any

2

particular instruction as alone stating the law. You should consider my instructions as a whole when you retire to deliberate in the jury room.

You are not to infer, from any of my questions or any of my rulings on objections or anything else that I've done in this trial, that I have any view as to the credibility of the witnesses or how you should decide this case. Any questions that I asked were designed to make sure that the testimony was clear and to avoid confusion and, frankly, to move the case along. You are expressly to understand that I have no opinion as to the verdict that you should render in this case.

**Instruction No. 3:    Role of Jurors**

Now as to you, as members of the jury, you are the sole and exclusive judges of the facts. You pass judgment upon the evidence. You determine the credibility of the witnesses. You resolve any conflicts as there may be within the testimony. You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

Although you're encouraged to use all of your life experiences in analyzing testimony and reaching a fair verdict, you may not communicate any personal professional expertise you might have or any facts not in evidence to the other jurors during deliberations. You must base your discussions and your decisions solely on the evidence presented to you during the trial and that evidence alone. You may not consider or speculate on matters not in evidence or matters outside this case.

**Instruction No. 4:    Role of Counsel**

Now, to discuss the role of counsel. It's the duty of the attorneys to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible. Therefore, you should draw no inference from the fact that an attorney objected to any evidence

3

nor should you draw any inference from the fact that I might have sustained or overruled an objection.

From time to time, the lawyers and I have conferences at side bar out of your hearing. Those conferences involve procedural and other matters, including whether or not particular evidence was or wasn't admissible. None of the events relating to those conferences should enter into your deliberations at all.

Similarly, the personalities and the conduct of counsel in the courtroom are not in any way at issue. If you formed reactions of any kind to any of the lawyers, favorable or unfavorable, whether you approved or disapproved of their behavior as advocates, those reactions should not enter into your deliberations.

You are to evaluate the evidence calmly and objectively without prejudice or sympathy. You're to be completely fair and impartial. Your verdict must be based solely on the evidence developed at this trial or the lack of evidence. The parties in this case are entitled to a trial free from prejudice and bias. Our judicial system cannot work unless you reach a verdict through a fair and impartial consideration of the evidence.

It would be improper for you to consider in deciding the facts of the case any personal feelings you may have about the race, national origin, sex or age of any party or any witness or any other such irrelevant factor. This case should be decided by you as an action between parties of equal standing in the community and of equal worth. All parties are entitled to the same fair trial at your hands. All parties stand equal before the Court, before the law, and are to be dealt with as equals in this Court.

**Instruction No. 5:    Burden of Proof**

Now, turning to the subject of the burden of proof. The Plaintiffs have the burden of proving all the elements of their claims by a preponderance of the evidence. So, what does "a

4

preponderance of the evidence" means? To establish a fact by a preponderance of the evidence means to prove that the fact is more likely than not true. A preponderance of the evidence means the greater weight of the evidence. It refers to the quality and persuasiveness of the evidence, not the number of witnesses or documents.

In determining whether a claim has been proven by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have produced them. If, after considering all of the testimony and all of the evidence, you are satisfied that the Plaintiffs, the party with the burden of proof, have carried their burden on each essential element of the claim then you must find in the Plaintiffs' favor.

If, after such consideration, you find that the evidence in support of the Plaintiffs' position is outweighed by the evidence against the Plaintiffs' position or that the credible evidence on a given issue is evenly divided between the parties—that is, that it's equally probable that one side is right as it is that the other side is right—then you must decide that issue against the Plaintiffs. That is because the Plaintiffs, because they bear the burden of proof, must prove more than a simple equality of evidence; they must prove the element by a preponderance of the evidence. On the other hand, the Plaintiffs need prove no more than a preponderance. So long as you find that the scales tip, however slightly, in favor of the Plaintiffs—that what they claim is more likely true than not—then that element will have been proven by a preponderance of the evidence.

Some of you may have heard of proof beyond a reasonable doubt, which is the proper standard of proof only in a criminal trial. That requirement does not apply to a civil case such as this, and you should put it out of your mind.

**Instruction No. 6:    Evidence**

Now, I want to take a moment to describe to you what is and what is not evidence in this case. As I have said, you may rely only on the evidence in your deliberations. The evidence in this case is the sworn testimony of the witnesses and the exhibits received in evidence. On the other hand, certain things are not evidence. I'm going to describe a list of examples of things that are not evidence.

First, a question by a lawyer is not to be considered by you as evidence. It's the witnesses' answers that are evidence and not the questions. At times, a lawyer may have incorporated into a question a statement which assumed certain facts to be true, and asked the witness if the statement was true. If the witness denied the truth of the statement, and if there's no evidence in the record proving that assumed fact to be true, then you may not consider it to be true simply because it was contained in the lawyer's question.

Second, similarly, arguments by lawyers are not evidence, because the lawyers are not witnesses. What they have said to you in their opening statements was intended, and what they will say to you in their closing arguments will be intended, to help you understand the evidence and to reach your verdict. However, if your recollection of the facts differs from the lawyers' statements, it is your recollection that controls.

Third, statements that I may have made concerning the evidence or, for that matter, questions that I have asked, do not constitute evidence.

Fourth, testimony that has been stricken or excluded or I've asked you to disregard something is not evidence. It may not be considered by you in rendering a verdict.

And fifth, again, anything you may have seen or heard outside the courtroom is not evidence.

Now, I'll provide you with some things that you may consider as evidence. As I've said, evidence may come in several forms. First, the sworn testimony of witnesses, regardless of who called them, is evidence. This is true of the witnesses on both direct and cross, redirect and recross-examination. Second, the exhibits that were admitted during the trial are evidence. And third, prior testimony is evidence.

Such testimony, known as depositions, is produced through a procedure where, prior to trial, the attorneys for one side may question a witness or their adversary under oath. This is part of what is called pretrial discovery, and each side is entitled to take depositions. To the extent I admitted excerpts of prior testimony at trial, you may consider the prior testimony of a witness according to the same standards you would use to evaluate the testimony of a witness given here live at trial.

Now, as I told you in my initial instructions, there are two types of evidence that you may consider in reaching your verdict. One type of evidence is direct evidence. Direct evidence is testimony by a witness about something that he or she knows by virtue of his or her own senses, something he or she has seen, felt, heard or touched. For example, if the witness testified that when she left her house this morning, it was raining, that would be direct evidence about the weather.

Circumstantial evidence is evidence from which you may infer the existence of certain facts. For example assume that when you came here this morning, the sun was shining and it was a nice day. Assume the courtroom blinds were closed and you couldn't look outside. As you were sitting here, someone walked in with an umbrella that was dripping wet and then a few minutes later, another person entered with a wet raincoat. Now, because you can't look outside the courtroom and you can't see whether or not it's raining, you have no direct evidence of the

fact that it had begun to rain, but on the combination of facts that I've asked you to assume, it would be reasonable and logical for you to conclude that it was now raining or that it had been raining.

That's all there is to circumstantial evidence. You're inferring on the basis of reason, experience and common sense from one established fact to the existence or the nonexistence of another fact. Many facts are rarely susceptible of proof by direct evidence. Usually, such facts are established by circumstantial evidence. Where circumstantial evidence is presented, it is of no less value than direct evidence because it is a general rule that the law makes no distinction between direct and circumstantial evidence.

**Instruction No. 7:     Rule 30(b)(6) Deposition Testimony**

In this trial, there were certain witnesses who were designated "Rule 30(b)(6)" witnesses for HealthPort. A Rule 30(b)(6) witness is a person that HealthPort chose to designate to speak on behalf of HealthPort. The deposition testimony of a Rule 30(b)(6) witness is binding on HealthPort on those topics.[2]

**Instruction No. 8:     Expert Witnesses**

When a case requires a special knowledge or skill not ordinarily possessed by the average person, an expert is permitted to state his or her opinion for the benefit and for the information of the Court and jury. The opinions stated by the experts were based on particular facts, as they acquired knowledge of them and testified to them before you.

You may reject an expert's opinion if you find the facts to be different from those which formed the basis of the opinion. You may also reject the opinion if, after careful consideration of all the evidence in the case, expert and other, you disagree with the opinion. In other words,

---

[2] *Sabre v. First Dominion Capital*, No. 01 Civ. 2145, 2002 U.S. Dist. LEXIS, at *7 (S.D.N.Y. Nov. 15, 2002).

you're not required to accept an expert's opinion to the exclusion of the facts and circumstances disclosed by other testimony. Such an opinion is subject to the same rules concerning reliability as the testimony of any other witness. It's given to assist you in reaching a proper conclusion; it's entitled to such weight as you find the expert's qualifications in the field warrant and must be considered by you, but it's not controlling on your judgment.

**Instruction No. 9:    Witness Credibility**

Now I'm going to turn to the subject of witness credibility. You had the opportunity to observe the witnesses. It's now your job to decide how believable each witness was in his or her testimony. You are the sole judge of the credibility of each witness and of the importance of his or her testimony.

In making these judgments, you should carefully scrutinize the testimony of each witness, the circumstances under which each witness testified, the impression the witness made when testifying, and any other matter in evidence which may help you decide the truth and the importance of each witness' testimony.

So, how do you determine where the truth lies? Everything a witness said or did on the witness stand counts in your determination. How did the witness impress you? Did he or she appear to be frank, forthright and candid? Or was the witness evasive and edgy, as if hiding something?

You should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life. You should consider any bias or hostility the witness may have shown for or against any party, as well as any interest the witness has in the outcome of this case. You should consider the opportunity the witness had to see, hear and know the things about which he or she testified, the accuracy of his or her memory, his or her candor or lack of candor, his or her intelligence, the reasonableness and probability of his or her testimony

and its consistency or lack of consistency and its corroboration or lack of corroboration with other credible testimony.

In other words, what you must try to do in deciding credibility is to size a witness up in light of his or her demeanor, the explanations given, and all the other evidence in the case. Always remember that you should use your common sense, your good judgment and your everyday experiences in life to make your credibility determinations.

If you find that any witness has willfully testified falsely as to any material fact—that is, as to an important matter—the law permits you to disregard the entire testimony of that witness upon the principle that one who testifies falsely about one material fact is likely to testify falsely about everything. However, you are not required to consider such a witness as totally unbelievable. You may accept so much of the witness' testimony as you deem true and disregard what you feel is false. By the processes which I've described, you, as the sole judges of the facts, decide which of the witnesses you will believe, what portion of each witness' testimony you accept and what weight you will give it.

On some occasions during this trial, witnesses were asked to explain an apparent inconsistency between testimony offered at this trial and previous statements made by the witness. It is for you to determine whether a prior statement was inconsistent and, if so, how much (if any) weight to give to an inconsistent statement in assessing the witness' credibility at trial.

Now, in deciding whether to believe a witness, you should take into account any evidence that shows that a witness may benefit in some way from the outcome of the case, such as a financial interest. Likewise, you should specifically note any evidence of hostility or affection that the witness may have towards one of the parties. You should also consider any other interest

or motive that the witness may have in cooperating with a particular party. It is your duty to consider whether the witness has permitted any such bias or interest to color his or her testimony. In short, if you find that a witness is biased, you should view his or her testimony with caution, view it with care and subject it to close and searching scrutiny.

An interested witness is not necessarily less believable than a disinterested witness. The mere fact that a witness is interested in the outcome of the case does not mean he or she has not told the truth. It's for you to decide from your observations, applying your common sense and experience and all the other considerations mentioned, whether the possible interest of any witness, or of any party, has intentionally or otherwise colored or distorted his or her testimony. You're not required to believe an interested witness; you may accept as much of his or her testimony as you deem reliable and reject as much as you deem unworthy of acceptance.

**Instruction No. 10:  Preparation of Witnesses**

Turning to the subject of preparation of witnesses. You've heard testimony during the trial that witnesses had discussed the facts of the case and their testimony with the lawyers before the witnesses appeared in court. You may consider the nature and extent of a witness' preparation when you're evaluating a witness' credibility, but I should tell you that there is nothing either unusual or improper about a witness meeting with lawyers before testifying, so that the witness can be made aware of the subjects that he or she will be questioned about, focus on those subjects and have the opportunity to review relevant exhibits before being questioned about them. Such consultation makes the trial process more efficient. In fact, it would be unusual for a lawyer to call a witness without such consultation.

What weight, if any, you give to the fact or nature of a witness' preparation for his or her testimony, and what inferences you draw from such preparation, are matters completely within your discretion.

11

The law does not require any party to call as witnesses all parties who may have been present at any time or place involved in the case, or who may appear to have some knowledge of matters at issue in this trial. Nor does the law require any party to produce as exhibits all papers and things mentioned in the evidence in this case.

Each party has had an equal opportunity or lack of opportunity to call any witnesses. Therefore, you should not draw any inferences or reach any conclusions as to what any uncalled witnesses would have testified to had they been called. The absence of any witnesses should not affect your judgment in any way.

**Instruction No. 11:  Limited Liability Company**

In this case, the defendant, HealthPort, also known as CIOX, is a limited liability company. Like a corporation, it is not a living, breathing person, but a creation of law. Obviously, the company itself cannot act. However, a company does act through its agents, that is, its employees, officers or authorized representatives. An action by an agent of a company is attributed to the company if the agent had the authority to make the decision or take the action complained of.

**Instruction No. 12:  Attorneys as Agent for Plaintiffs**

Similarly, Ms. Ruzhinskaya acted on behalf of her mother's estate, and she acted through her attorneys at Simonson Hess, who were her agents for purposes of requesting her mother's medical records from Beth Israel.[3]

---

[3] Opinion & Order ("Class Cert. Op."), Dkt. #151, at 23 (Nov. 9, 2015) ("the attorneys who made requests for records, to the extent members of the class, did so as agents for clients").

**Instruction No. 13:  Stipulations/ Undisputed Facts**

Before the trial of this case, the parties entered into a stipulation or agreement in which they agreed that certain facts must be taken as true without further proof. I will now read those stipulations:

Because the parties have stipulated to these facts and do not dispute them, you are to take these facts as true for purposes of this case.[4] Similarly, if you have been told in open court that a party has agreed not to dispute certain evidence presented by the other, you will treat that evidence as proven as well. It is still up to you to decide what weight or importance those facts or evidence have, if any, in deciding the issues in the case.[5]

**Instruction No. 14:  Class Action**

As I mentioned to you at the outset, this case is proceeding as a class action. A class action procedure allows the filing of one lawsuit by a representative on behalf of a whole group of plaintiffs who have similar claims.[6] Together, the Plaintiffs are called the "Class." You should not hold the physical absence of any Class member against the Class. Your verdict here will be binding on all Class members.

In this case, the Plaintiff Class is comprised of all persons who, at any time from March 12, 2011 through December 31, 2015, paid for, or became obligated to pay for, copies of an individual's patient information requested from Beth Israel Medical Center by a "qualified person" as defined in New York Public Health Law § 18(1)(g), for which copies HealthPort

---

[4] *Koch v. Greenberg*, No. 07-cv-9600 (JPO) (S.D.N.Y. April 11, 2013), Dkt. #476, Jury Instructions at 183.

[5] *Id.*

[6] Newberg on Class Actions, 5th ed., § 11:22, (2014) (quoting Instruction in *In re Urethane Antitrust Litigation*, The Polyether Polyol Cases, 2013 WL 2291878 (D. Kan. 2013)).

charged $0.75 per page. The parties have stipulated that Tatyana Ruzhinskaya is a representative of all persons in the Class.[7]

That's the first part of my instructions, the ones that would apply in just about any case.

**Instruction No. 15:  Summary of Law Underlying Claims**

With those instructions in mind, let me turn now to the substantive law to be applied in this case. This is a civil case brought by Plaintiff Ruzhinskaya, on behalf of herself and the other Class members, against the defendant, HealthPort, also known as CIOX. I will refer to the defendant as HealthPort. There are really three distinct claims or sets of claims here.

First, Plaintiffs claim that HealthPort violated a New York statute called Section 18 of the New York Public Health Law by overcharging patients for copies of their medical records. Second, Plaintiffs claim that HealthPort violated Section 349 of New York's General Business Law by engaging in unfair and deceptive business practices. Third, Plaintiffs claim that HealthPort, when charging patients for copies of medical records, has wrongfully collected monies from Plaintiffs in excess of the amount to which it was legally entitled.

I will now give you a more detailed explanation of each claim.

**Instruction No. 16:  New York Public Health Law § 18**

**A.      Plaintiffs' Preferred Request to Charge[8]**

Plaintiffs seek to recover damages that were caused by HealthPort's violation of Section 18 of the New York Public Health Law. I will be referring to this statute as Section 18. The

---

[7] [Proposed] Joint Pre-Trial Order ("PTO"), Dkt. #193, at 11, Stip. No. 26 (Aug. 11, 2016).

[8] Plaintiffs make this proposed jury instruction to preserve their claim for appeal that the costs incurred to furnish copies of "patient information" (i.e., medical records) to "qualified persons" upon request, as contemplated by New York Public Health Law § 18, is limited to the direct costs incurred in making copies. This jury instruction is consistent with Plaintiffs' argument in their Memorandum of Law in Support of Class Certification, Dkt. #82 (May 6, 2015). Although Plaintiffs maintain that the statute contemplates a more constrained definition of

purpose of Section 18 is to provide patients and other "qualified persons" access to their medical records and to protect them from being overcharged for copies of those records.

Under New York law, the price a healthcare provider charges for copies cannot exceed the actual costs incurred by the provider in making those copies. "The legislature's purpose, as this Court has recognized, was to prevent making profits from the act of responding to patient requests for their records."[9] In addition, under Section 18, the reasonable charge for paper copies shall not exceed $0.75 per page.[10] This is a cap on costs. A healthcare provider is forbidden from charging a qualified person more than $0.75 per page.

Plaintiffs claim that HealthPort charged Plaintiffs, a class of qualified persons, the maximum amount of $0.75 per page without regard to the actual costs incurred in making copies of medical records; that the actual costs averaged less than $0.75 per page; and that HealthPort unlawfully charged more than the actual costs incurred in making copies in violation of Section 18. HealthPort denies liability by claiming that the costs incurred exceeded $0.75 per page.

To recover for a violation of New York Public Health Law Section 18, Plaintiffs must prove by a preponderance of the evidence, four elements:

1. The requests for copies of medical records were made by qualified persons under Section 18 of the New York Public Health Law;

---

costs than this Court has adopted in its Opinion & Order, Dkt. #151 (Nov. 9, 2015) ("Class Cert. Op."), Plaintiffs respect this Court's decision on the matter and have also submitted a proposed jury instruction consistent with that opinion should this Court adhere to it. *See* Plaintiffs' Alternative Request to Charge, *infra*, Instruction No. 16, Part B.

[9] Class Cert. Op. at 11-12.

[10] Opinion & Order, Dkt. #38, at 17 (Aug. 29, 2014) ("MTD Op.").

2.  HealthPort was a health care provider or was acting on behalf of a health care provider;

3.  HealthPort has not demonstrated reasonable costs incurred in copying medical records that average at least $0.75 per page;[11] and

4.  As a result, Plaintiffs sustained damages.

The first two elements are not at issue in this trial. The parties agree the requests for copies of the medical records at issue in this case were made by qualified persons[12] and that HealthPort is subject to the obligations of a health care provider under New York Public Health Law § 18.[13] You may consider these elements proven.

As for the third element, the parties dispute the amount of the costs incurred in copying medical records. As you recall, Section 18 prohibits a healthcare provider from charging a qualified person for more than its actual costs incurred in making copies of medical records. You must decide whether the demonstrable and reasonable costs incurred in copying medical records averaged at least $0.75 per page over the Class period. If you find that it is difficult or impossible for Plaintiffs to prove the cost incurred in copying medical records because of any uncertainty arising from the nature of HealthPort's records, or the lack thereof, then the risk of that uncertainty is borne by HealthPort and not by Plaintiffs.[14]

---

[11] *See Am. Ass'n of Bioanalysts v. Dep't of Health*, 906 N.Y.S2d 356, 358-59 (3d Dep't 2010) (shifting burden to defendant to present evidence in support of claimed actual costs, given that defendant was obligated to compute actual costs but failed to maintain records necessary to do so); *see also Hart v. Rick's Cabaret Int'l, Inc.*, No. 09-CV-3043 (PAE), 2014 U.S. Dist. LEXIS 174617, at *16-18 (S.D.N.Y. Dec. 17, 2014) (requiring defendant to negate inference of damages because of failure to maintain records necessary to determine same).

[12] PTO at 10, Stip. Nos. 13 & 21.

[13] *Id.* at 9, Stip. Nos. 11 & 12.

[14] *Fed. Ins. Co. v. Mertz*, No. 12-cv-1597-NSR-JCM, 2016 U.S. Dist. LEXIS 4019, at *12-15 (S.D.N.Y. Jan. 12, 2016); *Bioanalysts*, 906 N.Y.S. 2d at 358-59.

### 1.    Costs to Consider

In assessing whether a reasonable cost for copies based on the provider's actual costs incurred is less than $0.75 per page, you must examine only those costs attributable to making copies. Keep in mind that New York law requires a hospital to keep and maintain medical records for a period of years.[15] As part of that law, a hospital must satisfy certain requirements including coding and indexing medical records; instituting safeguards to ensure security and confidentiality; maintaining an ongoing verification process, and the like. Those costs are incurred in its regular course of business regardless of whether it fulfills requests for copies of medical records.

Section 18 on the other hand permits a reasonable, cost-based fee to recover the labor and supply costs for copying medical records. The fee may include only the cost of: (1) labor for copying the records requested, whether in paper or electronic form; and (2) supplies for creating the paper copy or electronic media (for example, a CD or USB drive) if the individual requests that the electronic copy be provided on portable media. The fee may not include costs associated with verification; documentation; searching for and retrieving the medical records; maintaining systems; recouping capital for data access, storage, or infrastructure; or other costs not directly attributable to making copies.[16]

---

[15] N.Y. Comp. Codes R. & Regs. tit. 10, § 405.10 (2016).

[16] *See* PHL § 18(1)(g) ("[a] qualified person shall be deemed a 'personal representative of the individual' for purposes of [HIPAA] and its implementing regulations"); 45 C.F.R. § 164.502(g)(1) ("a covered entity must . . . treat a personal representative as the individual for purposes of [45 C.F.R. Subtitle A, Subchapter C]"); 45 C.F.R. § 164.524(c)(4) (part of 45 C.F.R. Subtitle A, Subchapter C, which limits fees for "individual requests" to "[l]abor for copying," "[s]upplies for creating the paper copy or electronic media," and "[p]ostage."). *See also generally* Pl.'s Mem. of Law in Supp. of Class Cert., Dkt. #82 ("Class Cert. Mem."), dated May 6, 2015.

For a cost to be included in your cost incurred calculation, moreover, it must satisfy two additional requirements: (1) the cost must be demonstrable; and (2) the cost must be reasonable.[17] Demonstrable means that the costs are capable of being demonstrated or proved.[18] They are actual costs and not mere estimations of costs. Reasonable means fair and sensible.[19] That is, the costs are neither expensive nor extravagant.

Finally, in determining the costs incurred in copying medical records, you must consider only HealthPort's costs and not the costs of any other health care provider, such as Beth Israel, unless HealthPort paid those costs or was charged for those costs.[20] If HealthPort did not either pay or incur a liability for the expense, then that expense is not a "cost incurred" by HealthPort.

With these requirements in mind, you must determine whether HealthPort's demonstrable and reasonable costs incurred to copy medical records requested from Beth Israel during the Class period averaged at least $0.75 per page. If you find that HealthPort's average per page costs averaged less than $0.75, then Plaintiffs have satisfied this element and are entitled to recover damages.

### 2.    Damages

In determining damages, you must use your sound judgment based upon impartial consideration of the evidence. In awarding damages, you must not engage in speculation, guess or conjecture. The damages must also have a reasonable basis in the evidence, but need not be proven with precision. Moreover, you are not required to use the number of either expert. You

---

[17] Class Cert. Op. at 13.

[18] Per Merriam-Webster online dictionary at www.merriam-webster.com/dictionary. Date visited, July 1, 2016.

[19] *Id*.

[20] *See* Class Cert. Mem. at 30-31.

are entitled to determine whatever measure of damages that you deem appropriate, as long as it is consistent and supported by the evidence.

As I previously mentioned, it is Plaintiffs' burden to establish its damages by a preponderance of the evidence. On behalf of the Class, Plaintiffs seek to recover as part of their damages the aggregate difference between the per page costs incurred for copying the medical records and the amounts paid by Plaintiffs at $0.75 per page. That is, the aggregate damages in this case are equal to the number of pages of records for which Plaintiffs paid $0.75 per page multiplied by the difference between $0.75 and the actual average costs incurred per page.

Plaintiffs are required to make the best approximation of damages possible through the exercise of good judgment. It will be enough if the evidence shows the extent of the damages as a matter of just and reasonable inference, although the result be only approximate. Again, if you find that it is difficult or impossible for Plaintiffs to prove the cost incurred in copying medical records because of any uncertainty arising from the nature of HealthPort's records, or the lack thereof, then the risk of that uncertainty is borne by HealthPort and not by Plaintiffs.[21]

Thus, although Plaintiffs must make the best approximation of damages possible in light of the evidence, HealthPort bears the burden of the uncertainty as to the amount of those damages. HealthPort may offer proof of any additional costs that were incurred in making copies of medical records. But, any uncertainty in the amount of those damages should be construed against HealthPort.

---

[21] *Fed. Ins. Co. v. Mertz*, 2016 U.S. Dist. LEXIS 4019, at *12-15; *Bioanalysts,* 906 N.Y.S. 2d at 358-59.

**B.      Plaintiffs' Alternative Request to Charge**

Plaintiffs seek to recover damages that were caused by HealthPort's violation of Section 18 of the New York Public Health Law. I will be referring to this statute as Section 18. The purpose of Section 18 is to provide patients and other "qualified persons" access to their medical records and to protect them from being overcharged for copies of those records.

Under New York law, the price a healthcare provider charges for copies cannot exceed the actual costs incurred by the provider in making those copies. "The legislature's purpose, as this Court has recognized, was to prevent making profits from the act of responding to patient requests for their records."[22] In addition, under the law, the reasonable charge for paper copies shall not exceed $0.75 per page. This is a cap on costs. A healthcare provider is forbidden from charging a qualified person more than $0.75 per page.

Plaintiffs claim that HealthPort charged Plaintiffs, a class of qualified persons, the maximum amount of $0.75 per page without regard to the actual costs incurred in making copies of medical records; that the actual costs averaged less than $0.75 per page; and that HealthPort unlawfully charged more than the actual costs incurred in making copies in violation of Section 18. HealthPort denies liability by claiming that the costs incurred exceeded $0.75 per page.

To recover for a violation of New York Public Health Law Section 18, Plaintiffs must prove by a preponderance of the evidence, four elements:

1.  The requests for copies of medical records were made by qualified persons under Section 18 of the New York Public Health Law;

---

[22] Class Cert. Op. at 11-12.

2. HealthPort was a health care provider or was acting on behalf of a health care provider;

3. HealthPort has not demonstrated reasonable costs fairly attributable to responding to patient requests for medical records that average at least $0.75 per page;[23] and

4. As a result, Plaintiffs sustained damages.

The first two elements are not at issue in this trial. The parties agree that the requests for copies of the medical records at issue in this case were made by qualified persons[24] and that HealthPort is subject to the obligations of a health care provider under New York Public Health Law § 18.[25] You may consider these elements proven.

As for the third element, the parties dispute the amount of the costs incurred in copying medical records. As you recall, Section 18 prohibits a healthcare provider from charging a qualified person for more than its actual costs incurred in making copies of medical records. You must decide whether the demonstrable and reasonable costs fairly attributable to responding to patient requests for medical records averaged at least $0.75 per page over the Class period. If you find that it is difficult or impossible for Plaintiffs to prove the cost incurred in copying medical records because of any uncertainty arising from the nature of HealthPort's records, the records of Beth Israel, or the lack thereof, then the risk of that uncertainty is borne by HealthPort and not by Plaintiffs.[26]

---

[23] *See Bioanalysts,* 906 N.Y.S2d at 358-59 (shifting burden to defendant to present evidence in support of claimed actual costs, given that defendant was obligated to compute actual costs but failed to maintain records necessary to do so); *see also Hart,* 2014 U.S. Dist. LEXIS 174617, at *16-18 (requiring defendant to negate inference of damages because of failure to maintain records necessary to determine same).

[24] PTO at 10, Stip. Nos. 13 & 21.

[25] *Id*. at 9, Stip. Nos. 11 & 12.

[26] *Fed. Ins. Co.,* 2016 U.S. Dist. LEXIS 4019, at *12-15; *Bioanalysts,* 906 N.Y.S. 2d at 358-59.

### 1.      Costs to Consider

In assessing whether a reasonable cost for copies based on HealthPort's actual costs incurred is less than $0.75 per page, you must examine only demonstrable and reasonable costs fairly attributable to responding to patient requests for medical records.[27]

Keep in mind that New York law requires a hospital to keep and maintain medical records for a period of years.[28] As part of that law, a hospital must satisfy certain requirements including coding and indexing medical records; instituting safeguards to ensure security and confidentiality; maintaining an ongoing verification process, and the like. Those costs are incurred in its regular course of business regardless of whether it fulfills requests for copies of medical records.

Section 18 on the other hand permits a reasonable, cost-based fee to recover costs for copying medical records. These may include indirect as well as direct costs.[29] They may include the labor, supply, and overhead costs associated with the process of fulfilling a request for copies of medical records, from receipt of the request, through retrieval and copying of the responsive records, to delivery to the requester.[30] Please note that I said "may" not "shall." For a cost to be included in your cost incurred calculation, it must satisfy three additional requirements:[31]

1.   The cost must be demonstrable;

2.   The cost must be reasonable; and

3.   The cost must be fairly attributable to responding to patient requests for medical records.

---

[27] Class Cert. Op. at 13.

[28] N.Y. Comp. Codes R. & Regs. tit. 10, § 405.10 (2016).

[29] Class Cert. Op. at 10.

[30] *Id.* at 10-11.

[31] *Id.* at 13.

22

Demonstrable means that the costs are capable of being demonstrated or proved.[32] They are actual costs and not mere estimations of costs. Reasonable means fair and sensible.[33] That is, the costs are neither expensive nor extravagant. Fairly attributable means that the costs are associated with responding to patient requests for copies of medical records. In other words, the costs must be incurred because HealthPort is copying medical records and not for another purpose. They would be costs that are necessary to the fulfillment of a request for copying medical records. Costs attributable to other aspects of HealthPort's business that are not involved with copying medical records are not considered costs incurred for copying medical records.

With these requirements in mind, you must determine whether HealthPort's demonstrable and reasonable costs fairly attributable to responding to patient requests for medical records requested from Beth Israel during the Class period averaged at least $0.75 per page. If you find that HealthPort's costs per page averaged less than $0.75, then Plaintiffs have satisfied this element and are entitled to recover damages.

### 2.    Damages

In determining damages, you must use your sound judgment based upon impartial consideration of the evidence. In awarding damages, you must not engage in speculation, guess or conjecture. The damages must also have a reasonable basis in evidence, but need not be proven with precision. Moreover, you are not required to use the number of either expert. You are entitled to determine whatever measure of damages that you deem appropriate, as long as it is consistent and supported by the evidence.

---

[32] Per Merriam-Webster online dictionary at www.merriam-webster.com/dictionary. Date visited July 1, 2016.

[33] *Id.*

As I previously mentioned, it is Plaintiffs' burden to establish their damages by a preponderance of the evidence. On behalf of the Class, Plaintiffs seek to recover as part of their damages the aggregate difference between the per page costs incurred for copying the medical records and the amounts paid by Plaintiffs at $0.75 per page. That is, the aggregate damages in this case are equal to the number of pages of records for which Plaintiffs paid $0.75 per page multiplied by the difference between $0.75 and the actual average costs incurred per page.

Plaintiffs are required to make the best approximation of damages possible through the exercise of good judgment. It will be enough if the evidence shows the extent of the damages as a matter of just and reasonable inference, although the result be only approximate. Again, if you find that it is difficult or impossible for Plaintiffs to prove the cost incurred in copying medical records because of any uncertainty arising from the nature of HealthPort's records, the records of Beth Israel or the lack thereof, then the risk of that uncertainty is borne by HealthPort and not by Plaintiffs.[34]

Thus, although Plaintiffs must make the best approximation of damages possible in light of the evidence, HealthPort bears the burden of the uncertainty as to the amount of those damages. HealthPort may offer proof of any additional costs that were incurred in making copies of medical records. But, any uncertainty in the amount of those damages should be construed against HealthPort.

**Instruction No. 17:  New York General Business Law § 349**

Plaintiffs also seek to recover actual damages and/or statutory damages that were caused by HealthPort's violation of Section 349 of the New York General Business Law. I will be

---

[34] *Fed. Ins. Co.,* 2016 U.S. Dist. LEXIS 4019, at *12-15; *Bioanalysts*, 906 N.Y.S. 2d at 358-59.

referring to this statute as Section 349. The purpose of Section 349 is to protect consumers from deceptive practices by sellers of goods and services. Consumers have the right to an honest market place where trust prevails between buyer and seller. The law provides consumer protection by declaring as unlawful deceptive acts and practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state.[35]

To recover for a violation of New York General Business Law Section 349, Plaintiffs must prove by a preponderance of the evidence three elements:

1.  HealthPort's challenged acts or practices were consumer-oriented;

2.  HealthPort's acts or practices were deceptive or misleading in a material way; and

3.  Plaintiffs suffered an injury as a result.

Plaintiffs claim that HealthPort violated Section 349 by engaging in deceptive acts and practices in connection with providing Plaintiffs or their agents with copies of medical records. Specifically, Plaintiffs claim that HealthPort charged Plaintiffs $0.75 per page without having attempted to determine the costs incurred for copying patient information in New York, including requests made to Beth Israel, and that HealthPort failed to disclose to consumers that HealthPort's actual copying costs averaged below $0.75 per page. HealthPort denies liability.

As for the first element, you must decide whether HealthPort's challenged act or practice was consumer oriented. Consumer-oriented conduct is conduct that potentially affects similarly situated consumers.[36] In contrast with a private contractual dispute, consumer-oriented conduct is that which is targeted at consumers at large or a group of buyers.[37] Although consumer-oriented

---

[35] *Barkley v. United Homes, LLC*, No. 04-cv-875 (E.D.N.Y. May 31, 2011), Dkt. #564, Jury Instructions, Court Ex. 7, at 31.

[36] *Wurtz v. Rawlings Co., LLC*, No. 12-CV-01182, 2014 U.S. Dist. LEXIS 141869, at *17 (E.D.N.Y. Oct. 3, 2014).

[37] *Koch*, Jury Instructions at 179.

conduct does not require a repetition or pattern of deceptive behavior,[38] evidence that HealthPort engaged in similar deceptive billing practices against qualified persons would satisfy the element that the conduct impacts the general public.[39] You must decide whether HealthPort's actions impacted consumers at large,[40] and, if you find that to be the case, Plaintiffs have satisfied this element.

As for the second element, you must decide whether HealthPort's failure to determine or disclose the actual costs incurred for copies of medical records was deceptive or misleading. A representation or omission is deceptive if it is likely to mislead a reasonable consumer acting reasonably under the circumstances.[41] An omission is also deceptive where the defendant business alone possesses material information that is relevant to the consumer and fails to provide this information to the consumer.[42]

For a representation to be proved false, you do not have to conclude that any specific statement or omission was false. Instead, the question is whether taking all of the circumstances of a transaction together, there was a deceptive practice. If the words or acts are reasonably capable of two interpretations, one true, the other false, and are spoken or done with the intention that they be understood in the false sense, you should consider them false.[43]

---

[38] *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995)

[39] *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 53 (2d Cir. 1992).

[40] *Id.*

[41] *Oswego,* 85 N.Y.2d at 25.

[42] *Id.* at 26.

[43] *Barkley,* Jury Instructions at 32-33.

Plaintiffs also need not establish defendant's intent to defraud or mislead. [44] Likewise, Plaintiffs need not prove that they relied on the misrepresentation or omission.[45] Omissions, non-disclosures and deceptive corporate policy all fall within the ambit of a Section 349 violation.[46]

If you find the acts or practices were deceptive or misleading in a material way, you must next decide whether Plaintiffs were injured because of these acts by HealthPort. A plaintiff seeking compensatory damages must show that the defendant's deceptive act or practice caused actual, although not necessarily pecuniary (monetary) harm.[47] If you find that Plaintiffs did sustain an injury as a result of the violation of Section 349, you must decide the amount of Plaintiffs' damages in accordance with my earlier instruction on damages.

**Instruction No. 18:   Unjust Enrichment**

Finally, Plaintiffs' claim that HealthPort was unjustly enriched at Plaintiffs' expense in that it overcharged patients for the costs of copying medical records. HealthPort denies Plaintiffs' claims.

Unjust enrichment means that one party has benefited at another party's expense and that equity, or principles of fairness and good conscience require restitution from the party who was unjustly enriched. Unjust enrichment does not require a wrongful act on the part of the party who was enriched.[48] It does not require the existence of a promise or agreement. Rather, it rests upon the equitable principle that a business shall not be allowed to enrich itself unjustly at the expense

---

[44] *Oswego,* 85 N.Y.2d at 26; MTD Op. at 19.

[45] *Oswego,* 85 N.Y.2d at 26 ("statute does not require proof of justifiable reliance"); *Pelman v. McDonald's Corp*., 396 F.3d 508, 511 (2d Cir. 2005).

[46] *Jermyn v. Best Buy Stores, L.P*., 256 F.R.D. 418, 435 (S.D.N.Y. 2009).

[47] *Oswego,* 85 N.Y.2d at 25.

[48] *Learning Annex Holdings, LLC v. Whitney Educ. Grp*., proposed instructions, citing 2 NEW YORK PATTERN JURY INSTRUCTIONS: Comment to Instruction No. 4:2 (citing *Simonds v. Simonds*, 45 N.Y.2d 233, 408 N.Y.S.2d 359 (N.Y. 1978)).

of another, and the money should not be retained. In those circumstances, the law requires the party to repay, return to, or compensate the other person.

To recover for unjust enrichment, Plaintiffs must prove by a preponderance of the evidence three elements:

1. that HealthPort received a benefit;

2. that this benefit came at Plaintiffs' expense; and

3. the circumstances are such that in equity and good conscience HealthPort should return the money to the Plaintiffs.[49]

Whether equity and good conscience require that HealthPort pay Plaintiffs for the value of any enrichment, if you find HealhtPort was enriched, is not to be determined from a limited inquiry confined to an isolated transaction; it must be a realistic determination based upon a broad view of the human setting involved.[50] In this regard you can consider whether HealthPort was entitled to charge Plaintiffs for its costs for copying their medical records in the first instance; whether Plaintiffs overpaid HealthPort for copying their medical records; whether HealthPort charged Plaintiffs for costs in making copies that HealthPort did not incur or pay; whether HealthPort charged Plaintiffs for costs incurred by Beth Israel even though HealthPort did not pay those costs; whether HealthPort charged Plaintiffs for costs not fairly attributable to making copies of medical records; whether HealthPort engaged in deceitful conduct towards Plaintiffs; and whether HealthPort intentionally misled Plaintiffs as to the costs of making copies.

---

[49] *Barnet v. Drawbridge Special Opportunities Fund LP*, No. 14-cv-1376, 2014 WL 4393320, at *22 (S.D.N.Y. Sept. 5, 2014); MTD Op. at 21.

[50] *U.S. East Telecomm. v. U.S. West Info. Sys.*, No. 87 Civ. 2924 (KTD)(THK), 1993 U.S. Dist. LEXIS 13594, at*63 (S.D.N.Y. Sept. 30, 1993).

You're not limited to those factors in your considerations; they're examples of things you may consider. The issue of equity and good conscience is something you must determine, not based on sympathy for one party or the other, but on an objective determination of what fairness requires in light of the evidence concerning the parties' dealings with each other.[51]

If you decide that HealthPort did not overcharge Plaintiffs, you will find for HealthPort. If you decide that HealthPort unjustly enriched itself at Plaintiffs' expense by overcharging Plaintiffs for costs HealthPort did not incur, or for unlawfully charging Plaintiffs in the first place, you will find that HealthPort is liable to Plaintiffs. You will then go on to consider the value of the benefit conferred based upon the evidence you have heard. [52]

**Instruction No. 19:  No Duplicative Damages**

Keep in mind that, should you find that Plaintiffs have prevailed on more than one claim and have established a certain dollar amount of aggregate damages, duplicate damages cannot be awarded for the same injury. That is, compensatory damages are only meant to make Plaintiffs whole again. Of course, if different injuries are attributable to separate claims, then you must award compensatory damages for the separate injuries to compensate Plaintiffs fully.[53]

**Instruction No. 20:  Conclusion**

Ladies and gentlemen, this concludes my instructions to you on the law that you'll be called upon to apply in this case. Next, we will hear closing arguments from the parties. First we will hear arguments from the Plaintiffs and then we will hear arguments from HealthPort.

---

[51] *Id.*

[52] *Learning Annex Holdings, LLC v. Whitney Educ. Grp.*, proposed instructions (citing 2 NEW YORK PATTERN JURY INSTRUCTIONS: Comment to Instruction No. 4:2); N.Y. Pattern Jury Instr. – Civil 4:2, database updated December 2015.

[53] *E.J. Brooks Co. v. Cambridge Sec. Seals*, No. 12-CV-2937 (LAP), 2015 U.S. Dist. LEXIS 174447, at *39-40 (Dec. 23, 2015).

Dated: September 2, 2016        Respectfully submitted,

By: */s/ Mathew P. Jasinski*
    William H. Narwold
    Mathew P. Jasinski
    Michael J. Pendell
    Laura W. Ray
    MOTLEY RICE LLC
    20 Church St., 17th Floor
    Hartford, CT 06103
    (860) 882-1681
    (860) 882-1682 (fax)
    bnarwold@motleyrice.com
    mjasinski@motleyrice.com
    mpendell@motleyrice.com
    lray@motleyrice.com

    *Class Counsel*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 2, 2016, a copy of the foregoing Plaintiff's Proposed Jury Instructions was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

   */s/ Mathew P. Jasinski*
   Mathew P. Jasinski

31