**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| TATYANA RUZHINSKAYA, as Administratrix of the Estate of MARINA ROCHNIAK, Deceased, on behalf of herself and all others similarly situated,<br><br>              Plaintiff,<br><br>       v.<br><br>HEALTHPORT TECHNOLOGIES, LLC,<br><br>              Defendant. | Case No.: 1:14-cv-02921 (PAE)<br><br>ECF Case<br><br>Electronically Filed<br><br><br>**PLAINTIFFS' PRE-TRIAL**<br>**MEMORANDUM** |

William H. Narwold
Mathew P. Jasinski
Michael J. Pendell
Laura W. Ray
**MOTLEY RICE LLC**
20 Church St., 17th Floor
Hartford, CT 06103
(860) 882-1681
(860) 882-1682 (fax)

*New York Office*:
600 Third Ave., Ste. 2101
New York, NY 10016

## <u>TABLE OF CONTENTS</u>

I.    BACKGROUND ................................................................................................. 1

II.   PLAINTIFFS' CLAIMS AGAINST HEALTHPORT ...................................... 4

    A.    HealthPort violated New York Public Health Law § 18......................... 4

    B.    HealthPort violated New York General Business Law § 349................. 5

        1.    HealthPort's challenged acts or practices were consumer-oriented. .......... 6

        2.    HealthPort's acts or practices were deceptive or misleading.................... 7

        3.    Plaintiffs suffered an injury as a result. .................................................. 7

        4.    Plaintiffs are entitled to treble damages.................................................. 8

    C.    HealthPort was unjustly enriched at Plaintiffs' expense......................... 8

III.  PLAINTIFFS' TRIAL PLAN......................................................................... 10

## TABLE OF AUTHORITIES

**Cases**

*Chiste v. Hotels.com L.P.*,
  756 F. Supp. 2d 382 (S.D.N.Y. 2010)...................................................................7

*Gingras v. Rosette*, No. 5:15-cv-101,
  2016 U.S. Dist. LEXIS 66833 (D. Vt. May 18, 2016)......................................9

*Moore v. Ackerman*,
  24 Misc. 3d 275 (N.Y. Sup. Ct. 2009) ...............................................................8

*New York v. Feldman*,
  210 F. Supp. 2d 294 (S.D.N.Y. 2002)...............................................................6

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
  85 N.Y.2d 20 (1995) ........................................................................................6, 7

*Riordan v. Nationwide Mut. Fire Ins. Co.*,
  977 F.2d 47 (2d Cir. 1992)..................................................................................6

*Samms v. Abrams*, No. 15-cv-2741,
  2016 U.S. Dist. LEXIS 99505 (S.D.N.Y. July 28, 2016) ...............................10

*SQKFC, Inc. v. Bell Atl. TriCon Leasing Corp.*,
  84 F.3d 629 (2d Cir. 1996)..................................................................................6

*Wurtz v. Rawlings Co., LLC*, No. 12-CV-01182,
  2014 U.S. Dist. LEXIS 141869 (E.D.N.Y. Oct. 3, 2014) .................................6

**Statutes**

N.Y. Gen. Bus. Law § 349................................................................................passim

N.Y. Gen. Bus. Law § 349(a) ...................................................................................7

N.Y. Gen. Bus. Law § 349(h) ............................................................................8, 10

N.Y. Pub. Health Law § 18............................................................................1, 3, 4

N.Y. Pub. Health Law § 18(2)(d) ............................................................................5

N.Y. Pub. Health Law § 18(2)(e) ...............................................................3, 4, 5, 9

N.Y. Pub. Health Law § 18(g) ..................................................................................4

**Rules**

N.Y. C.P.L.R. § 5001(a) .........................................................................................10

Plaintiff Tatyana Ruzhinskaya, as Administratrix of the Estate of Marina Rochniak, Deceased (individually, "Plaintiff"), on behalf of herself and all others similarly situated (collectively "Plaintiffs"), by undersigned counsel, respectfully submits the following pre-trial memorandum.

## I.  BACKGROUND

Defendant HealthPort Technologies, LLC ("HealthPort") is a release of information ("ROI") company that is in the business of processing requests for, and copying, medical records on behalf of healthcare providers. (Stip. No. 1.[1]) HealthPort's services are performed both on-site at the healthcare providers' facilities and through a central processing service center in Alpharetta, Georgia that indexes, audits, prints, and distributes copies of medical records to authorized requestors from all of its facilities nationwide.[2] (*Id.*) In 2008, HealthPort acquired ChartOne, Inc. ("ChartOne"), and in so doing replaced ChartOne as the ROI company responsible for fulfilling requests for copies of medical records directed to Beth Israel Medical Center ("Beth Israel"), a hospital located in Manhattan. (Stip. Nos. 5-7.)

Beth Israel does not pay HealthPort a fee for responding to medical records requests. (*See* Stip. No. 16.) Instead, the evidence will show that HealthPort bills requesting consumers directly. Indeed, Plaintiff is a representative of all persons, who, at any time during the Class Period, paid for, or became obligated to pay for, copies of an individual's patient information requested from Beth Israel by a "qualified person" as defined in New York Public Health Law ("PHL") § 18, for which copies HealthPort charged $0.75 per page. (Stip. No. 26.) Section 18

---

[1] References herein to "Stip. No. __" are to the stipulations contained in the parties' [Proposed] Joint Pre-Trial Order ("PTO"), Dkt. #193, at 8-13 (Aug. 11, 2016).

[2] Following the merger of HealthPort with other entities, which occurred after the Class Period in March 2016, HealthPort is now known as CIOX Health. (Stip. No. 3.)

limits the charges for copies of medical records requested by "qualified persons" to the provider's "costs incurred" and sets a $0.75 per page cap on such charges. (Stip. No. 14.)

In October 2010, Plaintiff's mother, Marina Rochniak, commenced a medical malpractice action in New York Supreme Court. (Stip. No. 17.) On December 8, 2012, Ms. Rochniak died, and Plaintiff continued to prosecute the medical malpractice action as the administratrix of her mother's estate. (Stip. No. 18.) On January 15, 2013, Plaintiff executed a retainer agreement with the law firm of Simonson Hess Leibowitz & Goodman, P.C. ("Simonson Hess"), pursuant to which Plaintiff was obligated to reimburse Simonson Hess for its disbursements in the event of a monetary recovery. (Stip. No. 19.)

On or about June 4, 2013, Beth Israel received a written request from Simonson Hess, for Marina Rochniak's medical records (the "Request"). (Stip. No. 20.) In response to the Request, HealthPort forwarded an invoice to Simonson Hess for the processing, copying and delivering of 185 pages of Marina Rochniak's medical records, in which invoice HealthPort charged $0.75 per page. The total amount of the Invoice was $140.75. (Stip. No. 22.) On or about July 8, 2013, Simonson Hess paid the Invoice in full. (Stip. No. 23.)

On or about August 19, 2013, the New York Supreme Court approved the settlement of the medical malpractice action, and thus a monetary recovery for Plaintiff. The court also approved reimbursing Simonson Hess from these settlement funds for itemized disbursements advanced in prosecuting the medical malpractice action. (Stip. No. 24.) The cost of obtaining Ms. Rochniak's Beth Israel medical records through HealthPort was an itemized expense approved for reimbursement by the New York Supreme Court. (Stip. No. 25.) Plaintiff's payment of the foregoing fees and disbursements to Simonson—and thus the estate's injury in fact—is evidenced by the Surrogate's Court's March 24, 2014 Decree settling Ms. Rochniak's

estate, included with the Closing Statement. (*See* PTO at 27, Pl. Ex. 5; *id.* at 32, Def. Ex. 215.)

This lawsuit challenges HealthPort's rate of $0.75 per page for medical records requests made by patients, their estates, and attorneys acting on behalf of patients and their estates—i.e., "qualified persons" under PHL § 18 (Stip. No. 13).[3] Although it has not been able to locate any documents that show how this rate was established, HealthPort (beginning with its predecessors in New York) apparently has charged $0.75 per page since the legislature, in 1991, established that amount as the absolute maximum that a provider may charge for copies of medical records requested by a qualified person. (*See* Stip. No. 14.) Both before and after 1991, however, PHL § 18 separately capped a healthcare provider's "reasonable charge" for copies at "the costs incurred by such provider." PHL § 18(2)(e). Notwithstanding this express limitation, the evidence will show that HealthPort did not attempt to determine the costs incurred for copying medical records in New York—including the costs incurred for responding to requests directed to Beth Israel—until, as a result of this lawsuit, it commissioned a cost study prepared by Gregory Trerotola. Mr. Trerotola is a healthcare consultant whom HealthPort subsequently disclosed as its expert witness in this case.

Unsurprisingly, Mr. Trerotola will opine that the costs incurred for responding to medical records requests on behalf of Beth Israel averaged more than $0.75 per page during the class period. In contrast, Plaintiff's expert, Richard Royston—a forensic accountant and certified fraud examiner—will opine that the demonstrable and reasonable costs that are fairly attributable to responding to such requests averaged less than $0.75 per page. The parties have stipulated to

---

[3] For purposes of this case, HealthPort has produced a spreadsheet compilation of data showing requests for copies of medical records made to Beth Israel by "qualified persons" that were processed and copied by HealthPort from 2011 to 2015. (Stip. No. 48.) Simonson Hess was a "qualified person" within the meaning of PHL § 18. (Stip. No. 21.)

the admissibility of the underlying business records upon which both experts base their opinions. (*See* Stip. Nos. 27-48.)

## II.  PLAINTIFFS' CLAIMS AGAINST HEALTHPORT

At trial, Plaintiffs will prove that HealthPort (1) violated PHL § 18 by overcharging patients and their attorneys for copies of their medical records; (2) violated New York General Business Law ("GBL") § 349 by engaging in unfair and deceptive business practices; and (3) unjustly enriched itself by wrongfully collecting monies from Plaintiffs to which HealthPort was not legally entitled.

### A.  HealthPort violated New York Public Health Law § 18.

Beth Israel is a "health care provider" or "provider" as these terms are used in PHL § 18. (Stip. No. 10.) Because it acts on behalf of Beth Israel, HealthPort is subject to the obligations of a health care provider under New York Public Health Law § 18. (*See* Stip. No. 11.) Under § 18, a healthcare provider may impose a "reasonable charge for all inspections and copies," but the statute limits the charge to "the costs incurred by such provider. . . ." PHL § 18(2)(e). That is, a provider may not profit from making copies of patient medical records. Irrespective of its costs, "the reasonable charge for paper copies shall not exceed seventy-five cents per page." PHL § 18(2)(e). As this Court made clear, § 18 "makes $0.75 a cap on costs; it does not grant authority to a healthcare provider to bill in excess of its actual costs and thereby turn a profit on a patient's copying request." (Dkt. #38, Op. & Order ("MTD Op.") at 17 (Aug. 29, 2014).)

It is undisputed that: (1) the requests for medical records at issue in this case were made by qualified persons,[4] as defined by § 18(g); and (2) HealthPort was acting on behalf of Beth

---

[4] Stip. Nos. 13 & 21.

4

Israel, a health care provider, and was therefore required to comply with PHL § 18(2)(d).[5]  To prevail on their claim that HealthPort violated PHL § 18, Plaintiffs will show that: (3) HealthPort has failed to demonstrate that the reasonable costs fairly attributable to responding to patient requests for medical records were at least $0.75 per page,[6] and, (4) as a result, Plaintiffs suffered damages.

Based upon his review of the documents produced by HealthPort and Beth Israel in response to Plaintiffs' requests for production,[7] Plaintiffs' accounting expert, Mr. Royston, has determined that the demonstrable and reasonable costs reflected therein averaged substantially less than $0.75 per page.  His conservative analysis includes costs incurred by both HealthPort and Beth Israel, even though HealthPort did not "incur" Beth Israel's costs. HealthPort thus overcharged Plaintiffs in violation of § 18.

## B.    HealthPort violated New York General Business Law § 349.

Plaintiffs also claim that HealthPort violated GBL § 349 by engaging in deceptive acts and practices in connection with providing patients with copies of their medical records. Plaintiffs will show that: (1) HealthPort's challenged acts and practices were consumer-oriented; (2) HealthPort's acts or practices were deceptive or misleading in a material way; and (3) Plaintiffs suffered an injury as a result.

---

[5] Stip. Nos. 11 & 12.

[6] Dkt. #151, Op. & Order ("Class Cert. Op."), at 13 (Nov. 9, 2015) ("Therefore, the Court holds, § 18(2)(e) allows providers to charge—up to $0.75 per page—for all demonstrable and reasonable costs fairly attributable to responding to patient requests for medical records."). HealthPort misstates the standard when it omits the requirement that costs must be "fairly attributable to responding to patient requests for medical records." *Compare* PTO at 4-5 ("Defendant's Summary of Claims and Defenses to Be Tried"), *with* Class Cert. Op. at 13.

[7] The evidence will show that Plaintiffs requested, among other things, documents sufficient to identify all of the demonstrable and reasonable costs incurred in responding to document requests directed to Beth Israel by qualified persons during the class period, for which HealthPort charged $0.75 per page.

Specifically, HealthPort never disclosed to consumers that HealthPort's actual costs were less than $0.75 per page. In fact, until this litigation, HealthPort never bothered to determine its actual costs—another fact it did not disclose—but rather charged Plaintiffs the maximum rate allowable, $0.75. Without this information—known solely by HealthPort—a reasonable consumer would be misled into paying more than the allowable charge under the law, allowing HealthPort to secure a profit at Plaintiffs' expense.

### 1.   *HealthPort's challenged acts or practices were consumer-oriented.*

To show consumer-oriented conduct Plaintiffs must "demonstrate that the acts or practices have a broader impact on consumers at large." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995). Thus, a one-time transaction such as a private breach of contract is not actionable under § 349. *Id.* at 25. "'Consumer-oriented' has been defined in this Circuit as 'conduct that potentially affects similarly situated consumers.'" *Wurtz v. Rawlings Co., LLC*, No. 12-CV-01182, 2014 U.S. Dist. LEXIS 141869, *17 (E.D.N.Y. Oct. 3, 2014) (quoting *SQKFC, Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 636 (2d Cir. 1996)). "Based on this standard, courts have found sufficient allegations of injury to the public interest where plaintiffs plead repeated acts of deception directed at a broad group of individuals." *Id.* at *18 (quoting *New York v. Feldman*, 210 F. Supp. 2d 294, 301 (S.D.N.Y. 2002) (collecting cases)); *see, e.g.*, *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 51-53 (2d Cir. 1992) (plaintiffs satisfied consumer-oriented requirement of GBL § 349 by presenting evidence to prove that defendant insurance company engaged in similar deceptive practices against other policyholders).

Here, patient requests for medical records—whether made by the patient herself or by her attorney on her behalf—were consumer-oriented rather than business-to-business transactions.

### 2. *HealthPort's acts or practices were deceptive or misleading.*

New York has adopted "an objective definition of deceptive acts and practices, whether representations or omissions, limited to those likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego*, 85 N.Y.2d at 25; *see e.g., Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406 (S.D.N.Y. 2010) (nondisclosure of fact that amount of tax collected was more than the amount that would be charged is material information to a consumer and a materially deceptive act under § 349).

Whether HealthPort disclosed its charges in an itemized statement to Plaintiffs—as HealthPort argues—is irrelevant to Plaintiffs' allegations regarding HealthPort's deceptive practices. Namely, HealthPort failed to disclose that it had never calculated its costs, and that its costs were less than $0.75, all the while HealthPort was charging the maximum amount under the statute and reaping a profit. As this Court previously concluded, "[t]hat defendants disclosed in advance their intention to charge $0.75 per page, or that plaintiffs 'voluntarily agreed' to pay this figure, does not preclude a claim under Section 349(a), where defendants allegedly failed to disclose that their actual costs were below that figure." (MTD Op. at 20-21.)

### 3. *Plaintiffs suffered an injury as a result.*

HealthPort continues to maintain that Plaintiff's costs for copies of medical records were reimbursed and that she therefore cannot prove an injury.[8] This Court has already rejected this argument. As this Court ruled, "those settlement proceeds belonged to Ruzhinskaya, and the contractually required use of that money to reimburse Simonson Hess reduced the amount of the settlement available to her . . . This monetary harm is a classic injury in fact." (Dkt. #152, Op. & Order ("Sanctions Order"), at 9 (Nov. 19, 2015).)  Simply put, Plaintiff was injured by

---

[8] PTO at 7. This is the subject of one of Plaintiffs' motions *in limine*.

overpaying for copies of her mother's medical records. For the same reason, all Plaintiffs in the Class—which is limited to persons who paid or are obligated to pay for copies—were necessarily injured by the amount of any overcharge. (Dkt. #166, Op. & Order, at 5 (Dec. 17, 2015).)

### 4. *Plaintiffs are entitled to treble damages.*

This Court may "increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant *willfully or knowingly* violated [§ 349]." GBL § 349(h) (emphasis added). The plain language of the statute requires showing only a willful or knowing violation, *id.*, not the higher standard for punitive damages generally that HealthPort suggests.[9] Although Plaintiffs would be entitled to pursue punitive damages generally, Plaintiffs have not chosen to do so. Instead, Plaintiffs confine their claim to treble damages under GBL § 349(h).

The evidence will show that HealthPort willfully and knowingly failed to disclose that it blithely ignored the "costs incurred" cap set forth in PHL § 18 in favor of charging the maximum rate of $0.75 per page without regard to its costs. *See Moore v. Ackerman*, 24 Misc. 3d 275, 284 (N.Y. Sup. Ct. 2009) ("[T]he statute clearly does not establish $0.75 per page as the reasonable cost of copying."). Thus, Plaintiffs are entitled to treble damages under Section 349.

### C. HealthPort was unjustly enriched at Plaintiffs' expense.

In their third cause of action, Plaintiffs bring a claim of unjust enrichment. Plaintiffs will show that: (1) HealthPort received a benefit when it overcharged Plaintiffs for copies of patients' medical records; (2) Plaintiffs' payments enriched HealthPort by allowing it to profit at Plaintiffs' expense; and (3) circumstances are such that in equity and good conscience HealthPort should return the money to Plaintiffs.

---

[9] *See* PTO at 7.

In addition to being an alternative to the legal remedies available under PHL § 18 and
GBL § 349, Plaintiffs seek to recover from HealthPort the amount of *Beth Israel*'s costs that
HealthPort collected from Plaintiffs but which HealthPort did not incur. The plain meaning of
PHL § 18 limits HealthPort to charging only for the "provider's" costs. *See* PHL § 18(2)(e)
(provider may charge only for copies "not exceeding the costs incurred by *such* provider")
(emphasis added).[10] Here, HealthPort stands in the shoes of the provider. (Class Cert. Op. at 30
("HealthPort effectively stands in the shoes of around 500 New York providers who have
delegated to it the responsibility for responding to patient records requests."); Stip. No. 11.) The
evidence will show that Beth Israel never charged HealthPort for any costs incurred by Beth
Israel in processing patient information requests, and Healthport never paid Beth Israel for such
costs.  It would be manifestly unjust for HealthPort to retain monies intended to offset costs that
HealthPort did not incur.

 Although HealthPort seeks to avoid a claim for unjust enrichment by arguing that a
contract exists that governs the same subject matter,[11] any purported contract here does not
govern the subject matter at issue, namely whether HealthPort charged more than it was entitled
to. Moreover, an unjust enrichment claim may survive an invalid contract. *See, e.g.*, *Gingras v.
Rosette*, No. 5:15-cv-101, 2016 U.S. Dist. LEXIS 66833 (D. Vt. May 18, 2016) (unjust
enrichment claim not foreclosed when alleged agreements are not valid because they are
unlawful).  As this Court has recognized, moreover, "paying HealthPort's per-page charge was
the sole means by which persons who, like Ruzhinskaya, sought such records could obtain

---

[10] If HealthPort is not deemed to be a "provider" under § 18, then it had no statutory basis
whatsoever to charge Plaintiffs for copies of its medical records. (*See* Stip. Nos. 10 & 11.) Only
the provider may charge Plaintiffs for copies. PHL § 18(2)(e) ("*provider* may impose a
reasonable charge . . . not exceeding the costs incurred by such *provider*") (emphases added).
[11] PTO at 8.

them." (Sanctions Order at 7-8.) It reflected the "practical reality that no lower price was available." (*Id.* at 8.) Equitable principles thus weigh in favor of precluding HealthPort from benefitting financially from overcharging Plaintiffs.[12]

## III.  PLAINTIFFS' TRIAL PLAN

With this background in mind, Plaintiffs propose the following trial plan:

*First*, the jury will determine common liability issues and the aggregate amount of class-wide damages (i.e., the per-page amount of any overcharge multiplied by the number of pages billed and paid at $0.75 per page), exclusive of statutory damages, interest and trebling.

*Second*, if the jury renders a verdict in favor of Plaintiffs, the Court would determine whether HealthPort willfully or knowingly violated § 349 and whether Plaintiffs are entitled to trebling of damages. *See* GBL § 349(h) ("The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section."); *Samms v. Abrams*, No. 15-cv-2741, 2016 U.S. Dist. LEXIS 99505, *8-*10 (S.D.N.Y. July 28, 2016) ("Court concludes that it may award treble damages of up to $1,000, based on its finding of [defendant's] willfulness and knowledge.").  The Court would also determine the amount of prejudgment interest to be awarded under CPLR § 5001(a).

*Third*, the parties then would confer regarding, and present to the Court, a notice and a claims process—to be paid for by HealthPort—to identify individual members of the Class. Through the claims process, all HealthPort outstanding invoices with the Class would be reduced to reflect the appropriate charge based upon HealthPort's actual costs incurred, as determined by

---

[12] Plaintiffs do not claim they are entitled to a double recovery and have crafted a proposed jury instruction to address this issue.

the jury's verdict. Class members would be issued refunds for paid invoices based upon the greater of (1) the amount of overpayment—i.e., the difference between HealthPort's actual cost per page as determined by the jury and $0.75 charged—or (2) statutory damages of $50 pursuant to GBL § 349. In addition, if the Court has found that HealthPort acted willfully or knowingly in violation of GBL § 349, then individual Class members' refunds would be trebled by an amount not to exceed $1,000.

Dated: September 2, 2016                           Respectfully submitted,

By: */s/ Mathew P. Jasinski*
    William H. Narwold
    Mathew P. Jasinski
    Michael J. Pendell
    Laura W. Ray
    MOTLEY RICE LLC
    20 Church St., 17th Floor
    Hartford, CT 06103
    (860) 882-1681
    (860) 882-1682 (fax)
    bnarwold@motleyrice.com
    mjasinski@motleyrice.com
    mpendell@motleyrice.com
    lray@motleyrice.com

    *Class Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that September 2, 2016, a copy of the foregoing Pre-Trial Memorandum was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

 /s/ Mathew P. Jasinski
Mathew P. Jasinski