**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TATYANA RUZHINSKAYA, as Administratrix of the Estate of MARINA ROCHNIAK, Deceased, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HEALTHPORT TECHNOLOGIES, LLC,<br><br>Defendant. | Case No.: 1:14-cv-02921 (PAE)<br><br>ECF Case<br><br>Electronically Filed<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO PRECLUDE TESTIMONY OF BRYAN HIRSCH** |

William H. Narwold
Mathew P. Jasinski
Michael J. Pendell
Laura W. Ray
**MOTLEY RICE LLC**
20 Church St., 17th Floor
Hartford, CT 06103
(860) 882-1681
(860) 882-1682 (fax)

*New York Office*:
600 Third Ave., Ste. 2101
New York, NY 10016

**TABLE OF CONTENTS**


I. INTRODUCTION .......... 1

II. BACKGROUND .......... 1

III. LEGAL STANDARD .......... 3

IV. ARGUMENT .......... 4

A. Mr. Hirsch Should Be Precluded From Testifying That Mr. Royston Failed To Follow Professional Standards. .......... 4

1. Mr. Hirsch is not qualified to opine regarding the adherence to professional standards. .......... 4

2. Mr. Hirsch's criticisms of Mr. Royston are nothing more than red-herrings. .......... 6

a. Mr. Hirsch's opinions do not impugn Mr. Royston's competence. .......... 6

b. Mr. Hirsch cannot show that Mr. Royston did not perform his analysis with due professional care. .......... 8

c. Mr. Hirsch's disagreement with Mr. Royston's conclusion is not a basis for arguing that Mr. Royston failed to obtain sufficient relevant data. .......... 9

B. Mr. Hirsch should be precluded from opining about HealthPort's costs. .......... 10

1. Mr. Hirsch did not examine HealthPort's or Beth Israel's cost data. .......... 10

2. Mr. Hirsch should be precluded from opining on this Court's opinion and whether Mr. Royston complied with it. .......... 11

3. Mr. Hirsch's opinion should be excluded as unreliable because it relies on faulty assumptions, fails to consider necessary factors and his methodology is unduly biased. .......... 13

C. Mr. Hirsch Should Be Precluded From Testifying Before The Jury Because This Court's Ruling on Defendant's *Daubert* Motion Will Render Mr. Hirsch's Testimony Unnecessary. .......... 15

1. Mr. Hirsch's opinions are irrelevant to the issues for trial. .......... 15

2. The prejudicial impact of Mr. Hirsch's testimony would outweigh its relevance. .......... 17

V. CONCLUSION .......... 18

# TABLE OF AUTHORITIES

## Cases

*Astra Aktiebolag v. Andrx Pharms., Inc.*, 222 F. Supp. 2d 423 (S.D.N.Y. 2002) ..... 3, 13

*Campbell v. Metropolitan Prop. & Cas. Ins. Co.*, 239 F.3d 179 (2d Cir. 2001) ..... 15

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) ..... passim

*Densberger v. United Techs. Corp.*, 297 F.3d 66 (2d Cir. 2002) ..... 12

*General Electric Co. v. Joiner*, 522 U.S. 136 (1997) ..... 13

*In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d 531 (S.D.N.Y. 2004) ..... 17

*Jones v. Midland Funding, LLC*, 616 F. Supp. 2d 224 (D. Conn. 2009) ..... 11, 12

*Kidder, Peabody & Co. v. IAG Int'l Acceptance Grp. N.V.*, 14 F. Supp. 2d 391 (S.D.N.Y. 1998) ..... 9, 12

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) ..... 13

*Lightfoot v. Union Carbide Corp*., No. 98-7166, 175 F.3d 1008 (Table), 1999 U.S. App. LEXIS 3329 (2d Cir. Mar. 1, 1999) ..... 13

*Nimely v. City of New York*, 414 F.3d 381 (2d Cir. 2005) ..... 16, 17

*Rieger v. Orlor, Inc.*, 427 F. Supp. 2d 99 (D. Conn. 2006) ..... 17

*Rose v. Truck Ctrs., Inc*., No. 07 CV 3196, 2009 U.S. Dist. LEXIS 50646 (N.D. Ohio June 17, 2009) ..... 16

*Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33 (S.D.N.Y. 2016) ..... 12

*United States v. Bilzerian,* 926 F.2d 1285 (2d Cir. 1991) ..... 12

*United States v. Samara*, 643 F.2d 701 (10th Cir. 1981) ..... 16

## Statutes

N.Y. Gen. Bus. Law § 349 ..... 2

N.Y. Pub. Health Law § 18 .......... 1, 11
N.Y. Pub. Health Law § 18(2)(d) .......... 1
N.Y. Pub. Health Law § 18(2)(e) .......... 1, 11

**Rules**

Fed. R. Civ. P. 26(a)(2)(ii) .......... 5
Fed. R. Evid. 401 .......... 15
Fed. R. Evid. 403 .......... 17, 18
Fed. R. Evid. 702 .......... 3, 15, 16, 17

**Treatises**

2-403 Weinstein's Federal Evidence § 403.04[1][b] (2013) .......... 17
2-403 Weinstein's Federal Evidence § 403.05[1] (2013) .......... 17

**Regulations**

45 C.F.R. § 164.524(c)(4) .......... 7

## I. INTRODUCTION

Both Plaintiff Tatyana Ruzhinskaya, as Administratrix of the Estate of Marina Rochniak, on behalf of herself and all the members of the Class (collectively, "Plaintiffs") and HealthPort Technologies, LLC ("HealthPort") have disclosed an expert witness to opine on the overarching issue in this lawsuit, namely the amount of "costs incurred" to respond to requests for medical records directed to Beth Israel Medical Center ("Beth Israel"). HealthPort also has disclosed another expert witness, Bryan Hirsch, not to opine on any issue in this lawsuit, but rather to attack Plaintiffs' expert on the ground that he failed to follow professional standards promulgated by the American Institute of Certified Public Accountants ("AICPA").

Mr. Hirsch should be precluded from testifying for at least five reasons. First, Mr. Hirsch is not qualified to render such an opinion. Second, his testimony improperly would both opine on questions of law and invade the province of the jury. Third, his opinions are unreliable because they rest upon faulty assumptions, fail to consider necessary factors, and his methodology is unduly biased. Fourth, his opinions are irrelevant to the issues in this lawsuit and would not assist the trier of fact. Fifth, even if this Court finds that Mr. Hirsch's testimony is otherwise admissible, it should be precluded because its probative value is outweighed by its prejudicial impact in that it is unnecessarily cumulative and likely to confuse and distract the jury from the issues presented by this lawsuit.

## II. BACKGROUND

New York Public Health Law ("PHL") § 18 obligates healthcare providers in New York to furnish copies of medical records to "qualified persons" upon request. PHL § 18(2)(d). Section 18 allows a provider to impose a reasonable charge for those copies "not exceeding the costs incurred by such provider." PHL § 18(2)(e). Irrespective of what the provider's actual costs are, the maximum amount the provider can charge is $0.75 per page.

In their operative Second Amended Complaint (Dkt. #39), Plaintiffs claim that HealthPort: (1) violated New York PHL § 18; (2) violated New York General Business Law ("GBL") § 349 and (3) unjustly enriched itself at Plaintiffs' expense. The gravamen of this lawsuit is that HealthPort charged patients and other "qualified persons" $0.75 per page for copies of their medical records without regard to the actual costs of copying them.

Plaintiffs intend to call their expert, accountant Richard Royston, to testify, *inter alia*, about the cost data provided by HealthPort and Beth Israel, his computation of various costs reported therein, and his analysis of those costs as they relate to responding to requests for medical records. (Dkt. #193, [Proposed] Joint Pre-Trial Order ("PTO"), at 14 (Aug. 11, 2016.).) HealthPort intends to call as an expert a healthcare management consultant, Gregory Trerotola, to testify "on the cost incurred per page at Beth Israel . . . to respond to medical records requests." (*Id*. at 16.) Both experts have used the underlying documents to calculate the costs at issue in this case.

In addition, HealthPort has disclosed another expert, accountant Bryan Hirsch, whom HealthPort hired to do one task: "to determine whether Mr. Royston followed professional standards in arriving at his conclusions and opinions." (Hirsch Report at 1; *see also* Hirsch Dep. 30:21-31:4 ("My focus was strictly on Mr. Royston and what he did in his report.").)[1] Mr. Hirsch has not calculated HealthPort's costs; nor has Mr. Hirsch professed to offer an opinion on that subject. (*See* Hirsch Dep. 30:24 ("I did no analysis.").)

Rather, Mr. Hirsch opines that Mr. Royston failed to meet three professional standards promulgated by the AICPA: professional competence, due professional care, and sufficient

[1] Relevant excerpts from the deposition of Bryan I. Hirsch are attached hereto as **Exhibit A**. The Report of Bryan I. Hirsch, without its exhibits ("Hirsch Rep."), is attached hereto as **Exhibit B**.

relevant data. (Hirsch Rep. at 3, 5, & 6.) Defendant's Witness List discloses that HealthPort proffers Mr. Hirsch to testify "on professional accounting standards including relating to litigation support and in performing cost analyses." (PTO at 16.) Notably, the foregoing professional standards say nothing about "performing cost analyses." Indeed, Mr. Hirsch does not actually opine that failing to follow the standards he cites either disqualifies Mr. Royston or renders his opinions unreliable.

## III. LEGAL STANDARD

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the U.S. Supreme Court examined the requirements for expert testimony under Rule of Evidence 702. The Court articulated a two-prong test for such testimony: An expert's testimony (1) must be "relevant to the task at hand" and (2) must "rest[] on a reliable foundation." *Id.* at 597. The proponent of the evidence bears the burden of establishing, by a preponderance of the evidence, that all requirements have been met. *Astra Aktiebolag v. Andrx Pharms., Inc.*, 222 F. Supp. 2d 423, 487 (S.D.N.Y. 2002).

## IV. ARGUMENT

As set forth below, Mr. Hirsch is not qualified to opine that Mr. Royston failed to comply with professional standards. Moreover, his opinions should be excluded because: (1) they improperly offer legal conclusions; (2) they are unreliable; (3) they are not relevant to the issues in the case; and (4) even if Mr. Hirsch's opinions were relevant and otherwise admissible, they should nonetheless be excluded because their prejudicial effect would far outweigh their limited probative value.

### A. Mr. Hirsch Should Be Precluded From Testifying That Mr. Royston Failed To Follow Professional Standards.

#### 1. Mr. Hirsch is not qualified to opine regarding the adherence to professional standards.

Mr. Hirsch is not qualified to opine that Mr. Royston failed to follow professional standards. First, Mr. Hirsch simply does not have the breadth of experience with regard to evaluating compliance with AICPA standards to formulate a reliable opinion as to Mr. Royston's compliance.[2] Although Mr. Hirsch has limited experience assisting in "writing or helping attorneys write *Daubert* challenges," this is the only case in which he has evaluated an expert report solely for its perceived compliance with AICPA standards without doing any analysis of any of the data that were the subject of the expert's analysis.[3] (Hirsch Dep. 62:17-63:3, 177:2-5.)

Second, Mr. Hirsch impermissibly holds Mr. Royston, not to professional standards, but to Mr. Hirsch's personal standards. By way of example, the professional competence standard states that an accountant must "[u]ndertake only those professional services that the member . . .

---

[2] Mr. Hirsch's curriculum vitae is attached hereto as **Exhibit C**.

[3] Of the nine other cases that Mr. Hirsch lists on his "Litigation Engagements in Which Bryan Hirsch has testified as an Expert Witness," one, *Linger Longer v. TAW*, also involved reviewing the opposing expert's report. (*See* **Exhibit D** attached hereto.) None indicate that a review for compliance with professional standards was performed. (*Id.*)

can reasonably expect to complete with professional competence." (AICPA Code of Professional Conduct, Statements on Standards of Consulting Services, Sec. 100.06; Hirsch Rep. at 2.) Mr. Hirsch claims Mr. Royston did not meet that standard because he "failed to demonstrate how he gained sufficient competence."[4] (Hirsch Rep. at 3.) When asked what authority requires Mr. Royston to *document* efforts to gain sufficient competency, Mr. Hirsch testified that his authority for that proposition stems from his own experience.[5]

But the subjective belief of one accountant about his professional organization's standards is insufficient to satisfy the knowledge prong of *Daubert. See Daubert*, 509 U.S. at 590 ("[T]he word 'knowledge' connotes more than subjective belief or unsupported speculation."). Notably, Mr. Hirsch does not rely upon the practice of the accounting industry in general or what other accountants do when confronted with the type of cost analysis presented in this case. Nor does Mr. Hirsch cite to any authority or professional standard that says that Mr. Royston, a forensic accountant and fraud examiner, must *demonstrate* his competence to review and analyze financial and other accounting documents for purposes of assessing the costs reflected therein. Thus, when Mr. Hirsch interprets the professional standard to require *Mr. Royston* to provide

---

[4] Tellingly, Mr. Hirsch does not go so far as to assert that Mr. Royston was not sufficiently competent.

[5] *See, e.g.*, Hirsch Dep. 106:16-107:12 ("Q. Implicit in your answer is that there's some requirement that he needs to put in his report that he looked at the AICPA Audit and Accounting Guide. What is your authority for that? . . . A. . . . [F]rom my understanding at ***what I have done in previous litigation engagements*** is where you are listing information considered in preparation of the report, if you are—if you gained understanding to an industry which you did not have experience, by listing it in there in that section [Exhibit C] of your report . . . . .") (emphasis added).

Exhibit C is a reference to Exhibit C to Mr. Royston's Expert Report in which he lists "[f]acts and data considered in the course of preparing this report" to comply with Rule 26(a)(2)(ii) of the Federal Rules of Civil Procedure. As counsel for HealthPort stated, "Exhibit C is a report, is a list of documents that's required by a rule, and the rule doesn't say to include documents that you found to be irrelevant. It says documents that you considered." (Hirsch Dep. 102:3-8.)

"authoritative guidance," or otherwise demonstrate his competence, Mr. Hirsch's opinion is nothing more than subjective belief or unsupported speculation that does not actually speak to Mr. Royston's competence at all.

### 2. Mr. Hirsch's criticisms of Mr. Royston are nothing more than red-herrings.

Mr. Hirsch criticizes Mr. Royston for purportedly violating three professional standards: (1) professional competence; (2) due professional care; and (3) sufficient relevant data. (Hirsch Rep. at 2, 5, 6.) Because Mr. Royston complied with each of these standards, Mr. Hirsch's opinions must be excluded as unreliable.

#### *a. Mr. Hirsch's opinions do not impugn Mr. Royston's competence.*

Mr. Hirsch opines that "Mr. Royston failed to demonstrate how he gained sufficient competence . . . to fully understand the industries for which he was opining." (Hirsch Rep. at 3.) Mr. Hirsch gave, as examples, three sources that Mr. Royston could have reviewed to gain competence: the AICPA Audit and Accounting Guide Health Care Entities ("Audit Guide"), the Code of Federal Regulations ("CFR") and an industry profile by First Research. (Hirsch Rep. at 3-4.) None of these sources is relevant to the inquiry asked of Mr. Royston.

First, the Audit Guide is for accountants preparing financial statements or auditing a healthcare entity.[6] (Hirsch Dep. 116:23-117:15.) Mr. Royston was not asked to do that. Rather, Mr. Royston was tasked with attempting to discern the reasonable and demonstrable costs associated with responding to medical records requests from the business records of two entities—HealthPort and Beth Israel—that had never previously undertaken that analysis themselves.

---

[6] The Audit Guide "has been developed by the AICPA . . . to assist management in the preparation of their financial statements" and "to assist auditors in performing and reporting on their audit engagements." (*See* excerpt from Audit Guide, attached hereto as **Exhibit E**.)

As Mr. Hirsch recognized, moreover, compliance with AICPA standards is not *necessary* to rendering an opinion in this lawsuit. Indeed, Mr. Hirsch testified that he would not hold Mr. Trerotola—who is not a CPA but who renders an opinion on behalf of HealthPort in this case—to the same standard. (*See* Hirsch Dep. 147:16-18 ("[Mr. Trerotola is] not a member of the AICPA, so these standards don't necessarily apply to him.").) It makes no sense to hold to different standard two experts undertaking the same analysis and opining on the same topics in the same case merely because one—here, Mr. Royston—is more qualified than the other.

Second, Mr. Hirsch criticizes Mr. Royston for not looking to the CFR for guidance as to how to account for indirect costs. (Hirsch Rep. at 4 ("[T]he Federal government also provides guidance on indirect costs, what is allowable, and how it is to be allocated. . . . Mr. Royston did not consider this in his analysis on any level.").) But interpreting the CFR is a legal analysis outside the bounds of expert testimony. *See infra* at Part IV(B)(2).

At any rate, the only conceivably relevant CFR provision is 45 C.F.R. § 164.524(c)(4), which limits the costs allowed under HIPAA.[7] Indeed, Mr. Hirsch could not specify a more relevant provision within the CFR that Mr. Royston should have reviewed. (Hirsch Dep. at 92:12-15.) Plaintiffs had argued that this Court should look to § 164.524(c)(4) for guidance as to which costs should be included in determining the costs incurred under PHL § 18 (*see* Pl. Mem. of Law in Supp. of Class Cert., Dkt. #82, at 3-7), but this Court rejected that position, concluding that HIPAA is irrelevant (*see* Dkt. #151, Op. & Order ("Court Order"), at 13 (Nov. 9, 2015)). Plainly, Mr. Royston was not required to seek guidance from this provision.

Third, Mr. Hirsch criticizes Mr. Royston for not reviewing the First Research industry profile, but Mr. Royston did consult a comparable industry profile service, IBIS World. He did

[7] HIPPA stands for Health Insurance Portability and Accountability Act of 1996.

not include it in his list of considered materials, however, because he found the information irrelevant.[8] (Royston Rebuttal Report at 10 (Jun. 10, 2016).[9])

Despite being questioned repeatedly, Mr. Hirsch was unable to provide any examples of relevant sources that Mr. Royston purportedly failed to consult.[10] Significantly, as Mr. Hirsch agreed, there simply is no accounting pronouncement on how to calculate costs incurred in copying medical records.[11] (Hirsch Dep. 89:24-91:3.) Mr. Royston's failure to look at an accounting authority that doesn't exist does not demonstrate a lack of competence to perform the calculation he was asked to do.

**b. *Mr. Hirsch cannot show that Mr. Royston did not perform his analysis with due professional care.***

The second standard states that CPAs should "[e]xercise due professional care in the performance of professional services." (Hirsch Rep. at 2.) Mr. Hirsch opines that Mr. Royston failed to meet the due professional care standard because his "failure to include indirect costs for Beth Israel *contradicts the order of the Court*." (*Id*. at 5 (emphasis added).) As discussed below, *see infra* Part IV(B)(2), the interpretation of this Court's opinion is not a proper subject on which

[8] Hirsch testified, "I didn't say he had to follow it, and I just said that he didn't even consider it." (Hirsch Dep. 96:5-6.) Mr. Hirsch's complaint is that Mr. Royston "didn't even acknowledge the existence." (*Id*. 96:10-11.) Mr. Royston's purported failure to list documents he reviewed but ultimately did not consider relevant has no bearing on his competence to perform the task asked of him.

[9] HealthPort will be filing a *Daubert* motion against Mr. Royston on September 2, 2016, contemporaneously with the filing of this motion. Mr. Royston's reports are being filed under seal by HealthPort in conjunction with its *Daubert* motion, which Plaintiffs will oppose.

[10] Mr. Hirsch testified, "I am not testifying to what the cost per page is, so I didn't necessarily go out and do an exhaustive search and try to, you know, understand with complete authority what the industries were and what would be applicable and not." (Hirsch Dep. 103:3-9; *See generally* Hirsch Dep. 87:11-92:15.)

[11] "Q. Is there anything in [the Audit Guide] that talks about calculating costs incurred [in] copying medical records? . . . A. There wouldn't be a specific topic within the Audit and Accounting Guide for that." (Hirsch Dep. 119:7-12.)

Mr. Hirsch is qualified to opine. *Kidder, Peabody & Co. v. IAG Int'l Acceptance Grp. N.V.*, 14 F. Supp. 2d 391, 402 (S.D.N.Y. 1998). Mr. Hirsch is not a legal scholar and has never attended law school. (Hirsch Dep. 8:1-4.) This Court is perfectly capable of interpreting its own opinion without his assistance.

**c. *Mr. Hirsch's disagreement with Mr. Royston's conclusion is not a basis for arguing that Mr. Royston failed to obtain sufficient relevant data.***

The third standard Mr. Hirsch cites requires the practitioner to "[o]btain sufficient relevant data to afford a reasonable basis for conclusion[s] or recommendations in relation to any professional services performed." (Hirsch Rep. at 2.) Here, Mr. Hirsch opines that Mr. Royston did not meet this standard because Mr. Royston concluded that certain indirect costs and bad debt are not "costs incurred" in responding to requests for medical records. (*Id*. at 6-7.)

But there's no dispute that Mr. Royston had all of the financial data provided by HealthPort and Beth Israel. In this regard, Mr. Royston's decision not to include certain costs does not reflect any failure to review data, but rather his opinion that those costs were not "incurred" in responding to medical records requests. Thus, Mr. Hirsch's opinion that Mr. Royston somehow lacked sufficient data is nothing but a different way of saying that Mr. Hirsch disagrees with Mr. Royston's opinions regarding those data. If supporting cost documentation wasn't produced—by either HealthPort or Beth Israel—then the proper conclusion is not that Mr. Royston failed to obtain sufficient relevant data, but rather that the costs purportedly undergirding HealthPort's rate of $0.75 per page are not "***demonstrable*** and reasonable costs ***fairly attributable*** to responding to patient requests for medical records," as required by this Court's decision. (Court Order at 13 (emphasis added).)

**B. Mr. Hirsch should be precluded from opining about HealthPort's costs.**

**1. Mr. Hirsch did not examine HealthPort's or Beth Israel's cost data.**

On its Witness List, HealthPort states that Mr. Hirsch will testify about "professional accounting standards including relating to litigation support and in *performing cost analyses*." (PTO at 16 (emphasis added).) But Mr. Hirsch did not examine or otherwise analyze any of the cost data provided by HealthPort and Beth Israel. Mr. Hirsch testified that: (1) he has no opinion on HealthPort's costs incurred in copying medical records (Hirsch Dep. 85:3-7); (2) he has no opinion on the accuracy and reliability of HealthPort's underlying financial data (*id*. 85:8-86:3); and (3) he has no opinion on the accuracy and reliability of the underlying financial data provided by Beth Israel (*id*. 86:4-9). He did no analysis of the underlying financial data provided by either HealthPort or Beth Israel. (*Id*. 30:21-31:4, 86:13-16.)

Mr. Hirsch testified, "I didn't do a study of HealthPort. . . . I have just a general understanding of HealthPort. I did no analysis. I did no study of their systems. I did no study of their cost structure. I did no study of them. My focus was strictly on Mr. Royston and what he did in his report." (*Id*. at 30:21-31:4; *see also id*. at 62:17-22 ("my work did not include any analysis of any of the cost data").) In addition, Mr. Hirsch did not review the underlying documents and cost data considered by both Mr. Royston and Mr. Trerotola. (*Id*. at 124:16-21 (not aware of missing data); 145:2-13 (no knowledge as to whether Beth Israel produced any document with financial data showing indirect costs for medical records for 2011, 2012, 2013 and 2015).)

Thus, having done no analysis and having incomplete knowledge about what financial information is in the record, Mr. Hirsch is wholly unqualified to criticize Mr. Royston regarding his conclusions as to what costs HealthPort can (or cannot) demonstrate are reasonable and fairly attributable to copying medical records.

**2. Mr. Hirsch should be precluded from opining on this Court's opinion and whether Mr. Royston complied with it.**

Undergirding Mr. Hirsch's opinion that Mr. Royston did not adequately follow the three professional standards discussed above is Mr. Hirsch's opinion that Mr. Royston did not "follow the Court's Order" regarding the costs allowable under § 18. (Hirsch Rep. at 4-7; *see, e.g.,* Hirsch Dep. 61:6-8 ("I don't believe that Mr. Royston's [*sic*] followed the judge's or the court's order."); 126:7-11 ("What I'm opining is that things that appear to fit within the order of the judge were not included or considered by Mr. Royston. So to that extent, . . . I am offering an opinion.").) Mr. Hirsch's opinions thus should be excluded for the additional reason that they improperly rest upon his own interpretations of this Court's Order rather than the standard set forth therein.

By way of background, in its class certification opinion, this Court articulated the following standard of what constitutes an allowable cost under § 18: "the Court holds, § 18(2)(e) allows providers to charge—up to 75 cents per page—for all demonstrable and reasonable costs fairly attributable to responding to patient requests for medical records." (Dkt. #151, Op. & Order ("Class Cert. Op."), at 13 (Nov. 9, 2015).) Mr. Royston expressly followed this standard. (Royston Report at 4 (May 2, 2016).) Mr. Hirsch is free to disagree with Mr. Royston's conclusions that certain costs—namely Beth Israel's indirect costs and bad debt—are not "demonstrable and reasonable costs fairly attributable to responding to patient requests for medical records." But that disagreement does not entitle him to opine that Mr. Royston did not follow the standard set forth by this Court.

The meaning of this Court's Order is a legal issue and not the proper subject of expert testimony. *See*, *e.g.*, *Jones v. Midland Funding, LLC*, 616 F. Supp. 2d 224, 227 (D. Conn. 2009) ("expert should not be permitted to express an opinion that is merely an interpretation of a . . .

statute or regulations, as that is the sole province of the Court"). Questions of law are the subject of the court's instructions to the jury and are not the proper subject of expert testimony. *Kidder*, 14 F. Supp. 2d at 402. Accordingly, statements embodying legal conclusions exceed the permissible scope of opinion testimony under the Federal Rules of Evidence. *Densberger v. United Techs. Corp.*, 297 F.3d 66, 74 (2d Cir. 2002) ("It is a well-established rule in this Circuit that experts are not permitted to present testimony in the form of legal conclusions." (internal quotation marks omitted)); *see also Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 48 (S.D.N.Y. 2016). When Mr. Hirsch opines that certain types of costs are allowable under § 18, or fall within this Court's Order, those are legal conclusions for this Court.

In this regard, moreover, Mr. Hirsch's testimony would not assist the jury. Just as irrelevant expert testimony is "non-helpful," "[l]egal conclusions as to ultimate issues generally do not assist the trier of fact because they simply tell the trier of fact what result to reach." *Jones*, 616 F. Supp. 2d at 227 (internal quotation marks omitted); *United States v. Bilzerian,* 926 F.2d 1285, 1294 (2d Cir. 1991) ("[A]lthough an expert may opine on an issue of fact within the jury's province, he may not give testimony stating ultimate legal conclusions based on those facts."). Likewise, an expert cannot "supplant the role of counsel in making argument at trial, and the role of the jury [in] interpreting the evidence." *Scott*, 315 F.R.D. at 48. Mr. Hirsch's conclusory condemnations of Mr. Royston's actions merely tell the jury what results to reach and impermissibly seek to substitute the expert's judgment for that of the jury. *Kidder*, 14 F. Supp. 2d at 399.

For these reasons, Mr. Hirsch's opinion concerning, and based upon, the meaning of this Court's Order exceeds the bounds of permissible expert testimony and therefore should be excluded.

**3. Mr. Hirsch's opinion should be excluded as unreliable because it relies on faulty assumptions, fails to consider necessary factors and his methodology is unduly biased.**

Even where an expert witness is satisfactorily qualified, the court must ensure that the expert testimony being offered is "not only relevant, but reliable," *Daubert*, 509 U.S. at 589 (i.e., trustworthy, *see id.* at 590 n.9). But "the test of reliability is 'flexible,' and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). Exclusion is proper, for example, when "the expert failed to consider necessary factors or . . . his analysis rests on faulty assumptions . . . ." *Lightfoot v. Union Carbide Corp*., No. 98-7166, 175 F.3d 1008 (Table), 1999 U.S. App. LEXIS 3329, at *7 (2d Cir. Mar. 1, 1999), *cert. denied*, 528 U.S. 817 (1999). Mr. Hirsch's opinion is unreliable for at least two reasons.

First, the evidence in this case does not support Mr. Hirsch's conclusions. When Mr. Hirsch rendered his opinion he failed to consider whether documents were produced that demonstrated whether the costs were reasonable and fairly attributable to the costs of copying medical records. "Even if an expert's methodologies satisfy the *Daubert* standard for admissibility, the court must still determine whether that evidence actually supports the expert's conclusions." *Astra*, 222 F. Supp. 2d at 488 (citing *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

For example, because Mr. Hirsch erroneously assumed that documents existed to show what Beth Israel's actual indirect costs were during the Class period, he opines that indirect costs for medical records "should have also been considered for 2011, 2012, 2013 and 2015," and that "Mr. Royston provides no authoritative guidance that specifically identifies these indirect costs as excludable, which demonstrates a lack of understanding of the Court's Order and a lack of competence in this matter." (Hirsch Rep. at 4, ¶ 2.) But neither HealthPort nor Beth Israel

produced any documents relating to Beth Israel's indirect costs for those years, and Beth Israel produced only a one-page excerpt from portions of its Medicare cost report for 2014, which failed to break down relevant ROI costs. (*See* Royston Rebuttal Report at 14 (Jun. 10, 2016).) When asked whether he knew whether Beth Israel produced any document with financial data regarding indirect costs for medical records for 2011, 2012, 2013 and 2015, Mr. Hirsch's answer was "I don't know." (Hirsch Dep. 144:22-145:13.) Mr. Hirsch failed to consider necessary factors when he (1) failed to conduct any analysis of the data; (2) failed to consider whether documents existed; and (3) failed to consider whether those documents that did exist demonstrated a reasonable cost fairly attributable to copying medical records.

Second, Mr. Hirsch's methodology is suspect because he looked at only selected categories of costs and failed to consider costs that should be excluded, even though he was aware of them. (*Id.* at 128:2-4 ("There are certain costs that I refer to in my report. Those are the only costs that I'm specifically opining to.").) His report utterly fails to consider where, being conservative, Mr. Royston included HealthPort costs such as legal and advisory fees, even if they were not directly related to copying medical records. Mr. Hirsch testified: "HealthPort would have fixed costs that are ***not necessarily related*** to, you know, [to] . . . a request for medical records or not, and [Mr. Royston] included those indirect costs into the cost per page, but didn't follow the same logic for Beth Israel."[12] (*Id.* at 157:18-158:5 (emphasis added).) By critiquing Mr. Royston's decision to add these costs in HealthPort's favor but not crediting Mr. Royston's inclusion of such costs when criticizing Mr. Royston's decision to exclude other costs, however, Mr. Hirsch's methodology is not only biased but does not help the trier of fact decide the

[12] Mr. Royston included these HealthPort costs because, in contrast to Beth Israel, its entire business is devoted to the release of information process.

overarching issue in this case: what is HealthPort's demonstrated average cost per page fairly attributable to copying medical records?

### C. Mr. Hirsch Should Be Precluded From Testifying Before The Jury Because This Court's Ruling on Defendant's *Daubert* Motion Will Render Mr. Hirsch's Testimony Unnecessary.

Mr. Hirsch's testimony should be excluded from trial as it is not relevant to the issues in this lawsuit and its prejudicial impact outweighs its probative value.

#### 1. Mr. Hirsch's opinions are irrelevant to the issues for trial.

"Rule 702 . . . requires that the evidence or testimony assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591 (citations and internal quotation marks omitted). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id.* Thus, "in assessing admissibility, the trial court must determine whether the proffered expert testimony is relevant, *i.e.*, whether it 'has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence,' Fed. R. Evid. 401 . . . ." *Campbell v. Metropolitan Prop. & Cas. Ins. Co*., 239 F.3d 179, 184 (2d Cir. 2001).

In the present case, Mr. Hirsch does not offer a competing viewpoint to Mr. Royston—Mr. Trerotola does that—but rather solely purports to challenge Mr. Royston's qualifications and methodology. In this regard, however, his testimony would add nothing probative of the overarching issue at trial: whether HealthPort's costs incurred in copying patient medical records exceeded $0.75 per page. Mr. Hirsch did not calculate the amount of additional costs that he believes should be included. (*Id*. at 164:16-23.) Without cost information, his testimony does not assist the trier of fact in determining the average cost per page to copy medical records. Because his opinion will not help the trier of fact to understand the evidence or to determine a fact in issue as Rule 702 requires, it is inadmissible.

Instead, Mr. Hirsch's attack on Mr. Royston will be decided by *the Court* in the context of HealthPort's motion to exclude Mr. Royston's testimony and opinion pursuant to Rule 702 and *Daubert*. *See, e.g.*, *Rose v. Truck Ctrs., Inc.*, No. 07 CV 3196, 2009 U.S. Dist. LEXIS 50646, at *6-*7 (N.D. Ohio June 17, 2009) ("The reliability of expert testimony is not a question for the jury but a question for the Court in its 'gatekeeper' function."). If this Court denies Defendant's *Daubert* motion—as it should—then it follows that Mr. Royston's qualifications and methodology are sound.[13] The question for the jury is simply what weight to give Mr. Royston's testimony. In this regard, however, the weight and credibility of a witness's testimony is exclusively for the determination by the jury. *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005).

For example, in *United States v. Samara*, 643 F.2d 701 (10th Cir. 1981), the Tenth Circuit upheld a trial court's refusal to allow an exhibit into evidence prepared by an expert witness in a tax evasion case that showed that certain items should be deleted from the government's evidence of gross receipts. *Id*. at 705. The expert witness's proffered explanation for deletion of those items was witness credibility. *Id*. The Court excluded the exhibit and its supporting testimony on the ground that "credibility was for determination by the jury, not by a defense witness." *Id*. Here, like the expert witness in *Samara*, Mr. Hirsch seeks to give reasons why Mr. Royston's opinions should not be given any credence by the trier of fact. This he cannot do. Mr. Royston is subject to cross examination by HealthPort's counsel at trial. HealthPort cannot however, use Mr. Hirsch as a means to "usurp the exclusive function of the jury to weigh the evidence and determine credibility." *Id*.

---

[13] If the Court grants the motion, then the issues Mr. Hirsch raises are moot.

### 2. The prejudicial impact of Mr. Hirsch's testimony would outweigh its relevance.

Even if this Court finds Mr. Hirsch's testimony relevant and otherwise admissible under Rule of Evidence 702, "the court should exclude expert testimony if its prejudicial effect substantially outweighs its relevance." *Rieger v. Orlor, Inc.*, 427 F. Supp. 2d 99, 103 (D. Conn. 2006) (internal quotation marks omitted). Specifically, Federal Rule of Evidence 403 provides:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Fed. R. Evid. 403. "Unfairness may be found in any form of evidence that may cause a jury to base its decision on something other than the established propositions in the case." 2-403 Weinstein's Federal Evidence § 403.04[1][b] (2013); *see also id.* § 403.05[1] ("courts often exclude evidence because it might raise a side issue that would distract the jury from the important issues"). Indeed, "the Supreme Court . . . has noted the uniquely important role that Rule 403 has to play in a district court's scrutiny of expert testimony, given the unique weight such evidence may have in a jury's deliberations." *Nimely*, 414 F.3d at 397 (citing *Daubert*, 509 U.S. at 595).

Here, Mr. Hirsch's testimony will likely confuse the jury by conflating the professional standards of the AICPA with the legal standards applicable in this case. *See, e.g.*, *In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d 531, 545 (S.D.N.Y. 2004) (excluding expert opinions and rhetoric concerning ethics likely to confuse trier as alternative and improper grounds for decision). This is not a case about accounting standards, and Mr. Hirsch's testimony will do nothing more than distract the jury from the real issue in the case. Allowing Mr. Hirsch to testify creates the risk that the jury will put too much weight upon Mr. Hirsch's testimony as to which costs should be included—as a purported matter of law—without properly weighing the other

factors involved, namely, whether the costs contained in the underlying business records are demonstrable, reasonable, and fairly attributable to the costs of making copies of medical records.

In this regard, moreover, Mr. Hirsch's testimony is merely duplicative of—and attempts to bootstrap—Mr. Trerotola's opinions, which do include the same types of costs that both Mr. Trerotola and Mr. Hirsch claim that Mr. Royston improperly omitted. *See* Fed. R. Evid. 403 (this court may exclude relevant evidence if its probative value is substantially outweighed by a danger of needlessly presenting cumulative evidence).

## V. CONCLUSION

For all of the foregoing reasons, Plaintiffs' Motion to Exclude the Testimony of Bryan Hirsch should be granted.

Dated: September 2, 2016

Respectfully submitted,

By: *<u>/s/ Mathew P. Jasinski</u>*

William H. Narwold
Mathew P. Jasinski
Michael J. Pendell
Laura W. Ray
MOTLEY RICE LLC
20 Church St., 17th Floor
Hartford, CT 06103
(860) 882-1681
(860) 882-1682 (fax)
bnarwold@motleyrice.com
mjasinski@motleyrice.com
mpendell@motleyrice.com
lray@motleyrice.com

*Class Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that September 2, 2016, a copy of the foregoing Memorandum of Law in Support of Plaintiffs' Motion to Exclude the Testimony of Bryan Hirsch was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

*/s/ Mathew P. Jasinski*
Mathew P. Jasinski