UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TATYANA RUZHINSKAYA, as Administratrix of the Estate of MARINA ROCHNIAK, Deceased, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HEALTHPORT TECHNOLOGIES, LLC,<br><br>Defendant. | Case No.:  1:14-cv-02921 (PAE)<br><br>ECF Case<br><br>**REDACTED PUBLIC VERSION** |

## DEFENDANT HEALTHPORT TECHNOLOGIES, LLC'S
## PRE-TRIAL MEMORANDUM OF LAW

THOMPSON HINE LLP

Seth A. Litman (admitted *pro hac vice*)
Rebecca Brazzano
335 Madison Avenue
New York, New York  10017
(212) 344-5680

-and-

LYNCH DASKAL EMERY LLP
James R. Lynch
Scott R. Emery
137 West 25th Street, Fifth Floor
New York, New York  10001
(212) 302-2400

*Attorneys for HealthPort Technologies, LLC*

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

LAW AND ANALYSIS ............................................................................................................... 1

I.      Alleged Violation of NY Public Health Law Section 18 ..................................................... 1

        A.      HealthPort's Average Costs Incurred Over The Class Period Exceeded 75¢ Per Page. ..................................................................................................................... 1

        B.      Ms. Ruzhinskaya Is Estopped From Claiming That HealthPort Overcharged Her. .................................................................................................................... 3

II.     Alleged Deceptive Trade Practices Claim ........................................................................ 5

        A.      Plaintiffs' Transactions With HealthPort Were Not Consumer-Oriented. ............. 5

        B.      Plaintiffs Cannot Establish That HealthPort's Conduct Was Deceptive Or Misleading .............................................................................................................. 7

        C.      Plaintiffs Were Not Injured To The Extent Settlements Covered Their Costs ....................................................................................................................... 8

        D.      Treble Damages ...................................................................................................... 9

III.    Plaintiffs' Unjust Enrichment Claims Fail Under All Circumstances. ............................. 10

CONCLUSION ............................................................................................................................ 12

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Bildstein v. MasterCard Int'l Inc.*,
    329 F. Supp. 2d 410 (S.D.N.Y. 2004) ..................................................................................7

*Casillo v. St. John's Episcopal Hosp.*,
    151 Misc. 2d 420, 580 N.Y.S.2d 992 (N.Y. Sup. Ct. Suffolk Cnty. 1992) ...............................1

*Corcino v. Filstein*,
    32 A.D.3d 201, 820 N.Y.S.2d 220 (N.Y. App. Div. 1st Dep't 2015) .......................................7

*Cruz v. NYNEX Information Resources*
    263 A.D.2d 285, 703 N.Y.S.2d 103 (N.Y. App. Div. 1st Dep't 2000) .....................................6

*DeRosa v. Nat'l Envelope Corp.*,
    595 F.3d 99 (2d Cir. 2010) ...................................................................................................3

*Donahue v. Ferolito, Vultaggio & Sons*,
    13 A.D.3d 77, 786 N.Y.S.2d 153 (N.Y. App. Div. 1st Dep't 2004) .........................................8

*Kaye v. Grossman*,
    202 F.3d 611 (2d Cir. 2000) ................................................................................................11

*Krigsfeld v. Feldman*,
    115 A.D.3d 712, 982 N.Y.S.2d 487 (N.Y. App. Div. 2d Dep't 2014) ...................................11

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    No. 11 MDL 2262 (NRB), 2015 U.S. Dist. LEXIS 107225 (S.D.N.Y. Aug. 4,
    2015) .....................................................................................................................................5

*McCracken v. Verisma Sys., Inc.*,
    131 F. Supp. 3d 38 (W.D.N.Y. 2015) ....................................................................................7

*Medisim Ltd. v. BestMed LLC*,
    910 F. Supp. 2d 591 (S.D.N.Y. 2012) ...................................................................................7

*Mintz v. Transworld Sys.*,
    No. 14-CV-7044 (JS)(SIL), 2016 U.S. Dist. LEXIS 65103 (E.D.N.Y. May 16,
    2016), *adopted by and dismissed by*, *Mintz v. Transworld Sys.*, 14-CV-7044
    (JS)(SIL), 2016 U.S. Dist. LEXIS 107071 (E.D.N.Y. Aug. 12, 2016) .................................3, 4

*New Hampshire v. Maine*,
    532 U.S. 742 (2001) .............................................................................................................3

*Novartis Corp. v. F.T.C.*,
   223 F.3d 783 (D.C. Cir. 2000) ...................................................................................................7

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
   85 N.Y.2d 20 (1995) ...................................................................................................................5

*Pellegrini v. Richmond Cnty. Ambulance Serv., Inc.*,
   48 A.D.3d 436, 851 N.Y.S.2d 268 (N.Y. App. Div. 2d Dep't 2008) .......................................9

*Rogers v. Sterling Foster & Co.*,
   222 F. Supp. 2d 216 (E.D.N.Y. 2002) .......................................................................................6

*Sands v. Ticketmaster-New York*,
   207 A.D.2d 687, 616 N.Y.S.2d 362 (N.Y. App. Div. 1st Dep't 1994) .................................7, 8

*Sheth v. N.Y. Life Ins. Co.*,
   273 A.D.2d 72, 709 N.Y.S.2d 74 (App. Div. 1st Dep't 2000) ..................................................5

*Small v. Lorillard Tobacco Co.*,
   94 N.Y.2d 43 (1999) ...................................................................................................................8

*Sparaco v. Lawler, Matusky, Skelly Eng'rs, LLP*,
   313 F. Supp. 2d 247 (S.D.N.Y. 2004) .....................................................................................12

*Woss, LLC v. 218 Eckford, LLC*,
   102 A.D.3d 860, 959 N.Y.S.2d 218 (2d Dep't 2013) .............................................................11

*Zaretsky v. New Century Mortg. Corp.*,
   No. CV08-378 (DRH) (WDW), 2011 U.S. Dist. LEXIS 152617 (E.D.N.Y. Oct. 3, 2011) ................................................................................................................12

*Zuckerman v. BMG Direct Mktg.*,
   290 A.D.2d 330, 737 N.Y.S.2d 14 (N.Y. App. Div. 1st Dep't 2002) .......................................8

**Statutes**

Fed. Trade Comm'n Act § 5 ...............................................................................................................7

New York Gen. Bus. Law
   § 349.................................................................................................................................. *passim*
   § 349(h)..........................................................................................................................................9

New York Pub. Health Law
   § 18.................................................................................................................................... *passim*
   § 18(2)(d) .....................................................................................................................................1
   § 18(2)(e) .....................................................................................................................................1

# INTRODUCTION

Plaintiffs' three claims are all based on the core allegation that HealthPort Technologies, LLC ("HealthPort") improperly charged Plaintiffs 75¢ per page to provide copies of medical records. Thus, all of Plaintiffs' claims fail unless they can establish that HealthPort's costs incurred to reproduce medical records at Beth Israel Medical Center ("Beth Israel") between March 12, 2011 and December 31, 2015 (the class period) were below 75¢ per page. Based on the applicable standards and law relating to Plaintiffs' claims for violation of New York Public Health Law Section 18, violation of General Business Law Section 349, and unjust enrichment, both the class and Ms. Ruzhinskaya specifically are unlikely to succeed on their claims at trial.

# LAW AND ANALYSIS

## I. Alleged Violation of NY Public Health Law Section 18

Plaintiffs' primary claim, based on New York Public Health Law Section 18, fails because HealthPort properly charged 75¢ per page (the statutory maximum) to respond to Plaintiffs' medical records requests. Section 18 requires medical providers to furnish medical records upon receipt of a proper written request by an authorized person. N.Y. C.L.S. Pub. Health § 18(2)(d). In exchange, the medical provider "may impose a reasonable charge for all inspections and copies, not exceeding the costs incurred by such provider," with such charge not to exceed 75¢ per page. *Id.* § 18(2)(e).[1]

### A. HealthPort's Average Costs Incurred Over The Class Period Exceeded 75¢ Per Page.

Section 18 does not define what qualifies as a "reasonable charge" for the provision of copies of patient medical records. This Court has already rejected a narrow construction of

---

[1] HealthPort continues to argue, as it did in its motions to dismiss, that no private cause of action exists here because it complied with the limits set forth New York Public Health Law Section 18, and it is entitled to immunity. *Casillo v. St. John's Episcopal Hospital*, 151 Misc. 2d 420, 580 N.Y.S.2d 992 (N.Y. Sup. Ct. Suffolk Cnty. 1992); N.Y. C.L.S. Pub. Health § 18(12).

1

"costs incurred," and held that costs incurred includes "*all* demonstrable and reasonable costs incurred in providing its services to a requester," including both direct and indirect costs. Nov. 9, 2015 Order at 10-13 (emphasis added) (Dkt. 151).

The parties and the Court agree that HealthPort cannot calculate the actual cost per page for each individual request. What remains undecided, however, is the period of time over which the average, costs incurred should be determined. Since the statute provides no guidance on a time frame, the approach that makes the most sense here is to take the average over the entire class period, March 12, 2011 through December 31, 2015. Plaintiffs brought this as a unified class action and have asserted that their claims rise and fall in unison due to overlapping common issues. Thus, the only way to fairly consider whether the class as a whole has been injured is to average the costs out over the entire class period.[2]

Applying the statute's terms, the Court's specific statement that indirect costs are part of the actual costs calculation, and averaging the costs over the entire class period, HealthPort's expert, Gregory Trerotola, determined that during the class period, the average cost per page to respond to medical requests at Beth Israel well exceeded 75¢ per page. Therefore, by charging 75¢ per page, HealthPort fully complied with Section 18.

Plaintiffs may suggest that the Court should use annual averages. That is an arbitrary approach that would raise significant concerns regarding whether a class action could be maintained. A year-by-year analysis, makes no more sense than does a multi-year, month-by-month, quarter-by-quarter, or biannual analysis. Rather, their position is driven by the belief that an annual average gives Plaintiffs a greater likelihood that for some individual year, the average costs incurred fell below 75¢ per page. However, an annual averaging approach would only

---

[2] In its November 9, 2015 Order, the Court acknowledges that this is the proper reading, "The statutory text simply does not provide any basis for artificially limiting the scope of 'costs incurred' to a particular moment in time, to a specific list of costs, or to costs termed 'direct' as opposed to 'indirect.'" Nov. 9, 2015 Order at 11 (Dkt. 151).

2

mean that each year's average applies to class members falling within the annual average (*i.e.*, the average, costs incurred for 2012 apply only to class members who made records requests in 2012, but cannot serve as the basis for liability for class members who made records requests in 2011, 2013, 2014, or 2015). At a minimum, there would have to be subclasses for each year, and class representatives for each subclass. Ms. Ruzhinskaya would only be able to represent class members who made records requests in 2013, requiring identification of class representatives for each subclass.

Plaintiffs cannot have their proverbial cake and eat it, too. Either this is a class action, and costs incurred are averaged over the entire class period, or the class should be decertified.

### B. Ms. Ruzhinskaya Is Estopped From Claiming That HealthPort Overcharged Her.

Ms. Ruzhinskaya is precluded from arguing that HealthPort overcharged her because she took the position during the underlying medical malpractice action that the costs she incurred, including those from HealthPort, were reasonable. Judicial estoppel precludes parties from successfully taking a position in one proceeding and then changing positions later to gain an advantage. *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010) (when "'a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.'" (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001))). Thus, the doctrine applies where the party against whom it was asserted advanced an inconsistent position in a prior proceeding that was adopted by the court "in some manner." *Mintz v. Transworld Sys.*, No. 14-CV-7044 (JS)(SIL), 2016 U.S. Dist. LEXIS 65103, at *17 (E.D.N.Y. May 16, 2016) (internal

3

quotation marks and citation omitted), *adopted by and dismissed by*, *Mintz v. Transworld Sys.*, 14-CV-7044 (JS)(SIL), 2016 U.S. Dist. LEXIS 107071 (E.D.N.Y. Aug. 12, 2016).

Both elements of judicial estoppel are met here because Plaintiff is taking a position in this proceeding that contradicts the position she successfully took in the underlying medical malpractice action. The records requests (and charges therefore) that form the basis of Plaintiff's claims were requested in the medical malpractice action. Plaintiff's counsel in the medical malpractice action requested the records from Beth Israel, offering to pay 75¢ per page. In order to finalize the settlement in that case, Plaintiff signed an affidavit specifically stating that she "approve[d] the attorney's fees and disbursements requested therein as fair and reasonable under the circumstances, in view of the services rendered and the results achieved." *See* Declaration of Seth Litman in Support of HealthPort Technologies, LLC's Pre-Trial Memorandum of Law, dated September 2, 2016 ("Litman Decl.") Ex. A at RUZ0315 ¶ 13. Plaintiff's counsel in the malpractice action included her affidavit in her own sworn affidavit seeking approval of the settlement payment to Plaintiff in the malpractice action. *Id*. Ex. A at RUZ0348 (which includes a disbursement to HealthPort for $140.00).

At the time Plaintiff submitted the affidavit, it was in her interest to support the reasonableness of the claims so that the Court would allow the settlement, of which she was a beneficiary. The court in the malpractice action approved the settlement and expenses, specifically relying on Plaintiff's and her counsel's affidavits. *See id.* Ex. A at RUZ0308.

Now, however, Plaintiff is taking the opposite position in order to claim a violation of Section 18. Indeed, here, Plaintiff claims that HealthPort's 75¢ per page charge is unreasonable. Plaintiff cannot argue that her change in position was in good faith. Thus, Plaintiff is judicially estopped from claiming that HealthPort's charge of 75¢ per page is unreasonable.

## II.     Alleged Deceptive Trade Practices Claim

General Business Law Section 349, which prohibits deceptive business practices towards individual consumers, is inapplicable here. Plaintiffs bear the burden of proving three elements: (1) the act or practice of charging Plaintiff 75¢ was a consumer-oriented transaction; (2) HealthPort's engaged in conduct that was deceptive or misleading in a material way; and (3) Plaintiffs have been injured by reason thereof. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25-26 (1995).

Plaintiff's claim against HealthPort is based upon the contention that HealthPort violated New York Public Health Law Section 18. As noted above, HealthPort properly charged 75¢ per page in accordance with Section 18. Accordingly, Plaintiff has no claim under General Business Law Section 349. However, the Section 349 claim also fails because: (1) the transactions were not consumer-oriented; (2) HealthPort's conduct was not deceptive or misleading; (3) Plaintiff was not injured as she was fully reimbursed for her out-of-pocket expenses; and (4) Plaintiff is not entitled to treble damages because HealthPort did not act willfully.

### A.     Plaintiffs' Transactions With HealthPort Were Not Consumer-Oriented.

Section 349 applies to consumer-oriented transactions. As the court explained in *In re LIBOR-Based Financial Instruments Antitrust Litigation*, No. 11 MDL 2262 (NRB), 2015 U.S. Dist. LEXIS 107225, at *333-34 (S.D.N.Y. Aug. 4, 2015), "[t]he test is not whether a particular plaintiff is an individual consumer . . . . Rather, the test is whether the acts or practices have a broader impact on consumers at large, where a consumer is one who purchases goods and services for personal, family or household use. Business-to-business transactions and private contract disputes unique to the parties do not typically give rise to section 349 claims." (internal citations & quotation marks omitted).

New York courts have interpreted this test as requiring the transaction at issue to be for related to purchasing goods or services for personal, family or household use. *See Sheth v. N.Y. Life Ins. Co.*, 273 A.D.2d 72, 73, 709 N.Y.S.2d 74, 75 (N.Y. App. Div. 1st Dep't 2000) (practice targeting prospective insurance agents not consumer-oriented transaction); *Rogers v. Sterling Foster & Co.*, 222 F. Supp. 2d 216, 286 (E.D.N.Y. 2002) (purchasing securities as an investment is not a consumer-oriented transaction). As the court explained in *Cruz v. NYNEX Information Resources*,

> In New York law, the term "consumer" is consistently associated with an individual or natural person who purchases goods, services or property primarily for "personal, family or household purposes." The Practice Commentaries accompanying General Business Law article 22-A leave no doubt as to the statute's primary concern with the consumer.

263 A.D.2d 285, 289-90, 703 N.Y.S.2d 103, 106 (N.Y. App. Div. 1st Dep't 2000) (internal citations omitted). In *Cruz*, the court held that the transaction fell outside of Section 349's scope because, even though it involved a repeat practice and a small amount of damages, the transactions involved business advertisements in the yellow pages and thus, were not consumer-oriented. *Id.*

Plaintiffs cannot meet the "consumer oriented" standard for two reasons: (1) the records requests were business-to-business transactions between equally sophisticated parties with knowledge of the law (*i.e.*, HealthPort and experienced counsel); and (2) they were transactions in support of that counsel's litigation efforts, which is not a personal, family or household use. For Ms. Ruzhinskaya in particular, the transaction was not for a consumer purpose as she was not pursing a lawsuit on her own behalf. Rather, she pursued the litigation as the Executrix of her mother's estate. In addition, it is not yet clear whether the attorney or the patient will be the class member; that depends upon who paid for the medical records. To the extent the records

6

were requested by and paid for by counsel, the transaction is business to business and purely commercial.[3]  Accordingly, transactions between counsel and HealthPort for the purpose of getting medical records to bring and/or support litigation are not consumer-oriented transactions protected by General Business Law Section 349.[4]

### B. Plaintiffs Cannot Establish That HealthPort's Conduct Was Deceptive Or Misleading.

Plaintiffs also cannot establish that HealthPort engaged in materially deceptive or misleading conduct as required under Section 349.  *Corcino v. Filstein*, 32 A.D.3d 201, 202, 820 N.Y.S.2d 220, 221 (N.Y. App. Div. 1st Dep't 2015).  The materiality standard in Section 349 is "modeled after Section 5 of the Federal Trade Commission Act" ("FTCA").  *Bildstein v. MasterCard Int'l Inc.*, 329 F. Supp. 2d 410, 414 (S.D.N.Y. 2004).  A deceptive act or practice is a material misrepresentation or omission likely to mislead a reasonable consumer acting reasonably under the circumstances (*Medisim Ltd. v. BestMed LLC*, 910 F. Supp. 2d 591, 607-08 (S.D.N.Y. 2012)), and which is likely to impact their choice of product.  *Novartis Corp. v. F.T.C.*, 223 F.3d 783, 786-87 (D.C. Cir. 2000).  Thus, Plaintiffs must show that whatever they claim was misleading, had it been disclosed, would have impacted their decision.

There is no dispute that HealthPort disclosed its charges in an itemized statement to Plaintiff's counsel prior to receiving payment.  A challenged business practices does not violate the prohibition against deceptive business practices under General Business Law Section 349, if the practices are fully disclosed prior to the transaction.  *Sands v. Ticketmaster-New York*, 207

---

[3] Thus, *McCracken v. Verisma Sys., Inc.*, 131 F. Supp. 3d 38, 46-47 (W.D.N.Y. 2015) is distinguishable.  There, the case was decided at the motion to dismiss stage, requiring the allegations to be taken as true, and each of the named plaintiffs alleged that they were obligated to reimburse their attorneys for the costs of the medical records which was found to be enough to overcome a motion to dismiss.

[4] To the extent some class members sought medical records for a consumer purpose, as opposed to a litigation purpose, the class should be de-certified as to the General Business Law Section 349 claim because Ms. Ruzhinskaya would not be typical or representative of those class members.

A.D.2d 687, 616 N.Y.S.2d 362 (N.Y. App. Div. 1st Dep't 1994); *Zuckerman v. BMG Direct Mktg.*, 290 A.D.2d 330, 330-31, 737 N.Y.S.2d 14 (N.Y. App. Div. 1st Dep't 2002).  Thus, Plaintiffs could not have been misled or deceived by HealthPort's charges.

Nor can there be a claim that HealthPort omitted material information in such a way that Plaintiffs were misled or deceived.  Plaintiffs have not shown how any further disclosure by HealthPort or Beth Israel would have changed their conduct here, nor have they shown that the statute requires such a disclosure.  For example, Ms. Ruzhinskaya's <u>attorneys</u> specifically offered to pay 75¢ per page for the copies with full knowledge of the applicable law regarding permissible costs to be charged for medical records reproduction services.  And, Ms. Ruzhinskaya's attorneys paid 75¢ per page for medical records from Ms. Rochniak's other treating physicians.  To claim now that they were misled by HealthPort – or would have taken some other course of conduct had HealthPort disclosed additional information that was not required to be disclosed – would be disingenuous and violates the spirit and purpose of Section 349.

      **C.**      **Plaintiffs Were Not Injured To The Extent Settlements Covered Their Costs.**

Plaintiffs must also prove that they suffered an injury that was the result of HealthPort's alleged deceptive act or practice.  However, the claimed deception cannot itself be the only injury.  *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 55-57 (1999) (rejecting theory of deception as both act and injury); *Donahue v. Ferolito, Vultaggio & Sons*, 13 A.D.3d 77, 78, 786 N.Y.S.2d 153 (N.Y. App. Div. 1st Dep't 2004) (same).

Here, Plaintiffs cannot prove any actual injury.  Ms. Ruzhinskaya was fully reimbursed for the costs of her litigation, including the cost to obtain medical records, as part of the settlement of her underlying case, and thus, did not incur any out-of-pocket expense or loss.  This is typical of any settlement; costs are taken into account when reaching settlement and, thus,

the plaintiff does not ultimately pay her own money towards personal injury litigation. Thus, although costs may be advanced by a lawyer or even a litigant, once a settlement is reached the advanced costs are reimbursed and the Plaintiff has no out of pocket loss. Allowing Plaintiffs to recover based on the alleged act of charging 75¢ per page, despite a lack of any monetary loss, would impermissibly turn the alleged deception into both the act and injury.[5]

### D. Treble Damages

General Business Law Section 349 only permits an award of treble damages in an amount up to $1,000 for each violation if the allegedly deceiving party acted *willfully or knowingly*. N.Y. Gen. Bus. L. § 349(h). The willful or knowing standard, which imposes a form of punitive damages, requires conduct evidencing a high degree of moral culpability, conduct that is so flagrant as to transcend mere carelessness, or conduct constituting willful or wanton negligence or recklessness. *Pellegrini v. Richmond Cnty. Ambulance Serv., Inc.*, 48 A.D.3d 436, 437, 851 N.Y.S.2d 268 (N.Y. App. Div. 2d Dep't 2008).

Plaintiffs cannot satisfy the standard for treble damages. The evidence from both HealthPort and Plaintiffs shows that HealthPort, even if incorrect, reasonably interpreted and applied New York Business Law Section 18. For example:

- HealthPort's analysis shows that its costs incurred exceeded 75¢ per page for the class period and therefore it appropriately charged the full cap amount per page during the class period;

- HealthPort did not charge more than 75¢ per page;

- Other providers responding to Plaintiff's request for medical records also charged 75¢ per page; and

- Plaintiff's attorneys interpreted Section 18 to allow 75¢ per page, demonstrated by their affirmative offer to pay 75¢ per page.

---

[5] Again, to the extent other class members were not fully reimbursed for their out-of-pocket costs through settlement or otherwise, Ms. Ruzhinskaya's claim is atypical and subject to personal defenses, which raises the possibility of decertification.

9

Further, at the time HealthPort charged class members for their medical records, there was no clear guidance in New York law indicating that HealthPort's policy of charging 75¢ was unlawful. Indeed, there was no clear directive as to: what costs were encompassed within the concept of costs incurred; whether averaging was allowed under Section 18 (and, if so, the time period over which average, actual costs were to be determined); or whether costs incurred should be determined facility-by-facility, statewide, or through some other geographic limitation. HealthPort should not be held to have "knowingly" or "willfully" violated the statute when that violation depends on previously unresolved interpretations of a statute – some interpretations of which (the correct interpretations) – demonstrate compliance with rather than violation of the statute.

Moreover, according to Plaintiffs' expert Richard Royston, when indirect costs are included, ███████████████████████████████████████████████████████████████████████████████████████. *See* Defendant Healthport Technologies, LLC's Memorandum in Support of Its Motion to Exclude the Testimony of Richard Royston at 1. There is simply no evidence that HealthPort knowingly imposed an unlawful charge on qualified representatives. To the contrary, HealthPort's business depends upon it ensuring full compliance with the law.

### III. Plaintiffs' Unjust Enrichment Claims Fail Under All Circumstances.

Plaintiffs cannot succeed on their unjust enrichment claim under any set of facts in this case. The unjust enrichment claim appears to be a catchall claim, alleging that HealthPort was unjustly enriched to the extent it charged more than 75¢ per page for responding to their medical records requests. There are three elements Plaintiffs must prove to establish their unjust enrichment claim: (1) HealthPort received a direct benefit from the Plaintiffs; (2) the benefit was

10

received at the Plaintiffs' expense; and (3) equity and good conscience require HealthPort to return the benefit.  *See Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000).

First, because HealthPort properly charged qualified representatives 75¢ per page to provide copies of medical records, Plaintiffs' claim fails as a matter of law because HealthPort was not *unjustly* enriched.  Rather, it fully complied with the law.

Second, a claim for unjust enrichment will not stand if there is a contract governing the same subject matter as the unjust enrichment claim.  *Krigsfeld v. Feldman*, 115 A.D.3d 712, 713, 982 N.Y.S.2d 487 (N.Y. App. Div. 2d Dep't 2014); *Woss, LLC v. 218 Eckford, LLC*, 102 A.D.3d 860, 862, 959 N.Y.S.2d 218, 221 (N.Y. App. Div. 2d Dep't 2013).  Therefore, if the parties entered into a contract, there is no unjust enrichment claim.

HealthPort contends (as an affirmative defense on which it carries the burden of proof) that it had a contract with the Plaintiffs' attorneys because:

- Counsel and HealthPort each had legal capacity to contract;
- Counsel and HealthPort mutually assented to the terms of the contract; and
- There was consideration exchanged between HealthPort and counsel to support the contract (*i.e.*, HealthPort provided document in exchange for payment).

This is particularly true of Ms. Ruzhinskaya.  Her attorneys (Simonson Hess Leibowitz & Goodman, P.C. ("Simonson Hess")) requested copies of medical records from Beth Israel on Ms. Ruzhinskaya's behalf, and stated in such request that the firm would be "glad to forward [their] check in the amount of $.75 per page."  Litman Decl. Ex. B.  HealthPort then sent Simonson Hess an invoice disclosing the fee associated with processing and copying the medical records.  Simonson Hess paid the invoice without objection.  HealthPort accepted the payment, processed the request for medical records, and provided the medical records to Simonson Hess.  Because the contract for the provision and copying of Ms. Rochniak's medical records at a rate of 75¢ per

page and Plaintiffs' third count for unjust enrichment concern the same subject matter, Plaintiffs' claim for unjust enrichment fails.

Finally, even if Plaintiffs established a violation of New York Public Health Law Section 18, Plaintiffs would then be fully reimbursed for any injury they can establish, rendering an additional award of damages based on unjust enrichment an impermissible, duplicate recovery. *Sparaco v. Lawler, Matusky, Skelly Eng'rs, LLP*, 313 F. Supp. 2d 247, 250 (S.D.N.Y. 2004) ("A plaintiff is not entitled to recover twice for the same injury."); *see also Zaretsky v. New Century Mortg. Corp.*, No. CV08-378 (DRH) (WDW), 2011 U.S. Dist. LEXIS 152617, at *7 (E.D.N.Y. Oct. 3, 2011) (no double recovery). Plaintiffs are not entitled to such a windfall particularly where, as here, they incurred no out-of-pocket expense to obtain their medical records.

## **CONCLUSION**

For the foregoing reasons, Plaintiff will not succeed on her claims at trial.

Dated: September 2, 2016
       New York, New York

> Respectfully submitted,
> THOMPSON HINE LLP
>
> By: /s/ Seth A. Litman
>     Seth A. Litman (admitted *pro hac vice*)
>     (seth.litman@thompsonhine.com)
>     Rebecca Brazzano
>     (rebecca.brazzano@thompsonhine.com)
>
> 335 Madison Avenue
> New York, New York  10017
> (212) 344-5680
>
> -and-

                        LYNCH DASKAL EMERY LLP
                        James R. Lynch
                        Scott R. Emery
                        137 West 25th Street, Fifth Floor
                        New York, New York  10001
                        (212) 302-2400

                        *Attorneys for HealthPort Technologies, LLC*

831418

## **CERTIFICATE OF SERVICE**

I certify that on September 15, 2016, a true and correct copy of the foregoing Redacted Public Version was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/EMF system.

                                            */s/Seth A. Litman*
                                            Seth A. Litman