**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

TATYANA RUZHINSKAYA, as Administratrix
of the Estate of MARINA ROCHNIAK, Deceased,
on behalf of herself and all others similarly
situated,

               Plaintiff,

     v.

HEALTHPORT TECHNOLOGIES, LLC,

           Defendant.

Case No.: 1:14-cv-02921 (PAE)

ECF Case

Electronically Filed

**PLAINTIFFS' OBJECTIONS TO
DEFENDANT'S PROPOSED JURY
INSTRUCTIONS**

William H. Narwold
Mathew P. Jasinski
Michael J. Pendell
Laura W. Ray
**MOTLEY RICE LLC**
20 Church St., 17th Floor
Hartford, CT 06103
(860) 882-1681
(860) 882-1682 (fax)

*New York Office*:
600 Third Ave., Ste. 2101
New York, NY 10016

# TABLE OF CONTENTS

1.   PARTIES TO THE JUDICIAL PROCESS–JUROR ATTENTIVENESS ...................... 1
2.   ROLE OF THE COURT .................................................................................... 1
3.   ROLE OF THE JURY ....................................................................................... 1
4.   JUROR OATH ................................................................................................. 1
5.   JURY TO DISREGARD COURT'S VIEW ......................................................... 1
6.   JUROR USE OF ELECTRONIC COMMUNICATION TECHNOLOGIES .................. 1
7.   BURDEN OF PROOF ....................................................................................... 2
8.   BURDEN OF PROOF–PREPONDERANCE OF THE EVIDENCE ............................. 3
9.   EVIDENCE: WHAT IS AND IS NOT EVIDENCE .............................................. 3
10.  EVIDENCE: DIRECT AND CIRCUMSTANTIAL ................................................ 3
11.  EVIDENCE: STIPULATIONS OF FACT ............................................................ 3
12.  EVIDENCE: SUMMARIES AND CHARTS ADMITTED AS EVIDENCE .................. 4
13.  EVIDENCE: DEPOSITION TESTIMONY ........................................................... 4
14.  INFERENCES–DEFINED .................................................................................. 5
15.  INFERENCES–EFFECT OF INFERENCE ON BURDEN OF PROOF ........................ 5
16.  CREDIBILITY OF WITNESSES ....................................................................... 5
17.  EXPERT WITNESSES ...................................................................................... 6
18.  CONFLICTING EXPERT WITNESSES TESTIMONY ........................................... 7
19.  CLASS ACTION DEFINITION AND CLASS DEFINITION ................................... 8
20.  NEW YORK PUBLIC HEALTH LAW SECTION 18–GENERAL ............................ 9
21.  NEW YORK PUBLIC HEALTH LAW SECTION 18–ELEMENTS .......................... 10
22.  NEW YORK GENERAL BUSINESS LAW SECTION 349–GENERAL .................... 11
23.  NEW YORK GENERAL BUSINESS LAW SECTION 349–ELEMENTS .................... 11
24.  NEW YORK GENERAL BUSINESS LAW SECTION 349–DECEPTIVE ACT ......... 13
25.  NEW YORK GENERAL BUSINESS LAW SECTION 349–CONSUMER ORIENTED
      ................................................................................................................... 14
26.  NEW YORK GENERAL BUSINESS LAW SECTION 349–INTENT ....................... 15
27.  NEW YORK GENERAL BUSINESS LAW SECTION 349–MATERIALITY
      MISLEADING IN A MATERIAL WAY ............................................................ 16
28.  NEW YORK GENERAL BUSINESS LAW SECTION 349–ACTUAL INJURY ......... 17
29.  NEW YORK GENERAL BUSINESS LAW SECTION 349–DAMAGES .................... 18
30.  UNJUST ENRICHMENT–INTRODUCTION–A VALID CONTRACT BARS UNJUST
      ENRICHMENT CLAIM .................................................................................. 19
31.  CONTRACT–FORMATION ............................................................................. 20
32.  CONTRACT–FORMATION ELEMENTS ........................................................... 21
33.  CONTRACT SUBJECT MATTER ..................................................................... 22
34.  UNJUST ENRICHMENT–INTRODUCTION ....................................................... 22
35.  UNJUST ENRICHMENT–ELEMENTS ............................................................... 23
36.  JUDICIAL ESTOPPEL DOCTRINE ................................................................... 25
37.  VOLUNTARY PAYMENT DOCTRINE ............................................................. 26
38.  EFFECT OF INSTRUCTION AS TO DAMAGES ................................................. 26
39.  JURY DELIBERATIONS ................................................................................. 27

Plaintiff Tatyana Ruzhinskaya, as Administratrix of the Estate of Marina Rochniak (individually, "Plaintiff") and on behalf of the members of the Class (collectively, "Plaintiffs"), respectfully submits the following objections to the requests to charge filed by Defendant HealthPort Technologies, LLC ("HealthPort").[1]

1.    **PARTIES TO THE JUDICIAL PROCESS–JUROR ATTENTIVENESS**[2]

No objection.

2.    **ROLE OF THE COURT**[3]

No objection.

3.    **ROLE OF THE JURY**[4]

No objection.

4.    **JUROR OATH**[5]

No objection.

5.    **JURY TO DISREGARD COURT'S VIEW**[6]

No objection.

6.    **JUROR USE OF ELECTRONIC COMMUNICATION TECHNOLOGIES**[7]

**Objection.** Plaintiffs object to this instruction on the grounds that it varies from the standard instruction and is incomplete because it fails to advise the jury of the reason for barring the use of electronic communications.

---

[1] Dkt. #213, Def.'s Proposed Jury Instructions ("Def.'s Instructions").

[2] Def.'s Instructions at 1.

[3] Def.'s Instructions at 3.

[4] Def.'s Instructions at 4.

[5] Def.'s Instructions at 6.

[6] Def.'s Instructions at 7.

[7] Def.'s Instructions at 9.

**Proposed revisions.** Subject to and without waiving these objections, Plaintiffs propose the following revisions to this instruction:

> During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as a telephone, cell phone, smart phone, iPhone, **Blackberry** or computer, the Internet, any Internet service, or any text or instant messaging service, or any Internet chat room, blog, or website such as Instragram, Facebook, LinkedIn, YouTube or Twitter, to communicate to anyone any information about this case or to conduct any research about this case until after I accept your verdict.  **In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations. I expect you will inform me as soon as you become aware of another juror's violation of these instructions.**
>
> **You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom. Information on the Internet or available through social media might be wrong, incomplete, or inaccurate. You are only permitted to discuss the case with your fellow jurors during deliberations because they have seen and heard the same evidence you have. In our judicial system, it is important that you are not influenced by anything or anyone outside of this courtroom. Otherwise, your decision may be based on information known only by you and not your fellow jurors or the parties in the case. This would unfairly arid adversely impact the judicial process.**

Authority: 3 Kevin F. O'Malley, *et al*., Federal Jury Practice & Instructions § 103:04

(6th ed. 2016)

7.   **BURDEN OF PROOF**[8]

**Objection.** Plaintiffs object to this instruction because its descriptions of the issues—namely, "the issue of (e.g., the Defendant's compliance with the statute)"; "the issue of (e.g., compliance with the statute)"; and "the defense (e.g., compliance by a preponderance of the evidence)"—are vague and ambiguous. Plaintiffs further object because the instruction calls

---

[8] Def.'s Instructions at 10.

2

upon the jury to consider Defendant's affirmative defenses, but no affirmative defenses remain to be tried.

### 8.    BURDEN OF PROOF–PREPONDERANCE OF THE EVIDENCE[9]

**Objection.** Plaintiffs object to this instruction on the ground that the following language in the first paragraph—"Plaintiffs have the burden of proof *on any given issue of proving*" (emphasis added)—is confusing. Plaintiffs, in contrast, have proposed simply to state that they "have the burden of proving all the elements of their claims . . . ." (Dkt. #215, Pls.' Proposed Jury Instructions ("Pls.' Instructions") at 4, Instr. No. 5.) Plaintiffs have no objection to the balance of HealthPort's proposed instruction, which is consistent with their own proposed Instruction No. 5.

### 9.    EVIDENCE: WHAT IS AND IS NOT EVIDENCE[10]

No objection.

### 10.    EVIDENCE: DIRECT AND CIRCUMSTANTIAL[11]

No objection.

### 11.    EVIDENCE: STIPULATIONS OF FACT[12]

**Objection.** Plaintiffs object to this instruction because it does not propose to include a recitation of the parties' stipulations. Plaintiffs further object on the ground that the instruction fails to inform the jury that it must determine the weight or importance to give to the stipulated facts. Absent such an instruction, the jury is likely to assign more weight to stipulated facts— simply because they are agreed-upon—than to the facts that the jury finds on its own.

---

[9] Def.'s Instructions at 12.

[10] Def.'s Instructions at 14.

[11] Def.'s Instructions at 16.

[12] Def.'s Instructions at 18.

**12.**   **EVIDENCE: SUMMARIES AND CHARTS ADMITTED AS EVIDENCE**[13]

No objection.

**13.**   **EVIDENCE: DEPOSITION TESTIMONY**[14]

**Objection.** Plaintiffs object to this instruction because it incorrectly states the law, insofar as it suggests that the jury should give less weight to the deposition testimony of an adverse party, who is present at trial, than it gives to deposition testimony of absent witnesses.

Specifically, Federal Rule of Civil Procedure 32(a)(3) provides that "[a]n adverse party may use for any purpose the deposition of a party or anyone who, when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6) or 31(a)(4)." Under this rule, it is "immaterial that the adversary is available to testify at the trial," 8A Charles Alan Wright, *et al.*, Federal Practice & Procedure § 2145 (3d ed. 2016) (internal quotation marks omitted), but HealthPort's proposed instruction is improperly limited to unavailable witnesses, stating that the deposition testimony "of a witness who, for some reason *is not present to testify*" (emphasis added) should be judged "in the same way as if the witness had been present . . . ."

In contrast, Plaintiffs' proposed instruction properly states that, to the extent that the Court "admitted excerpts of prior testimony at trial"—irrespective of whether the witnesses is available or unavailable—the jury "may consider the prior testimony of a witness according to the same standards [the jury] would use to evaluate the testimony of a witness given here live at trial." (Dkt. #215, Pls.' Proposed Jury Instructions ("Pls.' Instructions") at 7, Instr. No. 6.)

---

[13] Def.'s Instructions at 19.

[14] Def.'s Instructions at 20.

4

14.   **INFERENCES–DEFINED**[15]

**Objection.** Plaintiffs object to this instruction on the ground that the final paragraph is redundant and superfluous. All but the last paragraph of the instruction are drawn from the complete text of 4 Leonard B. Sand, *et al.*, Modern Federal Jury Instructions P 75.01, Instruction 75-1. The final paragraph comes from 3 Kevin F. O'Malley, *et al.*, Federal Jury Practice & Instructions § 104.20 (5th ed. 2000). Including this additional paragraph is confusing in this context because it appears to include additional information but actually restates the same instructions in a different way.

Plaintiffs have no objection to the balance of HealthPort's proposed instruction (i.e., Instruction 75-1 from Sand, *et al.*).

15.   **INFERENCES–EFFECT OF INFERENCE ON BURDEN OF PROOF**[16]

**Objection.** Plaintiffs object to this instruction because it restates and thus emphasizes Plaintiffs' burden of proof in a manner that risks imposing a heightened burden. Indeed, the comment to the standard instruction makes clear that this instruction "is appropriate when the jury *appears confused or may have been misled* into thinking that the mere presence of an inference is enough to mandate a verdict against the party against whom the inference is drawn." Sand, *et al.*, Modern Federal Jury Instructions-Civil P 75.01, Instruction 75-2 comment (emphasis added).

16.   **CREDIBILITY OF WITNESSES**[17]

**Objection.** Plaintiffs object to this instruction because the numerical list undermines the common-sense determination involved in assessing the credibility of each witness. *See* Sand,

---

[15] Def.'s Instructions at 21.
[16] Def.'s Instructions at 23.
[17] Def.'s Instructions at 24.

*et al*., Modern Federal Jury Instructions-Civil P 76.01, Instruction 76-1 comment ("Several of the circuit pattern instructions actually enumerate the factors the jury should consider. . . . These formulations are not recommended because their reliance on a numerical list makes them seem more of a checklist and less of the common-sense determination it ought to be."). Plaintiffs further object because, unlike the instruction proposed by Plaintiffs (Pls.' Instructions at 10-11, Instr. 9), this instruction does not address the issues of interest or motive in cooperating with a particular party. *See* Sand, *et al*., Modern Federal Jury Instructions-Civil P 76.01, Instructions 76-2 & 76-3.

17. **EXPERT WITNESSES**[18]

**Objection.** As a threshold matter, Plaintiffs object to this instruction on the ground that, unlike Plaintiffs' proposed instruction (Pls.' Instructions at 9, Instr. 8), this instruction improperly omits the purpose of expert testimony, namely, to assist the jury in reaching its conclusion. *See* Sand, *et al*., Modern Federal Jury Instructions-Civil P 76.01, Instruction 76-9 ("Such testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.").

Plaintiffs further object because stating that an expert may give an opinion "to any matter in which he or she is *skilled*" (emphasis added) improperly suggests that experts may opine on matters that are not also within their "special knowledge, skill, experience, and training." *Cf* Sand, *et al*., Modern Federal Jury Instructions-Civil P 76.01, Instruction 76-9 ("A witness may be permitted to testify to an opinion on those matters about which he or she has special knowledge, skill, experience, and training.").

---

[18] Def.'s Instructions at 26.

Finally, although expert opinions are subject to the same rules concerning reliability (or credibility) as the testimony of any other witness (*accord* Pls.' Instructions at 9, Pl.'s Instr. 8), the notion that the jury "should consider each expert opinion . . . *like any other testimony*" (Def.'s Instructions at 26 (emphasis added)) contradicts that portion of the instruction that requires the jury to consider factors that do not apply to lay witnesses. *See* Sand, *et al*., Modern Federal Jury Instructions-Civil P 76.01, Instruction 76-9 ("In weighing this opinion testimony, you may consider the witness's qualifications, his or her opinions, the reasons for testifying, *as well as all of the other considerations that ordinarily apply* when you are deciding whether or not to believe a witness's testimony." (emphasis added)).

## 18.   <u>CONFLICTING EXPERT WITNESSES TESTIMONY</u>[19]

**<u>Objection.</u>** Plaintiffs object to HealthPort's description of the topic of the opinions offered in this case—that is, "whether it cost HealthPort Technologies more or less than $0.75 per page to administer and provide medical information in connection with patient records requests directed to Beth Israel." Although Plaintiffs maintain that HealthPort should not be permitted to charge for costs that it did not incur (e.g., costs incurred by Beth Israel), to the extent that the Court permits the jury to consider such third-party costs, this proposed instruction improperly suggests that the experts limited their opinions to HealthPort's costs alone. Plaintiffs further objects on the ground that this instruction is not supported by the evidence insofar as HealthPort did not "administer . . . medical information." Plaintiffs have no objection to the balance of this proposed instruction.

**<u>Proposed revisions.</u>** Subject to and without waiving these objections, Plaintiffs propose the following revisions to the first paragraph of this instruction:

---

[19] Def.'s Instructions at 27.

You have heard testimony of two expert witnesses who were called by each side to give their opinions **regarding** ~~about whether~~ **the average per page costs incurred in responding to medical** ~~it cost HealthPort Technologies more than or less than $0.75 per page to administer and provide medical information in connection with patient~~ records requests directed to Beth Israel.

## 19.   CLASS ACTION DEFINITION AND CLASS DEFINITION[20]

**Objection.** Plaintiffs object to this instruction on the grounds that its discussion of inferences is not found in the cited authority, *see* Fed. R. Civ. P. 23; *Velez v. Novartis Pharms. Corp.*, 244 F.R.D. 243 (S.D.N.Y. 2007), and that, by minimizing the role of the class representative, this instruction risks engendering the very bias against absent class members that courts have attempted to cure by informing the jury that most class members will not be present for the trial and instructing the jury not to hold that fact against the absent class members. *See* William B. Rubenstein, Newberg on Class Actions § 11:22 (5th ed. 2016).

**Proposed revisions.** Subject to and without waiving these objections, Plaintiffs propose the following revisions to this instruction:

This lawsuit has been brought as a class action and has been allowed by the Court to proceed as a certified class action. A class action is a procedural vehicle that allows **a representative plaintiff to file one lawsuit on behalf of** a group of **people** ~~individuals~~ who have been recognized by the Court as having common legal interests ~~to proceed in court as a group because the Court has concluded that they have met all the requirements for a class action. Otherwise as I might instruct you,~~ **You** ~~you~~ should not draw any inference (positive or negative) from the fact that the Court has allowed this case to proceed as a class action. Nor should you **hold the physical absence of any Class member against the Class** ~~draw any inference from the designation of Class Representative, as such designation does not elevate such person, but instead the Class Representative is simply the member of the class that the Court has determined is an adequate class member who can represent the class as a whole~~. **Your verdict here will be binding on all Class members.**

In this case, **Plaintiff Tatyana Ruzhinskaya represents a Class of** all persons, who, at any time from March 12, 2011 to December 31, 2015 (the "Class

---

[20] Def.'s Instructions at 29.

Period"), paid for, or **became**[21] ~~are~~ obligated to pay for, copies of an individual's patient information requested from Beth Israel by a "qualified person" as defined in New York Public Health Law § 18(1)(g), for which copies HealthPort Technologies charged $0.75 per page (the "Class"). ~~You are being asked to render a verdict on whether the class has suffered any damages.~~

20.    **NEW YORK PUBLIC HEALTH LAW SECTION 18–GENERAL**[22]

**Objection.** Plaintiffs object to this instruction because it incorrectly states the law.

First, New York Public Health Law ("PHL") § 18 does not limit "*who* may be provided access to patient medical information" (emphasis in original), but rather provides "qualified persons" with a right of access. *See* PHL § 18(2)(d). Indeed, HealthPort's position is that insurance companies, defense attorneys and other requestors are not qualified persons under PHL § 18. (*See, e.g.*, Dkt. #204, Def.'s Mem. of Law in Supp. of Mot. *in Limine* No. 4, at 4 (Sept. 2, 2016).) In this regard, PHL § 18 is a consumer protection statute. (*See* Class Cert. Op. at 12.)

Second—perhaps to bolster HealthPort's position that a separate regulation requiring hospitals to maintain medical records should be excluded on relevance grounds (*see* Dkt. #204, Def.'s Mem. of Law in Supp. of Mot. *in Limine* No. 4, at 5 n.2 (Sept. 2, 2016))—the instruction improperly suggests that PHL § 18 defines "patient information" to mean something *other* than medical records by using terms such as "medical treatment records" and "health assessment records" that do not appear in PHL § 18. In fact, PHL § 18 defines "patient information" to include information concerning or relating to a patient's "examination, health assessment . . . or treatment," PHL § 18(1)(e), each of which is part of a medical record. *See* N.Y. Comp. Codes R. & Regs. tit. 10, § 405.10(b)(2)(i) (requiring medical records to document "evidence of a physical

---

[21] Because the Court has fixed the end date of the Class, Plaintiffs suggest that the Court no longer use the present tense.

[22] Def.'s Instructions at 30.

examination"); § 405.3(b)(13) (describing medical records to include "results of all health assessments); § 405.10(b)(2)(vi) (requiring medical records to document "reports of treatment").

Third, although it quotes PHL §18(2)(e), which provides in relevant part that "a reasonable charge for all . . . copies" shall "not exceed[] the costs incurred," the instruction incorrectly suggests that the jury is tasked solely with determining whether "the charge by [HealthPort] for administering the requests for patient medical information was *reasonable*" (emphasis added), irrespective of whether the charge exceeded the costs incurred.

Fourth, whereas PHL § 18 provides that a provider may charge "the actual 'costs incurred' for *copies*" (Dkt. #38, Op. & Order ("MTD Op."), at 17 (Aug. 29, 2014) (emphasis added)), HealthPort proposes to instruct the jury that HealthPort may charge not only for copies, but also for "administering the requests"—again, a term that does not appear in PHL § 18. Without waiving their right to challenge this Court's definition of allowable costs under PHL § 18(2)(e), Plaintiffs note that HealthPort's proposed instruction does not follow it. (*See* Class Cert. Op. at 13 ("§ 18(2)(e) allows providers to charge—up to 75 cents per page—for all demonstrable and reasonable costs fairly attributable to responding to patient requests for medical records.").)

21.   **NEW YORK PUBLIC HEALTH LAW SECTION 18–ELEMENTS**[23]

**Objection.** Plaintiffs object to this instruction because it incorrectly states the law and addresses an element that is not at issue. Although this instruction purports to describe the elements of PHL § 18, it describes a single element—proximate cause—that is applicable in negligence actions. *See* N.Y. Pattern Jury Instr. – Civil 2:70. This is not a negligence action. Violating PHL § 18 imposes liability *per se*, not merely negligence *per se*. *Cf. Sanchez v. United*

---

[23] Def.'s Instructions at 32.

*States*, No. 13-cv-2536 (JPO), 2015 U.S. Dist. LEXIS 19276, at *5-6 (S.D.N.Y. Feb. 17, 2015)

(explaining that violating traffic law constituted negligence *per se* sufficient to establish duty and

breach but not causation and damages). Here, causation is subsumed within the question of

whether the "costs incurred" for copying medical records average less than $0.75 per page

because, in that case, HealthPort necessarily "overcharged" (i.e., caused injury) to each member

of the Class, namely, those who paid or owe HealthPort $0.75 per page for medical records

requested from Beth Israel.

## 22.   NEW YORK GENERAL BUSINESS LAW SECTION 349–GENERAL[24]

**Objection.** Plaintiffs object to this instruction because it incorrectly states the law and

would effectively grant a directed verdict for HealthPort on Plaintiffs' claim under General

Business Law ("GBL") § 349 in the event that the jury finds for HealthPort under PHL § 18.

Plaintiffs' claim under GBL § 349 does not "relate[] only to Plaintiffs' claim that HealthPort

Technologies' charge of $0.75 per page . . . constitutes a violation of [PHL § 18]," but rather

rests upon conduct that, in and of itself, would tend to deceive consumers. Only after the Court

hears the evidence will the Court be in a position to determine whether the evidence is sufficient

to support a verdict in Plaintiffs' favor under § 349, should the jury nevertheless render its

verdict against Plaintiffs under PHL § 18.

## 23.   NEW YORK GENERAL BUSINESS LAW SECTION 349–ELEMENTS[25]

**Objection.** Plaintiffs object to this instruction because it incorrectly states the law, is

vague and ambiguous, misleading, and improperly endorses HealthPort's theory of the case.

---

[24] Def.'s Instructions at 33.

[25] Def.'s Instructions at 34.

As a threshold matter, HealthPort's description of its "act of charging $0.75 per page for administering requests for patient medical information" is misleading and inaccurate. PHL § 18 provides that "[t]he provider may impose a reasonable charge for all inspections and *copies*." PHL § 18(2)(e) (emphasis added). Irrespective of whether it can be said that Beth Israel hired HealthPort to administer requests, the charges at issue in this case are for copies.

Although Plaintiffs agree that the challenged acts or practices must be consumer-oriented under GBL § 349, HealthPort's statement that the jury should distinguish the practice of charging $0.75 per page from "a private contractual dispute between HealthPort Technologies and Plaintiffs / Simonson Hess Leibowitz & Goodman, P.C. ('Plaintiffs' Lawyers')" improperly tends to suggest that there is such a contract dispute at issue in this case.[26] There is not. There is no claim for breach of contract in this case, and this Court already has rejected HealthPort's argument that Plaintiffs' agreement to pay $0.75 per page could undermine Plaintiffs' § 349 claim.[27] (*See* MTD Op. at 20 ("[t]hat defendants disclosed in advance their intention to charge $0.75 per page, or that plaintiffs voluntarily agreed to pay this figure, does not preclude a claim under Section 349(a)" (internal quotation marks omitted)); *see also* Class Cert. Op. at 19 ("the fact that Simonson, in requesting medical records, agreed to pay HealthPort's per-page charge did not waive Ruzhinskaya's right to challenge that charge under § 18").)

---

[26] This statement also misleadingly suggests that Simonson Hess represented all members of the Class in this case, which is plainly incorrect. Moreover, the fact that Plaintiff and other Class members acted through agents—namely, their attorneys—is not relevant to any issue in dispute. Therefore, Plaintiffs object to HealthPort's repeated references to "Plaintiffs' Laywers" throughout their proposed instructions. (*See* Def.'s Instructions at 34, 36, 38, 41, 43, 47-50, 52, 54, 58.)

[27] In addition, even if this case involved a contract dispute, that dispute is not unique to Plaintiff, but rather applies with equal force to all qualified persons (i.e., all members of the Class). *See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (N.Y. 1995) ("[p]rivate contract disputes, *unique to the parties*, for example, would not fall within the ambit of the statute").

Plaintiffs further object on the ground that this instruction is vague and ambiguous because it describes a different act or practice—namely, the "act or practice of charging Plaintiffs $0.75 per page" and the "act of invoicing Plaintiffs' Lawyers"—in different elements, thereby suggesting that the jury should apply one element to one act or practice (as defined by HealthPort) and another element to a different act or practice. HealthPort's descriptions of the conduct at issue are misleading, moreover, because they fail to describe Plaintiffs' theory of liability under § 349, namely, that HealthPort violated GBL § 349 by charging $0.75 per page without making any effort to determine the "costs incurred" for copying patient information and by failing to disclose this fact and the fact that the costs incurred for copies provided by HealthPort averaged below $0.75 per page.

Finally, the parenthetical in numbered paragraph 2 of this instruction renders that paragraph unintelligible. To the extent that this parenthetical is intended to capture the Court's ruling that Plaintiffs may not claim that HealthPort violated GBL § 349 by not disclosing the legal requirements of PHL § 18 (MTD Op. at 20), Plaintiffs will honor that ruling and do not intend to advance any theory of liability under GBL § 349 that is predicated upon HealthPort's failure to disclose that PHL § 18 limited HealthPort to recouping the costs incurred.

## 24.  **NEW YORK GENERAL BUSINESS LAW SECTION 349–DECEPTIVE ACT**[28]

**Objection.** For the reasons discussed above (*see supra* Obj. No. 23), Plaintiffs object to HealthPort's description of its "act or practice of charging $0.75 per page for administering requests for patient medical information" as misleading and inaccurate, and Plaintiffs object to this description on the ground that Plaintiffs' theory of liability under GBL § 349 is not limited to the mere act or practice of charging $0.75 per page.

---

[28] Def.'s Instructions at 36.

Plaintiffs further object to this instruction because it incorrectly states the law and is not supported by the evidence. HealthPort states that "[a] challenged business practices [*sic*] does not violate the prohibition against deceptive business practices . . . if the practices are fully disclosed prior to the transaction," but there is no evidence in this case that HealthPort ever disclosed the "costs incurred," given that it never sought to ascertain the costs incurred before this litigation. Moreover, HealthPort's proposed instruction that, "if you find that the practice of charging $0.75 per page . . . was fully disclosed . . . then you must find in favor of [HealthPort]" is entirely at odds with the law of this case. (*See* MTD Op. at 20 ("[t]hat defendants disclosed in advance their intention to charge $0.75 per page, or that plaintiffs voluntarily agreed to pay this figure, does not preclude a claim under Section 349(a)").)

## 25.   NEW YORK GENERAL BUSINESS LAW SECTION 349–CONSUMER ORIENTED[29]

**Objection.** For the reasons discussed above (*see supra* Obj. No. 23), Plaintiffs object to HealthPort's description of its "act or practice of charging $0.75 per page for administering requests for patient medical information" as misleading and inaccurate, and Plaintiffs object to this description on the ground that Plaintiffs' theory of liability under GBL § 349 is not limited to the mere act or practice of charging $0.75 per page

Plaintiffs further object to this instruction because it incorrectly states the law and tends to endorse HealthPort's argument that "the records requests" in this case "were business-to-business transactions between equally sophisticated parties with knowledge of the law (i.e., HealthPort and experienced counsel)." (Def.'s Pre-Trial Mem. at 6.) But PHL § 18, which affords access to *patients and their representatives*—including their estates and attorneys acting

---

[29] Def.'s Instructions at 38.

on behalf of patients and their estates (*see* Dkt. #193, [Proposed] Joint Pre-Trial Order ("PTO"),

at 10, Stip. No. 13)—is "[a] consumer-protective statute" (Dkt. #151, Op. & Order ("Class Cert.

Op."), at 12 (Nov. 9, 2015)). Thus, the question of whether HealthPort's challenged acts or

practices were consumer-oriented in this case does not hinge upon whether a patient requested

records through her attorney.[30] Moreover, the challenged act or practice here is not "a private

arm's-length business transaction" (i.e., a contract), but rather HealthPort's practice of

purporting to recoup costs that it never had calculated and that averaged less than what

it charged.

26.  **NEW YORK GENERAL BUSINESS LAW SECTION 349–INTENT**[31]

    **Objection.** Plaintiffs object to this instruction because it incorrectly states the law.

Plaintiffs need not establish intent to deceive to prevail under GBL § 349. (MTD Op. at 19

("Plaintiffs need not establish the defendant's intent to defraud or mislead" (internal quotation

marks omitted).) *Accord Amalfitano v NBTY, Inc.*, 9 N.Y.S.3d 352, 355 (2d Dep't 2015) ("[t]o

recover damages under General Business Law § 349, a plaintiff need not prove intent to defraud

or justifiable reliance"), *leave to appeal denied*, 26 N.Y.3d 913 (2015) (Table).

---

    [30] "[U]sing medical records to secure compensation for injuries in a lawsuit is no less 'personal' than is using them to secure insurance coverage or, for that matter, a second medical opinion, employment, medical leave, and other personal benefits." *McCracken v. Verisma Sys.*, 131 F. Supp. 3d 38, 47 (W.D.N.Y. 2015) (internal quotation marks omitted). At any rate, the question under § 349 is whether the defendant's conduct is consumer-*oriented*, as distinct from whether the injured party itself was a consumer. *Cf. North State Autobahn, Inc. v. Progressive Ins. Group*, 928 N.Y.S.2d 199, 205 (N.Y. Sup. Ct. 2011) ("a business competitor has standing to assert a section 349 claim and may do so without proving specific harm to any consumer").

    [31] Def.'s Instructions at 40.

**27.**  **NEW YORK GENERAL BUSINESS LAW SECTION 349–MATERIALITY MISLEADING IN A MATERIAL WAY**[32]

**Objection.** Plaintiffs object to this instruction because it incorrectly states the law and will be confusing or misleading to the jury.

Although some federal courts have applied the definition of materiality under Section 5 of the Federal Trade Commission Act ("FTCA")—i.e., that a material claim is one likely to affect consumers' choice of, or conduct regarding, a product—to claims under GBL § 349, *see, e.g.*, *Bildstein v. MasterCard Int'l Inc.*, 329 F. Supp. 2d 410, 414 (S.D.N.Y. 2004), none of the state court cases cited by HealthPort actually advances this standard, *see Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (N.Y. 1995); *Andre Strishak & Assocs., P.C. v. Hewlett Packard Co.*, 752 N.Y.S.2d 400 (2d Dep't 2002).

Given that Plaintiffs need not prove justifiable reliance under § 349, moreover (Dkt. #38 at 19), such an instruction is improper here because it suggests that Plaintiffs cannot prevail under § 349 unless they can prove that they would not have chosen to purchase the copies if they had known the truth about HealthPort's failure to determine its costs and the fact that those costs averaged less than $0.75 per page. HealthPort has a monopoly on copies of Beth Israel records. (*See* Dkt. #152, Op. & Order, at 8 (Nov. 19, 2015) ("HealthPort was the entity that Rochniak's healthcare provider, Beth Israel, tasked with fulfilling patients' records requests. As such, paying HealthPort's per-page charge was the sole means by which persons who, like Ruzhinskaya, sought such records could obtain them.").) Thus, HealthPort's deception could not have affected Plaintiffs' choice of product because Plaintiffs had no choice. In no way, however, does this fact undermine the importance of HealthPort's deception. *Cf. In re Coordinated Title Ins. Cases*, 784

---

[32] Def.'s Instructions at 41.

N.Y.S.2d 919 (N.Y. Sup. Ct. 2004) ("[I]t is not plausible to think that a consumer, made aware of the opportunity to save hundreds of dollars, would choose to pay the higher rate and forego a savings mandated by law."). If given the choice, a reasonable consumer would not pay more than the "costs incurred" for copies of medical records.

Finally, Plaintiffs object to HealthPort's statement that, in deciding whether HealthPort's alleged deceptive conduct was materially misleading, the jury may consider "the entire written contract between [HealthPort] and Plaintiffs' Lawyers; that the written contract disclosed the cost of administering requests[33] for patient medical information was to be $0.75 per page prior to payment by Plaintiffs' Lawyers; the admissions related thereto; and Plaintiffs' Lawyers' sophistication and experience." (*See* MTD Op. at 20 ("[t]hat defendants disclosed in advance their intention to charge $0.75 per page, or that plaintiffs voluntarily agreed to pay this figure, does not preclude a claim under Section 349(a)").)

## 28.   **NEW YORK GENERAL BUSINESS LAW SECTION 349–ACTUAL INJURY**[34]

**Objection.** Plaintiffs object to this instruction because it incorrectly states the law and improperly endorses HealthPort's theory of the case.

HealthPort again purports to define the alleged deceptive act or practice as the $0.75 per page charge itself and, in turn, "Plaintiffs' or Plaintiffs' Lawyers' payment of $0.75 per page," rather than HealthPort's omissions regarding the costs that those charges were intended to recoup.[35] Because Plaintiffs must show "actual injury, not merely the alleged deceptive act," *e.g.*, *Bildstein*, 329 F. Supp. 2d at 415, this legerdemain frees HealthPort to insist that the "injury"

---

[33] For the reasons discussed above (*see supra* Obj. No. 23), Plaintiffs also renew their objection to HealthPort's description of "administering requests" as misleading and inaccurate.

[34] Def.'s Instructions at 43.

[35] For the reasons discussed above (*see supra* Obj. No. 23), Plaintiffs also renew their objection to HealthPort's description of "administering requests" as misleading and inaccurate.

must be something other than payment of the fee charged. To the contrary, the fee charged was injurious to the extent that it misrepresented the costs incurred. Although injury need not be monetary loss, it may be. *See Oswego*, 85 N.Y.2d at 25.

## 29.   **NEW YORK GENERAL BUSINESS LAW SECTION 349–DAMAGES**[36]

**Objection.** Plaintiffs object to this instruction because it does not include the "wrongdoer rule." (*See* Pls.' Instructions at 24 n.34 and accompanying text.)

Plaintiffs also object to this instruction because it addresses an issue not pled, namely, punitive damages. Thus, the punitive damages standard does not apply. Instead, in addition to compensatory and/or statutory damages, Plaintiffs are seeking treble damages under GBL § 349(h), which provides in relevant part that "[*t*]*he court* may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section." (Emphasis added.) Thus, Plaintiffs further object to this instruction on the ground that the Court—and not the jury—makes this determination.

To the extent that the Court concludes that the issue of trebling should go to the jury, Plaintiffs object that the proposed instruction does not provide guidance regarding the "willfully or knowingly" standard—that is, that HealthPort knowingly, deliberately and voluntarily disregarded its obligations under PHL § 18, *cf. Levin v. Gallman*, 42 N.Y.2d 32, 34 (1977) (defining "willful" standard under N.Y. Tax Law § 685), or that HealthPort "knew or should have known" that charging $0.75 per page was likely to mislead qualified persons into believing that HealthPort had made some reasonable effort to determine the amount of costs incurred and that those costs averaged less than $0.75 per page, *cf. Baywood Elec. Corp. v. New York State*

---

[36] Def.'s Instructions at 44.

*DOL*, 649 N.Y.S.2d 28, 30 (2d Dep't 1996) (defining "knowingly" standard under N.Y. Labor Law § 220).

## 30.   UNJUST ENRICHMENT–INTRODUCTION–A VALID CONTRACT BARS UNJUST ENRICHMENT CLAIM[37]

**Objection.** Plaintiffs object to this instruction because this Court already has held that "[a] class member's voluntary accession to [HealthPort's charged fee] is no defense" to Plaintiffs' unjust enrichment claim. (*See* Dkt. #166, Op. & Order ("Class Cert. Order"), at 4 (Dec. 17, 2015).)

Plaintiffs further object on the ground that this instruction addresses an issue not pled, namely, breach of contract. "Where the court is submitting to the jury causes of action for breach of contract and quasi-contract (i.e., quantum meruit, unjust enrichment), the court must charge the jury that plaintiff cannot recover on the latter if the jury finds that the parties entered into a contract that covers the same subject matter . . . ." N.Y. Pattern Jury Instr. – Civil 4:2 comment (citation omitted). But there is no cause of action for breach of contract in this case.

Even assuming that a contract existed, moreover, there is no conflict between the contract and Plaintiff's unjust enrichment claim. *See* N.Y. Pattern Jury Instr. – Civil 4:2 comment ("Recovery in quasi contract may not be obtained where there is a valid enforceable contract between the parties as to the same subject matter *and a conflict would result* . . . ." (citation omitted) (emphasis added)). Irrespective of whether Plaintiffs "agreed" to pay $0.75 per page, HealthPort may not overcharge Plaintiffs or misrepresent its costs. *Cf.* Restatement (First) of Restitution § 107A (1937) ("A person of full capacity who, pursuant to a contract with another, has . . . transferred property to the other or otherwise has conferred a benefit upon him, is not

---

[37] Def.'s Instructions at 46.

entitled to compensation therefor other than in accordance with the terms of such bargain, *unless the transaction is rescinded for fraud, mistake, duress, undue influence or illegality . . . ."* (emphasis added)). In this regard, the purported contract here does not cover the same subject matter as Plaintiffs' claims, but rather is subject to them.

31.    **CONTRACT–FORMATION**[38]

**Objection.** Plaintiffs object to this instruction because it addresses an affirmative defense that does not remain to be tried, namely, HealthPort's affirmative defense that "Plaintiff's and/or the putative class members' claim for unjust enrichment is barred, because there is a written contract or contracts that relate to the subject matter of the [Second Amended Complaint]." (Dkt. #41, Answer, ¶ 133.) Specifically, the Court has held that "[a] class member's voluntary accession to [HealthPort's charged fee] is no defense" to Plaintiffs' unjust enrichment claim. (*See* Class Cert. Order at 4; *see also supra* Obj. No. 30.)

Plaintiffs further object that this instruction misleadingly suggests that all Class members' requests were made by Simonson Hess, which is factually untrue. In this regard, moreover, the instruction improperly is directed solely to Plaintiff Ruzhinskaya and not to all members of the Class, who are similarly situated. (*See* Class Cert. Op. at 19 ("Nor does Simonson's agreement to pay the charge make Ruzhinskaya atypical: It is likely that most, if not all, members of the putative class agreed to and did pay HealthPort's per-page charge, without stating that they were doing so under protest.").)

---

[38] Dkt. # 213 at 48.

**32.**   **CONTRACT–FORMATION ELEMENTS**

**Objection.** As a threshold matter, for the reasons discussed above (*see supra* Obj.

No. 23), Plaintiffs renew their objection to HealthPort's description of "administering requests"

as misleading and inaccurate.

Plaintiffs also object to this instruction because it addresses an affirmative defense that

does not remain to be tried, namely, HealthPort's affirmative defense that "Plaintiff's and/or the

putative class members' claim for unjust enrichment is barred, because there is a written contract

or contracts that relate to the subject matter of the [Second Amended Complaint]." (Dkt. #41,

Answer, ¶ 133.) Specifically, the Court has held that "[a] class member's voluntary accession to

[HealthPort's charged fee] is no defense" to Plaintiffs' unjust enrichment claim. (*See* Class Cert.

Order at 4; *see also supra* Obj. No. 30.)

Plaintiffs further object that the instruction misleadingly suggests that all Class members'

requests were made by Simonson Hess, which is factually untrue. In this regard, moreover, the

instruction improperly is directed solely to Plaintiff Ruzhinskaya and not to all members of the

Class, who are similarly situated. (*See* Class Cert. Op. at 19 ("Nor does Simonson's agreement to

pay the charge make Ruzhinskaya atypical: It is likely that most, if not all, members of the

putative class agreed to and did pay HealthPort's per-page charge, without stating that they were

doing so under protest.").)

Finally, Plaintiffs object that this instruction does not provide a fulsome description of the

elements of contract formation. For example, it does not provide guidance regarding mutual

assent—i.e., "a meeting of the minds" of the parties on all essential terms of the contract, N.Y.

Pattern Jury Instr. – Civil 4:1. Thus, in the event that the Court decides to instruct the jury on

contract formation, Plaintiffs reserve the right and respectfully request the opportunity to submit

a proposed alternative instruction.

33.    **CONTRACT SUBJECT MATTER**[39]

**Objection.** Plaintiffs object to this instruction because it addresses an affirmative defense that does not remain to be tried, namely, HealthPort's affirmative defense that "Plaintiff's and/or the putative class members' claim for unjust enrichment is barred, because there is a written contract or contracts that relate to the subject matter of the [Second Amended Complaint]." (Dkt. #41, Answer, ¶ 133.) Specifically, the Court has held that "[a] class member's voluntary accession to [HealthPort's charged fee] is no defense" to Plaintiffs' unjust enrichment claim. (*See* Class Cert. Order at 4; *see also supra* Obj. No. 30.)

Plaintiffs further object that this instruction improperly endorses HealthPort's theory of this defense by broadly defining the contract alleged by HealthPort in a manner that suggests that it is the same—and in conflict with—the subject matter of Plaintiffs' unjust enrichment claim. To the contrary, any valid and enforceable agreement concerning the requests for medical records at issue in this case was predicated upon $0.75 per page being a lawful fee, and thus a claim challenging $0.75 per page as unjust is not in conflict with any such purported agreement. (*See supra* Obj. No. 30.)

34.    **UNJUST ENRICHMENT–INTRODUCTION**[40]

**Objection.** Plaintiffs object to this introduction for at least five reasons.

First, the initial paragraph is predicated upon HealthPort's affirmative defense that Plaintiffs' unjust enrichment claim is barred by the existence of a contract, which defense is not at issue for the reasons discussed above. (*See supra* Obj. No. 30.)

---

[39] Def.'s Instructions at 50.

[40] Def.'s Instructions at 52.

Second, the instruction improperly suggests that HealthPort was unjustly enriched merely because it charged $0.75 per page without explaining Plaintiff's theories that $0.75 exceeded the costs incurred and/or that HealthPort improperly recouped and retained monies intended to offset Beth Israel's costs.[41]

Third, the instruction improperly focuses on Plaintiff Ruzhinskaya's transaction. (*See* Class Cert. Order at 4 (rejecting argument that unjust enrichment claim cannot be proven by classwide evidence because "the relevant issue here is simply whether HealthPort's charged fee was excessive").)

Fourth, the instruction improperly asks the jury to resolve a question of *law*—namely, to resolve the parties' competing interpretations of PHL § 18. The Court separately will instruct the jury regarding PHL § 18, and it would serve no purpose to convey to the jury the parties' respective interpretations of the statute.

Fifth, the last paragraph of the instruction improperly recites commentary to the pattern instruction regarding the underlying legal basis for the instruction itself, *see* N.Y. Pattern Jury Instr. – Civil 4:2 comment ("[u]njust enrichment is not a catchall cause of action," etc.), thereby usurping the Court's role by inviting the jury to conclude that the unjust enrichment claim is not cognizable as a matter of law.

35.   <u>**UNJUST ENRICHMENT–ELEMENTS**</u>[42]

**Objection.** Plaintiffs object to this instruction because it incorrectly suggests that Plaintiff's claim is that HealthPort was unjustly enriched merely because it charged $0.75 per

---

[41] For the reasons discussed above (*see supra* Obj. No. 23), Plaintiffs also renew their objection to HealthPort's description of "administering requests" as misleading and inaccurate.

[42] Def.'s Instructions at 54.

page without explaining Plaintiff's position that $0.75 exceeded the costs incurred and/or that HealthPort improperly recouped and retained monies intended to offset Beth Israel's costs.[43]

Plaintiffs further object on the ground that the instruction incorrectly states the law by requiring that HealthPort must have received a "*direct* benefit" from Plaintiffs. (Emphasis added.) "It does not matter whether the benefit is directly or indirectly conveyed." *Manufacturers Hanover Trust Co. v. Chem. Bank*, 559 N.Y.S.2d 704, 708 (1st Dep't 1990). The fact that Plaintiff and other Class members acted through and reimbursed their agents—namely, their attorneys—in no way undermines their right to recover. *Cf. Scott v. Pro Mgt. Servs. Group, LLC*, 2 N.Y.S.3d 90, 91 (1st Dep't 2015) ("Plaintiff's unjust enrichment claim is direct . . . because plaintiff suffered the alleged harm individually, and he would receive the benefit of any recovery").

Likewise, the instruction incorrectly implies that there is a fourth element of justifiable reliance by stating, *inter alia*, that if the jury concludes that Plaintiffs "did not justifiably rely on [HealthPort's] invoices and representations to their determinant and were not caused to pay fees in excess of the maximum amount allowed by law, you will find for [HealthPort] on this claim." All that is required is that the benefit came at Plaintiffs' expense.

Finally, the instruction improperly tasks the jury with determining the value of the "property" HealthPort obtained rather than the benefit. The benefit may have been less than the full amount of property obtained (i.e., $0.75 per page).

---

[43] For the reasons discussed above (*see supra* Obj. No. 23), Plaintiffs also renew their objection to HealthPort's description of "administering requests" as misleading and inaccurate.

36. **JUDICIAL ESTOPPEL DOCTRINE**[44]

**Objection.** Plaintiffs object to this instruction because it is not supported by the evidence and addresses an affirmative defense that does not remain to be tried, namely, HealthPort's affirmative defense that "Plaintiff's and/or the putative class members' claims are barred, in whole or in part, by laches, waiver and/or estoppel." (Dkt. #41, Answer, ¶ 118.) Specifically, this Court has held that:

> [T]he fact that Ruzhinskaya approved of Simonson's cost outlays, including for medical records, as 'fair and reasonable' in settling the personal injury suit she brought on behalf of Rochniak's estate addressed a different issue entirely from the legality under § 18 of HealthPort's charges: whether Simonson had been reasonable in incurring and paying these expenses, including the charges it was billed by HealthPort for Rochniak's records. Ruzhinskaya's representation says nothing about whether or not HealthPort's charge exceeded its "costs incurred." It cannot fairly be portrayed as reflecting an inconsistent earlier position of Ruzhinskaya's as to whether HealthPort was in compliance with § 18.

(Class Cert. Op. at 19.)

Moreover, HealthPort did not raise judicial estoppel in the parties' joint propose pre-trial order. (*See* PTO at 3-8.) Thus, HealthPort has abandoned this defense. *See Kirby v. Coastal Sales Ass'n*, 82 F. Supp. 2d 193, 203 (S.D.N.Y. 2000); *see also MEI Int'l, Inc. v. Schenkers Int'l Forwarders, Inc.*, 807 F. Supp. 979, 989 (S.D.N.Y. 1992) (failure to include defense in joint pre-trial order waived the defense).

Finally, Plaintiffs object on the ground that "judicial estoppel is an equitable doctrine invoked *by a court at its discretion*," *Galin v. Goldfischer*, No. 03 Civ. 9019 (RJS), 2008 U.S. Dist. LEXIS 106603, at *14-15 (S.D.N.Y. Dec. 31, 2008) (internal quotation marks omitted) (emphasis added), and, thus, that it would be improper to instruct the jury on the doctrine.[45]

---

[44] Def.'s Instructions at 56.

[45] For the reasons discussed above (*see supra* Obj. No. 23), Plaintiffs also renew their objection to HealthPort's description of "administering requests" as misleading and inaccurate.

In the event that the Court decides to instruct the jury on judicial estoppel, however, Plaintiffs reserve the right and respectfully request the opportunity to submit a proposed alternative instruction.

## 37.   VOLUNTARY PAYMENT DOCTRINE[46]

**Objection.** Plaintiffs object to this instruction because this affirmative defense does not remain to be tried because the Court has held that the voluntary payment doctrine is not applicable. (MTD Op. at 20, 22.)

Plaintiffs further object on the ground that the proposed instruction would effectively grant a directed verdict for HealthPort on this defense by defining the "fact" about which Plaintiffs allegedly had "full knowledge" as whether HealthPort would charge $0.75 per page, as opposed to whether that charge actually reflected the costs incurred for copies of the records.[47] Thus, in the event that the Court decides to instruct the jury on voluntary payment, which it should not, Plaintiffs reserve the right and respectfully request the opportunity to submit a proposed alternative instruction.

## 38.   EFFECT OF INSTRUCTION AS TO DAMAGES[48]

**Objection.** Plaintiffs object to this instruction as unnecessary and superfluous. The jury already will have been instructed as to Plaintiffs' burden of proof. There is no more risk that the jury will perceive the fact of the Court's instruction on the measure of damages to suggest that damages should be awarded than there is that the Court's instruction on the elements of any claim suggest that the Court should find for Plaintiffs as to liability. In contrast, adding this

---

[46] Def.'s Instructions at 58.

[47] For the reasons discussed above (*see supra* Obj. No. 23), Plaintiffs also renew their objection to HealthPort's description of "administering requests" as misleading and inaccurate.

[48] Def.'s Instructions at 59.

instruction—particularly if given on its own, rather than embedding it in the damages instruction(s)—would risk imposing an enhanced burden upon Plaintiffs. That is, the fact that the Court is giving this instruction might suggest to the jury that the Court's view is that the jury should find against Plaintiffs.

**39.**    **JURY DELIBERATIONS**[49]

    **Objection.** Plaintiffs object to this instruction on the ground that the Court should send all exhibits to the jury upon commencement of deliberations. In that event, the jury should be informed: "During the trial, several items were received into evidence, and they will be sent into the jury room with you when you begin to deliberate. Examine the exhibits if you think it would help you in your deliberations." Sand, *et al*., Modern Federal Jury Instructions-Civil P 78.01, Instr. 78-1 comment.

    **Proposed revisions.** Subject to and without waiving this objection, Plaintiffs propose the following revisions to this instruction:

> You are about to go into the jury room and begin your deliberations. ~~If during those deliberations you want to see any of the exhibits, you may request that they be brought into the jury room.~~ **During the trial, several items were received into evidence, and they will be sent into the jury room with you when you begin to deliberate. Examine the exhibits if you think it would help you in your deliberations.** If you want any of the testimony read back to you, may also request that. Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can in requesting ~~exhibits or~~ portions of the testimony.

> Your requests for ~~exhibits or~~ testimony—in fact any communication with the court—should be made to me in writing, signed by your foreperson, and given to one of the marshals. In any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

---

[49] Def.'s Instructions at 60.

Dated: September 16, 2016                Respectfully submitted,

                                   By: */s/ Mathew P. Jasinski*
                                        William H. Narwold
                                        Mathew P. Jasinski
                                        Michael J. Pendell
                                        Laura W. Ray
                                        MOTLEY RICE LLC
                                        20 Church St., 17th Floor
                                        Hartford, CT 06103
                                        (860) 882-1681
                                        (860) 882-1682 (fax)
                                        bnarwold@motleyrice.com
                                        mjasinski@motleyrice.com
                                        mpendell@motleyrice.com
                                        lray@motleyrice.com

                                        *Class Counsel*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that, on September 16, 2016, a copy of the foregoing Plaintiffs'

Objections to Defendant's Proposed Jury Instructions was filed electronically. Notice of this

filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or

by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic

Filing. Parties may access this filing through the Court's CM/ECF system.


　　*/s/ Mathew P. Jasinski*　
Mathew P. Jasinski