UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

TATYANA RUZHINSKAYA, *as Administratix of the Estate of Marina Rochniak, Deceased, on behalf of themselves and all others similarly situated*,

                            Plaintiff,

-v-

HEALTHPORT TECHNOLOGIES, LLC,

                            Defendant.

------------------------------------------------------------------X

14 Civ. 2921 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

This decision resolves the many motions *in limine* that the parties have filed in this class-action lawsuit. The lawsuit involves claims that the 75-cent per-page cost imposed by defendant HealthPort Technologies, LLC ("HealthPort") for providing to requesters, on behalf of health care providers, copies of patient medical records exceeded HealthPort's "costs incurred," in violation of, *inter alia*, New York Public Health Law § 18.

The Court has issued a number of substantive decisions in this case. These include (1) an August 29, 2014 decision, which, in dismissing without prejudice the first complaint of plaintiff Tatyana Ruzhinskaya and other then-plaintiffs, construed § 18 to set a 75-cent per-page cap for providing such copies and to require that healthcare providers not charge above their "costs incurred" in doing so, Dkt. 38; (2) a November 9, 2015 decision, denying Ruzhinskaya's motion to certify a statewide class of persons whom HealthPort charged 75 cents per page for providing copies of such records, because variations among HealthPort's "costs incurred" depending on the healthcare provider whom it was serving as agent precluded certification of such a broad class,

Dkt. 151; and (3) a December 7, 2015 decision certifying a much narrower class of persons who had obtained, via HealthPort, medical records from the specific healthcare provider at issue in Ruzhinskaya's case, Beth Israel Hospital, Dkt. 166.

Regrettably, a number of the motions *in limine*, and the oppositions to them, implicitly seek to re-litigate, or even buck, one or more of the Court's prior rulings, or otherwise to put extraneous matters before the jury. And other materials that the parties contemplate offering or litigating at trial are far afield from, irrelevant to, and would tend to distract the jury from, the central and narrow issue here. That issue is whether HealthPort's per-page charges exceeded its "costs incurred," as the Court has construed that statutory term in its pretrial rulings. *See, e.g.*, Dkt. 151, at pp. 8–13. As to motions of this nature, *i.e.*, where a party's bid to introduce extraneous material is clearly improper under the Federal Rules of Evidence and can only be viewed as attempting as to unfairly prejudice its adversary, the Court's resolution here is terse.

The Court expects that its rulings on these motions will be scrupulously followed. It also expects that these rulings will result in a trial more far tightly focused on the decisive issue of "costs incurred"—and in a much shorter trial—than the parties' submissions on them motions *in limine* appear to contemplate.

The ensuing discussion assumes familiarity with the Court's prior rulings.

I. **HealthPort's Motions *in Limine***

A. **HealthPort Motion No. 1**

HealthPort's first motion *in limine* seeks to exclude Ruzhinskaya from offering any evidence or making any arguments before the jury regarding the substance of the underlying medical malpractice action which her late mother, Maria Rochniak, brought, and in connection

with which a copy of Rochniak's Beth Israel medical records was requested and eventually provided by HealthPort.

To the extent that Ruzhinskaya might seek to reveal to the jury the substance of Rochniak's medical treatment (for breast cancer) or of her malpractice claim, that motion is granted. The nature of Rochniak's condition or medical care, or the bases for her claim (later, her estate's) that medical personnel were negligent or otherwise disserved her are irrelevant to this lawsuit about the sums HealthPort charged for providing medical records. And even if there were some nominal relevance to these subjects, the unfair prejudicial effect of such evidence—to generate sympathy for Ruzhinskaya based on her mother's mistreatment or suffering at the hands of hospital personnel—would outweigh it. The Court therefore grants HealthPort's motion and excludes all testimony recounting such matters. The Court also directs the parties, to the extent that the Beth Israel records that were the subject of Ruzhinskaya's records request may be offered, to redact those records consistent with this ruling.

However, the Court will permit Ruzhinskaya to establish the fact that her request was made in the context of a medical malpractice action involving the care of her mother. That fact is relevant, *inter alia*, to Ruzhinskaya's claim under General Business Law ("GBL") § 349 that the services provided by HealthPort were consumer-oriented. It is also reasonable to admit that fact to give context to Ruzhinskaya's claims and to establish her standing as to all claims. Ruzhinskaya may not, however, elicit the names of the people or entities which her mother's estate accused of malpractice, or imply that these included Beth Israel.

### B. HealthPort Motion No. 2

HealthPort next moves to exclude evidence relating to its "costs incurred" to the extent those costs relate to providers in New York State other than Beth Israel. That motion is denied.

3

The Court expects issues relating to the reasonable tabulation of HealthPort's "costs incurred" to be the focus of trial. The Court has held that, in defending against Ruzhinskaya's overcharging claim, HealthPort may seek to establish that its "costs incurred" in connection with responding to records request were 75 cents per page or more based on costs measured at either or both (1) the provider (*i.e.*, the Beth Israel) level or (2) the statewide level. HealthPort has not ruled out either theory of defense. Its motion *in limine* implies that, at a minimum, it will defend the case on the first theory, attempting to show that the direct and indirect costs fairly attributable to meeting requests for Beth Israel records amounted to at least 75 cents per page.

For three reasons, the Court declines to exclude evidence, testimonial or documentary, of HealthPort's costs incurred in connection with meeting records requests in connection with its services to other New York State hospitals.

First, to the extent that HealthPort has reserved the right to defend the case based on its statewide costs attributable to meeting records requests, the costs incurred with respect to other providers are a component of such costs and thus implicated by this theory of defense. It is, therefore, permissible for Ruzhinskaya to probe this subject, including by use of the documentary evidence that HealthPort seeks to exclude.

Second, even if HealthPort were to limit its theory of defense to the per-page cost as measured at the Beth Israel (as opposed to the statewide) level, Ruzhinskaya is entitled to challenge the accuracy of HealthPort's claims as to what those costs were. HealthPort has identified as a trial witness Gregory Trerotola, whom it will call to tabulate and analyze the provider-level costs relating to Beth Israel. But, while HealthPort may choose to limit its examination of Trerotola to Beth Israel, Ruzhinskaya is entitled to test his credibility and persuasiveness. And Trerotola has opined on HealthPort's provider-level costs with respect to

4

providers other than Beth Israel. It is reasonable to give Ruzhinskaya latitude to examine Trerotola's parallel conclusions as to HealthPort's provider-level costs at other providers. Cross-examination of Trerotola's findings and analyses, including as reflected in the cost study that HealthPort seeks to exclude, may shed light on the credibility and persuasiveness of his conclusions as to Beth Israel.

Third, to the extent that HealthPort's defense at the provider level involves imputing to Beth Israel a *pro rata* share of certain statewide costs, the costs it incurred in connection with its work for other New York State providers are within the scope of this defense. Inquiry into the means by which these statewide costs were tabulated and allocated is proper. It is possible that this inquiry will implicate calculations relating to other providers.

There are, however, two important limits to this ruling. First, the case is solely about HealthPort's per-page costs *at Beth Israel*. While the Court will permit evidence relating to HealthPort's statewide costs and costs at other providers to be received to the extent they may bear on its claims at the Beth Israel costs and/or the credibility of Trerotola, its witness as to those costs, the Court will not permit the case to devolve into a "trial within a trial" regarding costs at other providers. The Court expects any questioning or evidence regarding costs at other providers to be tightly focused and limited in time. The Court's denial of HealthPort's motion *in limine* to categorically exclude such evidence, in other words, is not license for Ruzhinskaya's counsel to detour into extended analysis of costs other than at Beth Israel. The Court will also not permit Ruzhinskaya to argue that because its charges with respect to other provider(s) may have been excessive, the same must have been true at Beth Israel.

Second, in her memorandum of law, Ruzhinskaya appears to intend to assail HealthPort before the jury for developing its cost justification only after the fact. The Court will not allow

plaintiffs' counsel to distract the jury in this matter from the relevant issues. There is no scienter element to § 18 or the other statutes under which Ruzhinskaya has sued. (And to the extent any inquiry into willfulness may be relevant to damages in this case, an issue that the parties have not yet briefed, the Court's expectation is to bifurcate this case so that the jury first resolves liability issues before receiving evidence, if warranted, as to damages.) And as plaintiff's counsel are well aware, the reason HealthPort developed its cost study after this litigation commenced is because the Court rejected as inaccurate its construction of § 18 that would have categorically permitted a 75-cent per-page charge without regard to costs incurred. The central issue here will be whether HealthPort's per-page charge is justified based on its "costs incurred," not when it undertook its cost analysis, or whether it originally misapprehended § 18's command as to maximum charges.

### C. HealthPort Motion No. 3

HealthPort next moves to exclude evidence relating to its labor costs to the extent that these costs do not relate to personnel involved in the "release of information" (ROI) process for Beth Israel. On the basis of the parties' submissions, the Court is not persuaded that the documents in question are relevant to any issue at trial. The Court further agrees with HealthPort that inquiry into compensation of such personnel is likely to be a source of confusion and distraction. The Court therefore grants HealthPort's motion under Federal Rules of Evidence 402 and 403.

### D. HealthPort Motion No. 4

HealthPort next moves to exclude evidence relating to the fees and rates that it charges, and has charged, to persons and entities who fall outside the scope of § 18 for providing copies

of patient information. These requesters include such entities as insurance companies and defense attorneys, and requesters in connection with workers compensation claims.

Substantially for the reasons recited by HealthPort, the Court grants this motion. The Court categorically and firmly precludes, under Rules 402 and 403, all evidence of or argument about the rates that HealthPort charges other requesters. The decisive question under the statutes at issue in this case is how the per-page costs charged to "qualified persons" such as Ruzhinskaya compares to HealthPort's "costs incurred," because that term, under § 18, sets the measure of permissible charges. Ruzhinskaya's notion to the contrary, the causes of action at issue here do not invite the jury to assess, as a matter of general equity or fairness, the appropriateness of HealthPort's charges to the class other than by reference to whether these charges exceed HealthPort's "costs incurred."

And HealthPort's charges to other requestors do not bear on that subject, because HealthPort is at liberty to adopt, for its own business reasons, a separate pricing structure of requesters who fall outside the scope of § 18. It may, for example, choose to charge such requesters less than 75 cents per copy, in order to realize relationship or business benefits. There is no reason to infer that HealthPort's charges to persons outside the scope of § 18 has any bearing on its "costs incurred" in meeting requests under § 18. Further, were the Court to receive evidence of HealthPort's charges to persons or entities outside the scope of § 18, HealthPort would then be entitled to offer evidence as the context of, and the reasons for, those charges. That, in turn, would prolong the trial, by inviting the very "trial within a trial" that Rule 403 counsels against.

The Court therefore precludes evidence of, or references to, HealthPort's charges to persons or entities other than its 75 cents per-page charge to the class of "qualified persons" represented by Ruzhinskaya.

For similar reasons, the Court excludes evidence of regulations other than § 18 (*e.g.*, federal regulations) bearing on charges for medical records. As the Court has previously held, these regulations have no bearing on the construction of § 18. *See* Dkt. 151, at 12–13. And these regulations have absolutely no bearing on the empirical issue of how HealthPort's charges to Beth Israel requesters compare to its "costs incurred." The Court also precludes Ruzhinskaya from implying—as she appears in her response to this motion to propose to do, *see* Dkt. 248—that healthcare providers may have breached other regulations bearing on medical records (*e.g.*, relating to the retention, coding, indexing, and confidentiality of patient records). Except as background to explain the process by which the Beth Israel records at issue in this lawsuit were maintained and retrieved and the costs thereby generated, these regulations are irrelevant to this case.

### E. HealthPort Motion No. 5

HealthPort next moves to exclude documents reflecting opinions about the legality or appropriateness of its charges to qualified persons, including as reflected in a trade publication article. The Court grants this motion and excludes such evidence. Such opinions are irrelevant to the issue of HealthPort's "costs incurred." Ruzhinskaya's argument that a statement in a trade publication that a 75-cent per-page fee violated § 18 put HealthPort on notice that is charges were illegal, and is therefore admissible, lacks merit for various reasons, including because it assumes the conclusion of this case: If HealthPort's "costs incurred" in connection with its

charges to requesters for Beth Israel records met or exceeded 75 cents per page, then the statement in the trade publication is necessarily untrue.

### F. HealthPort Motion No. 6

HealthPort next moves to exclude its statements in a 2009 Securities and Exchange Commission filing relating to an initial public offering. The Court grants this motion. This evidence, too, is irrelevant.

## II. Ruzhinskaya's Motions *in Limine*

### A. Ruzhinskaya Motion No. 1

Ruzhinskaya moves to preclude HealthPort from offering evidence that—as part of the settlement of the malpractice claims brought by her mother's estate—she was reimbursed for the charges paid to HealthPort for her medical records. Relatedly, she also seeks to preclude HealthPort from arguing that, in light of this reimbursement, she was "not injured."

Largely for the reasons given by Ruzhinskaya, and additionally based on the Court's previous rulings in the case as summarized by Ruzhinskaya, the Court grants this motion. The Court has already held that the terms under which HealthPort's charge for her mother's medical records was paid give Ruzhinskaya standing to bring this suit: Her attorney paid HealthPort's charge, at a time when Ruzhinskaya was obligated, pursuant to a retainer agreement, to repay the attorney for such cost outlays in the event of a monetary settlement. *See* Dkt. 151, at 5–6.

Opposing Ruzhinskaya's motion, HealthPort now claims that the fact that the eventual settlement of the malpractice was large enough to make Ruzhinskaya whole for this expense means that she suffered no injury at HealthPort's hands—even if HealthPort overcharged her. But that is wrong. *HealthPort* did not reimburse Ruzhinskaya. It retained the allegedly excessive fee that her counsel, on her behalf, had paid HealthPort. And when Ruzhinskaya was

reimbursed for those costs as part of the settlement of the malpractice case, the use of that part of the settlement to reimburse the cost outlays by Ruzhinskaya and her malpractice-case counsel necessarily reduced the net settlement available to her, a point the Court has previously noted. Dkt. 38 at 8–10.

Assuming that Ruzhinskaya can prove the fact that HealthPort charged her an unlawful amount, Ruzhinskaya has suffered an injury at HealthPort's hands. The fact that Ruzhinskaya's malpractice case settled is irrelevant to the issues to be tried, as are the terms and size of that settlement.

The Court therefore excludes any evidence or argument to the effect that Ruzhinskaya's share of the malpractice settlement actually or effectively covered the sum paid to HealthPort, or tending to imply that she was "made whole." Relatedly, the Court excludes any evidence of the events in the malpractice action following the point at which HealthPort furnished Ruzhinskaya the requested records and was paid for that service. The history and resolution of that action has no bearing on Ruzhinskaya's current claims against HealthPort or its defenses to those claims. This ruling does not, of course, preclude the receipt of evidence concerning the circumstances—which are relevant to establishing Ruzhinskaya's standing and injury—under which HealthPort was paid by Ruzhinskaya's counsel, including the retainer agreement pursuant to which that payment was made on Ruzhinskaya's behalf.

### B. Ruzhinskaya Motion No. 2

Ruzhinskaya next moves to preclude evidence that she did not have any direct contact with HealthPort. That motion is denied. The Court will permit counsel to develop, succinctly, an account of the circumstances under which HealthPort was asked to, and ultimately did, provide copies of Ruzhinskaya's mother's medical records. These circumstances will

necessarily reveal that the dealings with HealthPort were by Ruzhinskaya's counsel on her behalf, and not by Ruzhinskaya herself.

However, the Court will not permit HealthPort to argue that because the payment to HealthPort was paid by counsel on Ruzhinskaya's behalf, or because counsel and not Ruzhinskaya interacted with HealthPort, Ruzhinskaya was not injured or may not bring this lawsuit. In light of Ruzhinskaya's retainer agreement with her counsel, the binding nature and terms of which have not been disputed, any such inference would be improper.

### C. Ruzhinskaya Motion No. 3

Ruzhinskaya next moves to preclude evidence of her litigation costs in the underlying malpractice action and any argument that these costs were fair and reasonable. Of particular concern, she seeks to preclude evidence that, in the course of seeking approval of the settlement of the malpractice case, she and her attorney represented that the settlement was "reasonable."

That motion is granted. The issue in this case is not whether HealthPort's charges were subjectively reasonable or unreasonable, or appealing or offensive. It is simply whether they exceeded HealthPort's "costs incurred." Any subjective views on Ruzhinskaya's part about these charges are irrelevant as to whether she was charged in excess of what § 18 permitted. Moreover, Ruzhinskaya's representation that the expenses that she had incurred were "reasonable" must be read in context: With her mother's provider (Beth Israel) having set through its records-request agent (HealthPort) a fixed fee of 75 cents per page for those records, it was necessarily reasonable for the attorney and Ruzhinskaya to pay that charge in order to secure those necessary records. That decision does not speak at all to HealthPort's compliance—or non-compliance—with § 18.

### D. Ruzhinskaya Motion No. 4

11

Ruzhinskaya next moves to preclude evidence that her attorney did not object to paying HealthPort's 75 cents per-page records fee, and voluntarily did so. For the same reasons as in connection with her Motion No. 3, that motion is granted.

To the extent that HealthPort claims that her lawyer's payment of this fee estops Ruzhinskaya from bringing this suit, that argument is frivolous. The lawyer, representing a client in need of those records to effectively pursue her medical malpractice action, had a duty to secure those records. He was not obliged to sacrifice his client's malpractice action in order to preserve her future ability to object to the price as exceeded the amount allowed by statute. And there was no obvious alternative source: Ruzhinskaya's mother's medical provider, Beth Israel, demanded, via HealthPort, the 75 cents per page. There was no market competitor charging a lower rate for the mother's medical records. On these facts, HealthPort's estoppel defense is baseless. The Court will not permit HealthPort to argue it to the jury.

### E. Ruzhinskaya Motions No. 5, 6, and 7

HealthPort does not oppose these three motions. The Court, finding them meritorious, grants them.

### F. Ruzhinskaya Motion No. 8

Ruzhinskaya next moves to preclude evidence and argument that her law firm, Simonson Hess, discarded part of its case file relating to the malpractice action. That lapse formed the basis of HealthPort's earlier motion for sanctions in this case. Although the Court granted a monetary sanction in favor of HealthPort, it denied an adverse inference instruction, finding the records of the law firm "immaterial to this litigation," Dkt. 151 at 21 n.7. And the Court, in its initial decision on class certification, later found the testimony of Ruzhinskaya's lawyer irrelevant to the claims and defenses in the case. *See id.* at 21.

For these same reasons, Ruzhinskaya's motion *in limine* is granted. Simonson Hess's failure to preserve records, while regrettable, has no bearing on the claims and defenses at issue. Consequently, the firm's missing records have no bearing whatsoever on the outcome here: It is independently known (and undisputed) the number of pages of Beth Israel's records that HealthPort copied for Ruzhinskaya. And, with HealthPort having abandoned any attempt to defend its per-page cost because of the particulars of any individual records request, the contents of the records copied for Ruzhinskaya are irrelevant. HealthPort's bid to introduce the fact that Simonson Hess failed to preserve records would serve only to distract the jury and unfairly prejudice Ruzhinskaya.

### G. Ruzhinskaya Motion No. 9

Ruzhinskaya next moves to preclude the testimony of two corporate employees (George Abatgoglou and Tony Farley) whom HealthPort, in the joint pretrial order, proposes to call. HealthPort proposes to call each to testify as, it appears, a Rule 30(b)(6) witness. HealthPort did not previously identify either as a Rule 30(b)(6) witness, but it explains that the Rule 30(b)(6) witnesses whom it previously identified have left the company, thus creating a new need for such witnesses. HealthPort attests that both witnesses have personal knowledge of HealthPort's operations to enable them to testify on the designated topics and will base their testimony solely on such personal knowledge.

The Court will permit such testimony, and therefore denies Ruzhinskaya's motion. But the Court sets several limiting conditions for such testimony. First, to avoid unfair surprise, Ruzhinskaya is to be given the opportunity to depose these two witnesses. Any such deposition is to be taken by Friday, January 20, 2017, at a place of plaintiff's counsel's choosing, with the cost of any such deposition to be shared equally by the two sides. Second, the two witnesses,

being Rule 30(b)(6) witnesses, are bound by any Rule 30(b)(6) testimony previously given by HealthPort's witnesses. The Court will not permit a new Rule 30(b)(6) witness to repudiate a previous such witness's testimony. Third, for avoidance of confusion, HealthPort is to supply Ruzhinskaya, by December 28, 2016, with a written notice, by witness, of the Rule 30(b)(6) topics to which each of these witnesses is prepared to testify. Fourth, consistent with HealthPort's representation, each witness is limited to testifying to information based on his own personal knowledge of the matters to which he will testify. Therefore, if Ruzhinskaya is correct in positing that the two witnesses lack personal knowledge on particular points, their testimony on those points will not be received at trial. Finally, the Court's authorization of such testimony is not to be taken as a ruling that all testimony forecast in HealthPort's opposition brief on this motion will, necessarily, be received at trial. The Court reserves judgment, for example, on whether testimony about "the release of information industry generally," Dkt. 239 at 2, is properly admitted at trial.

### H. Ruzhinskaya Motion No. 10

Finally, Ruzhinskaya moves to preclude evidence and arguments about her decision to file the lawsuit and whether it was "lawyer-driven." For the most part, this motion is granted. The Court will not permit HealthPort to defend this case by making insinuations or attacks directed at class-action lawyers. The case is to be defended solely on the merits. Regardless of whether the inspiration for this lawsuit was Ruzhinskaya's or an attorney's, Ruzhinskaya is entitled to have her claims of unlawful charges for medical records resolved on the merits, not based on attitudes the jury may have—or counsel may intentionally stoke—as to class actions, or the business model, role, or ethics of class-action counsel. As the Court has elsewhere stated,

such commentary or arguments "can serve only to confuse, inflame, and introduce unfair prejudice." *Hart v. RCI Hospitality Holdings, Inc.*, 90 F. Supp. 3d 250, 272–73 (S.D.N.Y. 2015).

The Court will, however, permit HealthPort to inquire of Ruzhinskaya, briefly, about whether she has any firsthand knowledge of HealthPort's costs incurred. Such inquiry is proper so as to clarify for the jury that Ruzhinskaya is not a competent witness as to that point.

## CONCLUSION

The Court has resolved HealthPort's six motions *in limine* and Ruzhinskaya's 10 motions *in limine* in the manner addressed above. The Clerk of Court is respectfully directed to terminate the motions pending at Dkts. 199, 201, 202, 203, 206, 209, and 218.

SO ORDERED.

*Paul A. Engelmayer*
PAUL A. ENGELMAYER
United States District Judge

Dated: December 20, 2016
      New York, New York