**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TATYANA RUZHINSKAYA, as Administratrix of the Estate of MARINA ROCHNIAK, Deceased, on behalf of herself and all others similarly situated,<br><br>            Plaintiff,<br><br>   v.<br><br>HEALTHPORT TECHNOLOGIES, LLC,<br><br>          Defendant. | Case No.: 1:14-cv-02921 (PAE)<br><br>ECF Case<br><br>Electronically Filed<br><br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF BETH ISRAEL'S COSTS** |

*Redacted Public Version*

William H. Narwold
Mathew P. Jasinski
Michael J. Pendell
Laura W. Ray
**MOTLEY RICE LLC**
20 Church St., 17th Floor
Hartford, CT 06103
(860) 882-1681
(860) 882-1682 (fax)

*New York Office*:
600 Third Ave., Ste. 2101
New York, NY 10016

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ................................................................................................. 1

II.    BACKGROUND ................................................................................................. 1

III.   ARGUMENT ....................................................................................................... 5

       A.     Beth Israel's costs are irrelevant as a matter of law.................................. 6

              1.     HealthPort has an independent obligation to comply with PHL § 18. ....... 6

              2.     HealthPort does not charge requestors on Beth Israel's behalf. ................ 8

              3.     Beth Israel's search and retrieval and other clerical costs are not
                     compensable under PHL § 18. ................................................................. 10

              4.     This Court should certify its Order regarding the relevance of Beth Israel's
                     "costs incurred" for an interlocutory appeal. ........................................... 12

       B.     Neither side is estopped from its respective position regarding the relevance of
              Beth Israel's costs. ..................................................................................... 13

              1.     Plaintiffs are not estopped from seeking to exclude Beth Israel's costs... 15

              2.     HealthPort is not estopped from seeking to include Beth Israel's costs... 18

       C.     HealthPort should bear the risk of any uncertainty arising from the nature of its
              records, the records of Beth Israel, or the lack thereof. ............................ 21

IV.    CONCLUSION .................................................................................................. 26

## TABLE OF AUTHORITIES

**Cases**

*Am. Ass'n of Bioanalysts v. Dep't of Health*,
   906 N.Y.S.2d 356 (3d Dep't 2010)........................................................ 22, 25

*Am. Mfrs. Mut. Ins. Co. v. Payton Lane Nursing Home, Inc.*,
   704 F. Supp. 2d 177 (E.D.N.Y. 2010) .......................................................... 14

*Associated Press v. Meltwater U.S. Holdings, Inc.*,
   931 F. Supp. 2d 537 (S.D.N.Y. 2013)........................................................... 14

*Bates v. Long Island R.R. Co.*,
   997 F.2d 1028 (2d Cir. 1993)....................................................................... 14

*Casillo v. St. John's Episcopal Hosp.*,
   580 N.Y.S.2d 992 (Sup. Ct. Suffolk County Feb. 21, 1992) ........................ 10

*ChartOne, Inc. v. Raglon*,
   283 S.W.3d 576 (Ark. 2008)......................................................................... 25

*Emery v. Harris*, No. 1:10-cv-01947-JLT (PC),
   2014 U.S. Dist. LEXIS 22664 (E.D. Cal. Feb. 21, 2014)............................. 15

*Evans v. Port Auth. of N.Y. & N.J.*,
   192 F. Supp. 2d 247 (S.D.N.Y. 2002)............................................................. 5

*Fed. Ins. Co. v. Mertz*, No. 12-cv-1597-NSR-JCM,
   2016 U.S. Dist. LEXIS 4019 (S.D.N.Y. Jan. 12, 2016)................................ 22

*Freudenberg v. E*Trade Fin. Corp.*,
   712 F. Supp. 2d 171 (S.D.N.Y. 2010)........................................................... 14

*Hart v. Rick's Cabaret Int'l, Inc.*, No. 09-cv-3043 (PAE),
   2014 U.S. Dist. LEXIS 174617 (S.D.N.Y. Dec. 17, 2014) ...................... 22, 25

*Hernandez v. Lutheran Med. Ctr.*,
   478 N.Y.S.2d 697 (2d Dep't 1984)................................................................ 10

*In re Facebook, Inc.*,
   986 F. Supp. 2d 524 (S.D.N.Y. 2014)............................................................ 13

*Luce v. United States*,
   469 U.S. 38 (1984)........................................................................................... 5

*Marvel Characters, Inc. v. Simon*,
   310 F.3d 280 (2d Cir. 2002).......................................................................... 15

*McCracken v. Verisma Sys., Inc.*, No. 6:14-CV-06248(MAT),
   2017 WL 2080279 (W.D.N.Y. May 15, 2017).............................................. 7, 9

*McCrossan v. Buffalo Heart Grp.*,
   695 N.Y.S.2d 852 (4th Dep't 1999) ................................................................ 11

*Nw. Airlines, Inc. v. County of Kent*,
   738 F. Supp. 1112 (W.D. Mich. 1990) ............................................................ 25

*Palmieri v. Defaria*,
   88 F.3d 136 (2d Cir. 1996) ................................................................................ 5

*Port Auth. Police Asian Jade Soc'y of N.Y. & N.J., Inc. v. Port Auth. of N.Y. & N.J.*,
   681 F. Supp. 2d 456 (S.D.N.Y. Jan. 13, 2010) .............................................. 15

*President & Directors of Manhattan Co. v. Kelby*,
   147 F.2d 465 (2d Cir. 1944) ............................................................................ 22

*Scipione v. Long Island Jewish-Hillside Med. Ctr.*,
   460 N.Y.S.2d 409 (Sup. Ct. Nassau Cnty. 1982) ........................................... 10

*Story Parchment Co. v. Paterson Parchment Co.*,
   282 U.S. 555 (1931) ......................................................................................... 22

*Szikszay v. Buelow*,
   436 N.Y.S.2d 558 (Sup. Ct. Erie County 1981) ............................................. 12

*United States v. Alicea*,
   837 F.2d 103 (2d Cir. 1988) .............................................................................. 5

*William Penn Life Ins. Co. of N.Y. v. Viscuso*,
   663 F. Supp. 2d 353 (S.D.N.Y. 2009) ............................................................ 15

*Williams v. City of Hartford*, No. 3:15-CV-00933(AWT),
   2016 WL 1732719 (D. Conn. June 2, 2016) ................................................... 23

*Zamdborg v. Goldin*, 831 N.Y.S.2d 363,
   2004 N.Y. Slip. Op. 51907(U) (Sup. Ct. Kings County Sept. 27, 2004) ......... 11

*Zedner v. United States*,
   547 U.S. 489 (2006) ......................................................................................... 14

**Statutes**

28 U.S.C. § 1292(b) ............................................................................................... 13

New York Public Health Law § 17 ............................................................. 10, 11, 13

New York Public Health Law § 18 ............................................................... passim

New York Public Health Law § 18(1)(b) .......................................................... 1, 6

New York Public Health Law § 18(1)(g) ......................................................... 2, 11

New York Public Health Law § 18(2)(e) ........................................................... 1, 6

New York Public Officers Law § 87(c) ............................................................... 12

**Public Laws**

2004 N.Y. Laws, ch. 634, § 1 (Oct. 26, 2004) ............................................................. 11

2008 N.Y. Laws, ch. 223, § 1 (Jul. 7, 2008) ............................................................... 12

**Rules**

Fed. R. Civ. P. 34 ...................................................................................................... 23

Fed. R. Evid. 401 ......................................................................................................... 5

Fed. R. Evid. 402 ......................................................................................................... 5

Fed. R. Evid. 403 ......................................................................................................... 5

Fed. R. Evid. 403, Advisory Committee Notes ........................................................... 6

N.Y. Court of Appeals R. of Practice § 500.27 ......................................................... 13

**Regulations**

42 C.F.R. § 405.1801(b) ............................................................................................... 8

45 C.F.R. § 164.502(g)(1) ........................................................................................... 11

45 C.F.R. § 164.524(c)(4) ........................................................................................... 12

45 C.F.R. § 164.534 ...................................................................................................... 4

N.Y. Comp. Codes R. & Regs. tit. 21, § 1401.8(c)(3) ............................................... 12

**Federal Register**

65 Fed. Reg. 82,462 (Dec. 28, 2000) ......................................................................... 12

**Other Authorities**

1 McCormick On Evid. § 55 (7th ed.) ......................................................................... 15

2B Sutherland Statutory Construction § 51:2 (7th ed.) ............................................. 11

## I.      INTRODUCTION

Plaintiff Tatyana Ruzhinskaya, as Administratrix of the Estate of Marina Rochniak (individually, "Plaintiff") and on behalf of the members of the Class defined below (collectively, "Plaintiffs"), respectfully submits this memorandum of law in support of Plaintiffs' motion *in limine* to preclude evidence and argument regarding costs that were not incurred by Defendant HealthPort Technologies, LLC ("HealthPort"), but rather its client, Beth Israel Medical Center ("Beth Israel"). Plaintiffs also address a proposed jury instruction to which Defendants objected by letter dated June 1, 2017 (Dkt. #299).

## II.      BACKGROUND

Plaintiff's mother, Marina Rochniak, brought a state-court medical malpractice action, which Plaintiff continued in her capacity as administratix of Rochniak's estate. In the course of that lawsuit, Plaintiff—through her attorneys—requested copies of Rochniak's medical records from Beth Israel, which HealthPort fulfilled and charged for, and which Plaintiff paid for when she reimbursed her attorneys upon the settlement of her mother's lawsuit in August 2013.

Plaintiff alleges that, by charging 75¢ per page, HealthPort overcharged her in violation of New York Public Health Law ("PHL") § 18, which allows a healthcare provider to "impose a reasonable charge" for copies of medical records, "not exceeding the costs incurred by such provider." PHL § 18(2)(e). Although not itself a healthcare provider as defined in the statute, *see* PHL § 18(1)(b), HealthPort has stipulated that it "is subject to the obligations of a health care provider under New York Public Health Law § 18" and that § 18 "applies to medical records produced by HealthPort in New York."[1] Plaintiff is a representative of a class of all persons, who at any time from March 12, 2011 to December 31, 2015 (the "Class Period"), paid for, or are

---

[1] Dkt. #291, Rev. [Proposed] Joint Pre-Trial Order ("Revised PTO"), at 10-11, Stip. Nos. 11-12 (May 24, 2017).

obligated to pay for, copies of an individual's patient information requested from Beth Israel by a "qualified person" as defined in PHL § 18(1)(g), for which copies HealthPort charged 75¢ per page (the "Class").[2]

The evidence will show that HealthPort's costs incurred for fulfilling records requests at Beth Israel do not come close to 75¢ per page. On this point, the parties agree. Plaintiffs' expert, Richard Royston, is prepared to testify that HealthPort's costs attributable to Beth Israel over the course of the Class Period—including both direct and indirect expenses—totaled ████.[3] Divided by the number of pages processed by HealthPort at Beth Israel during the same period— a figure Mr. Royston calculates to be ████ pages—results in an average per-page cost of ████ (*See* Ex. 1,[4] Royston Rebuttal, at 44.) HealthPort's expert, Gregory Trerotola, arrived at a total cost figure for HealthPort of ████. (*See id.*) Divided by the page-count he used— ████ pages—results in an average per-page cost of ████.

As a result, HealthPort is relegated to defending this case entirely on the grounds that (1) HealthPort may charge for additional costs incurred, not by HealthPort, but by Beth Israel and (2) Beth Israel's average costs incurred are at least ██ per page.[5] On the former point, HealthPort's reasoning is that Beth Israel remains involved in the release of information ("ROI")

---

[2] *See* Dkt. #166, Op. & Order ("Class Cert. Order"), at 5 (Dec. 17, 2015) (certifying class); Dkt. #184, Order (Jun. 29, 2016) (establishing Class Period end date).

[3] A summary of the experts' competing calculations and resulting per-page figures is provided on pages 44-45 of Mr. Royston's June 10, 2016 Supplemental and Rebuttal Report ("Royston Rebuttal"), which appears in the record at Dkt. #228-3, Exhibit C to the Declaration of Seth Litman in Support of Defendant's Motion to Exclude the Testimony of Richard Royston. For ease of reference, a true and correct excerpt of these pages is attached as Exhibit 1 to the Declaration of Mathew P. Jasinski, dated June 14, 2017, filed contemporaneously herewith.

[4] Unless otherwise stated, all exhibits referred to herein are attached to the Declaration of Mathew P. Jasinski, dated June 14, 2017.

[5] In fact, even though Beth Israel uses HealthPort to copy medical records, Mr. Trerotola calculates Beth Israel's costs alone to average ██ per page. (*See* Ex. 1, Royston Rebuttal, at 44.)

process. Pursuant to Beth Israel's contract with HealthPort's predecessor, ChartOne, Inc.—which

HealthPort assumed as part of its acquisition of ChartOne[6]—Beth Israel is responsible for

██████████████████████████████████████████████ (Ex. 2, Beth Israel Agreements,

at HEALTHPORT009955.) Simply stated, Beth Israel receives each request in the first instance

and retrieves the records for HealthPort to copy. Beth Israel then refiles the records. (*See id.*)

 As set forth in greater detail below, however, search and retrieval and other clerical fees

are not allowed under PHL § 18 as a matter of law. Even if such costs were compensable, Beth

Israel has waived any right to seek reimbursement for them here. Whereas an earlier contract

between Beth Israel and ChartOne's predecessor, Correspondence Management, Inc. ("CMI"),[7]

provided that CMI would reimburse Beth Israel ███████ for ███████████████████

██████████████████████████████ (Ex. 2, Beth Israel Agreements, at

HEALTHPORT009970), there is no such provision in the contract applicable in this case (*see*

*generally id*. at HEALTHPORT009953-68), and there is no evidence that HealthPort has

reimbursed Beth Israel a dime (*see, e.g.*, Ex. 3, Trerotola 05/25/16 Dep., at 273:13-274:8; *see*

*also infra* note 19 and accompanying text).

 In this regard, it is unsurprising that Beth Israel denies "that HealthPort billed patients,

and/or qualified persons . . . on behalf of Beth Israel, or acted as Beth Israel's agent." (Dkt. #40,

[Beth Israel]'s Answer to Pl.'s Second Am. Compl., ¶ 64 (Oct. 3, 2014).) And, for its part,

HealthPort simply admits "that it contracted with Beth Israel to respond to authorized requests

for copies of medical records within the confines of HIPAA and other applicable statutes."

---

 [6] *See* Revised PTO at 10, Stip. Nos. 6-7; *see also* Ex. 4, Rohs 30(b)(6) Dep., at 83:3-10 (testifying that ChartOne agreement is part of HealthPort's current agreement with Beth Israel).

 [7] *See* Ex. 5, Abatjoglou 30(b)(6) Dep., at 70:17-22 ("ChartOne had acquired a company called CMI, and that's how we"—ChartOne and, thus, HealthPort—"got the contract . . . . And then I saw we signed a new contract with [Beth Israel] in 2007 . . . .").

(Dkt. #41, [HealthPort]'s Answer to Pl.'s Second Am. Compl., ¶ 64 (Oct. 3, 2014).) HealthPort's

agreement with Beth Israel disavows a fiduciary relationship. (Ex. 2, Beth Israel Agreements, at

HEALTHPORT009967, ¶ 11.1 ("█████████████████████████████████████

█████████████████████████████████████████").) HealthPort charges

requestors on its own behalf, "not on behalf of the medical provider." (Ex. 4, Rohs 30(b)(6)

Dep., at 272:18-274:8 (emphasis added).) Indeed, HealthPort's contract with Beth Israel confers

upon HealthPort the right to ██████████████████████████████████████████

███████████████████████ Ex. 2, Beth Israel Agreements,

at HEALTHPORT009955 (emphasis added).) If an invoice goes unpaid, it is HealthPort that

files suit, not Beth Israel.

 This is not to say, however, that HealthPort may charge whatever it wants. Consistent

with its stipulations in this case (*see* Revised PTO at 10-11, Stip. Nos. 11-12), HealthPort

expressly agreed that it would charge requestors in compliance with the fee limitations imposed

by both federal and state law. Specifically, paragraph 2.1.1 of its agreement with Beth Israel

provides as follows:





_____

[8] "████████████████████████████████" is a reference to the "Privacy Rule,"
45 C.F.R. § 164.534, promulgated pursuant to the federal Health Insurance Portability and
Accountability Act of 1996 ("HIPAA").

(Ex. 2, Beth Israel Agreements, at HEALTHPORT009955-56.) Like ChartOne before it,

HealthPort charged the same rate—75¢ per page—for both patients and their attorneys. (*See* Ex.

5, Abatjoglou 30(b)(6) Dep., at 108:19-109:5; Ex. 6, Gery 30(b)(6) Dep. at 120:7-12).)

Additional facts will be set forth as relevant below.

## III.    ARGUMENT

"Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the

practice has developed pursuant to the court's inherent authority to manage the course of trials."

*Luce v. United States*, 469 U.S. 38, 41 n.4 (1984); *see also United States v. Alicea*, 837 F.2d 103,

107 (2d Cir. 1988). The purpose of a motion *in limine* is "to aid the trial process by enabling the

Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that

are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v.

Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). The proponent of the evidence—here, HealthPort—

bears the burden of proving that it is admissible. *See Evans v. Port Auth. of N.Y. & N.J.*, 192 F.

Supp. 2d 247, 263 n.121 (S.D.N.Y. 2002).

Plaintiff seeks to preclude certain questioning or evidence from trial on the grounds that

such questioning or evidence is irrelevant, unfairly prejudicial, and would likely confuse and/or

mislead the jury, would cause undue delay, and would waste the Court's and the jurors time.

"Relevant evidence" is "evidence having any tendency to make the existence of any fact that is

of consequence to the determination of the action more probable or less probable than it would

be without the evidence." Fed. R. Evid. 401. Irrelevant evidence is inadmissible. Fed. R.

Evid. 402. Even relevant evidence "although admissible, may be precluded by the district court if

its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the

issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless

presentation of cumulative evidence." Fed. R. Evid. 403. "Unfair prejudice" is "an undue

tendency to suggest decision on an improper basis, commonly though not necessarily, an emotional one." Fed. R. Evid. 403, Advisory Committee Notes.

> **A.    Beth Israel's costs are irrelevant as a matter of law.**
>
>> **1.    HealthPort has an independent obligation to comply with PHL § 18.**

Although not itself a healthcare provider as defined in the statute, *see* PHL § 18(1)(b),[9] HealthPort's contract with Beth Israel both confers upon HealthPort the right to charge requestors and obligates HealthPort to comply with HIPAA and PHL § 18 when doing so. (Ex. 2, Beth Israel Agreements, at HEALTHPORT009955-56.) As a result, HealthPort should be treated as the healthcare provider when it charges for copies of medical records on its own behalf. Indeed, HealthPort has stipulated that it "is subject to the obligations of a health care provider under New York Public Health Law § 18." (Revised PTO at 10, Stip. No. 11.) The obligations of a healthcare provider include charging no more than "the costs incurred by such provider." PHL § 18(2)(e). Having agreed to abide by the limitations imposed upon a healthcare provider in PHL § 18, HealthPort may not charge more than what a healthcare provider may charge under the statute: its own costs.

Principles of statutory construction support this result. As a threshold matter, the statute allows only a "*provider*" to "impose a reasonable charge." PHL § 18(2)(e) (emphasis added). But Beth Israel—the underlying provider here—does not charge anybody anything for requests fulfilled by HealthPort. Therefore, HealthPort should not be permitted to charge anything unless it is deemed to be the "provider"—and subject to the same "costs incurred" limitation as a provider—when it fulfills records requests. Moreover, the objective of the statute would be defeated if it were interpreted so as not to apply to medical records vendors. *See McCracken v.*

---

[9] The term "'provider' means a 'health care facility' or a 'health care practitioner'. . . ." PHL § 18(1)(b).

*Verisma Sys., Inc.*, No. 6:14-CV-06248(MAT), 2017 WL 2080279, at *7 (W.D.N.Y. May 15, 2017) (collecting cases). It stands to reason that if a hospital may not profit from responding to patients' requests for their medical records, then an ROI company may not do so either. Finally, PHL § 18 plainly contemplates fees based upon the costs incurred by a single "provider"—not by some combination of a provider and its ROI vendor. *See id*. Either Beth Israel may recover its costs—which could include a reasonable fee paid to HealthPort—or HealthPort may recover its costs—which could include an amount reimbursed to Beth Israel. But not both.

Limiting an ROI vendor to charging the costs it actually incurs—or reimburses the underlying provider—is sound public policy for at least three additional reasons. First, the ROI vendor knows its own costs, but it does not inherently know what, if any, costs its provider client might also be incurring. Allowing a vendor to make a profit based upon such hypothetical third-party costs would invite abuse. For example, there is no evidence in the present case that HealthPort ever sought to determine Beth Israel's costs. (*See* Ex. 4, Rohs 30(b)(6) Dep., at 123:12-14 ("Q. . . . Has HealthPort undertaken any study or attempt to ascertain what its provider clients' costs are for ROI request fulfillment in New York state? A. Not that I know of."); *see also* Ex. 5, Abatjoglou 30(b)(6) Dep., at 149:2-22 (testifying that HealthPort does not have ability to produce report that reflects Beth Israel's costs).)

Second, part of the benefit to a hospital of outsourcing the ROI process is to relieve itself of the burden of allocating costs to the ROI process. Unlike an ROI vendor, hospitals have fixed costs that have nothing to do with the ROI process. "For example, I know that a hospital's medical library is a good example of an overhead expense that gets allocated across all departments. I doubt that the ROI services really needs the medical library." (Ex. 7, Trerotola 30(b)(6) Dep., at 103:13-16.) An ROI vendor that charges on its own behalf for costs incurred by

a hospital has every incentive to exploit both the hospital's cost structure and the fact that the hospital's ROI-related costs are not well documented.

Third, the costs incurred by a hospital such as Beth Israel are offset in part by third-party payments, such as Medicare reimbursements. Indeed, a document containing data excerpted from Beth Israel's Medicare cost reports played a starring role in HealthPort's (unsuccessful) *Daubert* motion.[10] HealthPort contends that the cost report supports HealthPort's per-page fee because it reflects indirect costs allocated to Beth Israel's medical records department. But the very point of such a cost report is to seek reimbursement. *See* 42 C.F.R. § 405.1801(b) ("[i]n order to be paid for covered services furnished to Medicare beneficiaries, a provider must file a cost report"). Indeed, HealthPort's own expert testified that at least some portion of ROI costs are reimbursed for Medicare patients. (*See* Ex. 3, Trerotola 05/25/16 Dep., at 244:21-245:2.) An ROI vendor should not be permitted to charge for costs that have been included on the provider's Medicare cost report—and thus reimbursed in part—but for which the provider has no offsetting revenue because the vendor keeps the money for itself.

### 2. *HealthPort does not charge requestors on Beth Israel's behalf.*

As discussed above, a healthcare provider could engage an ROI company both to fulfill records requests and to bill requestors on the provider's behalf. In that case, the hospital would receive the revenue from copy charges, and the hospital's costs would presumably include reasonable fees paid to the vendor both for its work copying the records and—if otherwise

---

[10] *See* Dkt. #227, Def. [HealthPort]'s Mem. of Law in Supp. of Mot. to Exclude Test. of Richard Royston ("Def.'s *Daubert* Mot."), at 22 (Sept. 2, 2016). Although HealthPort's brief stated that "Beth Israel produced its indirect costs in its Medicare Cost Report" (*id.*), as Plaintiffs explained in their response, Beth Israel actually produced a one-page excerpt "derived from the 2014 Medicare Cost Report" (Dkt. #251, Pls.' Mem. of Law in Opp'n to HealthPort's Mot. to Exclude Test. of Richard Royston ("Pls.' *Daubert* Opp'n"), at 17 (Sept. 16, 2016)).

allowed under the statute—for collecting revenue on the healthcare provider's behalf. Similarly, one can imagine a hybrid scenario in which the costs incurred by an ROI company include payments made to the hospital as reimbursement for the hospital's costs. This appears to have been the case under the terms of Beth Israel's previous contract with CMI. (*See* Ex. 2, Beth Israel Agreements, at HEALTHPORT009970 ("█████████████████████████████████ █████████████████████████████████████████").) In that situation, the vendor's payment to the hospital might fairly be considered a "cost incurred" by the vendor, in which case the reasonableness of including those costs would turn on other factors, such as whether the payments to the hospital accurately reflected the hospital's actual costs and whether such costs are allowed under PHL § 18.

In the present case, however, HealthPort did not reimburse Beth Israel for anything. Instead, HealthPort collected revenue from requestors entirely for its own benefit, not Beth Israel's. Thus, whether HealthPort was Beth Israel's agent in fulfilling records requests is beside the point. *See McCracken*, 2017 WL 2080279, at *7 (rejecting vendor's argument, where vendor determined amount to be charged, that "an agent to a known principal has no liability to third parties for conduct undertaken on behalf of the principal"). Beth Israel declined to seek reimbursement, HealthPort decided what to charge, and HealthPort kept the money for itself. (*See* Ex. 6, Gery 30(b)(6) Dep., at 120:13-20.) Even if HealthPort only filled one shoe for purposes of fulfilling requests, it filled both when it came to charging for them. The legislature could not have intended such a windfall.

### 3.    Beth Israel's search and retrieval and other clerical costs are not compensable under PHL § 18.

Even if HealthPort were entitled to charge for costs incurred by Beth Israel and keep the money as its own profit, those costs must still be allowable under the statute. They are not.

In 1974, New York enacted Public Health Law § 17, which mandates in relevant part that, "[u]pon the written request of any competent patient," a healthcare provider "must release and deliver" copies of the patient's medical records to "any other designated physician or hospital." PHL § 17. Then, as now, "[e]ither the physician or hospital incurring *the expense of providing* copies . . . may impose a reasonable charge . . . as reimbursement for such expenses . . . ." *See id*. (emphasis added). Courts have interpreted the language of PHL § 17 to permit providers to charge fees, not only for copying the records, but also for retrieving them. *See, e.g.*, *Scipione v. Long Island Jewish-Hillside Med. Ctr.*, 460 N.Y.S.2d 409, 409 (Sup. Ct. Nassau Cnty. 1982) (providing option to pay $15 handling fee plus $1.50 per page or rent photocopying machine and pay "$15 search and retrieval fee, as well as a fee for the hospital employee who supervises the copying"); *Hernandez v. Lutheran Med. Ctr.*, 478 N.Y.S.2d 697, 698 (2d Dep't 1984) ("we find that the per page charge sought be respondent is indeed reasonable inasmuch as its costs include employee time *in addition to duplication expense*" (emphasis added)).

In 1986, New York enacted PHL § 18, which "give[s] 'qualified person[s],' including patients, direct access to their medical records . . . ." *Casillo v. St. John's Episcopal Hosp.*, 580 N.Y.S.2d 992, 995 (Sup. Ct. Suffolk County Feb. 21, 1992). In contrast to § 17—which allows for a reasonable charge for "providing copies"—PHL § 18 expressly limits the "reasonable

charge" to the actual "costs incurred by such provider" for the copies themselves.[11] *See* PHL § 18 (allowing provider to "impose a reasonable charge for all inspections and copies, not exceeding the costs incurred by such provider"); *see also Zamdborg v. Goldin*, 831 N.Y.S.2d 363, 2004 N.Y. Slip. Op. 51907(U), at *3 (Sup. Ct. Kings County Sept. 27, 2004) (granting costs under PHL § 18 "in the amount actually incurred" and inviting parties to "to submit documentary evidence of actual costs incurred *in photocopying* the medical records" (emphasis added)); *McCrossan v. Buffalo Heart Grp.*, 695 N.Y.S.2d 852, 853 (4th Dep't 1999) (rejecting hospital's imposition of clerical fee under § 18). If, in crafting § 18, the legislature had intended to allow healthcare providers to recover all *expenses* associated with *providing* copies, then it would have used the same language employed in § 17. Instead, the legislature limited healthcare providers to their copying costs. *See* 2B Sutherland Statutory Construction § 51:2 (7th ed.) ("courts presume a different intent when a legislature omits words used in a prior statute on a similar subject").

This interpretation of § 18 is consistent with the legislature's subsequent amendment to the statute, in 2004, adding subsection (1)(g). 2004 N.Y. Laws, ch. 634, § 1 (Oct. 26, 2004). Section 18(1)(g) provides in relevant part that "[a] qualified person shall be deemed a 'personal representative of the individual' for purposes of the federal health insurance portability and accountability act of 1996"—HIPAA—"and its implementing regulations." PHL § 18(1)(g). HIPAA, in turn, expressly limits the "reasonable, cost-based fee" for copies requested by individuals, and their personal representatives,[12] to: (1) "[l]abor for copying the protected health information"; (2) "[s]upplies for creating the paper copy or electronic media"; and (3) postage.

---

[11] In 1991, the legislature imposed a limit upon copying costs within the definition of "reasonable charge" in both statutes. 1991 N.Y. Laws, ch. 165, §§ 48-49 (Jun. 12, 1991); *see also* PHL § 18(2)(e) ("the reasonable charge for paper copies shall not exceed seventy-five cents per page").

[12] *See* 45 C.F.R. § 164.502(g)(1).

45 C.F.R. § 164.524(c)(4)(i)-(iii). HIPAA does not permit "fees for retrieving or handling the information or for processing the request." 65 Fed. Reg. 82,462, 82,557 (Dec. 28, 2000) (emphases added).

Interpreting § 18 to limit the "costs incurred" to copying costs is also consistent with the fees for copies allowed under New York's Freedom of Information Law, which excludes "search time or administrative costs" and otherwise limits copying charges to: (1) "an amount equal to the hourly salary attributed to the lowest paid agency employee who has the necessary skill required to prepare a copy of the requested record"; (2) "the actual cost of the storage devices or media provided to the person making the request in complying with such request"; and (3) "the actual cost to the agency of engaging an outside professional service to prepare a copy of a record . . . if such service is used to prepare the copy." *See* N.Y. Pub. Officers Law § 87(c).[13]

In the present case, HealthPort is responsible for copying, which is all that is compensable under the statute. Beth Israel logs the initial request and pulls the records, which it provides to HealthPort. HealthPort then duplicates them and returns the records to Beth Israel. (Ex. 2, Beth Israel Agreements, at HEALTHPORT009955.) HealthPort does not charge Beth Israel (*id.*), and Beth Israel's costs are not compensable under § 18. For these reasons and those set forth in parts III.A.1 and 2 above, Beth Israel's costs are irrelevant and should be excluded.

### 4.     This Court should certify its Order regarding the relevance of Beth Israel's "costs incurred" for an interlocutory appeal.

Whatever the Court's decision regarding whether Beth Israel's costs are relevant, Plaintiffs respectfully submit that the Court should certify its Order for an interlocutory appeal.

---

[13] Although this particular subsection was enacted in 2008, 2008 N.Y. Laws, ch. 223, § 1 (Jul. 7, 2008), applicable regulations previously had excluded "fixed costs . . . such as operator salaries," *Szikszay v. Buelow*, 436 N.Y.S.2d 558, 562 (Sup. Ct. Erie County 1981) (citing N.Y. Comp. Codes R. & Regs. tit. 21, § 1401.8(c)(3)).

*See* 28 U.S.C. § 1292(b). If the Second Circuit were to accept review, Plaintiffs in turn would seek certification to the New York Court of Appeals with respect to the legal issues of (1) the meaning of "costs incurred" under PHL § 18 and (2) whether an ROI vendor may charge for costs incurred by the underlying healthcare provider, even if the ROI vendor does not reimburse the healthcare provider for such costs. *See* N.Y. Court of Appeals R. of Practice § 500.27.

Section 1292(b) provides for certification of an order for interlocutory appeal when the court determines: "(1) that such order involves a controlling question of law (2) as to which there is a substantial ground for difference of opinion and (3) that an immediate appeal from [that] order may materially advance the ultimate termination of the litigation." *In re Facebook, Inc.*, 986 F. Supp. 2d 524, 529 (S.D.N.Y. 2014) (quoting 28 U.S.C. § 1292(b)). Each of these elements is present here.

First, the issue of the interpretation of PHL § 18 is the central and controlling question of law in this case, implicating both liability and damages simultaneously. Indeed, HealthPort has acknowledged that it cannot prevail based upon its own costs alone. (*See* Ex. 15, June 2, 2017 Hr'g Tr. at 8:9-15.) Second, the issue is novel and difficult. As set forth above, many of the relevant cases address PHL § 17, an earlier statute with different language, and none the cases involves an ROI vendor that charges requestors directly and keeps all of the money for itself. Third, an immediate appeal would materially advance the ultimate termination of the litigation. Irrespective of which side prevails on the issue, if this Court's interpretation of PHL § 18 is wrong, there will have to be another trial.

### B.   Neither side is estopped from its respective position regarding the relevance of Beth Israel's costs.

HealthPort may argue that Plaintiffs should be estopped from seeking to exclude Beth Israel's costs because Plaintiffs did not previously move to exclude them. This argument—

should it be made—is not well taken. By the same token, Plaintiffs do not contend that HealthPort should be estopped from seeking to include Beth Israel's costs, notwithstanding HealthPort's various statements suggesting to the Court that its defense would be limited to its own costs. Simply stated, Beth Israel's costs should be excluded—but not on estoppel grounds.

Under the doctrine of "judicial estoppel," a party may be estopped from "asserting a factual position in a legal proceeding that is contrary to a position previously taken by him in a prior legal proceeding." *Bates v. Long Island R.R. Co.*, 997 F.2d 1028, 1037 (2d Cir. 1993); *accord Freudenberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 204 (S.D.N.Y. 2010). Judicial estoppel is a "'rare remedy' used to avoid inconsistent outcomes and to prevent litigants from abusing the power of the court." *Am. Mfrs. Mut. Ins. Co. v. Payton Lane Nursing Home, Inc.*, 704 F. Supp. 2d 177, 192 (E.D.N.Y. 2010) (internal quotation marks omitted). It "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Zedner v. United States*, 547 U.S. 489, 503 (2006) (internal citations omitted). The Supreme Court has enumerated a non-exhaustive list of factors that should "typically inform" a court's decision whether to invoke this doctrine:

> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position . . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id.* (internal citation omitted).

Similarly, the doctrine of "equitable estoppel" may be invoked "'where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct.'" *Associated Press v. Meltwater U.S. Holdings, Inc.*, 931 F. Supp. 2d 537, 565 (S.D.N.Y. 2013) (quoting *Marvel Characters, Inc. v.*

*Simon*, 310 F.3d 280, 292 (2d Cir. 2002)). The elements of equitable estoppel are (1) a material representation, (2) reasonable reliance by the other party, and (3) prejudice. *William Penn Life Ins. Co. of N.Y. v. Viscuso*, 663 F. Supp. 2d 353, 357 (S.D.N.Y. 2009).

### 1. *Plaintiffs are not estopped from seeking to exclude Beth Israel's costs.*

As a threshold matter, the fact that Plaintiffs did not previously move *in limine* to exclude Beth Israel's costs does not waive Plaintiffs' right to challenge the relevance of those costs at trial.[14] *See, e.g., Emery v. Harris*, No. 1:10-cv-01947-JLT (PC), 2014 U.S. Dist. LEXIS 22664, *2-*3 (E.D. Cal. Feb. 21, 2014) ("the failure to file a timely motion *in limine* is not a waiver of objections to evidence not the subject of a motion *in limine*"); *see also Port Auth. Police Asian Jade Soc'y of N.Y. & N.J., Inc. v. Port Auth. of N.Y. & N.J.*, 681 F. Supp. 2d 456, 466 (S.D.N.Y. Jan. 13, 2010) ("Failure to make an objection *either* in limine *or at trial* ordinarily constitutes waiver." (emphases added)).

Nor are Plaintiffs estopped from seeking to exclude Beth Israel's costs as irrelevant, because Plaintiffs have never asserted a contrary position (i.e., that Beth Israel's costs are relevant). Indeed, in moving for class certification in April 2015, Plaintiff expressed her disagreement with HealthPort's position "that it is entitled to charge an amount that reflects not only its costs incurred, but also any costs incurred by its healthcare provider clients." (Dkt. #82, Pl.'s Mem. of Law in Supp. Class Cert. ("Pl.'s Class Cert. Br."), at 15 (Apr. 29, 2015); *see also*

---

[14] HealthPort may note that Plaintiffs chose not to lodge objections to certain exhibits relating to Beth Israel's costs in the parties' proposed PTO. (*See* Revised PTO at 35-36, Exs. 245, 250, 260-67.) But Plaintiffs' decision not to challenge the admissibility of those documents does not foreclose Plaintiffs from taking the position that the jury should be instructed to disregard costs that were not visited upon HealthPort. Moreover, a party's decision not to object does not "preclude the trial judge from excluding the evidence on her own motion if . . . the evidence is inadmissible, and the judge believes the interests of justice require" its exclusion. 1 McCormick on Evid. § 55 (7th ed.).

*id*. at 30-31 ("Plaintiff contends that *HealthPort's prices may not be based upon the providers' costs*, since HealthPort does not charge for the providers' costs." (emphasis added)); *id*. at 24 (identifying common question "whether HealthPort's per page fee may include the provider's costs, even though HealthPort does not charge on the provider's behalf").

Likewise, during oral argument on Plaintiff's motion for class certification, the Court asked Plaintiff's counsel why, if Beth Israel could simply pass along a bill from HealthPort— which necessarily would include all of HealthPort's costs, including overhead—HealthPort may not directly charge requesters the same thing. (*See* Ex. 9, Aug. 6, 2015 Hr'g Tr., at 14:23-15:23.) Counsel responded: "[I]n the context of HealthPort billing Beth Israel, *HealthPort would not be recovering Beth Israel's costs*. What we have here is HealthPort trying to recover what it considers to be the universe of all costs that could be attributable *to the provider's costs, to the hospital's costs*—" (*Id*. at 15:24-16:4 (emphases added).)

Thus, although the Court ultimately disagreed with Plaintiffs' position that the allowable "costs incurred" under § 18 exclude indirect costs (*see* Dkt. #151, Op. & Order ("Class Cert. Op."), at 8-13 (Nov. 9, 2015)), Plaintiffs believed that the Court's class certification decision supported their position that HealthPort could not make a profit by charging for costs that it did not incur, such as *the provider's costs* (*see id*. at 11 ("[t]he legislature's purpose . . . was to prevent making profits from the act of responding to patient requests for their records"); *see also id*. at 17 ("the parties dispute whether the other key fact on which liability will turn—whether *HealthPort's* 'costs incurred' were at least 75 cents per page—is a common question" (emphasis added)).

Still, Plaintiffs expected HealthPort to continue to attempt to rely upon Beth Israel's costs, perhaps by arguing that HealthPort somehow reimbursed Beth Israel for its costs. Thus,

Plaintiffs' expert's report included an analysis of Beth Israel's costs, separate and apart from the

costs incurred by HealthPort. In their pretrial memorandum filed in September 2016, Plaintiffs

noted that their expert's analysis was conservative because it "includes costs incurred by both

HealthPort and Beth Israel, even though *HealthPort did not 'incur' Beth Israel's costs*."[15]

(Dkt. #217, Pls.' Pre-Trial Mem., at 5 (Sept. 2, 2016) (emphasis added).) Plaintiffs explained that

they "seek to recover from HealthPort the amount of Beth Israel's costs that HealthPort collected

from Plaintiffs *but which HealthPort did not incur*." (*Id*. at 9 (emphasis added).) Concomitantly,

in their proposed jury instructions filed the same day, Plaintiffs asked the Court to instruct the

jury as follows:

> [I]n determining the costs incurred in copying medical records, you must consider
> only HealthPort's costs and not the costs of any other health care provider, such
> as Beth Israel, unless HealthPort paid those costs or was charged for those costs.
> If HealthPort did not either pay or incur a liability for the expense, then that
> expense is not a "cost incurred" by HealthPort.

(Dkt. #215, Pls.' Proposed Jury Instructions, at 18 (Sept. 2, 2016).)

      Finally, during the parties' pretrial conference with the Court on May 12, 2017,

Plaintiffs' counsel sought clarity regarding the Court's interpretation of PHL § 18:

> HealthPort's position for trial purposes appears to be that they charged for costs
> that were not incurred by HealthPort but, rather, by Beth Israel.

> In our view, in particular in the context of the unjust enrichment claim, even if
> theoretically that were allowable under Section 18, which we contend it's not,
> even if it were theoretically allowable, it would be only if they were actually
> reimbursing [Beth Israel].

---

[15]  In opposing HealthPort's *Daubert* motion two weeks later, Plaintiffs reiterated that
"Beth Israel's costs in processing requests for medical records are not incurred by HealthPort;
that is, Beth Israel does not charge HealthPort for its costs. Indeed, the evidence will show that
Beth Israel has *never* calculated its ROI processing costs." (Pls.' *Daubert* Opp'n at 19.)

(Ex. 8, May 12, 2017 Hr'g Tr., at 21:25-22:7.) Consistent with Plaintiffs' interpretation of the

Court's class certification decision, the Court responded:

> If HealthPort is not in fact absorbing the costs incurred by Beth Isreal, yes.
> Of course HealthPort can't charge for them. I don't know what the economic
> arrangement is with Beth Israel, and there may be various ways in which
> HealthPort is arguing that effectively through the backdoor it is picking up
> expenses incurred by Beth Israel. If it were hypothetically established that there
> was no nexus between the two, the costs incurred by somebody else are irrelevant.

(*Id.* 22:15-22.) In the face of this exchange, HealthPort's attorneys were silent. Indeed, when

later asked if HealthPort had "any legal difference of opinion as to anything that I said here?" the

answer was "We don't, your Honor." (*Id*. at 40:3-7.) Three weeks later, however, during what

was supposed to be the parties' final pretrial conference with the Court, HealthPort asked the

Court to revisit the matter. (*See* Ex. 15, June 2, 2017 Hr'g Tr. at 8:2-15.)

### 2. *HealthPort is not estopped from seeking to include Beth Israel's costs.*

Nevertheless, Plaintiffs do not contend that HealthPort is estopped from seeking to

include Beth Israel's costs. With respect to equitable estoppel, as noted above, Plaintiffs were

aware of—and expressly addressed—HealthPort's position "that it is entitled to charge an

amount that reflects not only its costs incurred, but also any costs incurred by its healthcare

provider clients." (Pl.'s Class Cert. Br. at 15.) In fact, it was Plaintiff who first articulated

HealthPort's position (as shown above), not HealthPort.

By way of example, HealthPort's brief opposing class certification addressed Plaintiff's

argument that "the costs incurred" under § 18 should be limited to those costs allowed for

individual requests under HIPAA, but HealthPort otherwise criticized Plaintiff for "delving into

cost and legal issues that should be reserved for litigation on the merits—not for class

certification." (*See* Dkt. #132, Def. [HealthPort]'s Mem. of Law in Opp'n to Pl.'s Mot. for Class

Cert., at 14-16 (July 2, 2015).) And at oral argument, HealthPort's counsel argued that

*HealthPort's* average costs differ from one hospital to the next based upon "whether the hospital or HealthPort is doing a particular task" (Ex. 9, Aug. 6, 2015 Hr'g Tr., at 50:24-25), suggesting that, on average, HealthPort's *own* costs exceeded 75¢ per page:

> THE COURT: . . . [I]f the numbers that you quote are right, *your client* is taking a small loss because $0.75, by your light, somewhat understates all in the cost fairly attributable to copying for patients, correct?
>
> MR. LITMAN: *That is correct*.
>
> THE COURT: Why are you in that line of work? . . .
>
> MR. LITMAN: I will say that HealthPort is obviously able to conduct the other matters of its business. First of all, it's in 50 states. Not every state has a statute like New York does. Other states have different kinds of statutes.
>
> THE COURT: Is part of it that, if you didn't agree to do the patient work here, you wouldn't be given access to this material at all? In other words, if this is a loss leader for you, your client needs to be all in.
>
> MR. LITMAN: That is 100 percent of the case, your Honor. *HealthPort takes on these type of loss leaders where they are only able to charge $0.75, so they can get at the insurance firms, so they can get at the defense lawyer work . . . .*

(*Id*. at 33:25-34:21 (emphases added).)

To be fair, this colloquy came on the heels of a statement by HealthPort's counsel that the costs incurred "include, necessarily, in almost every single case work that was done by HealthPort *and work that is done by the hospital themselves*." (Ex. 9, Aug. 6, 2015 Hr'g Tr., at 32:8-16 (emphasis added).) But counsel then said: "We are not including any kind of a profit margin in what we are doing" (*id*. at 32:21-22), without clarifying whether "[w]e" meant HealthPort and its provider clients or HealthPort alone. In fact, HealthPort is making a significant profit margin, which it wants to justify based upon the notion that it may be reimbursed for Beth Israel's costs.

Further confusing matters, HealthPort's counsel later distinguished HealthPort from Beth
Israel in urging the Court to reject Plaintiff's position that a healthcare provider—and, in turn, its
ROI vendor—should be limited to recouping the incremental labor and supply costs for copying
medical records. "The primary purpose of Beth Israel," said HealthPort's counsel, "is to provide
medical care to patients and to service the community and provide medical care, whereas
HealthPort's entire existence"—thereby justifying the inclusion of all of its costs—"is to come in
and run their [Beth Israel's] ROI department." (Ex. 9, Aug. 6, 2015 Hr'g Tr., at 39:16-19.)

Putting aside the issue of whether HealthPort may recover costs that it did not incur,
Plaintiffs agree with this distinction. Indeed, Plaintiffs' expert has opined that Beth Israel's
indirect costs are not demonstrably attributable to the process of fulfilling requests for copies of
medical records. (*See* Ex. 1, Royston Rebuttal, at 12-16; *see also* Ex. 10, Royston Report,
at 12-13 ("the majority of Beth Israel's overhead costs are effectively fixed costs that it will have
to incur in the course of its business irrespective of whether it does or does not fulfil requests for
copies of medical records").) Yet, at the same time, Plaintiffs cannot say that HealthPort's desire
to recoup Beth Israel's costs for itself is clearly inconsistent with an earlier position of
HealthPort's or that HealthPort prevailed in a previous phase of the litigation (e.g., by defeating a
statewide class) based upon its omission of Beth Israel's costs. Although HealthPort evidently
did not make its position clear to the Court,[16] it is apparent that HealthPort's counsel intended the

---

[16] *See, e.g.*, Class Cert. Op. at 29 ("HealthPort has proposed to defend against
Ruzhinskaya's case, as it may, on the basis of *its* . . . costs incurred" (emphasis added)); *id.* at 32
("HealthPort's submissions strongly suggest that it would defend against a statewide class action
both by pointing to its statewide costs . . . and, where such an argument was available, by
arguing that *its* costs in connection with the particular provider exceeded that figure." (emphases
added)). Notably, HealthPort did not take the opportunity to clarify its position in summarizing
its defenses in the proposed PTO. (*See* Revised PTO at 5 ("HealthPort's overarching defense
is that *its* average per page cost to respond to medical records requests at Beth Israel during the
class period exceeded 75¢ per page, which is supported by the opinions of HealthPort's expert

"[w]e" in "[w]e are not including any kind of profit margin" to mean HealthPort *and Beth Israel*.

Accordingly, Plaintiffs' are not relying upon the doctrine of judicial estoppel in support of their

motion to exclude Beth Israel's costs. For all of these reasons and those set forth in part III.B.1

above, neither party is estopped with respect to its position on the instant motion.

      **C.**     **HealthPort should bear the risk of any uncertainty arising from the nature of its records, the records of Beth Israel, or the lack thereof.**

      In the event that the Court allows evidence of Beth Israel's costs, Plaintiffs anticipate that

HealthPort will attempt to impeach Plaintiffs' expert's analysis of those costs—and possibly

HealthPort's own costs—based upon the unreliability of the cost data itself. By doing so,

however, HealthPort would be seeking improperly to immunize itself from liability for

overcharging under PHL § 18 based upon its failure to make any effort to comply with the

statute in the first instance. As a result, Plaintiffs have proposed the following jury instruction:

> If you find that it is difficult or impossible for Plaintiffs to prove the cost incurred in copying medical records because of any uncertainty arising from the nature of HealthPort's records, the records of Beth Israel, or lack thereof, then the risk of that uncertainty is borne by HealthPort and not by Plaintiff.

(Dkt. #294, Pls.' [Revised] Proposed Jury Instructions, at 17, 20-21 (May 24, 2017).)

      In response to Plaintiffs' May 31, 2017 letter to the Court (Dkt. #298, Letter from

M. Jasinski) objecting to HealthPort's inclusion of new witnesses in the parties' Revised PTO—

namely, counsel of record for both HealthPort and Plaintiffs—HealthPort argued that the

foregoing instruction is predicated upon an argument that HealthPort impaired Plaintiffs' ability

---

witnesses.").) Plaintiffs' position is—and always has been—that HealthPort cannot recoup costs that it did not incur. (*See* Revised PTO at 4.)

to obtain discovery and that it improperly shifts the burden of proof in this case from Plaintiffs to HealthPort. (Dkt. #299, Letter from S. Emery, at 2 (June 1, 2017).[17]) It is not, and it does not.

Plaintiffs' proposed jury instruction is appropriate and consistent with the "wrongdoer rule" applied in the Second Circuit and New York state courts. The wrongdoer rule provides that, "where one has committed a wrong which renders impossible the exact ascertainment of damages, the risk of the uncertainty should be thrown upon the wrongdoer instead of upon the injured party." *Fed. Ins. Co. v. Mertz*, No. 12-cv-1597-NSR-JCM, 2016 U.S. Dist. LEXIS 4019, at *12 (S.D.N.Y. Jan. 12, 2016) (citing *President & Directors of Manhattan Co. v. Kelby*, 147 F.2d 465, 476 (2d Cir. 1944)). Although Plaintiffs' costs analysis may not be the result of mere speculation or guess, "it will be enough if the evidence show the extent of damages as a matter of just and reasonable inference, although the result be only approximate." *Id.* at *13 (citing *Story Parchment Co. v. Paterson Parchment Co.*, 282 U.S. 555, 563 (1931)). "The wrongdoer is not entitled to complain that they cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise." *Id.*; *see also Am. Ass'n of Bioanalysts v. Dep't of Health*, 906 N.Y.S.2d 356, 358-59 (3d Dep't 2010) (shifting burden to defendant to present evidence in support of claimed actual costs, given that defendant was obligated to compute actual costs but failed to maintain records necessary to do so); *Hart v. Rick's Cabaret Int'l, Inc.*, No. 09-cv-3043 (PAE), 2014 U.S. Dist. LEXIS 174617, at *16-*18 (S.D.N.Y. Dec. 17, 2014) (requiring defendant to negate inference of damages because of failure to maintain records necessary to determine same).

---

[17] Attempting to excuse its eleventh-hour decision to add counsel to its witness list, Mr. Emery protests that "plaintiff's counsel does not want anything to stand in the way of its new (yes, new) proposed jury instruction . . . ." (*Id.*) But this proposed jury instruction is not new. It was included in Plaintiffs' original Proposed Jury Instructions filed on September 2, 2016. (Dkt. #215 at 16, 21.)

Although Plaintiffs' expert, Richard Royston, has done an analysis and intends to give an opinion to the jury as to what HealthPort's—and, if necessary, Beth Israel's—"demonstrable and reasonable" costs incurred were during the Class Period, Plaintiffs anticipate that HealthPort will attack Mr. Royston for failing to include in his analysis certain costs that he concluded were not demonstrable based upon the data provided by HealthPort and Beth Israel. (*See generally Daubert* Opp'n at 17-20.) Plaintiffs expect that HealthPort will wrongly suggest to the jury—in cross examination or during closing argument—that Plaintiffs, who have the burden of proof, failed to obtain the data necessary to discern those costs. Indeed, confirming Plaintiffs' suspicion that HealthPort would employ this tactic at trial, in its June 1, 2017 letter to the Court, HealthPort insists that, "rather than raise an actual discovery dispute with HealthPort and/or Beth Israel during the pendency of discovery and then, if necessary, with the Court, Plaintiffs wish to impermissibly and belatedly argue their supposed discovery issues for the first time to the jury." (Dkt. #299 at 2.)

But the very point of Plaintiffs' proposed jury instruction is that there was *no* discovery dispute. Plaintiffs requested documents from both HealthPort and Beth Israel sufficient to identify all of their claimed costs incurred in responding to document requests by qualified persons during the Class Period, and HealthPort and Beth Israel did not object to producing the documents responsive to these requests. (*See generally* Ex. 11, HealthPort's Discovery Response; Ex. 12, Beth Israel's Subpoena Response.) Although HealthPort and Beth Israel objected to creating documents or reports outside what was kept in the ordinary course,[18] they

---

[18] It is axiomatic that a party to litigation cannot be forced to create documents that do not already exist in the ordinary course in response to a discovery request. *See, e.g.*, *Williams v. City of Hartford*, No. 3:15-CV-00933(AWT), 2016 WL 1732719, at *17 (D. Conn. June 2, 2016) ("Rule 34 only requires a party to produce documents that exist at the time of the request; a party cannot be compelled to create a document for its production.").

agreed to produce and did produce the responsive documents. (*Id*.) Plaintiffs' expert Mr. Royston used and relied upon the documents that were produced. HealthPort's suggestion that Plaintiffs were obligated to move to compel additional documents or data—when neither HealthPort nor Beth Israel stated that it was withholding any responsive documents—is wrong.

The reality is that better cost data were not produced to Plaintiffs in this case because the data do not exist. For example, certain costs allegedly incurred by Beth Israel in responding to requests for medical records are not demonstrable because Beth Israel does not allocate costs to the ROI process (costs HealthPort nevertheless insists must be considered here), has never done an analysis of its ROI-related costs, has never been asked by HealthPort what its costs in copying medical records were, and has never been reimbursed by HealthPort for its costs.[19] Now, in light of the fact that some of the costs HealthPort seeks credit for in this litigation are neither its own nor demonstrable, and in an effort to avoid the jury's determination that such costs do not support HealthPort's 75¢-per-page fees, HealthPort wants to suggest to the jury that Plaintiffs simply didn't gather the necessary information to undertake their analysis.

Implicit in a statute that caps charges at one's actual "costs incurred" is an obligation to make a reasonable effort to determine what those costs are in the first instance. This is not to suggest that PHL § 18 requires a provider—or its ROI vendor—to do the impossible, such as track costs on a real-time or request-by-request basis. But an entity attempting in good faith to comply with § 18 would be expected to maintain sufficient data to determine the average per-

---

[19] *See* Ex. 13, Beth Israel 30(b)(6) Dep., at 50:2-52:2, 53:20-54:5, 54:9-12, 54:17-55:7-12, 55:22-24, 57:4-11, 60:13-19, 60:16-19, 61:21-62:15, 65:5-17, 67:3-5, 67:10-13, 67:17-68:19, 69:16-21, 70:9-11, 70:25-71:9, 71:10-16, 73:18-22, 74:1-6, 75:3-6, 75:12-14, 75:15-18, 77:10-20, 78:12-15, 78:20-22, 78:24-79:10, 81:14-18, 81:19-22, 81:24-82:2, 82:4-13, 83:10-13, 83:15-17, 83:24-84:2, 86:22-25, 88:5-7, 88:8-11, 88:16-18, 88:19-89:1, 96:9-17; 97:9-12, 99:2-5, 204:5-18, 204:19-22; *see also* Ex. 14, Gilbreath Email, at 1 ("There is no logical way to get the allocated costs down to the department level.").

page costs of any costs it intends to recoup as a "cost incurred" in copying records requested under the statute. HealthPort owed each member of the class an invoice that was reflective of the costs for which it was seeking reimbursement—be they HealthPort's alone or HealthPort's and Beth Israel's.

Willfully or not, neither HealthPort nor Beth Israel ever undertook such an analysis. To the extent that this failure impairs Plaintiffs' ability to demonstrate the "costs incurred," it should not serve to immunize HealthPort from liability.[20] *See, e.g.*, *ChartOne, Inc. v. Raglon*, 283 S.W.3d 576, 583 (Ark. 2008) ("to allow ChartOne to defeat the class definition because of its own failure to maintain accurate records . . . would encourage other businesses to maintain poor records in an attempt to avoid class actions"); *Bioanalysts*, 906 N.Y.S.2d at 358-59 (shifting burden to defendant to present competent, legally sufficient evidence in support of its claimed actual costs, given that defendant was obligated to compute actual costs but failed to maintain records necessary to do so); *see also Hart*, 2014 U.S. Dist. LEXIS 174617, at *16-*18 (requiring defendant to negate inference of damages because of failure to maintain records necessary to determine same); *cf. Nw. Airlines, Inc. v. County of Kent*, 738 F. Supp. 1112, 1119-20 (W.D. Mich. 1990) (requiring defendants to recalculate aircraft parking fee in accordance with break-even costs), *rev'd in part on other grounds*, 955 F.2d 1054 (6th Cir. 1992). Accordingly, Plaintiffs' proposed jury instruction is necessary and appropriate.

In this regard, evidence of HealthPort's failure to undertake an analysis of its—or Beth Israel's—costs is probative not only of willfulness, but also the credibility of the data on which Plaintiffs have no choice but to rely. Put another way, it is needed to refute any suggestion that

---

[20] To the extent that HealthPort disclaims responsibility for Beth Israel's failure to maintain sufficient cost data, that is simply another reason why HealthPort should not be permitted to charge for Beth Israel's costs.

better cost data exist but Plaintiffs failed to obtain it. Because HealthPort actually intends to

defend this case both on the basis of costs HealthPort did not occur and by blaming Plaintiffs for

any uncertainty arising from data that HealthPort had a duty to maintain (or, at least, obtain) in

the first place, Plaintiffs should be permitted to introduce evidence and elicit testimony about

HealthPort's failure to assess its or Beth Israel's costs, and the Court should instruct the jury in

the manner discussed above.

## IV.    CONCLUSION

For the foregoing reasons, evidence of Beth Israel's costs should be excluded in its

entirety or the jury should be instructed not to consider Beth Israel's costs unless HealthPort paid

those costs or was charged for those costs. Concomitantly, the jury should be instructed that

HealthPort bears the risk of any uncertainty arising from the cost data produced in this case.

Finally, the Court should certify its Order for an interlocutory appeal—and certification to the

New York Court of Appeals—with respect to the controlling legal issue of the meaning of "costs

incurred" in PHL § 18.

Dated: June 14, 2017                               Respectfully submitted,

                                          By: */s/ Mathew P. Jasinski*
                                               William H. Narwold
                                               Mathew P. Jasinski
                                               Michael J. Pendell
                                               Laura W. Ray
                                               MOTLEY RICE LLC
                                               20 Church St., 17th Floor
                                               Hartford, CT 06103
                                               (860) 882-1681
                                               (860) 882-1682 (fax)
                                               bnarwold@motleyrice.com
                                               mjasinski@motleyrice.com
                                               mpendell@motleyrice.com
                                               lray@motleyrice.com

                                               *Class Counsel*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 14, 2017, a copy of the foregoing Memorandum of Law in Support of Plaintiffs' Plaintiffs' Motion *in Limine* To Exclude Evidence of Beth Israel's Costs was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.


*/s/ Mathew P. Jasinski*
Mathew P. Jasinski