USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/14/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
TATYANA RUZHINSKAYA, as Administratrix of the :
Estate of MARINA ROCHNIAK, Deceased, :
*individually and on behalf of others similarly situated*, :
:
                                        Plaintiff, :
:
                    -v- :
:
HEALTHPORT TECHNOLOGIES, LLC, :
:
                                        Defendant. :
:
------------------------------------------------------------------------X

14 Civ. 2921 (PAE)

OPINION & ORDER

**PAUL A. ENGELMAYER, District Judge:**

This long-running class action, now at the summary judgment stage, involves claims of excessive charges for medical records under a New York statute, Public Health Law (PHL) § 18, which governs access to and charges for patient medical records.  Plaintiff Tatyana Ruzhinskaya at first brought, but then dropped, claims against the hospital, Beth Israel Medical Center ("Beth Israel") that housed the medical records of her deceased mother, copies of which Ruzhinskaya requested and obtained pursuant to § 18.  Instead, Ruzhinskaya now sues solely the "release of information" ("ROI") company, HealthPort Technologies, LLC ("HealthPort"), with whom Beth Israel contracted to photocopy and provide those records to requesters on its behalf.

For the reasons that follow, the Court holds that Ruzhinskaya cannot sustain a viable cause of action against HealthPort under § 18.  The Court accordingly enters summary judgment in favor of HealthPort on Ruzhinskaya's § 18 claim.  The Court also enters summary judgment in favor of HealthPort on Ruzhinskaya's closely related claims of unjust enrichment and under New York General Business Law (GBL) § 349.

1

## I.      Background

The Court begins by reviewing the terms of § 18, because the reciprocal motions for summary judgment turn on the statute's reach—and limits.  The Court then reviews the relevant history of this litigation.  As this review reflects, the case had neared trial in mid-2017, when the Court, perceiving potential case-dispositive issues that had not been squarely litigated, suspended the trial schedule and invited the parties to litigate these issues via summary judgment motions.

### A.      Overview of PHL § 18

PHL § 18(2)(e) entitles a "qualified person" such as a patient to inspect and—relevant here—obtain from a "health care provider," on a written request, copies of "patient information." As relevant here, a "qualified person" is defined to include a patient and, where the patient is deceased, the patient's executor or administrator.[1]  "[P]atient information" is defined to include records of medical examinations and treatment.[2]  Finally, a "health care provider" is defined to include hospitals and medical personnel.[3]

_____

[1] A "[q]ualified person" means "any properly identified subject; or a guardian appointed under article eight-one of the mental hygiene law; or a parent of an infant; or a guardian of an infant appointed under article seventeen of the surrogate's court procedure act or other legally appointed guardian of an infant who may be entitled to request access to a clinical record . . . ; or a distributee of any deceased subject for whom no personal representative, as defined in the estates, powers and trusts law, has been appointed; or an attorney representing a qualified person or the subject's estate who holds a power of attorney from the qualified person or the subject's estate explicitly authorizing the holder to execute a written request for patient information under this section."  PHL § 18(1)(g).

[2] "Patient information" or "information" means "any information concerning or relating to the examination, health assessment including, but not limited to, a health assessment for insurance and employment purposes or treatment of an identifiable subject maintained or possessed by a health care facility or health care practitioner who has provided or is providing services for assessment of a health condition."  _Id._ § 18(1)(e).

[3] PHL § 18 defines a "healthcare provider" or "provider" as a "health care facility" or a "health care practitioner."  _Id._ § 18(1)(b).  It defines a "health care facility" as "a hospital . . . , a hospice

2

As to access to patient records, § 18 requires that, within 10 days of a request by a qualified person, a health care provider "provide an opportunity . . . to inspect any patient information concerning or relating to the examination or treatment of such subject in the possession of such health care provider." *Id.* § 18(2)(c). It provides that, upon written request of a qualified person, "a health care provider shall furnish to such person, within a reasonable time, a copy of any patient information requested, . . . which the person is authorized to inspect." *Id.* § 18(2)(d). And salient here, § 18 imposes limits on the costs that a provider may impose for such inspections and copies. It provides:

> The provider may impose a reasonable charge for all inspections and copies, not exceeding the costs incurred by such provider . . . . However the reasonable charge for paper copies shall not exceed seventy-five cents per page. A qualified person shall not be denied access to patient information solely because of inability to pay.

PHL § 18(2)(e).

## B.   Relevant History of This Litigation

### 1.   The First Amended Complaint

This putative class action was originally brought in New York state court in March 2014. On April 25, 2014, HealthPort removed the case to this Court based on the Class Action Fairness Act, 28 U.S.C. §§ 1332(d). *See* Dkts. 2, 5. On May 27, 2014, plaintiffs filed the First Amended Complaint ("FAC"). Dkt. 19.

The FAC brought claims on behalf of three plaintiffs. Each had sought and obtained medical records from a different New York hospital which had contracted with Healthport to provide those copies on its behalf. The hospitals were (1) Beth Israel, from whom Ruzhinskaya (through an attorney) had sought records relating to her deceased mother, Marina Rochniak,

---

. . . , or a shared health facility," each of which terms is further statutorily defined. *Id.* § 18(1)(c). It defines a "health care practitioner" as a licensed medical professional. *Id.* § 18(1)(d).

whose estate Ruzhinskaya serves as Administrator; (2) Mount Sinai Hospital, from whom plaintiff Charles Spiro had sought records; and (3) Montefiore Hospital, from whom plaintiff Ismael Torres had sought records.  Ruzhinskaya, Spiro, and Torres sued the three hospitals, along with Healthport, which they alleged was an ROI company in the business of duplicating and copying documents including medical records, in a putative class action filed on behalf of all persons in New York State whom Healthport had charged 75 cents per page for such copies. Plaintiffs claimed that this charge was excessive.  *See generally* FAC and ¶¶ 1, 58–59.  Plaintiffs brought claims under § 18, under GBL § 349, and for unjust enrichment.

### 2.    The Dismissal of the FAC

On August 29, 2014, the Court dismissed Spiro's and Torres's claims with prejudice as untimely, because they had been filed outside the statute of limitations.  The Court dismissed Ruzhinskaya's claim without prejudice for lack of standing, insofar as her mother's personal injury law firm had been billed and paid HealthPort's charges without, as alleged, any obligation on Ruzhinskaya's part to compensate the firm for incurring these charges.  The Court invited Ruzhinskaya to cure this pleading deficiency by pleading, in an amended complaint, a duty (*e.g.*, contractual) to reimburse the law firm that incurred the records expenses.  *See Spiro v. HealthPort Technologies,* LLC, 73 F. Supp. 3d 259, 278 (S.D.N.Y. 2014) ("MTD Decision").

The Court rejected an alternative argument that HealthPort had made for dismissal.  It had argued that PHL § 18(2)(e) categorically entitles a health care provider to charge 75 cents per page for fulfilling records requests, regardless of the actual cost to the provider.  The Court held that that reading was incorrect.  Section 18(2)(e), the Court explained, authorizes a provider to impose only a "reasonable charge for all inspections and copies, not exceeding the costs incurred by such provider."  And, the Court held, the portion of § 18 that states that "the

reasonable charge for paper copies shall not exceed 75 cents per page," although setting a cap on the per-page fee that a provider may charge, does not mean that such a charge will invariably be reasonable.   MTD Decision at 273.

### 3.    Ruzhinskaya's Second Amended Complaint

On September 10, 2014, Ruzhinskaya filed the Second Amended Complaint ("SAC"), the operative pleading here.  Dkt. 39.  It brought the same charges against Beth Israel and against HealthPort, the agent to whom it alleged Beth Israel had delegated its responsibilities for filling records requests.  Curing the defect in the FAC, Ruzhinskaya this time pled (and attached a retainer agreement reflecting) that she had been contractually responsible, upon settlement of the estate's personal injury case, to pay the law firm's disbursements.  *See* SAC ¶ 76; *id.*, Ex. A.

On January 26, 2015, the parties stipulated to the dismissal of all claims against Beth Israel.  Dkt. 56.  This dismissal left HealthPort, Beth Israel's agent with respect to Ruzhinskaya's records request, as the sole defendant.

### 4.    Proceedings on Class Certification

#### a.  The Motion to Certify a Statewide Class

On April 29, 2015, Ruzhinskaya moved for class certification.  Consistent with having dropped Beth Israel as a defendant, Ruzhinskaya sought to represent a statewide class defined to include all patients or patient representatives who had made requests for patient records from a healthcare provider for which HealthPort charged 75 cents a page.  Dkt. 74.  Between April and July 2015, the parties briefed that motion.  On August 6, 2015, the Court heard argument.

On November 9, 2015, the Court denied the motion to certify a statewide class.  *See Ruzhinskaya v. HealthPort Techs, LLC,* 2015 WL 6873399 (S.D.N.Y. Nov. 9, 2015) ("Class Cert. Opinion").  It was undisputed, the Court noted, that HealthPort, across New York State,

charged 75 cents per page on behalf of all the hospitals who retained it to fill records requests. But, the Court noted, the "costs incurred" in meeting records requests—the critical determinant whether a provider's 75 cents per-page charge was permissible or excessive—differed hospital by hospital.

As the Court noted, the text of § 18(2)(e) does not limit "costs incurred" to certain species of costs such as direct costs (*e.g.*, copying paper, toner, the salary of the person copying medical records). Rather, the Court held, the statute's text—as confirmed by its history and purpose—permits the health care provider's indirect costs to be considered in determining whether a charge imposed for filling a records request exceeds "the costs incurred by such provider." Class Cert. Opinion at 95. Cognizable indirect costs might include the provider's labor costs—for example, the salaries of persons who do work other than copying in the course of fulfilling records requests, such as persons who locate and retrieve responsive records, determine the request's validity and the responsiveness of particular records, or who perform supervisory or administrative functions. *See id.* Cognizable costs, the Court noted, might also include the provider's overhead (*e.g.*, electricity, insurance, administrative expenses) to the extent properly allocable to the record request function. *See id.*

On the record before the Court, the costs incurred by providers in meeting a records request differed widely among the 507 institutions whom HealthPort had assisted to meet records requests. HealthPort's expert, for example, tabulated costs incurred at five New York hospitals that he treated as fairly representative of HealthPort's providers. *See id.* at 105. He calculated the costs attributable at each hospital to meeting records requests, including the hours spent by employees, retrieval costs, supply costs, processing costs, and overhead costs. *See id.* The expert found that these costs, tabulated at a per-page level, varied significantly by hospital. *See*

*id.*  They were 38 cents at one hospital, 69 cents at a second, 84 cents at a third, 92 cents at a fourth, and $1.08 at a fifth.  *See id.*

Under these circumstances, the Court held, a determination whether the costs incurred by a particular health care provider in meeting records requests exceeded 75 cents per page could not fairly resolve whether the costs incurred by a different provider within New York State had exceeded 75 cents per page.  From the perspective of fairness, an absent class member served by a different provider should not be bound by a verdict adverse to Ruzhinskaya to the effect that Beth Israel's costs incurred had exceeded 75 cents per copy.  Similarly, the Court stated, a provider other than Beth Israel—or HealthPort, with respect to its work for such a provider—should not be bound by a ruling in favor of Ruzhinskaya that Beth Israel's costs incurred had been below 75 cents.  In sum, the Court held, insofar as the costs incurred differed materially by health care provider, individualized issues predominated over common ones in determining liability.  *Id.* at 107.  This precluded certification of a statewide class under Federal Rule of Civil Procedure 23(b)(3).

The Court noted, however, that were Ruzhinskaya to move for certification of a class limited to persons who had made records requests to a single provider—such as Beth Israel—this obstacle to class certification would be eliminated.  *Id.*  Beth Israel, the Court noted, had not tracked its costs incurred for each individual request.  *Id.* at 102.  Instead, as calculated by each party, Beth Israel's per-page costs incurred had been arrived at by tabulating aggregate costs (direct and indirect) attributable to meeting records requests, and dividing these costs by the number of pages of records that had been provided in response to requests.  *Id.*  In these circumstances, the costs incurred for meeting records requests directed to Beth Israel represented a common issue across a class of Beth Israel records requesters.  The Court therefore authorized

7

Ruzhinskaya to file a new motion for class certification limited to a narrower class: of persons who had requested records from Beth Israel for which copies HealthPort had charged 75 cents per page.  *Id.* at 110.

### b.  The Motion to Certify a Class of Beth Israel Requesters

On November 23, 2015, Ruzhinskaya moved to certify a narrower class along the lines the Court had invited: of persons who, between March 12, 2011 and the present, had requested records from Beth Israel whose requests had been serviced by HealthPort and who had been charged 75 cents per page.  Dkt. 155.  On December 17, 2015, the Court granted that motion. Dt. 166.

### 5.    Merits Discovery and Pretrial Motions Practice

Merits discovery—including fact and expert discovery—ensued and, following several extensions sought by the parties, concluded on June 10, 2016.  *See* Dkts. 169, 174, 177, 180.[4] On August 11, 2016, the parties submitted a joint pretrial order, Dkt. 193.  In September 2016, the parties filed numerous motions *in limine*, oppositions to same, and supporting materials, Dkts. 199–12, 218–21, 223–28, 231–44, 248, 251, 255–68, 272, pretrial memoranda and replies, *see* Dkts. 217, 229, 247, and proposed voir dire and jury charges and objections to same, *see* Dkts. 213–16, 245–46, 249–50, 269–70.  On December 20, 2016, the Court issued a decision resolving the motions *in limine*, which, *inter alia*, excluded various lines of evidence and examination as irrelevant.  Dkts. 27–78.

On March 28, 2017, following unsuccessful settlement negotiations, *see* Dkts. 282–85, the Court set a trial date of June 12, 2017, Dkt. 288.

---

[4] For reasons not relevant here, including relating to a departure of corporate personnel, the Court later permitted a limited reopening of discovery for the deposition of HealthPort's 30(b)(6) witness.  *See* Dkts. 280–81.

6.     **The Events Leading to the Instant Motion**

a.     **The May 12, 2017 Conference**

On May 12, 2017, a conference was held to discuss the upcoming trial.  Dkts. 289, 301
(transcript) ("5/12/17 Tr.").  At that conference, plaintiffs' trial counsel, Matthew Jasinski, took
the position that, at trial, HealthPort should be limited to defending its 75 cents per-page charge
for fulfilling records requests based solely on HealthPort's own "costs incurred."  HealthPort
could use Beth Israel's costs incurred to defend the 75 cent charge, Jasinski argued, only if
HealthPort had itself absorbed those charges, for example, by being invoiced for them by Beth
Israel.  5/12/17 Tr. at 21–22.  HealthPort did not, at the time, dispute that proposition, which the
Court also assumed to be correct.  The Court directed counsel to submit a revised joint pretrial
order, and instructions, consistent with the rulings on the motions *in limine*.  Dkt. 289.  These
were submitted on May 24, 2017, *see* Dkts. 291–95.

b.     **The June 2, 2017 Conference**

On June 2, 2017, a conference scheduled to serve as a final pretrial conference was held.
Dkts. 300, 317 (transcript) ("6/2/17 Tr.").  Salient here, HealthPort's trial counsel, Scott Emery,
disputed the limitation that Jasinski, at the prior conference, had urged on HealthPort's defense.
Emery argued that HealthPort should be permitted to defend its 75 cent charge to requesters
based on the costs incurred by both Beth Israel and HealthPort in connection with meeting
records requests, and that the costs Beth Israel had undertaken in responding to records requests
should be considered as part of HealthPort's costs incurred even if they had not been passed
along to HealthPort.  Emery noted that, under § 18(2)(e), the duty to charge no more than "costs
incurred" falls solely on the healthcare provider—here, Beth Israel.  The evidence, Emery
explained, is that both Beth Israel and HealthPort participate in responding to a records request.

When Beth Israel receives a request, it does the "front-end" work of gathering responsive medical records and reviewing them.  It then tasks HealthPort with the process of responding to the records request, including copying the records and furnishing them to the requester. HealthPort bills the requester 75 cents per page, which the requester pays to HealthPort directly and which HealthPort retains.  6/12/17 Tr. 7–12.

Emery argued that, insofar as both Beth Israel and its agent HealthPort play roles in responding to records requests, it is proper for the jury to consider the direct and indirect costs of both Beth Israel and HealthPort attributable to fulfilling records requests in determining whether the "costs incurred" met or exceed the 75 cents per-page charge billed to requesters.  *Id*.  Emery further argued that the details of the contractual relationship between Beth Israel and HealthPort— including whether Beth Israel bills HealthPort for its costs incurred, or what the broader terms are of Beth Israel's and HealthPort's agreements and business relationship—are irrelevant to whether the two entities' aggregated costs incurred amount to 75 cents per page.  *Id.* The issue was important in connection with the upcoming trial, Emery explained, because HealthPort's expert, in his report and anticipated testimony, proposed to combine both entities' costs in arriving at a "costs incurred" figure.  The costs incurred by HealthPort alone fell short of 75 cents per page, but the combined costs of it and Beth Israel, on the expert's calculations, exceeded 75 cents per page.  In other words, HealthPort itself had turned a profit for performing this service for Beth Israel.  But, were the costs incurred by Beth Israel and HealthPort both taken into account, a finder of fact, crediting HealthPort's expert, could find that the costs incurred in meeting records requests met or exceeded 75 cents per page.  *Id.* at 13–14.

In response, plaintiff's counsel, Jasinski, acknowledged that, under § 18(2)(e), the legal duty to impose charges for fulfilling record requests falls exclusively on the healthcare provider.

*Id.* at 14–15.  But in this case, Jasinski noted, Beth Israel had delegated to HealthPort the task of fulfilling requests and billing requesters, and had allowed HealthPort to retain the entire 75 cent per-page charge, *i.e.*, Beth Israel did not recoup this money.  As a result of this arrangement, Jasinski argued, HealthPort assumed the duty to comply with § 18(2)(e)'s limitation of charges to "costs incurred" and was barred from "profiteering" by carrying out the records request function.  *Id.* at 15–16.  Jasinski further noted that, at the May 12, 2017 conference, HealthPort had not objected when he had posited that, at trial, HealthPort should be limited to justifying "costs incurred" based on costs HealthPort had itself incurred or absorbed.  *Id.* at 16; *see also id.* at 19 ("[Beth Israel's costs] should not count unless they [Beth Israel] are getting reimbursed.").  Jasinski argued that because Beth Israel "has essentially given up the right to see a dime of that money," the duty to comply with § 18(2)(e) should be treated as HealthPort's, and that "HealthPort is not entitled to make a profit on the release of information costs."  *Id.* at 20–22, 31.

After this colloquy, the Court advised counsel that it regarded the issue that had arisen as fundamental.  As the Court framed it, the issue was whether evidence of Beth Israel's costs incurred, to the extent these had not been passed along to HealthPort, could be received at trial as a component of the costs incurred.  Although neither party had made the issue the subject of a motion *in limine* or otherwise highlighted their disagreement on this point for the Court, it was now clear that the parties disputed the admissibility of such evidence and that such evidence could be pivotal at trial.  The Court accordingly adjourned the trial date.  The Court directed the parties to brief the issue, which the Court suggested be cast as a motion *in limine* by Ruzhinskaya to exclude such evidence.  6/2/17 Tr. 38–42; Dkt. 300.

On June 14, 2017, Ruzhinskaya filed her motion *in limine* to exclude such costs, and supporting materials, Dkts. 304–05; on June 23, 2017, HealthPort filed its opposition and supporting materials, Dkts. 312–13.

### c.    The June 30, 2017 conference

The next conference in this case was held on June 30, 2017.  *See* Dkt. 319 (transcript) ("6/30/17 Tr.").  The Court read into the record a bench decision that contained two rulings.

First, the Court denied Ruzhinskaya's motion *in limine*.  The Court held admissible the evidence of costs Beth Israel had incurred in fulfilling records requests.  *Id.* at 3–6.  By way of explanation, the Court noted that § 18 does not impose any obligation on HealthPort.  The duty to impose reasonable costs not in excess of "costs incurred" instead falls on "healthcare providers."   The Court explained:

> HealthPort had no freestanding legal duties under Section 18.  If it had any legal duties under Section 18, those duties were derivative of the duties under Section 18 of the healthcare provider whom HealthPort served.  In the context of this case, that is Beth Israel.

*Id.* at 3.  Moreover, Ruzhinskaya's complaint, which had sued both Beth Israel and Healthport, had alleged that the two, working in conjunction, had overcharged customers.  *Id.* at 4.  While Ruzhinskaya had since dropped Beth Israel as a defendant, "who is or is not at the defense table is irrelevant to the issue of whose costs count towards 'costs incurred.'"  *Id.* at 5.  The Court further noted that—as HealthPort's counsel had proffered—the record adduced in discovery contains evidence that costs had been incurred by both HealthPort and Beth Israel in filling records requests, and that, in that process, the two had carried out separate duties and incurred separate expenses:

> "In simple terms, there was a relay, with Beth Israel doing the initial work in response to a record request, and HealthPort then completing the job.  Beth Israel's job was to retrieve the patient records and provide them to HealthPort.

> Having had the baton passed to it, HealthPort had the role of copying the records and sending them to the requester.
>
> Had Beth Israel still been a defendant in this case, it would have been obvious to all that the costs incurred by both it and HealthPort in this sequential relay process are properly considered in determining whether the costs incurred were 75 cents per page or more. Plaintiffs cannot artificially avoid inclusion of Beth Israel's costs in the equation by the stratagem of dropping Beth Israel as a defendant."

*Id*. at 5–6. Accordingly, the Court held, were the case against HealthPort to reach trial, the dispositive issue as to Ruzhinskaya's claim under § 18(2)(e) would be whether the combined costs incurred by the principal, Beth Israel, and its alleged agent, HealthPort, met or exceeded 75 cents per page. *Id.* at 6.

Second, the Court commissioned a round of summary judgment briefing on a related—but broader and potentially dispositive—issue. The Court noted that, in its submission opposing the motion *in limine*, HealthPort had made a fundamental argument about the reach of § 18, which it had not previously made explicit, but which required resolution before trial. The issue involved "the liability under § 18 of vendors and/or agents of a health care provider who are not themselves providers." *Id*. at 7. The Court explained:

> HealthPort's argument begins with this premise: Beth Israel here happens to have structured its arrangement with HealthPort such that HealthPort directly billed patient requesters on Beth Israel's behalf the 75 cents per page cost. But Beth Israel could equally have used a slightly different structure to achieve the identical economics. Beth Israel could have hired HealthPort as a vendor to do exactly the same copying services as it did with respect to patient records. It could have arranged for HealthPort to earn the exact same return, 75 cents per page, for exactly the same services. But instead of having HealthPort directly bill the requester, under this alternative arrangement, HealthPort could have then billed Beth Israel 75 cents per page[.] Beth Israel could have then turned around and billed the requester the same 75 cents per-page charge.
>
> In that hypothetical circumstance, HealthPort argues, Beth Israel clearly would have been entitled to treat the 75 cents per page that it paid HealthPort as a "cost incurred" by Beth Israel. Had it passed the cost along to the requester without any markup, HealthPort argues, Beth Israel would not have violated the statute.

The statute, HealthPort argues, does not restrict a vendor from making a profit[.]  It speaks only to the costs incurred of the healthcare provider.  HealthPort argues that Beth Israel is entitled to hire a vendor and to pass the cost along to the requester, just as Beth Israel would have been entitled to pass along other out-of-pocket costs incurred in the process, for example, had it done the work directly and exclusively itself[,] for the costs of, say, temporary employees or paper or toner.  The statute, in other words, HealthPort argues, prevents *Beth Israel* from marking up the cost and from charging the requester more than 75 cents per page.  It prevents *the healthcare provider* from profiting on the process of responding to patient records requests.

But, HealthPort argues, the statute does not prevent a vendor [like] HealthPort from turning a profit on its work.  That's capitalism, and that is, HealthPort argues, not the concern of the statute.  HealthPort's point is [that] the arrangement in this case is functionally identical to what I just posited.  The difference is solely one of form, not substance.  The one difference is that in the arrangement at hand, HealthPort bills the customer on behalf of Beth Israel.  The middle step, of Beth Israel's receiving and then paying HealthPort's bill and then billing the requester the exactly same amount, is cut out.

So, HealthPort asks the Court to dismiss this case on the grounds that the statute simply is not violated when Beth Israel simply passes along a vendor's cost, and that the business arrangement in this case functionally is just that.  Put a little differently, HealthPort argues, a requester has a right under the statute to insist that the healthcare provider, here Beth Israel, not charge more than 75 cents per copy.  A requester also has a right under the statute that the provider not charge more than its cost incurred.

Finally, I might add, although it's not mentioned by HealthPort, a requester also has a right under the statute that the provider's charge, the healthcare provider's charge, be reasonable.  And that last right presumably would allow a customer to sue a hospital for unreasonably using an unnecessarily high cost vendor, such as one with unnecessarily high profit margins.  Perhaps, for example, the hospital did not put its copying needs out for a sufficient bid process to assure lowest cost.  But, HealthPort argues, the statute does not give a requester a right of action against a vendor merely because the vendor is turning a profit on its work for a provider like Beth Israel.

*Id.* at 7–9 (emphasis added).

HealthPort's argument, the Court stated, was substantial and potentially dispositive of

Ruzhinskaya's claims.  But, because HealthPort's claim that § 18(2)(e) does not apply to vendors

had arisen in the context of a motion *in limine*, Ruzhinskaya had not had a fair opportunity to

respond.  The Court therefore held that, rather than setting a new trial date, it would authorize a round of summary judgment motions, in which HealthPort could move for summary judgment on the ground it had newly identified and any others, and Ruzhinskaya could move for summary judgment on any grounds she identified.  *Id.* at 10–11.  The Court set a schedule for summary judgment submissions.  *Id.* at 17–18; Dkt. 316.

### C.  The Pending Summary Judgment Motions

On July 27, 2017, the parties jointly filed a statement of Joint Stipulated Facts ("JSF").  Dkt. 320.

On August 25, 2017, HealthPort filed a motion seeking summary judgment on all three of Ruzhinskaya's claims, Dkt. 325, and a memorandum of law, with the declaration of Scott R. Emery ("Emery Decl.") and attachments in support, Dkts. 326–27.

On October 4, 2017, Ruzhinskaya filed a motion for partial summary judgment as to her claim under § 18, Dkt. 335, a memorandum of law in support and in opposition to HealthPort's motion, Dkt. 337, a Rule 56.1 statement, Dkt. 336 ("P.56.1"), and the Declaration of Mathew Jasinski ("Jasinski Decl.") in support, Dkt. 338.

On October 27, 2017, HealthPort filed a Rule 56.1 counterstatement and response to Ruzhinskaya's Rule 56.1 statement, Dkt. 339 ("D.56.1"); *see also* Dkt. 343, a memorandum of law in opposition to Ruzhinskaya's motion for partial summary judgment and in further support of its own motion for summary judgment, Dkt. 340, and a new declaration from Emery ("Emery Reply Decl."), Dkt. 341.

On November 17, 2017, Ruzhinskaya filed a reply memorandum of law in support of her motion for partial summary judgment, Dkt. 345, and a second declaration by Jasinski ("Jasinski Reply Decl.") in support, Dkt. 346.[5]

## II.   Legal Standards Governing Motions for Summary Judgment

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant bears the burden of demonstrating the absence of a question of material fact.  In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party.  *Holcomb v. Iona Coll*., 521 F.3d 130, 132 (2d Cir. 2008); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co*., 536 F.3d 140, 145 (2d Cir. 2008).  "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted).  Rather, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).

---

[5] The same day, Ruzhinskaya filed a motion to strike aspects of HealthPort's Rule 56.1 statement, Dkt. 347, and a supporting memorandum of law, Dkt. 348.  On December 1, 2017, HealthPort opposed this motion, Dkt. 351, and submitted a declaration by Emery in support, Dkt. 350.  On December 8, 2017, Ruzhinskaya submitted a reply memorandum.  Dkt. 354.   In light of the basis for the Court's ruling on the instant summary judgment motions, the motion to strike is moot.

"Only disputes over facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)) (internal quotation marks omitted).

## III. Discussion

As chronicled above, this case has taken a circuitous and unusual route to the present motions for summary judgment. The parties vigorously litigated motions to dismiss, motions for class certification, and motions *in limine*. These led the Court over time to resolve numerous issues relating to the construction of PHL § 18. These include whether § 18 sets a firm 75 cent per-page cap on charges for requests (it does), whether § 18 categorically authorizes a health care provider to charge a requester 75 cents per page regardless of its "costs incurred" (it does not), whether § 18 requires that the provider's charge be no higher than the provider's "costs incurred" (it does), and whether the provider's indirect as well as its direct costs may considered in tabulating its "costs incurred" (they may).

As of when the case neared trial, however, no party had moved for summary judgment. As a result, although these issues had been touched upon by the parties and the Court on multiple occasions, the parties never squarely briefed, and the Court was never called upon squarely to resolve, two issues at the heart of this case: First, does § 18 impose a duty on an entity other than a health care provider, such as an ROI business retained to assist the provider in responding to records requests, with regard to the charges billed to a records requester? In particular, does

§ 18 bar such a vendor from profiting from its work assisting the provider to respond to such requests, or is the vendor limited to recouping its "costs incurred"?  And, second, even if § 18 does not restrict a vendor's charges, does the evidence in this case regarding HealthPort's collaboration with Beth Israel—including its contract with Beth Israel, its direct billing of requesters, and its retention of the 75 cents per-page charge that it billed—give rise to a duty under § 18 that barred HealthPort from charging more than its costs incurred?

At the final pretrial conference, the Court identified these issues as central and requiring resolution.  The Court directed the parties to address these issues, *de novo*, via motions for summary judgment.

The facts on which these two questions turn are straightforward and are undisputed.  The Court resolves these questions now.  The Court then addresses the implications of its holdings for Ruzhinskaya's three causes of action.

### A. Does § 18 Prohibit Entities Other than Healthcare Providers From Charging Above Their Costs for Work Responding to Patient Information Requests?

The plain language of § 18(2)(e) imposes duties only on entities that are "health care providers."  Section 18(2) as a whole imposes various obligations but, by text, does so only upon health care providers.  And it is undisputed that HealthPort, being neither a "health care facility" nor a "health care practitioner" as defined in § 18(1)(b)–(d), is not such a provider.  Instead, it is a business whose function is to process records requests *on behalf of* providers.[6]

---

[6] The parties have stipulated that HealthPort "is a release of information ("ROI") company" which is "in the business of processing requests for, copying, and distributing medical records on behalf of healthcare providers.  HealthPort's services are performed both on-site at the healthcare providers' facilities and through a central processing services center in Alpharetta, Georgia, that indexes, audits, prints, and distributes copies of medical records to authorized requesters from all of the healthcare facilities that it provides services to nationwide."   JSF ¶ 4.  Plaintiffs agree that HealthPort is not a health care provider.  *See, e.g.*, SAC ¶¶ 47–48.

A provision-by-provision review shows that § 18(2)'s duties fall exclusively on health care providers.  Section 2(a) states that "a health care provider," upon request, shall provide a subject with an opportunity to inspect patient information records; § 2(b) states that "a health care provider" shall afford a similar opportunity for inspection to a committee appointed for an incompetent; § 2(c) states that "a health care provider" shall afford a similar opportunity for inspection to the parent or guardian of an infant; § 2(d) states that "a health care provider" shall provide a qualified person a copy of requested patient information; § 2(e), the key provision at issue here, states that "*[t]he provider* may impose a reasonable charge for all inspections and copies, not exceeding the costs incurred *by such provider*," § 18(2)(e) (emphasis added); § 2(f) states that "a provider" may place reasonable limitations on the time, place, and frequency of inspections of patient information; and § 2(h) states that "[a] provider may request the opportunity to review the patient information with the qualified person requesting such information."  In contrast, there is no language in § 2 that can be read to impose obligations on other entities, including ROI vendors like HealthPort whom a provider may retain to assist it in carrying out its duties under § 18.

Most important, § 2(e), the provision that governs charges for filling record requests, is addressed only to the provider.  Its text lends no support to the proposition that an entity retained by a provider (whether an ROI company, messenger service, a copying service, or a contract paralegal) to assist it is precluded from earning a profit for its work helping the provider fulfill records requests.  Quite to the contrary:  Not only does § 2(e) address its prohibition on above-cost charges only to "the provider"—it also states that the entity whose costs are relevant is *the provider*.  Hence, it states that the provider's charges are limited to the costs incurred "by such

provider."  This language is inconsistent with Ruzhinskaya's notion that the statute caps the recovery of a separate entity such as a retained vendor.

The statute's plain language thus disposes of Ruzhinskaya's claim that HealthPort, in responding to information requests, is limited to recovering its costs incurred.  There is no charter for looking beyond such language.  *See, e.g.*, *United States v. Ron Pair Enters, Inc.*, 489 U.S. 235, 241 (1989) (when statutory language is plain, "the sole function of the courts is to enforce it according to its terms"); *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 185 n.29 (1978) ("When confronted with a statute which is plain and unambiguous on its face, we ordinarily do not look to legislative history as a guide to its meaning.").

In the interest of completeness, the Court has, nonetheless, reviewed the legislative history of § 18.  Section 18 was amended in 1991 to include the currently operative language in § 2(e).  This history does not support construing § 18 to limit to costs the charges imposed by entities other than providers.  This history reflects that § 18 was amended in 1991 to contain escalating per-page fees, including by imposing the 75 cent per-page cap.  *See Casillo v. St. John's Episcopal Hosp.*, 580 N.Y.S.2d 992, 998 (Sup. Ct. 1992).  Before this amendment, courts applying the earlier version of § 18 had upheld substantially higher charges as "reasonable," which then was the only limitation on record request charges that § 18.  *See, e.g., Hernandez v. Lutheran Med. Ctr.*, 478 N.Y.S.2d 697, 698 (2d Dep't 1984) (upholding $15 flat fee and $1 per-page fee); *Ventura v. Long Island Jewish Hillside Med. Ctr.*, 492 N.Y.S.2d 96, 98 (2d Dep't 1985) (approving $15 flat fee and $1.50 per-page fee); *Scott v. State*, 588 N.Y.S.2d 374, 375 (2d Dep't 1992) (approving $25 flat fee and $2 per-page fee).  The amended statute responded to this situation by limiting providers to charging their costs incurred and to charges of no more than 75 cents per page.  Notably, however, the legislative history does not reveal any intention to deny

20

profits to vendors—whether entities or persons—whom health care providers hired to assist in this work.  The legislative history reflects no concern about this point.

Finally, as to the statute's purpose, to achieve the 1991 goal of paring back charges to requesters, it is unnecessary to construe § 18 to deny profits to support entities hired by health care providers.  The three limits that § 18 explicitly imposes on the provider—(1) that charges for records requests be no higher than 75 cents per page, (2) that they not exceed the provider's costs, and (3) that they be reasonable—advance that goal (all the more so today in that the 75-cent cap imposed in 1991 has not been adjusted for inflation).[7]  And imputing to § 18 an implicit ban on vendor profits could have negative consequences, if doing so discouraged comparatively more efficient vendors from such work and forced providers like hospitals to handle records requests in-house.  To the extent Ruzhinskaya argues as a matter of policy that vendors like HealthPort should not be allowed to profit from their work handling patient medical records requests, that is a policy question properly addressed to a legislature.

The Court therefore holds that, under § 18, an entity other than a health care provider is not liable for charging for its services in connection with records requests more than its costs incurred.  Under § 18(2)(e), the duty to impose no more than "costs incurred" falls exclusively on the health care provider.  The contrary holding—denying a vendor the right to profit from this

---

[7] To be sure, as the Court recognized at the June 30, 2018 conference, a vendor's profit margin conceivably could be relevant in a case brought by a requester against a health care provider claiming "unreasonable" records request charges.  A requester might, for example, pursue such a claim against a provider that subcontracted to a vendor that charged the maximum 75 cent per-page charge, where the provider had not done any diligence as to the availability of lower prices including via alternative vendors.  The Court has no occasion here to consider the viability of such a theory for various reasons, including because Ruzhinskaya has dropped her claims against Beth Israel.

line of work—lacks support in the statutory text and history and is unnecessary to advance the statute's purpose.

### B. Did HealthPort Assume Duties Under § 18 With Respect to The Charges It Imposed By Virtue of Its Business Arrangement With Beth Israel?

Ruzhinskaya argues that, even if § 18(2)(e) ordinarily does not impose a cost limitation on a vendor's charges in connection with records requests, the manner in which HealthPort operated here triggers such a limitation. The relevant facts are undisputed.

#### 1. Summary of HealthPort's Arrangement With Beth Israel

HealthPort became Beth Israel's "request for information" contractor in 2008, as a result of its acquisition of Beth Israel's prior ROI contractor. JSF ¶ 8. HealthPort's relationship with Beth Israel is governed by written agreements executed, most recently, in 2007 (by HealthPort's predecessor) and 2011. *Id.* ¶ 9 & Exh. B.

Under the agreements, authorized requesters make a records request directly to Beth Israel. Beth Israel then performs various tasks to respond to these requests, including validating the records requests, locating the records (which may be stored in paper and/or electronic format in multiple physical locations and databases); reviewing and screening retrieved medical records to identify contents that are responsive to a particular request and to comply with applicable disclosure limitations or regulations; retrieving requested records from storage when necessary and placing them in a designated area of HealthPort to retrieve and copy or scan; and re-filing all medical records. *Id.* ¶ 12. HealthPort's duties under the agreements include re-validating the authorizations and requests; scanning and/or copying the appropriate part of the medical records; printing, mailing, and/or transmitting the records; and billing the requesters. *Id.* ¶ 13.

Beth Israel does not bill requesters for its services. *Id.* ¶ 12. HealthPort invoices the requestor for the number of pages provided. HealthPort then collects the fee from the requestor.

When HealthPort charges "qualified persons" —as defined in § 18(1)(g) —for copies of medical records, it charges $0.75 per page and retains all of that fee.  *Id.* ¶ 13.

Pursuant to the agreements, HealthPort also provides Beth Israel with the use of HealthPort's proprietary software to enable Beth Israel to view and print scanned medical record images, and indemnifies Beth Israel against any losses, liabilities, damages, costs, and expenses arising from the use or disclosure of patient medical information in violation of the terms of the parties' agreement or applicable law.  *Id.* ¶ 14.  HealthPort does not bill Beth Israel for its services, or for "in-house" requests for copies of medical records, including requests from Beth Israel's internal departments, or for "continuing care" requests.  *Id.* ¶ 15.

### 2.  Discussion

Ruzhinskaya makes two arguments why HealthPort's course of dealing with Beth Israel subjects it to a requirement not to bill requesters in excess of its costs incurred.  Neither is persuasive.

First, she notes, HealthPort played a more active role in billing requesters than a typical vendor who assists a provider in fulfilling records requests.  It is one thing, Ruzhinskaya argues, for a vendor to furnish the provider an invoice for its services and then be paid by the provider. The provider may then pass along to the requester the vendor's invoiced charge as a component of the provider's costs incurred.  But, Ruzhinskaya notes, under its arrangement with Beth Israel, HealthPort itself billed the requester and received (and retained) the charge paid by the requester. She argues that HealthPort thereby assumed the duty that the entity (the provider) that ordinarily billed requesters and kept their payments had under the statute—to bill no more than "costs incurred."

Ruzhinskaya does not, however, explain why the law assigns significance to this formal difference.  Under her theory, had HealthPort billed Beth Israel 75 cents per page for rendering the identical services and had Beth Israel then billed the customer the same 75 cents per page reflecting its "cost incurred," Beth Israel's charge would have complied with § 18(2)(e) assuming such vendor costs were reasonably incurred.  That the mechanical arrangement between Beth Israel and HealthPort saved several intervening steps—instead of having HealthPort bill Beth Israel, Beth Israel reimburse HealthPort, and Beth Israel then bill the requester, HealthPort dealt directly with the requester—is of no consequence.  As a matter of economic substance, the two billing practices are the same.  And even if use of this direct-billing arrangement were viewed as depriving Beth Israel of the right to term HealthPort's charge a "cost incurred" by Beth Israel, Beth Israel, not HealthPort, would be accountable under § 18 for any charge in excess of Beth Israel's costs incurred.  The mechanics of the billing process would not convert HealthPort into a statutory "health care provider," the only entity with legal duties under § 18(2)(e).

Second, Ruhzinskaya notes, the operative agreement between HealthPort and Beth Israel (and affiliated hospitals) addresses the fees that HealthPort will charge requesters.  *See, e.g.*, JSF Ex. B, at HEALTHPORT009955.[8]  In pertinent part, the agreement makes HealthPort "responsible for collecting fees" from requesters.  *Id.*  It provides that HealthPort "will charge individuals the per-page fees as set forth under state law" where state law so provides, on the ground that such fees are "presumed reasonable," and that HealthPort otherwise "will charge a reasonable, cost-based fee."  *Id.*  Under the contract, HealthPort provides its services at no cost to

---

[8] Various iterations of the agreement are in the name of "Chart One," an ROI company that HealthPort acquired in 2007 and whose obligations it assumed.  *See* JSF ¶¶ 7–9 & Ex. B.

Beth Israel.  *Id.*  The contract further obliges HealthPort to comply with the separate fee

provisions set forth in federal privacy law regulations.  *Id.*  Ruzhinskaya argues that, in New

York, these provisions bind HealthPort to the restrictions that § 18(2)(e) imposes on providers

such as Beth Israel.

 For two independent reasons, Ruzhinskaya's argument based on the agreement fails.

 First, the agreement nowhere commits HealthPort to charging fees limited to its own

costs incurred.  On the contrary, the agreement provides that where state law "set[]s forth" per-

page fees, HealthPort will charge such fees.  In New York, § 18(2)(e) arguably "sets forth" a per-

page fee—it sets 75 cents per page as the maximum permissible.  Only where fees are *not* set

under state law does the agreement provide that HealthPort "will charge a reasonable, cost-based

fee."  Thus, HealthPort's charging practices with respect to Ruzhinskaya do not, by any means,

clearly breach the agreement.

 Second, even if the agreement had provided otherwise—had it, for example, provided

that HealthPort would charge requesters a fee below 75 cents per page, or limit that fee to its

costs—HealthPort's breach would be just that, a breach of contract.  It would not give rise to a

statutory cause of action under § 18 against HealthPort.  Ruzhinskaya has not brought a breach

of contract claim.  Moreover, any breach would be for Beth Israel, HealthPort's counterparty, to

pursue.  The agreement between HealthPort and Beth Israel does not make requesters its third-

party beneficiaries.  And Ruzhinskaya has not claimed to be a third-party beneficiary of the

agreement.

 The Court accordingly holds that HealthPort did not take on a duty under § 18 to limit its

charges to requesters to its own "costs incurred."

 **C.** **Application to Ruzhinskaya's Causes of Action**

The Court's holding that HealthPort did not have a duty under § 18 to limit its charges to its "costs incurred" is fatal to each of Ruzhinskaya's claims, requiring that summary judgment be entered for HealthPort.

### 1. Ruzhinskaya's Claim Under § 18(2)(e)

In light of the Court's holding that § 18(2)(e) did not impose on HealthPort a duty to charge no higher than its costs incurred, HealthPort's imposition of an above-cost charge to requesters did not violate the statute. Summary judgment on this claim must be entered for HealthPort.

Ruzhinskaya makes two arguments relevant to this claim, but neither disturbs this result.

*Material disputes of fact*: Ruzhinskaya notes that there are material disputes of fact as to what the "costs incurred" by both Beth Israel and HealthPort were and how these are properly tabulated. That is true. *See, e.g.*, D.56.1 at ¶¶ 1–3, 15. It is, however, irrelevant, given the Court's holding that HealthPort had no legal duty to bill at its cost.

*Estoppel*: Ruzhinskaya argues that HealthPort should be judicially or equitably estopped from arguing that the 75 cent per-page cost it charged requesters qualified, from the perspective of Beth Israel, as a "cost incurred." But that argument, for a number of independent reasons, does not salvage Ruzhinskaya's § 18 claim.

First, whether or not HealthPort's 75 cent charge is classified as a "cost incurred" of Beth Israel's, Ruzhinskaya is no longer suing Beth Israel. She is suing HealthPort. And for the reasons stated above, Ruzhinskaya cannot maintain a claim under § 18 against Healthport.

Second, at no point in this litigation did Healthport take the opposite position. Although HealthPort argued (and the Court found) at the class certification stage that providers' costs differed statewide across health care providers, HealthPort never argued that the 75 cents that it

charged per page was not part of Beth Israel's "costs incurred." On the contrary, because Ruzhinskaya abandoned her claim against Beth Israel, there was (and is) no occasion to litigate whether Beth Israel could claim compliance with § 18 on the basis that its ROI vendor HealthPort's 75-cent charge was a "cost" that Beth Israel "incurred." More broadly, having examined the record, the Court does not find any "true inconsistency" between any position taken by HealthPort and its advocacy on the motion for summary judgment. *See Wight v. BankAmerica Corp.*, 219 F.3d 79, 90 (2d Cir. 2000) (citations omitted) ("If the statements can be reconciled there is no occasion to apply estoppel.").

Third, the proposition on which the Court has now ruled for HealthPort is different from the proposition on which Ruzhinskaya claims a change of HealthPort's position. The basis for the Court's ruling is that § 18(2)(e) does not impose on entities other than providers a duty to charge no more than their "costs incurred." HealthPort has never affirmatively conceded that it was subject to such a legal duty.

Fourth, it was not HealthPort, but the Court, perceiving that central legal issues involving PHL § 18 had gone unresolved, that invited counsel to brief these pertinent issues on a clean slate. At the June 2, 2017 conference, the Court invited counsel to brief whether Beth Israel's costs counted towards HealthPort's costs incurred, and at the June 30, 2017 conference, realizing that a yet more fundamental issue remained unresolved, the Court invited counsel to move for summary judgment on the issue of whether HealthPort had any legal duty to limit its charges to "costs incurred" however defined. Although HealthPort (like Ruzhinskaya) can be fairly faulted for not earlier spotting and squarely raising this issue, the proper target of Ruzhinskaya's dismay that this issue arose is ultimately the Court, which late in the day perceived a possibly fatal flaw in plaintiff's theory of liability and insisted that the issue be briefed. The doctrines of judicial

and equitable estoppel do not apply to this circumstance, where any prejudice to plaintiff flows

from the Court's having spotted a deficient legal position, not from sharp practices of the

defendant.  *See Wight*, 219 F.3d at 90 (listing elements of judicial estoppel); *Veltri v. Building

Service 32 B-J Pension Fund*, 393 F.3d 318, 326 (2d Cir. 2004) (listing elements of equitable

estoppel).

### 2.    Ruzhinskaya's Claim of Unjust Enrichment

Summary judgment must also be granted for HealthPort on Ruzhinskaya's claim of

unjust enrichment.

Under New York law, a claim for unjust enrichment requires that a plaintiff establish "1)

that the defendant benefitted; 2) at plaintiff's expense; and 3) that equity and good conscience

require restitution."  *Boccardi Capital Sys. v. D.E. Shaw Laminar Portfolios, LLC*, No. 05 CV

6882 (GBD), 2009 WL 362118, at *8 (S.D.N.Y. Feb. 9, 2009) (citing *Kaye v. Grossman*, 202

F.3d 611, 616 (2d Cir. 2000)), *aff'd*, 335 Fed. Appx 516 (2d Cir. 2009).  "An unjust enrichment

claim is rooted in the 'equitable principle that a person shall not be allowed to enrich himself

unjustly at the expense of another.'"  *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516

(2012) (citation omitted).

As the New York Court of Appeals has explained:  "[U]njust enrichment is not a catchall

cause of action to be used when others fail.  It is available only in unusual situations when,

though the defendant has not breached a contract nor committed a recognized tort, circumstances

create an equitable obligation running from the defendant to the plaintiff.  Typical cases are those

in which the defendant, though guilty of no wrongdoing, has received money to which he or she

is not entitled."  *Corsello v. Verizon N.Y. Inc.*, 18 N.Y.3d 777, 790 (2012); *see also Broder v.

Cablevision Sys. Corp.*, 418 F.3d 187, 203 (2d Cir. 2005) ("When a plaintiff does not possess a

private right of action under a particular statute, and does not allege any actionable wrongs independent of the requirements of the statute, a claim[] for . . . unjust enrichment [is] properly dismissed as an effort to circumvent the legislative preclusion of private lawsuits for violation of the statute." (internal quotation marks and citation omitted)).

Once it is recognized that HealthPort was not prohibited by statute from charging records requesters above its costs and from turning a profit, these principles compel entry of summary judgment in HealthPort's favor on Ruzhinskaya's unjust enrichment claim.  A critical element to an unjust enrichment claim is that the defendant's purported "enrichment be unjust." *McGrath v. Hilding*, 41 N.Y.2d. 625, 629 (1977).  Ruzhinskaya's sole argument as to why HealthPort's recovery for its work on records requests was unjust was her theory that HealthPort had breached a limit set by § 18 on charges for records requests.  But HealthPort, not being a health care provider, was not subject to the costs-incurred limit.  And it is undisputed that the charge HealthPort imposed did not exceed—instead it matched—the 75 cents per-page cap imposed by § 18.  Further, HealthPort's intention to charge this rate was fully disclosed both to Beth Israel and to requesters.  Under these circumstances, there is no factual basis on which a jury could find that HealthPort's retention of its disclosed charge for its ROI services was unjust or offended "equity or good conscience."

### 3.    Ruzhinskaya's Claim Under New York GBL § 349

For much the same reasons, summary judgment must also be granted to HealthPort on Ruzhinskaya's claim of a violation of New York General Business Law § 349.

Section 349 requires that a defendant engaged in a "practice that is deceptive or misleading in a material way." *Ovitz v. Bloomberg L.P.*, 18 N.Y.3d 753, 759 (2012) (citation omitted).  Ruzhinskaya's theory of § 349 liability was wholly derivative of her § 18 claim.  The

allegations in her SAC as to the § 349 claim, brought against Beth Israel and HealthPort, did no more than incorporate the SAC's other factual allegations, recite the language of § 349, and plead damages. *See* SAC ¶¶ 104–07. The Court accordingly construed her § 349 claim as alleging that defendants had imposed a charge above costs incurred in violation of § 18, *see, e.g.*, Dkt. 38 at 12, and that the nondisclosure of the statutorily illegal nature of this charge was materially misleading or deceptive, *see* SAC ¶ 9 (alleging that defendants failed to disclose "the fact that the law required and continues to require them to charge fees not exceeding their actual costs incurred" and "the fact that said charges violate applicable laws and are illegal"); *id.* ¶¶ 87, 89, 94.

In light of the Court's holding that HealthPort was permitted to charge above its costs, this theory of its liability under § 349 cannot be sustained. HealthPort's charge was not unlawful under § 18 and it fully disclosed the amount of that charge to Ruzhinskaya. *See, e.g.*, *Zuckerman v. BMG Direct Mktg.*, 737 N.Y.2d 14, 15–16 (1st Dep't 2002) (claim for deceptive practices failed where music club operator fully disclosed its fees in advance of the consumer's acceptance of its recording); *Sands v. Ticketmaster-New York, Inc.*, 616 N.Y.S.2d 362, 363 (1st Dep't 1994) (where fees were fully disclosed before purchaser paid purchase price, claim under § 349 failed).

## CONCLUSION

For the reasons above, the Court grants HealthPort's motion for summary judgment as to all three claims, and denies Ruzhinskaya's motion for partial summary judgment. The Clerk of Court is respectfully directed to terminate all pending motions and to close this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: March 14, 2018
       New York, New York